**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WASHINGTON MUTUAL, INC.,

and

WMI INVESTMENT CORP.,

                  Plaintiffs,

      vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION,

                 Defendant,

and

Bank Bondholders,

            Applicants to Intervene.

CIVIL ACTION
1:09-cv-00533

**MEMORANDUM IN SUPPORT OF
<u>BANK BONDHOLDERS' MOTION TO INTERVENE AS DEFENDANTS</u>**

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ............................................................................................................2

ARGUMENT ................................................................................................................5

I.      The Bank Bondholders Are Entitled to Intervene as of Right. ...........................5

        A.    The Bank Bondholders Have Standing to Intervene as Defendants in This Case. ......6

        B.    The Bank Bondholders' Motion Is Timely. ...............................................8

        C.    The Bank Bondholders Have Substantial Interests in the Underlying Litigation........9

        D.    Disposition of This Case Would Impair the Bank Bondholders' Interests................10

        E.    The FDIC May Not Adequately Represent the Bank Bondholders' Interests...........12

II.     This Court Should, in the Alternative, Grant the Bank Bondholders Permission to
        Intervene. .............................................................................................16

CONCLUSION............................................................................................................17

## **TABLE OF AUTHORITIES**

Page(s)

### **CASES**

*Akiachak Native Cmty v. DOI,*
    584 F. Supp. 2d 1 (D.D.C. 2008) .......................................................................8

*Am. Horse Prot. Ass'n, Inc. v. Veneman,*
    200 F.R.D. 153 (D.D.C. 2001).........................................................................10

*County Council of Sumter County v. United States,*
    555 F. Supp. 694 (D.D.C. 1983) ......................................................................9

*Danvers Motor Co. v. Ford Motor Co.,*
    432 F.3d 286 (3d Cir. 2005).............................................................................6

*Diamond v. Charles,*
    476 U.S. 54 (1986)..........................................................................................9

*Dimond v. District of Columbia,*
    792 F.2d 179 (D.C. Cir. 1986).................................................................13, 15

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,*
    983 F.2d 211 (11th Cir. 1993) ........................................................................14

*Federal Deposit Ins. Corp. v. Engle,*
    524 F.2d 1339 (9th Cir. 1975) ........................................................................12

*Foster v. Gueory,*
    655 F.2d 1319 (D.C. Cir. 1981) ..................................................................8, 12

*Friends of Animals v. Kempthorne,*
    452 F. Supp. 2d 64, 70 (D.D.C. 2006) ...........................................................13

*Fund for Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ................................................................ *passim*

*Golden Pac. Bancorp v. FDIC,*
    375 F.3d 196 (2d Cir. 2004).............................................................................14

*Hodgson v. United Mine Workers,*
    473 F.2d 118 (D.C. Cir. 1972) ........................................................................15

*In re QMect, Inc.*,
    349 B.R. 620 (Bankr. N.D. Cal. 2006) ...............................................................7

*In re Simon*,
    179 B.R. 1 (Bankr. D. Mass. 1995) ...................................................................7

*Me-Wuk Indian Cmty v. Kempthorne*,
    246 F.R.D. 315 (D.D.C. 2007)........................................................................12

*Military Toxics Project v. EPA*,
    146 F.3d 948 (D.C. Cir. 1998) .........................................................................6

*Nat'l Wildlife Fed'n v. Burford*,
    878 F.2d 422 (D.C. Cir. 1989) .........................................................................8

*Nat'l Wildlife Federation v. Hodel*,
    839 F.2d 694 (D.C. Cir. 1988) .........................................................................6

*Natural Resources Defense Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ...................................................................11, 12

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ...................................................................12, 16

*O'Connor v. Rhodes*,
    79 F.2d 146 (D.C. Cir. 1935), *aff'd*, 297 U.S. 383 (1936) ................................14

*Reed v. Quigg,*
    No. Civ. A. 85-2762, 1986 WL 84371 (D.D.C. May 13, 1986).......................12

*Roeder v. Islamic Republic of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) .........................................................................7

*Smuck v. Hobson*,
    408 F.2d 175 (D.C. Cir. 1969) ...............................................................9,13,15

*Southern Co. Servs. v. F.E.R.C.*,
    416 F.3d 39 (D.C. Cir. 2005) ...........................................................................6

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) .......................................................................8

## STATUTES AND RULES

11 U.S.C. § 502(a) .................................................................................................7

11 U.S.C. § 1107 ....................................................................................................7

12 C.F.R. § 225.4 ...................................................................................................1

12 U.S.C. § 1821(d)(11) ......................................................................................13

Fed. R. Civ. P. 24(a)(2) ................................................................................ *passim*

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................16

Fed. R. Civ. P. 24(b)(2) .......................................................................................17

Fed. R. Civ. P. 24(b)(3) .......................................................................................17

The holders of senior notes ("Senior Notes") issued by Washington Mutual Bank ("WMB") listed below  (the "Bank Bondholders")[1] submit this memorandum in support of their Motion to intervene as defendants in this case.

The Bank Bondholders hold, in the aggregate, more than $1 billion in outstanding principal amount of the Senior Notes, which are by far the largest undisputed senior debt owed by WMB, a no-longer-operating, insolvent, federally chartered savings association.  The only current defendant in this case, the Federal Deposit Insurance Company ("FDIC"), is acting as the receiver for WMB.   The plaintiffs are Washington Mutual, Inc. ("WMI"), the holding company that owned WMB (and, through WMB, WMB's subsidiary, Washington Mutual Bank fsb, ("WMBfsb")), and WMI's affiliate, WMI Investment Corp. (together with WMI, the "Plaintiffs").  Rather than acknowledge that WMI was the shareholder, not a creditor, of WMB—a shareholder that, under basic banking law, owed a duty to be a "source of strength" for WMB and its legitimate creditors (*e.g.*, 12 C.F.R. § 225.4)—Plaintiffs assert in this action many billions of dollars in claims against WMB's insolvent receivership estate (the "Receivership Estate").  The allowance of those highly suspicious claims would unquestionably diminish by many fold, if not eliminate altogether, any payment on the undisputed claims of the Bank Bondholders against the Receivership Estate.  In addition, the Bank Bondholders have asserted

---

[1]        The Bank Bondholders are Bank of Scotland plc; Fir Tree Capital Opportunity Master Fund, L.P.; Fir Tree Mortgage Opportunity Master Fund, L.P.; Fir Tree Value Master Fund, L.P.; HFR ED Select Fund IV Master Trust; Lyxor/York Fund Limited; Marathon Credit Opportunity Master Fund, Ltd.; Marathon Special Opportunity Master Fund, Ltd.; Permal York Ltd.; Quintessence Fund L.P; QVT Fund LP; The Governor and Company of the Bank of Ireland; The Värde Fund, L.P.; The Värde Fund VI-A, L.P.; The Värde Fund VII-B, L.P.; The Värde Fund VIII, L.P.; The Värde Fund IX, L.P.; The Värde Fund IX-A, L.P.; Värde Investment Partners (Offshore), Ltd.; Värde Investment Partners, L.P.; York Capital Management, L.P.; York Credit Opportunities Fund, L.P.; York Credit Opportunities Master Fund, L.P.; York Investment Master Fund, L.P.; York Select, L.P.; and York Select Master Fund, L.P.

billions of dollars in claims in the WMI and WMI Investment Corp. bankruptcy proceedings. The claims asserted by Plaintiffs in this action are fundamentally inconsistent with those claims against the very same Plaintiffs. Thus, allowance of Plaintiffs' claims in this action would substantially prejudice the prosecution of the Bank Bondholders' claims.

The Bank Bondholders are entitled to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure. As set forth below, the Bank Bondholders plainly satisfy the applicable requirements: they have Article III standing (to the extent that such standing must be established at all where, as here, the Bank Bondholders seek to intervene as a defendant, not as a plaintiff); their substantial interests as among the largest creditors of the insolvent WMB Receivership Estate will unquestionably be impaired—indeed, potentially eliminated altogether—by a judgment in favor of Plaintiffs; their Motion, filed at the outset of the case, is timely; and their interests are not adequately represented by the FDIC, a governmental entity that has disclaimed owing any fiduciary duty to the Bank Bondholders or other creditors of WMB and that faces an inherent conflict because it has been sued both as receiver and in its corporate capacity. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 728-31 (D.C. Cir. 2003).

Alternatively, the Bank Bondholders should be permitted to intervene under Rule 24 (b)(2). Their defenses to Plaintiffs' claims raise questions of fact and law in common with those that will otherwise be adjudicated in the case, and there is no risk that permitting the Bank Bondholders to intervene would delay or prejudice the orderly adjudication of Plaintiffs' claims.

## **BACKGROUND**

On September 25, 2008, WMB was closed by the Office of Thrift Supervision, and the FDIC was appointed as receiver of WMB. Immediately after its appointment as Receiver, the FDIC sold substantially all of the assets of WMB, including the stock of WMBfsb, to JPMorgan

- 2 -

Chase Bank ("JPMC"). The following day, on September 26, 2008, Plaintiffs filed petitions for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101, *et seq*.), in the United States Bankruptcy Court for the District of Delaware.

JPMC paid approximately $1.9 billion in cash for the assets of WMB that it acquired. It also assumed most of the liabilities of WMB—including its liability to its depositors—but this assumption of liability did not include WMB's debt on the Senior Notes. Accordingly, the Bank Bondholders and other holders of Senior Notes must look principally to the WMB Receivership Estate for payment of their undisputed, substantial debt.[2] In total, the outstanding principal amount of the Senior Notes is approximately $6 billion, more than three times the $1.9 billion in cash that JPMC paid for the assets of WMB it acquired. Thus, unless the Receivership Estate is able to recover substantial additional amounts on the causes of action or other assets excluded from the property sold to JPMC (including causes of action against Plaintiffs), or the Bank Bondholders are able to recover directly from Plaintiffs' bankruptcy estates, the Bank Bondholders already face a massive loss on their bonds. The Plaintiffs' claims in this action threaten to make that loss nearly, if not entirely, complete.

On March 20, 2009, Plaintiffs filed their Complaint in this case. The claims asserted therein against WMB's Receivership Estate are staggering. While it is difficult to add up all those claims—indeed, many are unliquidated—it is evident that Plaintiffs are seeking the allowance and payment of many billions of dollars. *See, e.g.*, Compl. ¶ 22 ("WMI is, or will be,

---

[2]      The Bank Bondholders have filed proofs of claim in Plaintiffs' bankruptcy cases, asserting (among other claims) alter ego, piercing the corporate veil and related claims. The Bank Bondholders reserve all rights with respect to those and all other claims. *See* Proofs of Claim Nos. 3071 (filed in the WMI bankruptcy) and 3114 (filed in the WMI Investment Corp. bankruptcy), as amended (attached to Bank Bondholders' Answer as Exhibit A) (the "Proofs of Claim").

entitled to tax refunds currently estimated to be approximately $3 billion. . . . In anticipation of the receipt of certain Tax Refunds . . . WMI paid such amounts to WMB prior to the Receivership Date. . . . WMI therefore asserts a claim against WMB for the amounts so paid by WMI."); *id.* ¶ 28 ("WMI asserts a fraudulent transfer claim pursuant to sections 544 and 548 of the Bankruptcy Code in an amount up to $6.5 billion, and for all other claims or causes of action, under any theory, applicable to the Capital Contributions."); *id.* ¶ 33 ("On information and belief, the Trust Preferred Securities have a value as much as $4 billion. WMI may not have received any value for the purported transfer of the Trust Preferred Securities to WMB . . . . WMI asserts fraudulent transfer claims against WMB . . . in connection with the transfer of the Trust Preferred Securities."). Adding insult to injury, Plaintiffs allege that at least some of these claims are entitled to priority of payment—*i.e.*, they must be paid in full before the Bank Bondholders may receive any payment on their Senior Notes. *See, e.g.*, Compl. ¶ 49 ("This claim is entitled to priority."). Plaintiffs expressly assert that "the Receivership and FDIC-Receiver is obligated to pay" all such claims. Compl. ¶ 80; *see also id.* at p. 27, Prayer for Relief ¶ 2.

But Plaintiffs do not stop there. They also assert claims—again, apparently for tens of billions of dollars in supposed damages—against the FDIC, in its corporate capacity (as well as its capacity as receiver), for allegedly dissipating WMB's assets and converting WMI's property. *See* Compl. ¶¶ 81-95; *see also id.* p. 27, Prayers for Relief ¶¶ 5, 6.[3]

---

[3]     JPMC has also filed a motion to intervene in this action, and the FDIC has filed a response in support of that motion. *See* JP Morgan Chase Bank, N.A. Motion to Intervene as Defendant, dated March 30, 2009, Docket No. 4; Response of Defendant FDIC-Receiver in Support of Motion to Intervene of JPMorgan Chase Bank, N.A., dated April 30, 2009, Docket No. 20. In addition, JPMC has commenced an adversary proceeding against Plaintiffs in Plaintiffs' bankruptcy cases seeking a declaratory judgment regarding its ownership of certain assets placed at issue by Plaintiffs in this action. *See* Complaint, *JP Morgan Chase Bank, National Association v. Washington Mutual, Inc., et al.*, Adv. Proc. No. 09-50551 (Bankr. D.

## ARGUMENT

**I.    The Bank Bondholders Are Entitled to Intervene as of Right.**

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).  In the D.C. Circuit, a party seeking to intervene must usually first satisfy the basic standing requirements of Article III of the Constitution (though, as discussed below, those requirements are substantially reduced, if not eliminated altogether where, as here, the party seeks to intervene as a defendant, rather than as a plaintiff).  *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 732-33 (D.C. Cir. 2003).  Once the applicant has shown Article III standing, this Court must consider four factors:

(1)    the timeliness of the motion;

(2)    whether the applicant "claims an interest relating to the property or transaction which is the subject of the action";

(3)    whether "the applicant is so situated that the disposition of the action may

---

Del.), Docket No. 1 (attached as Exhibit A).  Plaintiffs have also recently commenced an adversary proceeding in the bankruptcy proceedings against JPMC, seeking "turnover" of some of the same property that is the subject of the Bank Bondholders' claims against Plaintiffs.  *See* Complaint, *Washington Mutual, Inc., et al. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (Bankr. D. Del.), Docket No. 1 (attached as Exhibit B).  The FDIC has filed a motion in each of the foregoing adversary proceedings to stay the proceedings until a judgment has been entered in this action.  *See* Memorandum of Law in Support of the Motion of the Federal Deposit Insurance Corporation, As Receiver, to Stay Adversary Proceedings, Docket No. 26 in Adv. Proc. No. 09-50551 (attached as Exhibit C), and Motion to Intervene, Exhibit A, Docket No. 29 in Adv. Proc. No. 09-50934 (Motion to Intervene for limited purpose of moving to stay the proceedings with Motion to Stay or Dismiss Adversary Complaint attached as Exhibit A) (attached as Exhibit D).

as a practical matter impair or impede the applicant's ability to protect that interest"; and

(4)     whether "the applicant's interest is adequately represented by existing parties."

*Id.* at 731 (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998)).

As demonstrated below, the Bank Bondholders have standing, and satisfy all four additional requirements for intervention under Rule 24(a)(2).

**A.      The Bank Bondholders Have Standing to Intervene as Defendants in This Case.**

Generally, "[t]o establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 732-33 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). These requirements are, in all circumstances, modest. *See Nat'l Wildlife Federation v. Hodel*, 839 F.2d 694, 704 (D.C. Cir. 1988) (an "identifiable trifle" will satisfy injury requirement) (citing *United States v. SCRAP,* 412 U.S. 669, 689 n.14 (1973)); *Danvers Motor Co. v. Ford Motor Co*., 432 F.3d 286, 294 (3d Cir. 2005) (Alito, J.) ("Injury-in-fact is not Mount Everest.").

But, where, as here, the prospective intervenors seek to intervene as a defendant, it may satisfy the Article III requirements regardless of whether it has already suffered any injury at all, so long as the relief sought by the plaintiff, if granted, could cause the intervenor to suffer at least a "trifle" of injury-in-fact. *See Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (holding that prospective intervenor had standing to intervene as a defendant because the prospective intervenor's members "would suffer concrete injury if the court grants the relief the petitioners seek; they would therefore have standing to intervene in their own right"); *Fund for Animals*, 322 F.3d at 734; *cf. Southern Co. Servs. v. F.E.R.C.*, 416 F.3d 39, 44 n. 2 (D.C. Cir. 2005) (Article III standing may be satisfied via demonstration of "imminent injury"). Indeed, the

- 6 -

D.C. Circuit has questioned whether prospective defendant-intervenors need satisfy Article III standing requirements at all. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("Requiring standing of someone who seeks to intervene as a defendant, runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction.").

In this action, Plaintiffs seek to require the Receivership Estate to allow and pay many billions of dollars in hotly disputed claims asserted by Plaintiffs. That relief would dilute to the point of nothingness any prospect for the Bank Bondholders to recover on their undisputed claims against the insolvent Receivership Estate. Indeed, since the Plaintiffs seek priority in payment for at least some of their claims, a judgment for Plaintiffs could well cause the Bank Bondholders to recover absolutely nothing on their Senior Bonds from the Receivership Estate. Moreover, as discussed more fully in Section I.D below, the Bank Bondholders' own claims against Plaintiffs are fundamentally inconsistent with the claims Plaintiffs assert in this action, and resolution of the claims here in favor of the Plaintiffs would substantially undermine any prospect the Bank Bondholders have of recovery in the bankruptcy cases. The Bank Bondholders thus have a practical and substantial interest in defeating Plaintiffs' claims.[4] They

---

[4]     This is consistent with the treatment by courts of standing and intervention in other contexts involving competing claims to a limited fund or otherwise against an insolvent debtor. In bankruptcy, for instance, a creditor or creditors' committee has standing, as a party in interest, to object to another creditor's claim where the objecting creditor has something to gain if it prevails. *See, e.g.*, *In re QMect, Inc.*, 349 B.R. 620, 625 (Bankr. N.D. Cal. 2006); *In re Simon*, 179 B.R. 1 (Bankr. D. Mass. 1995); *see also* 11 U.S.C. §§ 502(a), 1107; Notes of Advisory Committee, Fed R. Bankr. P. 3007 ("the debtor's other creditors may make objections to the allowance of a claim"). Indeed, the official committee representing the unsecured creditors of WMI and WMI Investment Corp. has successfully moved to intervene in the litigation, described above (see n. 3, *supra*), brought by WMI and WMI Investment Corp. against JPMC. *See* Motion for Intervention of the Official Committee of Unsecured Creditors of Washington Mutual, Inc. and WMI Investment Corp., *Washington Mutual, Inc., et al. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (Bankr. D. Del.), Docket No. 3 (attached as Exhibit E); Order Granting

are "indeed concerned persons whose involvement in the suit is compatible with efficiency and due process" and, therefore, have standing to intervene per Rule 24(a)(2). *Foster v. Gueory*, 655 F.2d 1319, 1324-25 (D.C. Cir. 1981) (noting that the interest criterion of Rule 24 is a "practical guide").

### B.      The Bank Bondholders' Motion Is Timely.

Courts measure the timeliness of an application by looking at all circumstances, "especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1295 (D.C. Cir. 1980) (citing *Moten v. Bricklayers Int'l Union,* 543 F.2d 224, 228 (D.C. Cir. 1976). Courts also consider "when [the intervenor] knew or should have known that any of its rights would be directly affected by the litigation." *Nat'l Wildlife Fed'n v. Burford,* 878 F.2d 422, 433-34 (D.C. Cir. 1989). However, "[t]he critical factor is whether any 'delay in moving for intervention will prejudice the existing parties to the case.'" *Akiachak Native Cmty v. DOI,* 584 F. Supp. 2d 1, 5 (D.D.C. 2008).

Plaintiffs filed their Complaint in this case on March 20, 2009, and the Bank Bondholders learned of the Complaint on March 23, 2009, three days later. The FDIC has not yet filed its response to the Complaint, and any such response is not due until July 9, 2009. Discovery has not yet started, no dispositive motions have been filed, and no hearings or conferences have been held. The separate motion by JPMC to intervene in this case was filed on March 30, 2009, and

---

Motion to Intervene, *Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (Bankr. D. Del. May 20, 2009), Docket No. 20 (attached as Exhibit F).

was fully briefed only as of May 14, 2009.  In short, this action remains in its infancy and the Bank Bankholders are seeking intervention only two months after the case was commenced.

Given the nascent stage of the case, permitting the Bank Bondholders to intervene at this stage would in no way prejudice either Plaintiffs or the FDIC.  The Motion is unquestionably timely.  *See, e.g., Fund for Animals*, 322 F.3d at 735 (holding applicants' motion timely because they "moved to intervene less than two months after the plaintiffs filed their complaint and before the defendants filed an answer"); *County Council of Sumter County  v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983) (permitting applicants to intervene at the close of discovery and on the eve of argument on motions for summary judgment).

### C.    The Bank Bondholders Have Substantial Interests in the Underlying Litigation.

To demonstrate a sufficient "interest" in the litigation, prospective intervenors must generally have a "direct and concrete interest that is accorded some degree of legal protection." *Diamond v. Charles*, 476 U.S. 54, 75 (1986).  The D.C. Circuit has, however, collapsed this "interest" requirement into the mandate that prospective intervenors have constitutional standing. *See Fund for Animals*, 322 F.3d at 735 (holding that when an applicant has constitutional standing, that fact "alone [is] sufficient to establish that [it] has 'an interest relating to the property or transaction which is the subject of the action'") (quoting Fed. R. Civ. P. 24(a)(2)). Because the Bank Bondholders unquestionably have constitutional standing, *see supra* Section I.A, it follows *a fortiori* that they have a sufficient "interest" under Rule 24(a)(2) in the resolution of this case—a case that, as described above, threatens to reduce to next to nothing, if not eliminate altogether, any possible recovery for the Bank Bondholders on their billions of dollars in Senior Bonds.  *See, e.g*., *Smuck v. Hobson*, 408 F.2d 175, 180 (D.C. Cir. 1969) ("Rule 24(a) as amended requires not that the applicant be 'bound' by a judgment in the action, but only

- 9 -

that 'disposition of the action may as a practical matter impair or impede his ability to protect

that interest'"); *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 158 (D.D.C. 2001) ("In

determining whether a movant's interests will be impaired by an action, courts in this circuit look

to the 'practical consequences' to movant of denying intervention.")

### D.     Disposition of This Case Would Impair the Bank Bondholders' Interests.

Beyond demonstrating an interest in the underlying litigation, prospective intervenors

must show that their interest may be "impaired or impeded" by "the disposition of the action."

Fed. R. Civ. P. 24(a)(2).  Interpreting this requirement, the D.C. Circuit has held that an applicant

does not need to show that it would be "bound by a judgment in the action," but instead, need

only show that as a practical matter, its interests could be "impaired or impeded" in some

manner.  *Fund for Animals*, 322 F.3d at 735.

That is plainly the case here.  Judgment in favor of Plaintiffs would impair or impede the

Bank Bondholders' interests in two independent but related ways, either of which is sufficient to

warrant intervention.  *First*, as discussed above, any award paid by the FDIC from the

Receivership Estate to Plaintiffs on their tens of billions of dollars in claims would, by definition,

reduce materially, if not entirely, the funds available to pay the Senior Bonds.  The Bank

Bondholders' substantial interests would most assuredly be "impaired or impeded."

*Second*, as noted, the Bank Bondholders have themselves filed Proofs of Claim against

Plaintiffs in their bankruptcy cases.  *See* n.2, *supra*.  Many of those claims are, in essence, the

flip-side of the same coin as the claims asserted by the Plaintiffs in this action.  For instance,

while Plaintiffs assert in this case that funding they provided to WMB constituted fraudulent

transfers recoverable from WMB's Receivership Estate for the benefit of Plaintiffs, the Bank

Bondholders assert in their Proofs of Claim that, on a net basis, WMB provided over $6 billion

in funding to WMI that is recoverable for the benefit of WMB's creditors from WMI's bankruptcy estate as fraudulent transfers.  *See* Proofs of Claim, Nos. 3071 (in WMI bankruptcy) and 3114 (in WMI Investment Corp. bankruptcy), as amended, at ¶ 10 (attached to Bank Bondholders' Answer as Exhibit A).

Thus, Plaintiffs' theories for recovery against the Receivership Estate are, at the very least, inconsistent with the theories by which the Bank Bondholders seek to recover from the WMI estate.  By way of example, as noted, Plaintiffs contend that capital contributions that WMI made to WMB are recoverable as fraudulent transfers.  Compl. ¶¶ 25-28.  But the Bank Bondholders assert that WMI provided too little, not too much, capital to WMB.  In particular, the Bank Bondholders assert that WMI was obligated to maintain and guarantee appropriate capital levels of WMB but failed to do so.  Instead, WMI looted WMB for its own benefit while at the same time directing WMB to issue the Senior Bonds now held by the Bank Bondholders, thereby giving rise to veil-piercing, alter ego and related claims by the Bank Bondholders against WMI.  *See* Proofs of Claim, Nos. 3071 (filed in the WMI bankruptcy) and 3114 (filed in the WMI Investment Corp. bankruptcy), as amended, at ¶ 12 (attached to Bank Bondholders' Answer as Exhibit A).  Should the Bank Bondholders be barred from developing the facts in this action and Plaintiffs receive a favorable judgment on their fraudulent transfer claims, Plaintiffs will have an unfair advantage in any subsequently-decided litigation regarding the Bank Bondholders' Proofs of Claim.

Accordingly, a judgment for Plaintiffs in this action, even if it would not otherwise be binding on the Bank Bondholders, could "impair[] or impede[]" the Bank Bondholders in the prosecution of their own, multi-billion dollar claims against Plaintiffs pending in Plaintiffs' bankruptcy cases.  *See Natural Resources Defense Council v. Costle*, 561 F.2d 904, 909 (D.C.

- 11 -

Cir. 1977) (even where there is a "possibility of future litigation," "it simply cannot be said

that . . . there is no impairment of [movants'] interest" (citing *Nuesse v. Camp*, 385 F.2d 694, 702

(D.C. Cir. 1967))); *Reed v. Quigg*, No. Civ. A. 85-2762, 1986 WL 84371, at *3 (D.D.C. May 13,

1986) ("[T]here is no denying that the *practical effect* of an adverse ruling by this Court will be

to create a higher burden of proof for [proposed intervenor] to meet than would otherwise be

required, and establish case precedent to which a sister district court . . . might be tempted to

defer.  Although there is no assurance that disposition of this suit would result in a ruling adverse

to [proposed intervenor's] interest, the mere possibility of such a result is sufficient to justify

intervention.").  *Me-Wuk Indian Cmty v. Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007)

(granting intervention where decision in litigation "would receive 'great weight' when the same

or similar issues arise" in other fora and movant "would likely be disadvantaged in future

efforts"); *see also Federal Deposit Ins. Corp. v. Engle*, 524 F.2d 1339, 1341 (9th Cir. 1975)

(movants entitled to intervene as of right; position asserted in pending case was adverse to the

movants such that entry of judgment in the litigation would impede movants "as a practical

matter" in their ability to protect the interests they claim).

> **E.    The FDIC May Not Adequately Represent the Bank Bondholders' Interests.**

The final prong of the Rule 24(a)(2) test requires the Bank Bondholders to show that the

existing defendant, the FDIC, may not adequately protect the Bank Bondholders' interests.  The

D.C. Circuit has stressed that this requirement imposes only a "'minimal burden'" on the

proposed intervenor, requiring it merely to show that the existing representation 'may be'

inadequate to protect [its] interest." *Natural Resources Defense Council v. Costle*, 561 F.2d 904,

911 (D.C. Cir. 1977) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10

(1972)); *see Foster, 655* F.2d at 1325 (same); *Fund for Animals*, 322 F.3d at 735 (describing this

requirement as "not onerous" ) (citation omitted).  This burden is especially modest where, as here, the proposed intervenors are private parties and the existing party is a governmental body. Courts in this Circuit "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."  *Fund for Animals*, 322 F.3d at 736; *see also id.* at 736 n.9 (citing cases); *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986); *Smuck v. Hobson,* 408 F.2d 175, 181 (D.C. Cir. 1969); *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006).

The Bank Bondholders unquestionably have met their "minimal" burden.  In its role as receiver for the WMB Receivership Estate, the FDIC will seek to expedite the liquidation of WMB, thereby effectuating the dual legislative purposes of "maintain[ing] confidence in the nation's banking system" and "maximiz[ing] the cost-effectiveness of the receivership process to preserve a strong insurance fund."  FDIC Resolutions Handbook at 67, *available at* http://www.fdic.gov/bank/historical/reshandbook.  But the FDIC has no economic stake in maximizing the assets of the Receivership Estate or minimizing the claims against it; only the creditors of the Receivership Estate, principally the Bank Bondholders and the other holders of Senior Notes, do.[5]  Indeed, the FDIC, through its counsel, has made it clear to the Bank

---

[5]     Indeed, the publicly available records of the Receivership Estate suggest that the FDIC's only claim is an administrative priority claim in the amount of $48.9 million.  *See* Washington Mutual Bank - Receivership Balance Sheet Summary (Unaudited), *available at* http://www.fdic.gov/bank/individual/failed/wamubalsheet.html.
That claim hardly gives the FDIC an interest akin to those of the Bank Bondholders.  If valid, the FDIC's administrative claim would be given first priority (ahead of any general unsecured claim of the Bank Bondholders) under the statutory preference scheme provided in 12 U.S.C. § 1821(d)(11).  And the FDIC has indicated that the assets of the Receivership Estate are well in excess of that amount.  *See id.*

Because under the terms of the Purchase and Assumption Agreement WMB's deposits were assumed by JPMC, the FDIC also lacks the incentive in this case to maximize the assets of

- 13 -

Bondholders that its view is that, unlike a trustee in bankruptcy, it owes no fiduciary duties to the Bank Bondholders or to any other creditors of WMB to try to maximize the Receivership Estate or to minimize the claims against it.[6]

Moreover, the nature of this case raises a serious potential conflict in interest for the FDIC. Plaintiffs have sued the FDIC, not only in its capacity as receiver of the Receivership Estate, but also in its corporate capacity. To the extent that the FDIC is found liable to Plaintiffs in its corporate capacity, it will have to pay any damages—and the Plaintiffs seek tens of billions of dollars—out of its own coffers. The FDIC, therefore, has every incentive to settle with Plaintiffs by allowing their claims against, and paying those claims out of, the Receivership Estate, while obtaining a release of the FDIC itself, acting in its corporate capacity. This alone is more than sufficient to call into question whether the FDIC will adequately represent the interests of the Bank Bondholders in maximizing the assets of the Receivership Estate and minimizing the claims against it. *See Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (holding that the interests of prospective-intervenor bondholders may not be adequately represented where the FDIC is engaged in settlement negotiations with an adverse party). Indeed, the D.C. Circuit has recognized that a

---

the Receivership Estate that may exist in other cases where the FDIC may be liable to the depositors.

[6]    The Bank Bondholders do not concede that the FDIC is correct. On the contrary, there is law that the FDIC, as receiver of a failed bank, does owe fiduciary duties to the bank's creditors. *See, e.g.*, *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004) ("[i]t is undisputed that, as a receiver, the FDIC owes a fiduciary duty to the Bank's creditors"); *O'Connor v. Rhodes*, 79 F.2d 146, 148 (D.C. Cir. 1935) ("the receiver . . . represents the bank, its stockholders and creditors"), *aff'd*, 297 U.S. 383 (1936). But the fact is that the FDIC has disputed this proposition in the context of this very case, a circumstance that more than satisfies the "minimal burden" of demonstrating that the FDIC "may" not adequately protect the interests of the Bank Bondholders.

governmental entity "would face a potential conflict of interest were it to represent both the general interest of its citizens and the financial interests of [a private party]" and that such "a potential conflict of this sort is sufficient to satisfy a proposed intervenor's 'minimal' burden of showing that representation of its interest by existing parties may be inadequate." *Dimond*, 792 F.2d at 193 (citing *Costle*, 561 F.2d at 912-13); *Hodgson v. United Mine Workers*, 473 F.2d 118, 130 (D.C. Cir. 1972); *Smuck*, 408 F.2d at 181.

In any event, even if the interests of the Bank Bondholders might, to some degree, overlap with those of the FDIC, that "does not guarantee the adequacy of representation." *Fund for Animals*, 322 F.3d at 737. The D.C. Circuit has recognized that "interests need not be wholly adverse before there is a basis for concluding that existing representation of a different interest may be inadequate." *Id.* (internal quotations and citations omitted). Here, the FDIC's position that it owes no fiduciary duties to the Bank Bondholders, and its palpable conflict of interest, more than satisfy the "minimal" showing required to demonstrate that a governmental entity like the FDIC "may" not adequately and fully represent the Bank Bondholders' interests.[7]

Accordingly, the Bank Bondholders are entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2).

---

[7]    The other party that has sought to intervene, JPMC, is doing so for reasons different from those that animate the Bank Bondholders and cannot be expected to represent the Bank Bondholders' interests. JPMC views "WMI's claims in this action [as] seek[ing] to establish ownership of assets that WMI concedes were the subject of the [Purchase & Assumption] Agreement between the FDIC and JPMC;" therefore, JPMC "seeks to intervene in this action as a defendant to protect its significant property interests in those disputed assets." Memorandum of Points and Authorities in Support of JPMorgan Chase Bank, N.A.'s Motion to Intervene as Defendant, at 4. The Bank Bondholders' purpose for intervening is, instead, to prove the invalidity of WMI's claims against the WMB Receivership Estate on multiple grounds, but not on the grounds asserted by JPMC. The Bank Bondholders take no position on JPMC's motion to intervene and are not seeking to intervene in this litigation with respect to the property interests asserted by JPMC.

## II.    This Court Should, in the Alternative, Grant the Bank Bondholders Permission to Intervene.

Even if the Bank Bondholders were not entitled to intervene as a matter of right, this Court should exercise its discretion to permit applicants to intervene pursuant to Federal Rule of Civil Procedure 24(b)(1)(B).  Rule 24(b)(1)(B) permits intervention upon a timely application[8] like this one where "an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(1)(B).

The Bank Bondholders easily satisfy the baseline requirements of Rule 24(b)(1)(B).  At the very least, the Bank Bondholders have an economic interest in preserving and maximizing the Receivership Estate's assets and in minimizing Plaintiffs' claims against those assets.  In this respect, the Bank Bondholders' interest converges with the presumed interests of the FDIC in its role as receiver of the WMB estate.  To be sure, as noted above, the FDIC has disclaimed owing a fiduciary duty to the Bank Bondholders to maximize the Receivership Estate, and it appears to have an inherent conflict of interest.  But, while the scope of the Bank Bondholders' interest therefore does not coincide precisely with that of the FDIC's, both parties presumably will seek to defend, to one degree or another, against the Plaintiffs' claims, satisfying the commonality requirement of Rule 24(b)(1)(B).  *See Neusse*, 385 F.2d at 703-04.  Moreover, the Bank Bondholders' defenses to Plaintiffs' claims will address the same, or substantially similar, "question[s] of law and fact" as those raised by Plaintiffs' claims, thereby also satisfying the commonality standard.  Fed. R. Civ. P. 24(b)(1)(B).

---

[8]    For the reasons discussed above with respect to intervention as a matter of right, the Bank Bondholders' Motion is timely.  The timeliness question is the same for Rule 24(b)(1)(B) as it is for Rule 24(a)(2).

Granting the Bank Bondholders' Motion to intervene at this stage would not in any way "delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). The FDIC has not yet filed an answer to Plaintiffs' Complaint, and this Court has not held or even scheduled a hearing. Consequently, granting the Bank Bondholders' Motion should cause no delay of any kind in the litigation. Moreover, neither Plaintiffs nor the FDIC can plausibly claim they would be prejudiced by permitting the Bank Bondholders to intervene. As evidenced by the answer that the Bank Bondholders are submitting with their Motion to Intervene, the Bank Bondholders do not propose to expand the scope of the litigation beyond the four corners of Plaintiffs' own complaint. *See Fund for Animals*, 322 F.3d at 738 n.11. Rather the Bank Bondholders propose only to develop vigorously the facts and law applicable to the claims and defenses at issue, thereby helping provide the framework for the Court properly to dispose of the case. Permissive intervention is appropriate.

## CONCLUSION

For the reasons stated herein, this Court should grant the Bank Bondholders' Motion to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) or, in the alternative, grant the Bank Bondholders permission to intervene under Fed. R. Civ. P. 24(b)(2).

DATED:  June 2, 2009

Respectfully submitted,

Intervenor-Applicants Bank Bondholders

By their Attorneys,

/s/ Philip D. Anker
Philip D. Anker  (367957)
WILMER CUTLER PICKERING HALE &
DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Russell J. Bruemmer (289074)
Nancy L. Manzer (421144)
Gianna Ravenscroft (487712)
Lisa Ewart (497290)
WILMER CUTLER PICKERING HALE &
DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000