## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON MUTUAL, INC. and WMI INVESTMENT CORP.<br><br>          Plaintiffs,<br><br>   v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver of Washington Mutual Bank, and FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,<br><br>          Defendants. | Case No. 1:09-cv-0533 (RMC)<br><br><br><br><br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF THE PARTIAL MOTION TO DISMISS OF DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON MUTUAL BANK

David Clarke, Jr. (D.C. Bar. No. 396002)
Deana L. Cairo (D.C. Bar No. 469628)
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
Tel.:  (202) 799-4000
Fax:  (202) 799-5000

- and –

John J. Clarke, Jr. (admitted *pro hac vice*)
Thomas R. Califano
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501

Attorneys for Defendant
  Federal Deposit Insurance Corporation,
  as Receiver for Washington Mutual Bank

**Table of Contents**

Page

Table of Authorities ..................................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ............................................................................................................................. 4

      A.     Allegations of the Complaint ................................................................................. 4

      B.     Plaintiffs' Claims in this Action ........................................................................... 8

ARGUMENT .................................................................................................................................. 9

I.      COUNTS II, III, IV AND V OF THE COMPLAINT SHOULD BE
      DISMISSED IN THEIR ENTIRETY ................................................................................ 9

      A.     Plaintiffs Failed to Present the Claims Asserted in Counts II, III and IV
             in WMI's Receivership Proof of Claim ................................................................ 10

      B.     There Is No Private Right Act of Action for "Dissipation" of
             Receivership Assets (Count II) ............................................................................. 11

      C.     Plaintiffs Cannot Assert a Taking Claim Against the
             FDIC-Receiver (Count III) .................................................................................... 15

      D.     Plaintiffs Cannot Assert a Conversion Claim Against the
             FDIC-Receiver Under the Federal Tort Claims Act (Count IV) ......................... 18

             1.     The FDIC-Receiver Is Not a Proper Defendant Under the
                    Federal Tort Claims Act .......................................................................... 18

             2.     Plaintiffs Failed to Exhaust Administrative Remedies ............................ 19

             3.     Plaintiffs' Conversion Claim Is Subject to the
                    Discretionary Function Exception Under the FTCA ............................... 21

      E.     Federal Law Bars Plaintiffs' Request for a Declaration that
             the FDIC-Receiver's Disallowance Is "Void" (Count V) .................................... 22

II.     PLAINTIFFS' CLAIM TO RECOVER CAPITAL CONTRIBUTIONS
      TO WMI'S SUBSIDIARY WMB SHOULD BE DISMISSED ...................................... 23

CONCLUSION .............................................................................................................................. 28

**Table of Authorities**

Page

Cases

ABI Inv. Group. v. F.D.I.C.,
    860 F. Supp. 911 (D.N.H. 1994) ......................................................................18

Adams v. U.S. Dep't of Hous. & Urban Dev.,
    807 F.2d 318 (2d Cir.1986)..............................................................................20

ALX El Dorado, Inc. v. Sw. Sav. And Loan Ass'n.,
    36 F.3d 409 (5th Cir. 1994) .............................................................................22

*Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)..............................................................................4, 11, 26

Benoit v. U.S. Dep't of Agric.,
    577 F. Supp. 2d 12 (D.D.C. 2008) .....................................................................4

Berkovitz v. United States,
    486 U.S. 531 (1988)..........................................................................................21

Bivens v. Six Unknown Federal Narcotics Agents,
    403 U.S. 388 (1971)..........................................................................................16

Blackmon-Malloy v. U.S. Capitol Police Bd.,
    338 F. Supp. 2d 97 (D.D.C. 2004) ...................................................................18

*Branch v. F.D.I.C.,
    825 F. Supp. 384 (D. Mass. 1993) ...................................................................25

Branch v. United States,
    69 F.3d 1571 (Fed. Cir. 1995), cert. denied, 519 U.S. 810 (1996).........................17

Brown Leasing Co. v. F.D.I.C.,
    833 F. Supp. 672 (N.D. Ill. 1993), aff'd, 42 F.3d 1112 (7th Cir. 1994) ...........10, 11

Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.),
    6 F.3d 1119 (5th Cir. 1993) .............................................................................26

Cal. Hous. Sec. Inc. v. United States,
    959 F.2d 955 (Fed. Cir. 1992)..........................................................................17

CareerCom Corp. v. United States Dep't of Educ. (In re CareerCom Corp.),
    215 B.R. 674 (Bankr. M.D. Pa. 1997) .............................................................24

Page

*Coleman v. F.D.I.C.,*
  826 F. Supp. 31 (D. Mass. 1993) ........................................................................10

*Cooper v. Ashley Comms., Inc. (In re Morris Comms. NC, Inc.),*
  914 F.2d 458 (4th Cir. 1990) .............................................................................26

*Cort v. Ash,*
  422 U.S. 66 (1975)......................................................................................13, 14

*E.E.O.C. v. St. Francis Xavier Parochial Sch.,*
  117 F.3d 621 (D.C. Cir. 1997) ............................................................................4

*Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.,*
  566 F.2d 289 (D.C. Cir. 1977) ..........................................................................19

*F.D.I.C. v. diStefano,*
  839 F. Supp. 110 (D.R.I. 1993)..........................................................................19

*F.D.I.C. v. Irwin,*
  916 F.2d 1051 (5th Cir. 1990) ...........................................................................22

*\*F.D.I.C. v. Meyer,*
  510 U.S. 471 (1994)....................................................................................16, 18

*\*F.D.I.C. v. Stanley,*
  770 F. Supp. 1281 (N.D. Ind. 1991), *aff'd,* 2 F.3d 1424 (7th Cir. 1993)...............21

*\*Franklin Sav. Corp. v. United States,*
  180 F.3d 1124 (10th Cir. 1999) ...............................................................19, 21, 22

*Freeman v. F.D.I.C.,*
  56 F.3d 1394 (D.C. Cir. 1995) ..........................................................................10

*GAF Corp. v. United States,*
  818 F.2d 901 (D.C. Cir. 1987) ..........................................................................19

*Gold v. Winget (In re NM Holdings, LLC),*
  2009 WL 1372982 (Bankr. E.D. Mich. May 18, 2009)........................................23

*Golden Pacific Bancorp v. United States,*
  15 F.3d 1066 (Fed. Cir. 1994)...........................................................................17

*\*Helm v. R.T.C.,*
  43 F.3d 1163 (7th Cir. 1995) ............................................................................23

*\*Hindes v. F.D.I.C.,*
  137 F.3d 148 (3d Cir. 1998)..........................................................................12-15

iii

Page

*In re Augie/Restivo Baking Co.,*
    87 B.R. 242 (Bankr. E.D.N.Y. 1988) ....................................................................25

*Jones v. Yanta,*
    No. 07-1994, 2009 WL 855974 (D.D.C. Mar 31, 2009) .................................16, 17

*Kokkonen v. Guardian Life Ins. Co.,*
    511 U.S. 375 (1994).............................................................................................4

*Lanigan v. R.T.C.,*
    No. 91 C 7216, 1993 WL 189884 (N.D. Ill. June 2, 1993) ...................................10

*Lawrence Paperboard Corp. v. Arlington Tr. Co. (In re Lawrence Paperboard Corp),*
    76 B.R. 866 (Bankr. D. Mass. 1987) ....................................................................26

*Lehman v. Nakshian,*
    453 U.S. 156 (1981)...........................................................................................18

*Mellon Bank, N.A. v. Metro Comms, Inc.,*
    945 F.2d 635, 647 (3d Cir. 1991)........................................................................26

*\*Mosseri v. F.D.I.C.,*
    No. 95 Civ. 0723, 2001 WL 1478809 (S.D.N.Y. Nov. 20, 2001) ................... 12-15

*OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.),*
    325 B.R. 696 (Bankr. D. Del. 2005) ....................................................................23

*Pen-Del Mortgage Assocs. v. F.D.I.C.,*
    Civ. A. No. 94-0067, 1994 WL 675502 (E.D. Pa. Nov. 23, 1994).........................13

*\*Rubin v. Mfrs. Hanover Tr. Co.,*
    661 F.2d 979 (2nd Cir. 1981)..............................................................................24

*\*Salt Lick Bancorp. v. F.D.I.C.,*
    187 Fed. Appx. 428 (6th Cir. May 30, 2006) .......................................................16

*Santoni v. F.D.I.C.,*
    508 F. Supp. 1012 (D.P.R. 1981), *aff'd*, 677 F.2d 174 (1st Cir. 1982) ..................19

*Simpkins v. D.C. Gov't,*
    108 F.3d 366 (D.C. Cir. 1997).............................................................................19

*St. Mark's Housing Co., Inc. v. U.S. Dep't of Housing and Urban Dev.,*
    No. 1:08-cv-00193, 2009 WL 1543688 (D.D.C. June 3, 2009) ..............................4

*Texas American Bancshares, Inc. v. Clarke,*
    954 F.2d 329 (5th Cir. 1992) ..........................................................................11, 12

Page

*Thomas v. Nicholson,*
   539 F. Supp. 2d 205 (D.D.C. 2008) ..................................................................................19

*Trudeau v. F.T.C.,*
   456 F.3d 178 (D.C. Cir. 2006) ...........................................................................................4

*\*United States v. Gaubert,*
   499 U.S. 315 (1991)..........................................................................................................21

*United States v. Mitchell,*
   445 U.S. 535 (1980)..........................................................................................................18

*United States v. Orleans,*
   425 U.S. 807 (1976)..........................................................................................................18

*Verner v. United States,*
   804 F. Supp. 381 (D.D.C. 1992) .......................................................................................20

*Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.),*
   C.A. No. 95-1340, 1996 WL 148533 (D.D.C. Mar. 19, 1996)..................................................1

*Weaver v. Bratt,*
   421 F. Supp. 2d 25 (D.D.C. 2006) ...............................................................................19, 20

Statutes and Rules

11 U.S.C. § 544(b) .................................................................................................................25

11 U.S.C. § 548(a)(1) ..............................................................................................................24

12 U.S.C. § 1819.....................................................................................................................18

12 U.S.C. § 1821(c) ..............................................................................................................2, 5

12 U.S.C. § 1821(d) ............................................................................................................6, 10

12 U.S.C. § 1821(d)(5)(D)(i) ..................................................................................................22

12 U.S.C. § 1821(d)(5)(E) ...................................................................................................3, 22

12 U.S.C. § 1821(d)(6)(A)............................................................................................3, 8, 9, 23

12 U.S.C. § 1821(d)(11) ...........................................................................................................7

12 U.S.C. § 1821(d)(13)(D).....................................................................................................10

12 U.S.C. § 1821(d)(13)(E) ............................................................................................. *passim*

Page

12 U.S.C. § 1821(i)(2) ....................................................................................................11

12 U.S.C. § 1821(j) .........................................................................................................22

12 U.S.C. § 1823(c)(4)..................................................................................................5, 12

28 U.S.C. §§ 1346(b) .....................................................................................................17

28 U.S.C. § 2675 .............................................................................................................20

28 U.S.C. § 2679(a) ........................................................................................................18

28 U.S.C. § 2680(a) ........................................................................................................20

12 C.F.R. § 360.1(a).......................................................................................................12

12 C.F.R. § 360.1(b) .......................................................................................................12

Federal Rule of Civil Procedure 8(a)(2) ...................................................................23, 26

Federal Rule of Civil Procedure 9(b)............................................................................23

Federal Rule of Civil Procedure 12(b)(1) ..............................................................4, 10, 23

Federal Rule of Civil Procedure 12(b)(6) ................................................................ passim

Federal Rule of Civil Procedure 12(d)............................................................................4

### Other Authorities

*Collier on Bankruptcy*, § 548.09, at 116 (15th ed. 1984) .............................................26

H.R. Rep. No. 101-54(I), 101st Sess., *reprinted in*1989 U.S.C.C.A.N. 86 ..................14

S. Rep. No. 102-167, 102d Cong., 1st Sess. (1991) .....................................................14

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIAL MOTION TO DISMISS
OF DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR WASHINGTON MUTUAL BANK**

Defendant the Federal Deposit Insurance Corporation, as receiver for Washington Mutual

Bank (the "FDIC-Receiver"), respectfully submits this memorandum of law in support of its

motion for partial dismissal of the complaint in this action (the "Complaint") pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Until September 25, 2008, plaintiff Washington Mutual, Inc. ("WMI") was the thrift

holding company for Washington Mutual Bank ("WMB").  On that date, however, the Office of

Thrift Supervision (the "OTS") – the primary regulator of both WMB and WMI under federal

banking law – ordered WMB to be closed and appointed the FDIC-Receiver its receiver.  In

discussing the reasons for its action in closing WMB, the OTS explained that "[a]n outflow of

deposits began on September 15, 2008, totaling $16.7 billion.  With insufficient liquidity to meet

its obligations, WaMu was in an unsafe and unsound condition to transact business."  *See*

Compl., ¶ 82 & Exh. 3 (OTS press release).

The potential ramifications of an uncontrolled collapse of WMB, the largest savings

association in the United States, were obvious.  Only days earlier, another major American

financial institution, Lehman Brothers, had filed for bankruptcy, an event that undoubtedly

contributed to WMB's "material" deposit outflows beginning on the same day.  *See* Compl., ¶ 82

---

[1] The Federal Deposit Insurance Corporation (the "FDIC") acts in two legally distinct
capacities when it acts (1) as insurer and/or regulator of depository institutions generally and (2)
as the appointed receiver of specific failed depository institutions.  *See, e.g., Washington
Bancorp. v. F.D.I.C. (In re Washington Bancorp.)*, C.A. No. 95-1340, 1996 WL 148533, at *11-
12 (D.D.C. Mar. 19, 1996).  This motion to dismiss is filed solely by the FDIC-Receiver and not
by or on behalf of the FDIC in its corporate capacity ("FDIC-Corporate"), which is represented
separately in this action.

1

& Exh. 3 ("material" outflows began on September 15, 2008 because of "adverse events in the financial markets").  Before it was closed, WMB held deposits of $188.3 *billion*, more than five times the value of the FDIC's entire deposit insurance fund at the time.  *See* Compl., Exh. 3.[2]

When the FDIC is appointed to act as the receiver of a failed bank or thrift, it is required by law to use the resolution method that is "the least costly to the [FDIC's] deposit insurance fund of all possible methods . . . ," *see* 12 U.S.C. § 1823(c)(4)(A)(ii), and is expressly prohibited from spending deposit insurance funds to assist uninsured depositors or other creditors of the failed institution, *see* 12 U.S.C. § 1823(c)(4)(E)(i).  In compliance with these statutory mandates, on the day of its appointment, the FDIC-Receiver entered into a Purchase and Assumption Agreement, Whole Bank (the "P&A Agreement"), with JPMorgan Chase Bank, N.A. ("JPMC"), under which JPMC purchased substantially all of WMB's assets and assumed most of its liabilities, including all of its deposit liabilities, both insured *and* uninsured.  *See* Compl., ¶¶ 8, 85.

In addition to the assumption of these substantial liabilities, the consideration provided by JPMC under the P&A Agreement included a cash payment to the FDIC-Receiver of just under $1.9 billion.  *See id.*, ¶ 85.  Thus, the resolution method chosen by the FDIC-Receiver for the largest bank failure in United States history not only imposed *no cost* on the deposit insurance fund (thereby protecting taxpayers and other insured depositors throughout the United States) and resulted in *no losses* for uninsured depositors of WMB but also brought in nearly $2 billion in cash that will be available to pay claims asserted against the receivership by WMB's other creditors.

---

[2] The total value of the FDIC's deposit insurance fund at the time was $34.6 billion.  *See* Executive Summary, Third Quarter 2008, FDIC Chief Financial Officer Report to the Board, available at www.fdic.gov/about/strategic/corporate/cfo_report_3rdqtr_08/exec_summary.html.

In the Complaint in this action, WMI and its subsidiary WMI Investment Corp. assert a variety of claims against the FDIC-Receiver relating to the closing and sale. Although WMB was closed by the OTS, not the FDIC-Receiver, plaintiffs assert a takings claim against the FDIC-Receiver. *Id.*, ¶¶ 91-92 (Count III). They also purport to assert claims for purported "Dissipation of WMB's Assets" and for alleged conversion under the Federal Tort Claims Act. *Id.*, ¶¶ 81-90, 93-95 (Counts II and IV). None of these claims is actionable as a matter of law; all must be dismissed for a variety of reasons discussed below.

Plaintiffs also take exception to the FDIC-Receiver's disallowance of WMI's proof of claim against the WMB receivership, asking for a declaration that the disallowance is "void." *Id.*, ¶¶ 96-97 (Count V). Once again, however, this claim is legally inactionable. The FDIC's governing statute provides, without exception, that "[n]o court may review the Corporation's determination pursuant to subparagraph (D) to disallow a claim." 12 U.S.C. § 1821(d)(5)(E).

In sum, Counts II through V of the Complaint fail to state a claim upon which relief can be granted as a matter of law. Indeed, federal law expressly deprives courts of subject matter jurisdiction to even consider some of those claims. All of those four claims against the FDIC-Receiver therefore should be dismissed with prejudice.

With this motion, however, the FDIC-Receiver is not seeking dismissal, at least not in its entirety, of Count I of the Complaint, under which plaintiffs ask for this Court's determination of the validity of WMI's disallowed receivership claims under 12 U.S.C. § 1821(d)(6)(A). While the FDIC-Receiver intends to defend this action vigorously against those claims, it agrees that this Court provides the proper forum for the adjudication of that Count of the Complaint, with one exception: the Complaint fails to allege facts sufficient to justify any further proceedings as to plaintiffs' claim for recovery of $6.5 billion of capital contributions from WMI to WMB as

allegedly fraudulent transfers.  Indeed, the facts alleged in the Complaint itself render such a

theory of recovery inactionable.  Accordingly, that claim also should be dismissed on the

pleadings.

## BACKGROUND

### A.    Allegations of the Complaint[3]

Plaintiff WMI is a Washington corporation with its principal place of business in Seattle,

Washington and was a regulated thrift holding company.  Compl., ¶ 3.  Prior to its receivership,

WMB was a savings association that was a wholly-owned subsidiary of WMI.  *Id.*, ¶¶ 1, 3.

WMB had its own subsidiaries, including one subsidiary that also was a savings bank,

Washington Mutual Bank fsb ("WMBfsb").  *Id.*, ¶ 3. Plaintiff WMI Investment Corp. is a

separate subsidiary of WMI.  *Id.*, ¶ 4.

Beginning on September 15, 2008, "[b]ecause of adverse events in the financial

markets," WMB began to experience "[s]ignificant deposit outflows" that, by the date of its

---

[3] The well-pleaded factual allegations of the Complaint are assumed to be true solely for purposes of this motion to dismiss.  However, the Court need not accept inferences that are unsupported by the facts set forth in the complaint or "legal conclusion[s] couched as . . . factual allegation[s]."  *Trudeau v. F.T.C.*, 456 F.3d 178, 193 (D.C. Cir. 2006).  On this motion, the Court can "consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice" without converting it into a motion for summary judgment under Rule 12(d).  *St. Mark's Housing Co., Inc. v. U.S. Dep't of Housing and Urban Dev.*, No. 1:08-cv-00193, 2009 WL 1543688, at *3 (D.D.C. June 3, 2009) (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).  "A Rule 12(b)(6) motion should be granted and claims should be dismissed under this rule if the plaintiff does not provide 'enough facts to state a claim to relief that is plausible on its face.'"  *St. Mark's Housing Co.*, 2009 WL 1543688, at *3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(1), the Court may consider "the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Benoit v. U.S. Dep't of Agric.*, 577 F. Supp. 2d 12, 15 (D.D.C. 2008) (citation omitted).  Plaintiffs bear the burden to establish subject matter jurisdiction, the failure of which is fatal to their claim.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

closing ten days later, had amounted to $16.7 billion.  *Id.*, ¶ 82 & Exh. 3.  As a result, on

September 25, 2008, the OTS, which was the principal federal bank regulator for both WMI and

WMB, determined to close WMB and to appoint the FDIC-Receiver to act as its receiver

pursuant to 12 U.S.C. § 1821(c)(5).  Compl., ¶ 82.

The OTS stated that "[g]iven the Bank's limited sources of funds and significant deposit

outflows, it was highly likely to be unable to pay its obligations and meet its operating liquidity

needs."  *Id.* (quoting OTS fact sheet, Compl., Exh. 3).  The Complaint alleges that  "[a]ccording

to the OTS fact sheet . . . the OTS stated that WMB was 'well-capitalized' under the OTS's

regulatory capital regulations through the Receivership Date."  Compl., ¶ 83.

Following its appointment, the FDIC-Receiver entered into the P&A Agreement with

JPMC.  *Id.*, ¶ 8.  FDIC-Corporate also was a party to the P&A Agreement but only with respect

to certain limited provisions.  Under the P&A Agreement, JPMC "purchase[d] substantially all

of the assets and assume[d] all deposit and substantially all other liabilities" of WMB.  P&A

Agreement, at 1.[4]  In addition to the assumption of significant WMB liabilities, the consideration

provided by JPMC under the P&A Agreement included a cash payment to the FDIC-Receiver of

$1,888,000,000.00.  P&A Agreement, Art. VII.  The P&A Agreement recited that the board of

directors of the FDIC had determined pursuant to 12 U.S.C. § 1823(c)(4)(A) that the assistance

provided to WMB's depositors by entering into the P&A Agreement was necessary to meet the

FDIC's insurance obligation and was "the least costly to the deposit insurance fund of all

possible methods for meeting such obligation."  P&A Agreement, at 1.

---

[4] The P&A Agreement is incorporated by reference in the Complaint and may be considered on this motion to dismiss.  *See supra*, n.3.  For the Court's convenience, a copy of the P&A Agreement is attached as Exhibit 1 to the accompanying Declaration of John J. Clarke, Jr. dated June 11, 2009 ("Clarke Decl.").

On September 26, 2008, WMI and WMI Investment Corp. filed bankruptcy petitions under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware.  Compl., ¶ 9.  Those bankruptcy cases are still pending.

Pursuant to 12 U.S.C. § 1821(d), the FDIC-Receiver established December 30, 2008 as the deadline for filing claims against the WMB receivership.  Compl., ¶ 10.  WMI filed a proof of claim with the FDIC-Receiver on that date (the "WMI Receivership Proof of Claim").  *Id.* (attached as Exhibit 2 to the Clarke Declaration).  No separate proof of claim was filed by WMI Investment Corp. but the WMI proof of claim purported to be filed on behalf of both WMI and certain subsidiaries.  The WMI Receivership Proof of Claim asserted a variety of claims, including:

- For amounts allegedly due from WMB under certain intercompany promissory notes;

- For certain intercompany receivables allegedly owed to WMI or its subsidiaries by WMB or its subsidiaries;

- For federal, state and local taxes allegedly paid by WMI on behalf of WMB or its subsidiaries, and for tax refunds allegedly due from or paid by taxing authorities;

- For recovery of $6.5 billion of capital contributions made by WMI to its wholly-owned subsidiary WMB between December 1, 2007 and September 10, 2008;

- With respect to certain trust preferred securities that were issued to investors by special purpose entities that were subsidiaries of Washington Mutual Preferred Funding LLC, a WMB subsidiary;

- For recovery of alleged preferential transfers by WMI to or on behalf of WMB;

- With respect to certain vendor contracts;

- For subrogation in the event of WMI's payment as guarantor with respect to certain alleged indebtedness of WMB;

- For unspecified allegedly improper sales by the FDIC-Receiver of assets that WMI claims it owned;

- With respect to certain alleged deposit balances held by WMI or WMI Investment Corp. with WMB or WMBfsb;

- For unspecified administrative claims;

- With respect to certain employee or retiree benefit plans, insurance policies or trusts;

- For future claims made by WMI directors and officers for indemnification and for the cost of insurance premiums expended by WMI; and

- For WMI's 100% equity interest in WMB.

*See generally* WMI Receivership Proof of Claim.  The WMI Receivership Proof of Claim did not assert a taking claim under the United States Constitution, nor did it assert a claim that the P&A Agreement constituted conversion or an actionable "dissipation of WMB's assets" under 12 U.S.C. § 1821(d)(13)(E).

In a letter dated January 23, 2009, the FDIC-Receiver timely disallowed WMI's receivership claims.  Compl., ¶ 63 & Exh. 2.  The letter stated that the claims were disallowed because:

> The claims presented are unproven to the satisfaction of the Receiver since they lack sufficient documentation or specificity, they fail to state claims against the receivership, they appear to assert claims against a third party or there is no legal basis for the claims.

Compl., ¶ 64 & Exh. 2.

With respect to WMI's claim for its equity interest in WMB, the letter stated that "[e]quity claims are paid in accordance with 12 U.S.C. sec. 1821(d)(11)."  *Id.*  Section 1821(d)(11) sets forth the priorities of recoveries against a receivership, under which stockholders' recoveries are subordinate to the payment of most other claims as well as the administrative expenses of the receivership.  *See* 12 U.S.C. § 1821(d)(11)(A).

B.      **Plaintiffs' Claims in this Action**

Plaintiffs filed this action against the FDIC-Receiver and FDIC-Corporate on March 20, 2009.  In the Complaint, plaintiffs assert five separate claims.

In Count I, plaintiffs request this Court's de novo determination of WMI's claims against the receivership under 12 U.S.C. § 1821(d)(6)(A).  *See* Compl., ¶¶ 78-80.  In this respect, the Complaint largely repeats the allegations of the WMI Receivership Proof of Claim, most of which are not directly at issue on this motion.

With respect to WMI's claim for recovery of $6.5 billion of capital contributions, the Complaint alleges that "WMI or WMB *may have been* insolvent at the time the Capital Contributions were made," and that "[i]f, at the time of each Capital Contribution, WMB was insolvent, had unreasonably small capital, and/or was unable to pay its own debt obligations as they matured, WMI did not receive any value in exchange for the Capital Contributions."  *Id.*, ¶ 26 (emphasis added).  Elsewhere, of course, WMI acknowledges that it retains its 100% equity interest in WMB, *id.*, ¶ 3, that the OTS stated that WMB was "well-capitalized under the OTS's regulatory capital regulations through the Receivership Date," *id.*, ¶ 83, and that the OTS order closing WMB and appointing the FDIC-Receiver came about after "significant deposit outflows began on September 15, 2008," *id.*, ¶ 82, which was *after* the last of the challenged capital contributions was made by WMI.

Count II of the Complaint asserts a claim for "Dissipation of WMB's Assets."  *Id.*, ¶¶ 81-90.  Plaintiffs allege "[o]n information and belief" that the assets of WMB, less the liabilities assumed by JPMC under the P&A Agreement, "were worth more than $1.9 billion, had such assets been liquidated in a prudent and reasonable manner."  *Id.*, ¶ 86.  Plaintiffs claim that they

are entitled to damages "equal to the difference between what Plaintiffs would have received in a straight liquidation of WMB and what they actually received." *Id.*, ¶ 90.

In Count III of the Complaint, plaintiffs claim that "[t]he FDIC's wasting of WMB's assets and failure to compensate Plaintiffs for their claims" in the amount they would have received in a liquidation "constitutes a taking of Plaintiffs' property without just compensation in violation of the Fifth Amendment to the United States Constitution." *Id.*, ¶ 92.

Count IV of the Complaint asserts a claim against the FDIC for conversion under the Federal Tort Claims Act based on the alleged refusal to compensate plaintiffs for property allegedly taken into the receivership that "belonged to Plaintiffs rather than WMB," that allegedly "was improperly transferred to WMB" or that allegedly "is property that otherwise should be returned to Plaintiffs under applicable law." *Id.*, ¶¶ 94, 95.

Count V of the Complaint asserts that the FDIC-Receiver's disallowance of WMI's proof of claim allegedly was an "abrogation of FDIC-Receiver's statutory duties" and that such disallowance "should be declared void." *Id.*, ¶ 97.

## ARGUMENT

### I. COUNTS II, III, IV AND V OF THE COMPLAINT SHOULD BE DISMISSED IN THEIR ENTIRETY

In addition to seeking review by this Court of plaintiffs' receivership claims pursuant to 12 U.S.C. § 1821(d)(6)(A), the Complaint asserts a grab-bag of additional claims against the FDIC-Receiver. WMI did not assert those claims in its receivership proof of claim, which waived them under applicable law. Even if they had not been waived, none of the claims are actionable as a matter of law. All of them should be dismissed.

### A.      Plaintiffs Failed to Present the Claims Asserted in Counts II, III and IV in WMI's Receivership Proof of Claim

Counts II, III and IV of the Complaint should be dismissed pursuant to Federal Rule 12(b)(1) for lack of subject matter jurisdiction because WMI failed to include those claims in the WMI Receivership Proof of Claim. "'FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions,' and 'where a claimant has . . . failed to initiate an administrative claim within the filing period, the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court.'" *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1400 (D.C. Cir. 1995) (citation omitted). "Section 1821(d)(13)(D) [of title 12] thus acts as a jurisdictional bar to claims or actions by parties who have not exhausted their § 1821(d) administrative remedies." *Id.*; *see* 12 U.S.C. § 1821(d)(13)(D).

Courts applying this exhaustion rule have recognized that a claimant waives a potential claim against the FDIC as receiver by failing to include that claim in its receivership proof of claim. The effect is to deny the court jurisdiction over those claims in subsequent litigation. *See Brown Leasing Co. v. F.D.I.C.*, 833 F. Supp. 672, 675-76 (N.D. Ill. 1993) (dismissing conversion and breach of contract claims not specified in proof of claim), *aff'd*, 42 F.3d 1112 (7th Cir. 1994); *Coleman v. F.D.I.C.*, 826 F. Supp. 31, 32 (D. Mass. 1993) (dismissing claims because court "has no jurisdiction over claims and theories of recovery" not presented in the administrative claim process); *Lanigan v. R.T.C.*, No. 91 C 7216, 1993 WL 189884, *3 (N.D. Ill. June 2, 1993) (dismissing claim for lack of subject matter jurisdiction "[s]ince plaintiff did nothing in his proof of claim to alert the RTC to the retaliatory discharge claim [ ], plaintiff did not fairly present that claim to the RTC and has therefore not exhausted his administrative remedies as to that portion of the claim").

In its receivership proof of claim, WMI did not assert a takings claim under the United States Constitution, nor did it assert a claim that the P&A Agreement constituted conversion or an actionable "dissipation" of WMB's assets.  *See* WMB Receivership Proof of Claim.  Plaintiffs do not allege otherwise in the Complaint, which seeks among other things a judicial determination of their receivership claims.  Because plaintiffs failed to exhaust their administrative remedies with respect to those claims, Counts II, III and IV of the Complaint should be dismissed for lack of subject matter jurisdiction.[5]

**B.     There Is No Private Right Act of Action for "Dissipation"
         of Receivership Assets (Count II)**

Count II of the Complaint asserts a claim against the FDIC-Receiver for "Dissipation of WMB's Assets."  According to the Complaint, the FDIC-Receiver "fail[ed] to liquidate WMB in a manner allowing WMB's creditors and other claimants to recover what they would have recovered in a straight liquidation," thereby allegedly breaching the FDIC-Receiver's "statutory duty to maximize the net present value of WMB's assets."  Compl.,¶ 89 (referring to 12 U.S.C. § 1821(d)(13)(E)(i)).  There is no such cognizable claim as a matter of law, requiring dismissal of this count of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[6]

---

[5] Nor can WMI assert that those claims somehow were implied in its proof of claim.  The FDIC is "entitled to fair notice of the facts and legal theories on which a claimant seeks relief from the failed institution.  To require anything less would impose a burden on the FDIC to research the entire corpus of both federal and state law for any legal theory supported by each set of facts presented."  *Brown Leasing Co.*, 833 F. Supp. at 675-76.  That would contravene "the recognized purpose of the elaborate procedures outlined in" federal banking law for asserting claims against the FDIC-Receiver.  *Id*. at 676.

[6] The claim suffers from other infirmities.  Among others, the claim that plaintiffs would have received more in a "straight liquidation" in which WMB's roughly $180 billion in deposit liabilities were not assumed by JPMC is, at best, wildly speculative and, far more likely, simply wrong.  *See Texas American Bancshares, Inc. v. Clarke*, 954 F.2d 329, 333 (5th Cir. 1992) (in a liquidation, "[t]he probability that uninsured deposits or liabilities will be paid in any substantial part is slight, and the cost to the FDIC of simply covering insured funds is great."); *see generally Twombly*, 550 U.S. at 570 (complaint should be dismissed if it is not "plausible on its face").  In

"With one exception, the FDIC has almost complete discretion to undertake a purchase and assumption of [a] failed institution instead of a liquidation.  The FDIC must determine that the purchase and assumption will be less costly than liquidating the bank." *Texas American Bancshares, Inc. v. Clarke*, 954 F.2d 329, 333 (5th Cir. 1992) (citing 12 U.S.C. § 1823(c)(4)(A)).  "Least costly" in this context means "least costly to the FDIC's deposit insurance fund," not to uninsured depositors, other creditors or stockholders of the failed institution.  *See* 12 U.S.C. § 1823(c)(4)(A)(ii).  Indeed, the Federal Deposit Insurance Act, as amended, expressly forbids the FDIC from choosing a resolution method that "would have the effect of increasing losses" to the deposit insurance fund in order to protect uninsured depositors or creditors other than depositors.  *See* 12 U.S.C. § 1823(c)(4)(E)(i); *see also* 12 C.F.R. § 360.1(a) (FDIC Resolution and Receivership Rules).[7]

Unsurprisingly given this express statutory directive, there is no private right of action against the FDIC – either express or implied – for an alleged failure to maximize the value of receivership assets under 12 U.S.C. § 1821(d)(13)(E)(i), the claim asserted by plaintiffs in Count II of their Complaint.[8]  *See Hindes v. F.D.I.C.*, 137 F.3d 148, 170 (3d Cir. 1998); *Mosseri*

---

addition, plaintiffs misuse 12 U.S.C. § 1821(i)(2), which was enacted to *limit* the recoveries of receivership creditors, not to expand it as Count II of the Complaint suggests.  *See, e.g., Texas American Bancshares*, 954 F.2d at 340.

[7] The FDIC's board of directors found that the sale of assets and assumption of liabilities provided under the P&A Agreement with JPMC were the least costly resolution method for WMB.  *See* P&A Agreement, at 1 ("the Board has determined pursuant to 12 U.S.C. Section 1823(c)(4)(A) that such assistance is necessary to meet the obligation of the Corporation to provide insurance coverage for the insured deposits in the Failed Bank and is the least costly to the deposit insurance fund of all possible methods for meeting such obligation").  The fact that uninsured depositors also were protected as the result of that transaction, at no extra cost to the deposit insurance fund, was permissible.  *See* 12 C.F.R. § 360.1(b).

[8] Section 1821(d)(13)(E) provides:

In exercising any right, power, privilege, or authority as conservator or receiver in connection with any sale or disposition of assets of any insured depository

*v. F.D.I.C.*, No. 95 Civ. 0723, 2001 WL 1478809, at *3 (S.D.N.Y. Nov. 20, 2001) (no implied private right of action for disappointed bidder for receivership assets under section 1821(d)(13)(E)); *Pen-Del Mortgage Assocs. v. F.D.I.C.*, Civ. A. No. 94-0067, 1994 WL 675502 (E.D. Pa. Nov. 23, 1994) (same).

In *Hindes,* the Third Circuit expressly considered and rejected the very same claim that has been asserted by plaintiffs here:  a claim under section 1821(d)(13)(E)(i) by stockholders of a failed bank for the alleged failure of the FDIC as receiver to maximize the value of receivership assets.  As in *Mosseri* and *Pen-Del*, which reached the same conclusion, the Third Circuit dismissed the claim after analyzing section 1821(d)(13)(E) under the Supreme Court's test for finding an implied private right of action under *Cort v. Ash*, 422 U.S. 66, 78 (1975).  *See Hindes*, 137 F.3d at 169-71.[9]

---

institution for which the Corporation has been appointed conservator or receiver, including any sale or disposition of assets acquired by the Corporation under section 1823(d)(1) of this title, the Corporation shall conduct its operations in a manner which --

    i.    maximizes the net present value return from the sale or disposition of such assets;

    ii.    minimizes the amount of any loss realized in the resolution of cases;

    iii.    ensures adequate competition and fair and consistent treatment of offerors;

    iv.    prohibits discrimination on the basis of race, sex, or ethnic groups in the solicitation and consideration of offers; and

    v.    maximizes the preservation of the availability and affordability of residential real property for low- and moderate-income individuals.

12 U.S.C. § 1821(d)(13)(E).

[9] In *Cort*, the Supreme Court identified the following factors:

"First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the

None of the *Cort* factors is met with respect to the statute at issue.  First, plaintiffs are not among the class of persons for whose "especial benefit" section 1821(d)(13)(E) was enacted.  To the contrary, that provision "is intended to benefit the insurance fund by minimizing claims against it, thereby reducing the cost to the taxpayers . . . ."  Any benefit to creditors or stockholders who might hold claims against a failed bank receivership therefore is entirely incidental.  *Hindes*, 137 F.3d at 170 (citations omitted); *see also Mosseri*, 2001 WL 1478809, at *3 ("As to the first *Cort* factor, the court finds that § 1821(d)(13)(E)(i)-(iii) imposes duties on the FDIC in an attempt to benefit the fund and taxpayers.").

Second, Congress plainly did not intend to create a private right of action under the section.  Indeed, "portions of the legislative history, when considered in combination with the statutory scheme in its entirety, evidence the intent on the part of Congress *not* to create such a private right of action."  *Mosseri*, 2001 WL 1478809, at *3-4 (emphasis in original) (discussing, *inter alia*, S. Rep. No. 102-167, 102d Cong., 1st Sess. 28-30 (1991) (purpose of 1991 amendments was to recapitalize deposit insurance fund and reduce risk of eventual taxpayer bailout); *see also Hindes*, 137 F.3d at 170 ("our conclusion is supported by evidence in the legislative history that Congress was concerned with reducing the costs to taxpayers") (citing H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., 1, 514-15, *reprinted in* 1989 U.S.C.C.A.N. 86, 308-09).

Because plaintiffs cannot meet the first two factors of the *Cort* test, an inquiry into the final two factors is unnecessary.  *Hindes*, 137 F.3d at 171.  Nevertheless, under the third prong of

---

underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*Cort*, 422 U.S. at 78 (citations omitted).

*Cort*, allowing the plaintiffs to bring this action would fundamentally undermine the scheme

Congress sought to create, as the *Mosseri* court observed:

> [T]he larger statutory structure . . . supports the conclusion that Congress
> did not intend to imply a private right of action . . . under
> § 1821(d)(13)(E)(i) – (iii).  [The statute] . . . repeatedly reaffirm[s] that the
> FDIC has broad discretion in discharging its statutory responsibilities . . . .
> [T]o provide[] a right of action . . . would be fundamentally inconsistent
> with the extensive latitude granted by Congress to the FDIC.

*Mosseri*, 2001 WL 1478809, at *5.

      **C.**    **Plaintiffs Cannot Assert a Taking Claim Against the FDIC-Receiver
(Count III)**

In Count III of the Complaint, plaintiffs assert a claim for taking of their property without

just compensation in violation of the Fifth Amendment to the United States Constitution.

Compl., ¶¶ 91-92.  In addition to plaintiffs' failure to include such a claim in WMI's receivership

proof of claim, Count III suffers from a number of infirmities requiring its dismissal pursuant to

Federal Rule 12(b)(6).

*First*, the Complaint acknowledges that WMB was closed by order of the OTS, not by the

FDIC.  *See id.*, ¶¶ 7, 82.  Standing alone, this acknowledgement defeats any claim that the FDIC-

Receiver has deprived plaintiffs of any property whatsoever, much less that it has done so

unconstitutionally.  To the extent that plaintiffs attempt to overcome this conceptual hurdle by

claiming constitutional harm from allegedly receiving less for their receivership claims than

"Plaintiffs would have received for such claims in a straight liquidation," *id.*, ¶ 92, the taking

claim merely repeats plaintiffs' inactionable "dissipation" claim, and should be dismissed for the

same reasons.

*Second*, the Supreme Court has recognized that "there is no avenue by which a plaintiff

may bring a constitutional tort claim against a federal agency," including the FDIC.  *Salt Lick*

*Bancorp. v. F.D.I.C.*, 187 Fed. Appx. 428, 435 (6th Cir. May 30, 2006) (unpublished opinion); *see F.D.I.C. v. Meyer*, 510 U.S. 471, 484-85 (1994).

In *Meyer*, the Supreme Court refused to imply a constitutional tort remedy against a federal agency, the Federal Savings and Loan Insurance Corporation, in an action alleging an unconstitutional taking.  The Court examined the logic behind its decision in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), in which it had concluded that federal agents could be sued for damages caused by constitutional violations.  The *Meyer* Court concluded that *Bivens* could not be extended to federal agencies, for several reasons: (1) allowing damages actions against an agency would not have the same deterrent effect as damages actions brought against an individual agent; (2) allowing an agency to be sued would cause plaintiffs to avoid suing individual wrongdoers and thereby "bypass" their potential qualified immunity defense; and (3) implying such a remedy would create "a potentially enormous financial burden" for the federal government and such "decisions involving 'federal fiscal policy'" were for Congress to make.  *Meyer*, 510 U.S. at 485-86 (citations omitted).

The Sixth Circuit recently followed *Meyer* in affirming the dismissal of a taking claim similar to this one that was brought against the FDIC by the former holding company of a failed bank.  There, the court concluded that dismissal of the claim against the FDIC had been appropriate because "[u]nder *Meyer*, Appellants may not bring such a claim against the FDIC, a federal agency."  *Salt Lick Bancorp.*, 187 Fed. Appx. at 436; *see also Jones v. Yanta*, No. 07-1994, 2009 WL 855974, at *5 (D.D.C. Mar 31, 2009) (applying *Meyer* in dismissing Fourth Amendment damages claim asserted against U.S. Department of Justice).

*Third*, even in cases against the United States rather than its agencies, federal courts have held that there can be no unconstitutional taking as the result of the regulatory closure of a

federally regulated bank because the owners of a bank lack a "right to exclusive possession" of their property under the highly regulated environment in which they knowingly operated. *Cal. Hous. Sec. Inc. v. United States*, 959 F.2d 955, 958 (Fed. Cir. 1992). As a thrift holding company, WMI "voluntarily subjected itself to an expansive statutory regulatory system when it obtained federal deposit insurance . . . [and it] could [not] have expected [] to be compensated for a regulatory possession" of WMB by its federal bank regulators. *Id.* at 958-59; *see Golden Pacific Bancorp. v. United States*, 15 F.3d 1066, 1074 (Fed. Cir. 1994) (plaintiffs "could not have reasonably expected that the government 'would fail to enforce the applicable statutes and regulations'"); *see also Branch v. United States*, 69 F.3d 1571, 1575 (Fed. Cir. 1995), *cert. denied*, 519 U.S. 810 (1996) (exercise of cross-guaranty against sister bank was in accordance with an established regulatory scheme and did not constitute a taking).

Allowing a taking claim of the nature asserted by plaintiffs here would lead to the "curious conclusion" that "because the property allegedly taken in this case was money . . . the government may take the bank's money as long as it pays the money back." *Branch*, 69 F.3d at 1576. To allow such claims would disrupt the entire "public program that adjusts the benefits and burdens of economic life to promote the common good." *Id.* at 1579 (citation and internal quotation marks omitted).

D.     **Plaintiffs Cannot Assert a Conversion Claim Against the FDIC-Receiver Under the Federal Tort Claims Act (Count IV)**

Count IV of the Complaint asserts a claim for "conversion" against the FDIC-Receiver under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.* Without specifying what property is the subject of this count, plaintiffs allege that the FDIC-Receiver's refusal to compensate plaintiffs "for property taken into the Receivership that (a) belonged to Plaintiffs rather than WMB, (b) was improperly transferred to WMB and/or (c) is property that otherwise

17

should be returned to Plaintiffs under applicable law . . ." Compl., ¶ 94.  This claim also should

be dismissed pursuant to Federal Rules 12(b)(1) and 12(b)(6), for several reasons in addition to

plaintiffs' failure to include it in their proof of claim.

### 1.    The FDIC-Receiver Is Not a Proper Defendant Under the Federal Tort Claims Act

The United States and its agencies are immune from a suit for money damages except to

the extent they waive their sovereign immunity and consent to be sued.  *See, e.g., United States

v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Orleans*, 425 U.S. 807, 813 (1976).  "[A]

waiver of sovereign immunity must be 'unequivocally expressed' and its conditions must be

'strictly observed and exceptions thereto are not to be implied.'"  *Blackmon-Malloy v. U.S.

Capitol Police Bd.*, 338 F. Supp. 2d 97, 103 (D.D.C. 2004) (quoting *Lehman v. Nakshian*, 453

U.S. 156, 160-61 (1981)).

Waiver of sovereign immunity for tort claims against a federal agency, such as the FDIC-

Receiver, is governed exclusively by the FTCA, which provides:

> The authority of any federal agency to sue and be sued in its own name
> shall not be construed to authorize suits against such federal agency on
> claims which are cognizable under [the FTCA], and the remedies provided
> by this title in such cases shall be exclusive.

28 U.S.C. § 2679(a); *see Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 566

F.2d 289, 297-98 (D.C. Cir. 1977) ("§ 2679(a) of the [FTCA] . . . in essence renders ineffective

any other laws allowing suit or creating remedies against an agency, where the actions 'are

cognizable under [the FTCA.]'").  This provision, therefore, supersedes the FDIC-Receiver's

"sue and be sued" provision in 12 U.S.C. § 1819.  *See Meyer*, 510 U.S. at 476.

"[I]f a suit is 'cognizable' under . . . the FTCA, the federal agency cannot be sued 'in its

own name,' despite the existence of a sue-and-be-sued clause."  *Id.*  Rather, "the [only] proper

party to sue is the United States."  *ABI Inv. Group. V. F.D.I.C.*, 860 F. Supp. 911, 918 (D.N.H.

1994); *F.D.I.C. v. diStefano*, 839 F. Supp. 110, 120-21 (D.R.I. 1993); *Santoni v. F.D.I.C.*, 508 F.

Supp. 1012, 1014 (D.P.R. 1981), *aff'd*, 677 F.2d 174 (1st Cir. 1982); *see also Franklin Sav.*

*Corp. v. United States*, 180 F.3d 1124, 1143 (10th Cir. 1999) (upholding dismissal of tort claim

for damages brought against RTC).

### 2.    Plaintiffs Failed to Exhaust Administrative Remedies

"The FTCA bars claimants from bringing suit until they have exhausted their

administrative remedies. . . . The exhaustion requirement is a mandatory jurisdictional

prerequisite . . . which the Court cannot excuse."  *Thomas v. Nicholson*, 539 F. Supp. 2d 205,

213 (D.D.C. 2008) (citations omitted); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C.

Cir. 1997) ("This court and the other courts of appeals have treated the FTCA's requirement of

filing an administrative complaint with the appropriate agency prior to instituting an action as

jurisdictional.").  Here, the plaintiffs have failed to satisfy this requirement.

Under the FTCA, an administrative filing must consist of "(1) a written statement

sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a

sum-certain damages claim."  *Weaver v. Bratt*, 421 F. Supp. 2d 25, 42 (D.D.C. 2006) (citing

*GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987)); *see also* 28 U.S.C. § 2675(a).

In this case, plaintiffs' only pre-suit notice regarding their purported "conversion" claim was a

generic paragraph in WMI's receivership proof of claim, in which it alleged, in the most general

manner, as follows:

> [T]he FDIC, as receiver for WMB, may have taken possession and
> control of certain property (including, but not limited to, furniture,
> fixtures, equipment, and other tangible and intangible assets)
> owned by Claimants.  To date, the FDIC, as receiver, may have
> converted Claimants' property by purporting to transfer ownership
> interest in some or all of such property to JPMorgan Chase.
> Claimants thus assert a claim against WMB for payment, in full,
> for such transferred property, to the extent applicable, in an amount
> to be determined.

WMI Receivership Proof of Claim, ¶ 40.

Plaintiffs have never made a demand for a "sum-certain" amount of damages for their conversion claim. Their demand for damages in "an amount to be determined" is insufficient as a matter of law. *See Weaver*, 421 F. Supp. 2d at 42 (dismissing FTCA claim for lack of subject matter jurisdiction where "plaintiff's letter did not contain a 'sum-certain damages claim'"); *see also* 28 U.S.C. § 2675(a) (a lawsuit under the FTCA "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency . . . ."); *Adams v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 318, 321 (2d Cir. 1986) ("[A] claimant's failure to state any dollar amount in his administrative claim would give the government no notice of the extent of his claim and would, under § 2675(b), deprive the court of jurisdiction to consider his subsequent suit.").

Similarly, plaintiffs' claim was too vague and generalized to satisfy the FTCA's requirements. It did not identify any property that allegedly had been converted by the FDIC-Receiver and was wholly lacking in the detail necessary to permit the FDIC-Receiver to evaluate it. *See Verner v. United States*, 804 F. Supp. 381, 384 (D.D.C. 1992) (plaintiff failed to exhaust administrative remedies where plaintiff's administrative filing merely alleged "the arbitrary confiscation of . . . Claimant's bank account . . . for alleged overpayment").

**3.     Plaintiffs' Conversion Claim Is Subject to the Discretionary Function Exception Under the FTCA**

The FTCA exempts from tort actions any claims that challenge "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This "discretionary function" exception is designed to "prevent judicial 'second-guessing' of

legislative and administrative decisions." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (citation omitted).

The exception applies where, as here, the alleged conduct (1) involves a permissible element of judgment or choice and (2) the discretion involved is the kind that Congress intended to shield from second-guessing because it is based on social, economic or political policy. *Franklin Sav.*, 180 F.3d at 1130 (citing *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). The exception applies equally to "policy decisions" as to "operational" actions of federal regulators. *Gaubert*, 499 U.S. at 325-26. Where "a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 324.

There can be no doubt that the "FDIC's actions when acting as receiver of a failed bank are protected by the discretionary function exception to the Federal Tort Claims Act," mandating dismissal of the plaintiffs' claim. *F.D.I.C. v. Stanley*, 770 F. Supp. 1281, 1309 (N.D. Ind. 1991), *aff'd*, 2 F.3d 1424 (7th Cir. 1993). The operational decisions of federal regulators in closing, managing and transferring the assets of a failed bank fall squarely within the exception. *See Franklin Sav.*, 180 F.3d at 1131-34 (RTC statutory requirements relating to asset sales, maintaining asset values and maximizing value of assets fell within the discretionary function exception, thus barring claims against the FDIC for violation of these statutory requirements and breach of fiduciary duty); *F.D.I.C. v. Irwin*, 916 F.2d 1051, 1053 (5th Cir. 1990) (affirming dismissal where "the determination of insolvency and the decision to close the bank were discretionary acts and thus protected by the discretionary function exception to the FTCA"); *Gaubert*, 499 U.S. at 325 ("[d]ay-to-day management of banking affairs, like the management of

other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest").

Plaintiffs' conversion claim here is premised on the FDIC-Receiver's alleged decision "to transfer an ownership interest in some or all of [the plaintiffs'] property to JPMorgan Chase." Compl., ¶ 45.  The FDIC-Receiver's operational and policy decision to transfer certain assets of WMB pursuant to the P&A Agreement falls squarely within the discretionary function exemption.  *See Franklin Sav.*, 180 F.3d at 1131-32.  Plaintiffs have not alleged that the FDIC-Receiver violated any "mandatory limitation on [its] statutory discretion," nor can plaintiffs claim that the "statutory discretion exercised by [the FDIC] . . . was not based on considerations of public policy."  *ALX El Dorado, Inc. v. Sw. Sav. & Loan Ass'n*, 36 F.3d 409, 411-12 (5th Cir. 1994).

### E.    Federal Law Bars Plaintiffs' Request for a Declaration that the FDIC-Receiver's Disallowance Is "Void" (Count V)

In Count V of the Complaint, plaintiffs seek a declaration that the FDIC-Receiver's disallowance of WMI's receivership claims is "void" and an order requiring the FDIC-Receiver to reconsider their proof of claim.  *See* Compl., ¶ 97.  This relief is prohibited under the Federal Deposit Insurance Act, as amended.  *See* 12 U.S.C. § 1821(d)(5)(D)(i) ("[FDIC] may disallow any portion of any claim by a creditor . . . which is not proved to the satisfaction of the receiver."); 12 U.S.C. § 1821(d)(5)(E) ("No court may review the [FDIC's] determination . . . to disallow a claim."); *see also* 12 U.S.C. § 1821(j), ("no court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver").

Where, as here, a party seeks relief in the form of a judicial determination on the disallowance itself, the district court does not have jurisdiction.  *See Helm v. R.T.C.*, 43 F.3d 1163, 1165 (7th Cir. 1995) (claimant may "file suit against the RTC in federal district court, not

for review of the RTC's disallowance, but for relief on the underlying claim.  Such a suit ignores

the RTC's disallowance.")  Count V therefore must be dismissed pursuant to Federal Rule

12(b)(1) for lack of subject matter jurisdiction.

## II.     PLAINTIFFS' CLAIM TO RECOVER CAPITAL CONTRIBUTIONS TO WMI'S SUBSIDIARY WMB SHOULD BE DISMISSED

In Count I of their Complaint, plaintiffs seek a judicial determination with respect to their

various claims against the WMB receivership pursuant to 12 U.S.C. § 1821(d)(6)(A).  *See*

Compl., ¶¶ 78-80. While the FDIC-Receiver is not at this time seeking dismissal of that count of

the Complaint in its entirety, one of those claims – for recovery of $6.5 billion of capital

contributions from WMI to WMB as allegedly fraudulent transfers, *see id.*, ¶¶ 25-28 – should be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[10]

WMI does not contend that the challenged capital contributions that it made to its wholly-

owned subsidiary WMB were made with actual intent to defraud WMI's creditors.  Instead,

plaintiffs purport to assert a claim for "constructive fraudulent transfer" under sections 544(b) or

548(a)(1)(B) of the Bankruptcy Code.  Under section 548(b)(1), plaintiffs bear the burden to

show:  (1) that WMI "received less than a reasonably equivalent value in exchange for such

transfer," and (2) that it "was insolvent on the date that such transfer was made . . . or became

insolvent as a result of such transfer" (or, as the result of such transfer, was left with

_____

[10] Some courts have applied the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) to claims of constructive fraudulent transfer such as those asserted by plaintiffs here.  *See, e.g., OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) (finding that "[t]here is no question that Rule 9(b) applies" in a fraudulent transfer action, "whether it is based upon actual or constructive fraud").  Other courts have refused to do so.  *See, e.g., Gold v. Winget (In re NM Holdings, LLC)*, 2009 WL 1372982, at *17-*18 (Bankr. E.D. Mich. May 18, 2009) (collecting cases).  While the FDIC-Receiver respectfully submits that Rule 9(b) should apply, plaintiffs' bare bones and conclusory allegations fail to state a claim even under the notice pleading requirements of Rule 8(a)(2) and should be dismissed under either standard.

"unreasonably small capital").  *See* 11 U.S.C. § 548(a)(1)(B).[11]  Section 544(b) incorporates

similar standards for constructive fraudulent transfer to the extent available under state law.

11 U.S.C. § 544(b).[12]  Plaintiffs cannot meet this burden for a number of reasons, as their

allegations themselves establish.

      *First*, neither Bankruptcy Code provision permits the avoidance of a transfer of property

of a debtor's estate where the debtor receives a corresponding benefit from the transaction,

whether directly or indirectly.  *Rubin v. Mfrs. Hanover Tr. Co.*, 661 F.2d 979, 991 (2nd Cir.

1981) (discussing predecessor provision of Bankruptcy Act); *see CareerCom Corp. v. United*

*States Dep't of Educ. (In re CareerCom Corp.)*, 215 B.R. 674, 677 (Bankr. M.D. Pa. 1997)

---

[11] Section 548(a)(1) provides:

      The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

      (A)     made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

      (B)     (i)     received less than a reasonably equivalent value in exchange for such transfer or obligation; and

            (ii)     (I)     was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

            (II)     was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

            (III)     intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

            (IV)     made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1) (2009).

[12] Section 544(b) provides in pertinent part that "[t]he trustee may avoid any transfer of . . . property . . . that is voidable under applicable law . . ."  11 U.S.C. § 544(b)(2009).

(discussing claims under both sections 544(b) and 548(a)); *In re Augie/Restivo Baking Co.*, 87

B.R. 242, 247 (Bankr. E.D.N.Y. 1988) (same).  In such a situation, "[t]he debtor's net worth has

been preserved" and the interests of its creditors have not been injured.  *Rubin*, 661 F.2d at 991.

For this reason, "transfers to a solvent subsidiary are considered to be for reasonably

equivalent value because, since the parent is the sole stockholder of the subsidiary corporation,

any benefit received by the subsidiary is also a benefit to the parent."  *Branch v. F.D.I.C.*, 825

F. Supp. 384, 399-400 (D. Mass. 1993) (collecting citations); *see also Lawrence Paperboard*

*Corp. v. Arlington Tr. Co. (In re Lawrence Paperboard Corp)*, 76 B.R. 866, 872 (Bankr.

D. Mass. 1987).  The district court in *Branch* observed that it was "aware of no case in which

transfers to a solvent subsidiary have been determined to be for less than equivalent value," and

therefore found such transfers to be subject to a rebuttable presumption that reasonably

equivalent value was received.  *Branch*, 825 F. Supp. at 400.

That presumption is even stronger in this case, where WMI acknowledges that the

challenged transfers were capital contributions to its wholly-owned subsidiary, WMB.  In return

for those capital contributions, WMI received a dollar-for-dollar increase in the value of its

equity investment in WMB as of the date that each of the contributions was made.  Plaintiffs do

not allege to the contrary, because they cannot do so.  As a result, there was *no change* in WMI's

net worth as a result of the investments, and there can be no claim for constructive fraudulent

transfer.  *See Augie/Restivo*, 87 B.R. at 247.  As the Third Circuit has observed:

> when the debtor is a going concern and its realizable going concern value
> after the transaction is equal to or exceeds its going concern value before
> the transaction, reasonably equivalent value has been received.

*Mellon Bank, N.A. v. Metro Comms, Inc.*, 945 F.2d 635, 647 (3d Cir. 1991).[13]

---

[13] WMI received other indirect benefits from the capital contributions as well, further
establishing its receipt of reasonably equivalent value.  Among other things, carefully scrutinized

*Second*, it is entirely irrelevant whether or not WMI's equity interest is still worth $6.5 billion today due to the later regulatory closure of WMB.  "The critical time is when the transfer is 'made.'  Neither subsequent depreciation in nor appreciation in value of the consideration affects the [ ] question whether reasonable equivalent value was given."  *Cooper v. Ashley Comms., Inc. (In re Morris Comms. NC, Inc.)*, 914 F.2d 458, 466 (4th Cir. 1990) (quoting *Collier on Bankruptcy*, § 548.09, at 116 (15th ed. 1984)); *see also Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1126 (5th Cir. 1993) (reasonably equivalent value provided by decision to make fuel purchases for struggling airline when "evaluated as of the time it was made and during the time it was implemented").

*Third*, plaintiffs *have not alleged* that WMB was insolvent on the date of any of the challenged capital contributions, and therefore the insolvency exception to the *Branch* presumption of reasonably equivalent value does not apply.  To the contrary, plaintiffs have alleged only that WMB "*may have been* insolvent at the time the Capital Contributions were made." Compl., ¶ 26 (emphasis added).  The Supreme Court in *Twombly* made clear that such speculative allegations are insufficient to avoid dismissal under Rule 12(b)(6).  *See Bell Atl. v. Twombly*, 550 U.S. 544, 561 (2007) (Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]  Factual allegations must be enough to raise a right to relief *above the speculative level* . . . on the assumption that all the allegations in the complaint are true") (emphasis added).

Not only does the Complaint fail to allege that WMB *actually was* insolvent at the time of the challenged contributions, however, its allegations elsewhere affirmatively contradict any such allegation.  According to the Complaint, on the date of WMB's closing and the appointment

---

financial measures such as WMB's Tier 1 capital ratio improved as a result of the capital contributions.

of the FDIC-Receiver,  "the OTS stated that WMB qualified as 'well-capitalized' under the OTS's regulatory capital regulations *through the Receivership Date*."  Compl., ¶ 83 (quoting Compl., Exh. 3) (emphasis added).  Rather than insolvency, plaintiffs themselves allege that it was a liquidity crisis caused by a sudden, dramatic increase in deposit withdrawals that precipitated WMB's closing.  *See id.*, ¶ 82.

The Complaint alleges that this ultimately fatal run-on-the-bank began on September 15, 2008, *id.*, *five days after* the last of the challenged capital contributions by WMI to WMB, *see id.*, ¶ 25 (last capital contribution of $500 million made on September 10, 2008).  Plaintiffs do not allege, nor could they, that anyone on September 10th knew that WMB would suffer $16.7 billion in deposit withdrawals over a ten-day period beginning the following week (after Lehman Brothers filed for bankruptcy protection).  *See id.*, ¶ 82 & Exh. 3 (significant withdrawals began "[b]ecause of adverse events in the financial markets").

*Finally*, the fraudulent transfer claims are not saved by plaintiffs conclusory allegations that the challenged capital contributions "may have been made while WMI was insolvent," "may have rendered WMI insolvent," or "may have been made while WMI had unreasonably small capital."  *See* Compl., ¶ 26.  Once again, these speculative allegations fail the *Twombly* standard. In any event, WMI's receipt of reasonably equivalent value for its contributions to WMB's capital renders these cursory allegations beside the point.

## CONCLUSION

For all of the foregoing reasons, the FDIC-Receiver respectfully requests that its motion

for partial dismissal of the Complaint be granted and that the Court grant it such other and

further relief as may be deemed just and proper.

Dated:  Washington, D.C.     Respectfully submitted,
   June 11, 2009

               /s/ David Clarke
              David Clarke, Jr. (D.C. Bar. No. 396002)
              david.clarke@dlapiper.com
              Deana L. Cairo (D.C. Bar No. 469628)
              deana.cairo@dlapiper.com
              DLA Piper LLP (US)
              500 8th Street, N.W.
              Washington, D.C.  20004
              Tel.:  (202) 799-4000
              Fax:  (202) 799-5000

                - and –

              John J. Clarke, Jr. (admitted *pro hac vice*)
              john.clarke@dlapiper.com
              Thomas R. Califano
              DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, New York  10020
              Tel.:  (212) 335-4500
              Fax:  (212) 335-4501

              Attorneys for Defendant
               Federal Deposit Insurance Corporation,
               as Receiver for Washington Mutual Bank

## CERTIFICATE OF SERVICE

The undersigned attorney for the FDIC-Receiver certifies that on this 11th day of June 2009, he caused a copy of the foregoing document to be filed via ECF which will cause electronic notice of its filing to be served on all parties who have appeared in this action.

_____/s/ John J. Clarke, Jr._____
John J. Clarke, Jr.