## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON MUTUAL, INC. and WMI INVESTMENT CORP. | Case No. 1:09-cv-0533 (RMC) |

WASHINGTON MUTUAL, INC. and
WMI INVESTMENT CORP.

      Plaintiffs and Counterclaim
      Defendants,

   v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its corporate capacity,

      Defendant,

   - and -

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as receiver of
Washington Mutual Bank,

      Defendant and
      Counterclaim Plaintiff,

   v.

JPMORGAN CHASE BANK, N.A.,

      Counterclaim Defendant.

**FIRST AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANT
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER**

Pursuant to Federal Rules of Civil Procedure 13(h) and 15(a)(1)(A), defendant the

Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-

Receiver"), submits its First Amended Answer and Counterclaims with respect to plaintiffs'

complaint in this action (the "Complaint"). The FDIC-Receiver's allegations are based upon

knowledge as to itself and its own actions and upon information and belief as to all others.

## ANSWER

Unless otherwise expressly admitted, the FDIC-Receiver denies each and every allegation in the Complaint, including without limitation any allegations contained in its prayer, headings and subheadings.  In many instances, plaintiffs purport to assert claims in the body of their allegations without specifying, except in the most generalized manner, the basis or alleged amount of such purported claims, including many alleged "claims" that appear to be inchoate, contingent, hypothetical, speculative or otherwise remote or inactionable.  The FDIC-Receiver objects to, and denies liability with respect to, all of such claims, unless otherwise expressly stated herein.  In accordance with Federal Rule of Civil Procedure 8(b)(5), to the extent the FDIC-Receiver denies knowledge or information sufficient to form a belief as to the truth of an allegation, that allegation is deemed to be denied.  This answer is based upon the FDIC-Receiver's investigation to date, and the FDIC-Receiver expressly reserves the right to amend this answer to the full extent provided for under applicable law.

## PARTIES[1]

1.      Admits the allegations of paragraph 1 of the Complaint.

2.      Admits the first sentence of paragraph 2 of the Complaint.  The second and third sentences of paragraph 2 are characterizations of the Complaint and definitions of terms that do not require a response.

3.      Admits the allegations of paragraph 3 of the Complaint.

4.      Admits the allegations of paragraph 4 of the Complaint.

---

[1] The headings of the Complaint are used in this Answer strictly for the Court's convenience.  The FDIC-Receiver does not admit any of plaintiffs' allegations by such use.

## JURISDICTION AND VENUE

5.     Admits that this Court has subject matter jurisdiction under 12 U.S.C.

§§ 1819(b)(2)(A) and 1821(d)(6).  No response is required as to the remainder of paragraph 5,

but to the extent any response is required those allegations are denied.

6.     Admits that venue is proper in this District pursuant to 12 U.S.C. § 1821(d)(6)(A)

and denies the remaining allegations of paragraph 6 of the Complaint.

## BACKGROUND

7.     Admits the allegations of paragraph 7 of the Complaint except refers to Office of

Thrift Supervision ("OTS") order number 2008-36 for its contents.

8.     Refers for its contents to the Purchase and Assumption Agreement, Whole Bank,

among the FDIC-Receiver, Federal Deposit Insurance Corporation ("FDIC-Corporate") and

JPMorgan Chase Bank, National Association ("JPMC") (the "P&A Agreement") and denies any

remaining allegations of paragraph 8 of the Complaint.

9.     Admits the allegations in the first sentence of paragraph 9 of the Complaint.  The

second sentence of paragraph 9 states a legal conclusion as to which no response is required.

## THE PROOF OF CLAIM

10.     Admits the allegations of the first sentence of paragraph 10 of the Complaint.

Denies the remaining allegations of paragraph 10, except refers for its contents to the

receivership proof of claim (the "WMI Proof of Claim") that was filed with the FDIC-Receiver

by Washington Mutual, Inc. ("WMI").

11.     Admits that plaintiffs have purported to reserve certain rights as alleged in

paragraph 11 of the Complaint and reserves all of the FDIC-Receiver's defenses with respect

thereto.

12.     No response is required to the allegations of paragraph 12 of the Complaint, but to the extent any response is required those allegations are denied.

13.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint, except the FDIC-Receiver denies the allegations in the first sentence of that paragraph and, as to the allegations in the last sentence of paragraph 13, refers to the WMI Proof of Claim for its contents.

**A.     Intercompany Loans**

14.     Denies knowledge or information sufficient to form a belief as to truth of the allegations of paragraph 14 of the Complaint.

15.     Denies the allegations of paragraph 15 of the Complaint.

**B.     Intercompany Receivables**

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 of the Complaint.

17.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 of the Complaint.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of the Complaint.

19.     Denies the allegations of paragraph 19 of the Complaint.

**C.     Taxes**

20.     Denies the allegations of paragraph 20 of the Complaint, except the FDIC-Receiver refers for its contents to the Tax Sharing Agreement dated as of August 31, 1999 by and among WMI, Washington Mutual Bank fsb ("WMBfsb"), Washington Mutual Bank, New American Capital, Inc. and Aristar Inc. (the "Tax Sharing Agreement").

21.     Denies the allegations of paragraph 21 of the Complaint.

22.     Denies the allegations of paragraph 22 of the Complaint.

23.     Denies the allegations of paragraph 23 of the Complaint, except admits upon information and belief that certain foreign, state, local or foreign tax audits may be currently ongoing with respect to the filings by the consolidated tax group that included WMB for which WMI served as fiduciary prior to the FDIC-Receiver's appointment on September 25, 2008.

24.     No response is required to the allegations of paragraph 24 of the Complaint, but to the extent any response is required those allegations are denied.

**D.     Capital Contribution Claims**

25.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of the Complaint, except admits upon information and belief that WMI made $6.5 billion of capital contributions to WMB in the amounts and on the dates specified in that paragraph.

26.     Denies the allegations of paragraph 26 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of that paragraph.

27.     Denies the allegations of paragraph 27 of the Complaint.

28.     Admits that WMI purports to assert the claims described in paragraph 28 of the Complaint and denies that such claims have merit.

**E.     Trust Preferred Securities Claims**

29.     Upon information and belief, admits the allegations of paragraph 29 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations of the last sentence of that paragraph.

30.     Upon information and belief, admits the allegations of paragraph 30 of the Complaint.

31.     Upon information and belief, admits the allegations of paragraph 31, except refers for their contents to the various agreements and correspondence governing the terms of the trust preferred securities and the notice provided by the OTS.

32.     Upon information and belief, admits the allegations of paragraph 32 of the Complaint, except refers for its contents to the Assignment Agreement between WMB as assignee and WMI as assignor effective as of September 25, 2008 (the "Assignment Agreement"), and asserts that to the extent WMI at any time had possession of the trust preferred securities it held such assets in trust for WMB or, in the alternative, held at most bare legal title without an equitable interest.  *See* 11 U.S.C. § 541(d).  The FDIC-Receiver reserves all of its rights with respect to any and all defenses to enforceability that WMI might assert.

33.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 33 of the Complaint.  Denies the remaining allegations of paragraph 33 of the Complaint.

34.     Denies the allegations of paragraph 34 of the Complaint.

35.     Denies the allegations of paragraph 35 of the Complaint.

**F.     Preference Claims**

36.     Denies knowledge sufficient to form a belief as to the truth of the allegations of paragraph 36 of the Complaint, including Exhibit 1 and footnote 2 that are incorporated therein. With respect to plaintiffs' purported reservation of rights, the FDIC-Receiver reserves all of its defenses.

37.     Paragraph 37 states legal conclusions as to which no response is required, but to the extent any response is required the allegations are denied.

38.     Denies the allegations of paragraph 38 of the Complaint.

39.     Denies the allegations of paragraph 39 of the Complaint.

40.     Denies the allegations of paragraph 40 of the Complaint.

**G.     Vendor Contract Claims**

41.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint.

**H.     Subrogation Claims**

42.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the Complaint.

43.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 of the Complaint.

44.     Denies the allegations of paragraph 44 of the Complaint.

**I.     Allegedly Improper Asset Sales**

45.     Denies the allegations of paragraph 45 of the Complaint.

46.     Denies the allegations of paragraph 46 of the Complaint and reserves all of the FDIC-Receiver's rights with respect thereto.

**J.     Deposit Claim**

47.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 of the Complaint.

48.     As to the first sentence of paragraph 48 of the Complaint, refers to the P&A Agreement for its contents.  As to the second sentence of paragraph 48, admits that JPMC

acquired the stock of WMBfsb pursuant to the P&A Agreement and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that sentence.

49.    Denies the allegations of paragraph 49 of the Complaint, except admits that the FDIC-Receiver has certain rights under the P&A Agreement or otherwise with respect to purported deposit balances assumed under that agreement and the FDIC-Receiver reserves all of its rights with respect to the purported deposit balances alleged by plaintiffs.

50.    Denies the allegations of paragraph 50 of the Complaint.

**K.    Administrative Claims**

51.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51 of the Complaint.

**L.    Employee/Employer Related Costs and Insurance Claims**

52.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 of the Complaint, except to the extent any response is required, denies the allegations of the third sentence of paragraph 52.

53.    Denies the allegations of paragraph 53 of the Complaint except admits upon information and belief that prior to the receivership WMI sponsored certain deferred compensation plans.

54.    Denies the allegations of paragraph 54 of the Complaint.

55.    No response is required to paragraph 55 of the Complaint, but to the extent any response is required the allegations of paragraph 55 are denied.  The FDIC-Receiver reserves all of its rights to oppose any such claims.

56.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 of the Complaint.

57.    Denies the allegations of paragraph 57 of the Complaint.

**M.    Indemnification Claims**

58.    Denies knowledge or information sufficient to form a belief as to the truth of the first two sentences of paragraph 58 of the Complaint, except refers to WMI's bylaws for their contents.  Denies the last sentence of paragraph 58 of the Complaint.

59.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 59 of the Complaint.  Denies the last sentence of paragraph 59 of the Complaint.

**N.    Other Claims**

60.    Denies the allegations of paragraph 60 of the Complaint.

61.    Denies the allegations of paragraph 61 of the Complaint.

**THE FDIC'S DENIAL OF PLAINTIFFS' PROOF OF CLAIM**

62.    Admits the allegations of paragraph 62 of the Complaint.

63.    Refers to the FDIC-Receiver's letter to WMI dated January 23, 2009 for its contents.

64.    Refers to the FDIC-Receiver's letter to WMI dated January 23, 2009 for its contents.

65.    Refers to the FDIC-Receiver's letter to WMI dated January 23, 2009 for its contents.

66.    Denies the allegations of paragraph 66 of the Complaint.

67.    Denies the allegations of paragraph 67 of the Complaint.

68.    Admits the allegations of paragraph 68 of the Complaint.

69.    Admits the allegations of paragraph 69 of the Complaint.

70.    Paragraph 70 of the Complaint states a legal conclusion as to which no response is required.

71.    Denies the allegations of paragraph 71 of the Complaint.

72.    Paragraph 72 of the Complaint states a legal conclusion as to which no response is required.

73.    Denies the allegations of paragraph 73 of the Complaint.

74.    Paragraph 74 of the Complaint states a legal conclusion as to which no response is required.

75.    Paragraph 75 of the Complaint states a legal conclusion as to which no response is required.

76.    Denies the allegations of paragraph 76 of the Complaint except refers to the FDIC-Receiver's letter to WMI dated January 23, 2009 for its contents.

77.    Refers to the FDIC-Receiver's letter to WMI dated January 23, 2009 for its contents.  Denies knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations concerning why they filed this action.

## CLAIMS FOR RELIEF

### Count I

78.    Repeats and realleges the FDIC-Receiver's responses to paragraphs 1 through 77 of the Complaint as if restated fully herein.

79.    Paragraph 79 of the Complaint states a legal conclusion as to which to response is required.

80.     Denies the allegations of paragraph 80 of the Complaint.

## Count II

81.     Repeats and realleges the FDIC-Receiver's responses to paragraphs 1 through 80 of the Complaint as if restated fully herein.

82.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82 of the Complaint, except refers for their contents to the OTS press release and accompanying fact sheet.

83.     Denies the allegations of paragraph 83 of the Complaint except refers for its contents to the OTS fact sheet.

84.     Admits that the FDIC-Receiver does not anticipate that subordinated debt holders of WMB will receive any recovery on their claims.  Denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 84 of the Complaint.

85.     Denies the allegations of paragraph 85 and avers that after its appointment by the OTS as receiver for WMB, the FDIC-Receiver entered into the P&A Agreement with JPMC in accordance with the requirements of the Federal Deposit Insurance Act, as amended, and regulations promulgated thereunder.  *See* 12 U.S.C. § 1823(c)(4); 12 C.F.R. § 360.1.  Under the P&A Agreement, JPMC assumed substantially all of the liabilities of WMB, including all deposit liabilities, and paid the FDIC-Receiver additional consideration of $1,888,000,000.00. *See* P&A Agreement, Art. VII.  As the FDIC's chairman Sheila Bair stated in the press release announcing the transaction, "WaMu's balance sheet and the payment paid by JPMorgan Chase allowed a transaction in which neither the uninsured depositors nor the insurance fund absorbed any losses."

86.     Denies the allegations of paragraph 86 of the Complaint.

87.     Denies the allegations of paragraph 87 of the Complaint.

88.     Paragraph 88 states a legal conclusion as to which no response is required.

89.     Denies the allegations of paragraph 89 of the Complaint.

90.     Denies the allegations of paragraph 90 of the Complaint and refers to 12 U.S.C.
§ 1821(i) for its contents.

## Count III

91.     Repeats and realleges the FDIC-Receiver's responses to paragraphs 1 through 90 of the Complaint as if restated fully herein.

92.     Denies the allegations of paragraph 92 of the Complaint.

## Count IV

93.     Repeats and realleges the FDIC-Receiver's responses to paragraphs 1 through 92 of the Complaint as if restated fully herein.

94.     Denies the allegations of paragraph 94 of the Complaint.

95.     Denies the allegations of paragraph 95 of the Complaint.

## Count V

96.     Repeats and realleges the FDIC-Receiver's responses to paragraphs 1 through 95 of the Complaint as if restated fully herein.

97.     Denies the allegations of paragraph 97 of the Complaint.

## PLAINTIFFS' PRAYER FOR RELIEF

98.     Denies the allegations of the Prayer for Relief and every subparagraph thereof.

## DEMAND FOR JURY TRIAL

99.     No response is required to plaintiffs' jury trial demand.  The FDIC-Receiver reserves all of its rights and arguments with respect to such demand.

## DEFENSES

The FDIC-Receiver states the following defenses without assuming the burden of proof as to any issue for which the burden is placed on another party. The FDIC-Receiver lacks knowledge or information sufficient to form a belief as to whether it has other, as yet unstated, defenses. The FDIC-Receiver reserves the right to assert, and hereby gives notice that it intends to rely upon, any other defense that may become available or appear during discovery or otherwise and reserves the right to amend its Answer to assert any such defense. The FDIC-Receiver incorporates into this Answer and asserts any defense asserted in this action by any other party to the extent such defense is applicable to the FDIC-Receiver.

### First Defense

This Court lacks subject matter jurisdiction over some or all of the claims asserted in the Complaint.

### Second Defense

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### Third Defense

Plaintiffs lack standing to assert some or all of their claims.

### Fourth Defense

Plaintiffs fail to satisfy the requirements for entry of a declaratory judgment under Federal Rule of Civil Procedure 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

### Fifth Defense

Plaintiffs claims are barred under 12 U.S.C. § 1821(j) to the extent they seek to restrain or affect the exercise of powers or functions of the FDIC-Receiver.

## Sixth Defense

To the extent not raised in their receivership proof of claim, plaintiffs' claims are barred under 12 U.S.C. § 1821(d).

## Seventh Defense

Plaintiffs' claims are barred, in applicable part, by 12 U.S.C. § 1821(d)(13)(D).

## Eighth Defense

Plaintiffs' claims are barred, in applicable part, by 12 U.S.C. § 1821(d)(5)(E).

## Ninth Defense

Plaintiffs' claims are barred, in applicable part, by 11 U.S.C. § 365(o).

## Tenth Defense

Plaintiffs' claims are barred, in applicable part, by 12 U.S.C. § 1828(u).

## Eleventh Defense

Plaintiffs received reasonably equivalent value in exchange for any transfers made by or on behalf of WMB.  In the alternative, WMB provided plaintiffs fair consideration in good faith in exchange for such transfers.

## Twelfth Defense

Plaintiffs' claims are barred, in applicable part, under 12 U.S.C. § 1821(d)(17) and/or other applicable law governing fraudulent transfers.

## Thirteenth Defense

Plaintiffs' claims are barred, in applicable part, under 12 U.S.C. § 1823(e) or the statute of frauds.

## Fourteenth Defense

Plaintiffs' claims are barred, in applicable part, under the Federal Tort Claims Act.

**Fifteenth Defense**

Plaintiffs' claims are barred, in whole or in part, by estoppel.

**Sixteenth Defense**

Plaintiffs' claims are barred, in whole or in part, by waiver.

**Seventeenth Defense**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

**Eighteenth Defense**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

**Nineteenth Defense**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

**Twentieth Defense**

Plaintiffs' claims are barred, in whole or in part, by WMI's participation in, approval of or ratification of the conduct upon which the claims are based.

**Twenty-first Defense**

Plaintiffs have suffered no legally cognizable damages caused by any conduct of the FDIC-Receiver.

**Twenty-second Defense**

The acts or omissions of the FDIC-Receiver did not proximately cause any of plaintiffs alleged damages or harm.

**Twenty-third Defense**

Plaintiffs' claims are barred, in whole or in part, by payment.

**Twenty-fourth Defense**

Plaintiffs' claims are barred, in applicable part, under the Internal Revenue Code and the rules, regulations, rulings and opinions promulgated thereunder.

**Twenty-fifth Defense**

Plaintiffs' claims are barred, in part, by the applicable statute of limitations.

**COUNTERCLAIMS**

Pursuant to Federal Rules of Civil Procedure 13 and 57, the FDIC-Receiver brings the following counterclaims (the "Counterclaims") against plaintiffs WMI and WMI Investment Corp and pursuant to Federal Rules of Civil Procedure 13(h) against counterclaim defendant JPMorgan Chase Bank, N.A.  The FDIC-Receiver reserves the right to further amend, revise or supplement these Counterclaims in any respect and to file additional claims and requests for payment.

Without limiting the foregoing, the FDIC-Receiver reserves the right to amend these Counterclaims or assert additional counterclaims for as-yet unliquidated, unmatured or contingent claims currently known or unknown, including without limitation, claims for indemnification, contribution, subrogation or reimbursement from plaintiffs, or any of them, for any claims of third parties that may be asserted against the FDIC-Receiver or payments made by or on behalf of the FDIC-Receiver for which plaintiffs are responsible.

**PARTIES**

1.      The Federal Deposit Insurance Corporation (the "FDIC") is an independent agency of the United States government with its headquarters located in this District.  The FDIC acts in two legally distinct capacities when it acts (1) as insurer or regulator of depository institutions generally and (2) as the appointed receiver of specific failed depository institutions.

*See Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.)*, C.A. No. 95-1340, 1996 WL 148533, at *11-12 (D.D.C. Mar. 19, 1996).  These Counterclaims are asserted solely by the FDIC-Receiver.  Counterclaim plaintiff the FDIC-Receiver was appointed receiver of WMB on September 25, 2008, by order of the OTS.

2.      Counterclaim defendant WMI is a thrift holding company incorporated under the laws of Washington with its principal place of business in Seattle, Washington.

3.      Counterclaim defendant WMI Investment Corp. is a subsidiary of WMI that is incorporated under the laws of Delaware with its principal place of business in Seattle, Washington.

4.      On September 26, 2008, WMI and WMI Investment Corp. filed voluntary petitions under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.  Those bankruptcy cases are pending.

5.      Counterclaim defendant JPMorgan Chase Bank, N.A. ("JPMC") is a national banking association organized under the laws of the United States with its principal place of business in Columbus, Ohio.  JPMC is subject to service of process.  Joinder of JPMC as a counterclaim defendant will not deprive the court of subject matter jurisdiction.  JPMC is in possession of, or claims an interest in, certain of the assets that are the subject of the FDIC-Receiver's Counterclaims.  In JPMC's absence, this Court cannot accord complete relief among the existing parties with respect to certain of those Counterclaims or, in the alternative, JPMC is so situated that disposing of certain of the Counterclaims in JPMC's absence may as a practical matter impair or impede JPMC's ability to protect its interest or leave the FDIC-Receiver subject to a substantial risk of incurring inconsistent obligations because of JPMC's claimed interest.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over these Counterclaims under 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1367(a).

7.    Venue is proper in this District under 12 U.S.C. § 1821(d)(6)(A).

## FACTUAL ALLEGATIONS

8.    Pursuant to 12 U.S.C. § 1821(d)(2), the FDIC-Receiver succeeds by operation of law to the rights, titles, powers, and privileges, including legal claims, of WMB, and of any stockholder, member, accountholder, depositor, officer or director of WMB.  In its capacity as receiver, the FDIC acts to protect insured depositors and creditors of failed depository institutions.  The claims set forth herein arise, in part, out of WMI's actions by and through its agents to direct WMB for the benefit of WMI and at the expense of WMB.

9.    Following its appointment, the FDIC-Receiver sold substantially all of the assets of WMB to JPMC pursuant to the P&A Agreement.  Certain of the Counterclaims asserted herein may relate to assets that have been sold to JPMC under the P&A Agreement.  Nothing herein should be construed as reflecting the FDIC-Receiver's interpretation of the P&A Agreement, including without limitation the assets or rights related to claims that may have been sold, or that JPMC may claim to have been sold, pursuant to the P&A Agreement.

10.    The FDIC-Receiver established December 30, 2008 as the bar date for filing claims against the WMB receivership.  On that date, WMI and certain of its subsidiaries filed a proof of claim with the FDIC-Receiver.  By letter dated January 23, 2009, the FDIC-Receiver timely disallowed all of these receivership claims.  On March 20, 2009, the plaintiffs WMI and WMI Investment Corp. filed their complaint in this action.

11.     In plaintiffs' bankruptcy cases, the Bankruptcy Court established March 31, 2009

as the bar date for filing proofs of claim against the plaintiffs' bankruptcy estates.  On March 30,

2009, after plaintiffs had commenced this action against it in this Court, the FDIC-Receiver

timely filed a bankruptcy proof of claim (the "FDIC-Receiver Proof of Claim") to protect its

rights and to eliminate any suggestion of waiver.  In the FDIC-Receiver Proof of Claim, the

FDIC-Receiver expressly reserved its right to have the issues addressed in this Court and

"expressly reserve[d] all rights to assert the preemption of the Bankruptcy Court's jurisdiction

and the exclusive jurisdiction provided under title 12" over the matters asserted.  *See* FDIC-

Receiver Proof of Claim, ¶¶ 49, 50.

## Count I
## (Taxes – Declaratory Relief)

12.     The FDIC-Receiver repeats the allegations of paragraphs 1 through 11 of these

Counterclaims as if fully restated herein.

13.     Under applicable law, all federal and state tax related refunds that have been

received by WMI since the commencement of its chapter 11 case, or that may be paid in the

future based on consolidated tax returns, are due and owing in substantial part to WMB, and not

WMI.  A tax refund resulting from offsetting losses of one member of a consolidated filing

group against the income of that same member in a prior or subsequent year inures to the benefit

of that member, in this instance, WMB.  Similarly, to the extent WMI is in possession of funds

that were obtained from WMB, whether prepetition or postpetition, for the purpose of satisfying

tax liabilities of the consolidated group, those funds are the property of WMB and not of WMI.

14.     Based on the FDIC-Receiver's investigation to date, the tax refunds,

intercompany tax payments or tax overpayments to which WMB is entitled to payment from tax

authorities, or from WMI to the extent that payments of such amounts have been or will be made

to it, amount to no less than $4,269,507,909.00, as summarized in the following table.

| Category | Amount (all years) |
|---|---|
| Federal Tax Litigation Items | $228,830,412 |
| State Claims for Litig. Items | $29,081,702 |
| Federal Audit Cycle Items | $670,255,737 |
| State Claims for Fed. Audits | $275,242,708 |
| Federal Overpayments | $40,000,000 |
| State Overpayments | $89,867,260 |
| Federal Loss Carryback Claims | $1,906,654,329 |
| State Loss Carryback Claims | $2,464,064 |
| Miscellaneous | $173,825,241 |
| Federal Refunds Held by WMI | $241,798,079 |
| State Refunds Held by WMI | $94,668,862 |
| Amounts Due from WMI to WMB for Intercompany Taxes | $516,819,516 |

15.    An actual and ripe case or controversy exists with respect to the ownership of

these tax related assets.  In their Complaint in this action and elsewhere, plaintiffs erroneously

purport to assert ownership of these assets.

16.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, the FDIC-

Receiver requests that this Court enter a declaratory judgment that any such amounts received by

WMI, or that are in WMI's possession, are or will be held in trust for WMB and are not WMI's

property as a matter of law.

17.     JPMC claims an interest in the tax related assets as the purchaser of substantially all of the assets of WMB under the P&A Agreement.  Accordingly, the FDIC-Receiver names JPMC as an additional counterclaim defendant with respect to this Count.

**Count II**
**(Recovery of Tax Related Assets)**

18.     The FDIC-Receiver repeats the allegations of paragraphs 1 through 17 of these Counterclaims as if fully restated herein.

19.     WMB is the rightful owner of the tax-related assets that are described in paragraphs 12 and 13 above.  The FDIC-Receiver succeeded to WMB's rights to those assets by operation of law.

20.     The FDIC-Receiver demands judgment against WMI for any and all tax-related funds that are rightfully the property of WMB and that are in WMI's possession or that are received by WMI prior to entry of judgment, together with pre-judgment interest thereon at the applicable lawful rate.

**Count III**
**(Trust Preferred Securities – Declaratory Relief)**

21.     The FDIC-Receiver repeats the allegations of paragraphs 1 through 20 of these Counterclaims as if fully restated herein.

22.     In or around February 2006, Washington Mutual Preferred Funding LLC ("WMPF"), a Delaware limited liability company, was formed as an indirect subsidiary of WMB to facilitate core capital financing transactions for WMB through the issuance of "trust" preferred securities to investors by certain special purpose entities ("SPEs").  WMPF's assets were limited to direct or indirect interests in mortgages or mortgage-related assets, cash and other permitted assets.  These assets were held in certain Delaware statutory trusts.  WMPF

issued preferred securities, which were held by and were the sole asset of the SPEs and which were senior in priority to the common stock in WMPF, which was held indirectly by WMB.

23.    The following series of trust preferred securities were issued by SPE subsidiaries of WMPF using this structure.  Plaintiffs have asserted that these series of trust preferred securities have a liquidation preference of approximately $4 billion.

      a.     Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Noncumulative Preferred Securities, Series A-1;

      b.     Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Noncumulative Preferred Securities, Series A-2;

      c.     Washington Mutual Preferred Funding Trust (Delaware) Fixed-to-Floating Rated Perpetual Noncumulative Trust Securities;

      d.     Washington Mutual Preferred Funding Trust II (Delaware) Fixed-to-Floating Rated Perpetual Noncumulative Trust Securities;

      e.     Washington Mutual Preferred Funding Trust III (Delaware) Fixed-to-Floating Rated Perpetual Noncumulative Trust Securities;

      f.     Washington Mutual Preferred Funding Trust IV (Delaware) Fixed-to-Floating Rated Perpetual Noncumulative Trust Securities.

24.    The following series of WMPF preferred securities were issued in connection with the offerings of the trust preferred securities and were designed to include mirror-image terms for the purpose of funding payments to investors in the trust preferred securities:

      a.     Washington Mutual Preferred Funding LLC 7.25% Perpetual Noncumulative Preferred Securities, Series 2006-A;

      b.     Washington Mutual Preferred Funding LLC 7.25% Perpetual Noncumulative Preferred Securities, Series 2006-B;

      c.     Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Noncumulative Preferred Securities, Series 2006-C;

      d.     Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Noncumulative Preferred Securities, Series 2007-A;

      e.     Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Noncumulative Preferred Securities, Series 2007-B.

25.     The trust preferred securities were sold to investors subject to a "conditional exchange" feature under which the trust preferred securities would be exchanged into shares of preferred stock of WMI (or depositary shares relating thereto) if certain regulatory events occurred.

26.     As a condition to authorizing WMI to treat the trust preferred securities as core capital of WMI's principal thrift subsidiary, WMB, the OTS required WMI to provide a written commitment to the OTS that if there was a "conditional exchange," any resulting interest that WMI obtained in the trust preferred securities or, indirectly, in the WMPF preferred securities that funded those securities, would be contributed to WMB. WMI provided that commitment to the OTS in a letter dated February 23, 2006.

27.     On September 25, 2008, WMI entered into an Assignment Agreement with WMB (the "Assignment Agreement"). Under the Assignment Agreement, and effective upon its execution, WMI transferred to WMB, without recourse, all of its right, title and interest in and to all of the trust preferred securities, the WMPF preferred securities and the SPE subsidiaries of WMPF.

28.     Also on September 25, 2008, the OTS notified WMI that an "exchange event" occurred, triggering the "conditional exchange" feature of the trust preferred securities. Thereafter, a "conditional exchange" occurred automatically on September 26, 2008, at 8 a.m. Eastern time, when WMI issued a press release announcing the exchange event.

29.     An actual and ripe case and controversy exists with respect to the trust preferred securities. The trust preferred securities and related rights and assets are owned by WMB. Nevertheless, in this action and elsewhere, plaintiffs seek to rescind WMI's assignment, without recourse, of all of its right, title and interest with respect to the trust preferred securities or in the

alternative to improperly recover the liquidation preference associated with the trust preferred securities.

30.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, counterclaim plaintiff FDIC-Receiver requests that this Court enter a declaratory judgment to the following effect:

> a.     The trust preferred securities are owned by WMB.  WMI never owned the trust preferred securities; alternatively, any right, title or interest in the trust preferred securities ever held by WMI (or by any of its affiliates or subsidiaries other than WMB) was validly and effectively transferred to WMB pursuant to the Assignment Agreement; and

> b.     Pursuant to 11 U.S.C. § 365(o), WMI was deemed to have assumed and was required to cure any defects under the February 23, 2006 capital maintenance commitment and the Assignment Agreement as a condition to filing its petition under chapter 11 of the Bankruptcy Code.  As a result of such cure, any defect in the transfer of ownership of the trust preferred securities has been cured and all of WMI's right, title and interest to the trust preferred securities and other assets that are the subject of the February 23, 2006 capital maintenance commitment and of the Assignment Agreement have been validly transferred to WMB without recourse.

31.     In the alternative, the FDIC-Receiver requests that this Court enter a declaratory judgment that the FDIC-Receiver or JPMC, as its assignee, may record the transfer of ownership of the trust preferred securities in the ownership registers of the SPE subsidiaries of WMPF and

that such action will not affect the property of the plaintiffs' bankruptcy estates and therefore is

not subject to the automatic stay provided under section 362(a) of the Bankruptcy Code.

32.    JPMC claims an interest in the trust preferred securities as the purchaser of

substantially all of the assets of WMB under the P&A Agreement.  Accordingly, the FDIC-

Receiver names JPMC as an additional counterclaim defendant with respect to this Count.

### Count IV
### (Trust Preferred Securities)

33.    The FDIC-Receiver repeats the allegations of paragraphs 1 through 32 of these

Counterclaims as if fully restated herein.

34.    In the alternative, the FDIC-Receiver seeks judgment directing WMI to turnover

to the FDIC-Receiver, without recourse, all of the trust preferred securities and any right, title or

interest that plaintiffs may claim in or to the WMPF preferred securities or the SPE subsidiaries

of WMPF, because any such interests are held by WMI in trust for WMB.

35.    In the alternative, the FDIC-Receiver asserts a claim against WMI for the full

value of the trust preferred securities or for payment of the full amount of any liquidation

preference accompanying such trust preferred securities, together with the value of any right,

title or interest that plaintiffs may claim in or to the WMPF preferred securities or the SPE

subsidiaries of WMPF, and prejudgment interest accrued thereon at the applicable lawful rate.

### Count V
### (Intercompany Amounts)

36.    The FDIC-Receiver repeats the allegations of paragraphs 1 through 35 of these

Counterclaims as if fully restated herein.

37.    In asserting claims against the FDIC-Receiver for certain intercompany notes and

other intercompany amounts, plaintiffs have not taken into account amounts that are due and

payable by those entities under the system of intercompany settlement of accounts that was in

place prior to the receivership.  While reserving all of its defenses to plaintiffs' intercompany claims, the FDIC-Receiver also is entitled to payment of amounts owed to WMB by plaintiffs and their non-debtor subsidiaries with respect to such claims.

38.     Based on the investigation to date and subject to amendment based on further investigation, the FDIC-Receiver asserts claims against plaintiffs for intercompany amounts in the aggregate amount of $310,761,288.47.  Of this total, $273,616,108 reflects a general ledger entry in WMB's favor relating to the change in accounting for pension contributions in excess of pension expenses prior to the implementation of Statement of Financial Accounting Standards No. 158.  The other intercompany amounts owed to the FDIC-Receiver as successor to WMB are:

| Obligor/Description | Amount |
|---|---|
| Ahmanson Obligation Corp. (general ledger account 49328) | $6,676.78 |
| Washington Mutual Inc. (Payroll) (general ledger account 28462) | $17,369,814.37 |
| Washington Mutual 1031 Exchange (Payroll) (general ledger account 28497) | $37,024.10 |
| Ahmanson Residential Development (general ledger account 28058) | $214.50 |
| Sutter Bay Corp. (general ledger account 28088) | $56.12 |
| Washington Mutual Finance Group LLC (general ledger account 28108) | $49,754.56 |
| Washington Mutual 1031 Exchange (general ledger account 28040) | $55,508.19 |
| Washington Mutual Inc. (general ledger account 28162) | $17,829.35 |
| Washington Mutual Inc. (Clearing Account) (general ledger account 28162) | $3,239,907.00 |
| Washington Mutual Inc. (Sept. Mgmt Fees) (general ledger account 28162) | $14,530,007.97 |

| Obligor/Description | Amount |
|---|---|
| Washington Mutual Inc. (Stock Option Amort.) (general ledger account 28162) | $28,557.64 |
| Washington Mutual Inc. (Rent for Admin. Bldg.) (general ledger account 28162) | $58,652.00 |
| Washington Mutual Inc. (Clearing Account) (general ledger account 49896) | $1,751,137.89 |

39.     The FDIC-Receiver requests the entry of judgment in its favor for such amounts, together with prejudgment interest accrued thereon at the applicable lawful rate.

## Count VI
### (Deposit Accounts)

40.     The FDIC-Receiver repeats the allegations of paragraphs 1 through 39 of these Counterclaims as if fully restated herein.

41.     Plaintiffs have asserted that as of the petition date, they and certain of WMI's non-debtor subsidiaries had funds on deposit with WMB in the approximate amount of $707,000,000 and that WMI had funds on deposit with WMBfsb of approximately $3.67 billion. Plaintiffs' assertion that WMI deposit balances of $3.67 billion are held at WMBfsb, rather than at WMB, appears to be contradicted by certain of the documents that plaintiffs rely on for this assertion.  Without conceding that the funds at issue are in fact deposits, the funds are collectively referred to herein as the "Deposit Funds."

42.     Based on the various court filings by WMI and JPMC, there is a significant fact issue as to whether the Deposit Funds include commingled funds that are the property of WMB. Without limiting the foregoing, since the petition date $234,687,816 has been received in the disputed accounts as payment of tax refunds that are, in whole or substantial part, the property of WMB, for the reasons previously discussed.  It appears that additional funds that are WMB's property as tax-related assets also are or may be included among the Deposit Funds.

43.     In addition, JPMC has alleged that the September 2008 transfer of approximately $3.67 billion from one account to a different account was a mere "book entry" that was not accompanied by the transfer of assets.  This allegation, and the apparently contradictory documents relating to the alleged transfer and the account to which the funds were transferred, raise questions about the assets and liabilities assumed by JPMC pursuant to the P&A Agreement with respect to the disputed accounts and the funds contained therein.

44.     Further, JPMC has alleged that in the weeks leading up to the WMB receivership nearly a billion dollars were transformed from an unsecured general ledger debt that was not supported by good funds or collateral, and that had accumulated over several years, into purported demand deposit funds.  This accounting maneuver reflects a substantial portion of the $3.67 billion in funds that WMI claims to have transferred to WMBfsb and that makes up the majority of the Deposit Funds.

45.     Upon information and belief, WMI transferred or attempted to transfer the Deposit Funds from WMB to WMBfsb in anticipation of the possibility that WMB would be closed by bank regulators.  A current WMI employee has provided an affidavit in another litigation stating that (i) the attempt to transfer over $3 billion was initiated on September 18, 2008, only days before the OTS order closing WMB and at a time when WMB was in the midst of a deposit outflow that would eventually total $16.7 billion over a ten-day period, (ii) the transfer was intended to be for the "maximum amount" possible, and (iii) the intent of WMI's management in directing the action was "to transfer WMI's bank account to the more well-capitalized bank within the consolidated group."

46.     According to JPMC's allegations, the attempted $3.67 billion transfer of funds from WMB to WMBfsb did not involve the movement of any funds.  Instead, WMI caused

various accounting entries to be made in connection with the purported transfer of funds to reflect an immediate loan of the entire amount back to WMB from WMBfsb. In the event of a future order closing WMB but not the "more well-capitalized" WMBfsb, WMI would assert that it was entitled to immediate possession of the $3.67 billion, rather than requiring WMI to submit to the receivership claims process and the possibility of a reduced recovery in accordance with recoveries by other receivership creditors. At the same time, through the accounting entries, WMI purported to establish a $3.67 billion debt owed by WMB to its subsidiary, WMBfsb, when in fact some of the funds that were purportedly transferred from and then supposedly loaned back to WMB may have been WMB's property to begin with.

47.     Upon information and belief, the purpose for the attempted movement of the Deposit Funds to WMBfsb was an attempt to improve WMI's position against the FDIC and WMB's other creditors in anticipation of a possible WMB receivership. These also were the reasons for the reclassification of nearly one billion dollars in funds from other general ledger accounts into the purported deposit accounts in the weeks leading up to the receivership. These actions were undertaken with the intent to hinder, delay or defraud WMB, the FDIC or other federal banking agencies in the event that WMB was closed and the FDIC was appointed its receiver.

48.     The FDIC-Receiver demands judgment pursuant to 12 U.S.C. § 1821(d)(17) or other applicable law unwinding the fraudulent transfers described above and, separately, awarding to the FDIC-Receiver the amount of the Deposit Funds that are the property of WMB in an amount to be proven at trial.

49.     JPMC claims an interest in the dispute concerning the Deposit Funds as the purchaser of substantially all of the assets of WMB under the P&A Agreement. In addition,

JPMC assumed the disputed deposit accounts pursuant to the P&A Agreement and holds the funds that are at issue in the disputes regarding the Deposit Funds. Accordingly, the FDIC-Receiver names JPMC as an additional counterclaim defendant with respect to this Count.

### Count VII
### (Capital Maintenance Obligations)

50.     The FDIC-Receiver repeats the allegations of paragraphs 1 through 49 of these Counterclaims as if fully restated herein.

51.     As a thrift holding company, prior to the WMB receivership, WMI had statutory and regulatory obligations to maintain and guarantee the appropriate capital levels of WMB pursuant to applicable capital and liquidity requirements.

52.     Events since the closing of WMB have raised questions about whether WMI, WMB or their directors or officers were accounting and reserving for anticipated losses appropriately, thereby resulting in an overstatement of WMB's capital.

53.     WMI's failure to sufficiently maintain the appropriate capitalization of WMB damaged WMB in an unliquidated amount. The FDIC-Receiver demands judgment against WMI for such damages in an amount to be proven at trial.

### Count VIII
### (Unlawful Dividends)

54.     The FDIC-Receiver repeats the allegations of paragraphs 1 through 53 of these Counterclaims as if fully restated herein.

55.     The FDIC-Receiver may avoid and recover fraudulent transfers within five years before the receivership. The FDIC-Receiver's rights in this regard are superior to any rights of a trustee or any other party (other than any party which is a federal agency) under title 11.

56.     In addition, to the extent the FDIC-Receiver's claims relate to unlawful dividends paid, or other unlawful distributions made by WMB to its stockholders, or, as

successor by merger to New American Capital, Inc. ("NACI"), by NACI to its stockholders, the FDIC-Receiver may recover such amounts under applicable state law.

57.    Plaintiffs have asserted claims for recovery of various allegedly fraudulent transfers against the FDIC-Receiver in the amount of at least $10.5 billion.  In support of those claims, plaintiffs have alleged, inter alia, that "WMI or WMB may have been insolvent at the time" of the challenged transfers and that if "WMB was insolvent, had unreasonably small capital, and/or was unable to pay its own debt obligations as they matured, WMI did not receive any value in exchange" for certain transfers.

58.    If WMB or NACI was insolvent during some or all of the period within five years prior to the FDIC-Receiver's appointment on September 25, 2008, then the FDIC-Receiver may have claims for actual or constructive fraudulent transfers against WMI as the initial transferee, the institution-affiliated party, the person for whose benefit a transfer was made, or from any immediate or mediate transferee of any such initial transferee, for transfers of at least $15,041,000,000 in the form of cash dividends between September 2003 and September 2008. Of these dividends, $7.2 billion were distributed to WMI in 2006 and $5.49 billion were distributed to WMI in 2007.

59.    The FDIC-Receiver demands judgment against WMI for such unlawful transfers in an amount to be proven at trial.

**Count IX**
**(Goodwill Litigation)**

60.    The FDIC-Receiver repeats the allegations of paragraphs 1 through 59 of these Counterclaims as if fully restated herein.

61.    WMB is or was a plaintiff or the successor in interest to a plaintiff in certain litigation prior to the receivership or, if it was not a named plaintiff, was the real party in interest

in such litigation being prosecuted by WMI.  Without limiting the foregoing, this litigation

includes American Savings Bank FA v. United States, No. 92-872C (Fed. Court of Claims),

Anchor Savings Bank FSB v. United States, No. 95-39C (Federal Court of Claims) and

Washington Mutual Inc. v. Internal Revenue Service (W.D. Wash.).[2]

62.    The FDIC-Receiver succeeded to WMB's interests in such litigation and is the

rightful recipient of any recoveries therein.  To the extent that WMI has received or may in the

future receive any proceeds from such litigation that are the rightful property of WMB, any such

payments are held in trust for WMB.

63.    The FDIC-Receiver demands judgment for all such amounts held by WMI in an

amount to be proven at trial.

## Count X
## (Insurance Proceeds)

64.    The FDIC-Receiver repeats the allegations of paragraphs 1 through 63 of these

Counterclaims as if fully restated herein.

65.    Prior to the receivership, WMI and/or WMB purchased insurance for which

WMB was, at least in part, a named insured or an intended beneficiary.  Such insurance includes,

without limitation:  the 2007/2008 Lloyd's of London Washington Mutual Financial Institution

Blended Program, Policy No. 509/QA015407 and various policies of excess insurance relating

thereto (the "2007/08 Blended Tower"); the 2008/09 Aon Financial Institutions Bond, Electronic

and Computer Crime, Bankers Professional Liability, Employment Practices Liability and

Fiduciary Liability Policy, Policy No. B0823FD0806211 and various policies of excess

---

[2] The last of these cases was listed without a docket number in WMI's statement of
financial affairs dated December 19, 2008, filed in its bankruptcy case.  The action was not listed
in the subsequent version of WMI's statement of financial affairs.  Upon information and belief,
the action concerns tax issues relating to Winstar claims.

insurance relating thereto (the "2008/09 Blended Tower"); and the 2008/2009 XL Specialty Insurance Company Management Liability and Company Reimbursement Insurance Policy, Policy No. ELU104380-08 and National Union Policy No. 463-3347 (the "D&O Policies").

66.    To the extent that covered loss within the meaning of the relevant insurance policies has been suffered by WMB, the FDIC-Receiver is entitled to all proceeds paid under applicable insurance coverage for such loss.

67.    To the extent that proofs of loss with respect to WMB have been or may be filed with respect to such matters with the relevant insurer, the FDIC-Receiver is the rightful recipient of such insurance payments.  This includes, without limitation, proofs of loss submitted to the insurers under the 2007/08 Blended Tower on or about July 18, 2008 (C.I.P. Mortgage Company), September 17, 2008 (Encino, California), September 18, 2008 (Campbell Pruneyard, California) and October 3, 2008 (Newport Beach, California).

68.    To the extent such amounts have been paid, or are paid in the future, to WMI, those funds are held in trust for the FDIC-Receiver as the rightful recipient thereof.

69.    The FDIC-Receiver demands judgment from WMI for all such amounts, together with prejudgment interest at the applicable lawful rate.

## PRAYER FOR RELIEF

WHEREFORE, the FDIC-Receiver respectfully requests that the Court enter judgment dismissing with prejudice all of plaintiffs' claims against the FDIC-Receiver and granting all of the FDIC-Receiver's Counterclaims in favor of the FDIC-Receiver, together with interest, costs and attorneys' fees, and granting the FDIC-Receiver such other and further relief as the Court may deem just and proper.

Dated:  Washington, D.C.
      July 13, 2009

Respectfully submitted,

  /s/ David Clarke, Jr.                 
David Clarke, Jr. (D.C. Bar. No. 396002)
david.clarke@dlapiper.com
Deana L. Cairo (D.C. Bar No. 469628)
deana.cairo@dlapiper.com
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
Tel.:  (202) 799-4000
Fax:  (202) 799-5000

   - and –

John J. Clarke, Jr. (admitted *pro hac vice*)
john.clarke@dlapiper.com
Thomas R. Califano
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501

Attorneys for Defendant and Counterclaim Plaintiff
  Federal Deposit Insurance Corporation,
  as Receiver for Washington Mutual Bank

**CERTIFICATE OF SERVICE**

The undersigned attorney for the FDIC-Receiver certifies that on this 13th day of July

2009, she caused a copy of the foregoing document to be filed via ECF which will cause

electronic notice of its filing to be served on all parties who have appeared in this action.


       /s/ Deana L. Cairo                  
         Deana L. Cairo