**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WASHINGTON MUTUAL, INC. and
WMI INVESTMENT CORP.

               Plaintiffs,

    v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as receiver of
Washington Mutual Bank, and FEDERAL
DEPOSIT INSURANCE CORPORATION, in
its corporate capacity,

               Defendants.

Case No. 1:09-cv-0533 (RMC)

<u>ORAL ARGUMENT REQUESTED</u>

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MOTION TO DISMISS COMPLAINT, IN PART, BY DEFENDANT**
**<u>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER</u>**

David Clarke, Jr. (D.C. Bar. No. 396002)
Deana L. Cairo (D.C. Bar No. 469628)
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
Tel.:  (202) 799-4000
Fax:  (202) 799-5000

    - and –

John J. Clarke, Jr. (admitted *pro hac vice*)
Thomas R. Califano
Jeffrey D. Rotenberg
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501

Attorneys for Defendant
Federal Deposit Insurance Corporation,
as Receiver for Washington Mutual Bank

Dated:  August 6, 2009

## Table of Contents

Page

Table of Authorities ...................................................................................................ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 3

I.    PLAINTIFFS WAIVED COUNTS II, III AND IV BY FAILING TO
      INCLUDE THEM IN WMI'S PROOF OF CLAIM ......................................... 3

II.   EACH OF PLAINTIFFS' CLAIMS EXCEPT COUNT I FAILS TO STATE
      A CLAIM AGAINST THE FDIC-RECEIVER FOR ADDITIONAL REASONS ........ 7

      A.    There Is No Private Right of Action for "Dissipation" of
            Receivership Assets (Count II) ..................................................... 7

            1.    Section 1821(i)(2) Does Not Provide a Private Right of Action ............... 7

            2.    There Is No Implied Private Right of Action for "Dissipation of
                  Assets" or "Failure to Maximize the Value of Assets" .......................... 10

            3.    No Constitutional Issue Is Raised By the Fact That Plaintiffs Do
                  Not Have a Private Right of Action ....................................................... 12

      B.    Plaintiffs Do Not Have a Taking Claim Against the
            FDIC-Receiver (Count III) ........................................................ 13

      C.    Plaintiffs' Do Not Have a Claim Against the FDIC-Receiver
            Under Federal Tort Claims Act (Count IV) ................................ 14

      D.    Federal Law Expressly Bars Plaintiffs' Claim for Judicial Review
            of the Disallowance of Their Claim (Count V) ......................... 15

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR RECOVERY OF CAPITAL
      CONTRIBUTIONS TO WMI'S WHOLLY-OWNED SUBSIDIARY ...................... 17

CONCLUSION.......................................................................................................... 19

## Table of Authorities

Page

Cases

*Adagio Inv. Holding Ltd. v. F.D.I.C.,*
    338 F. Supp. 2d 71 (D.D.C. 2004) ...............................................................2, 12, 13

*Ameristar Fin. Servicing Co. LLC v. United States,*
    75 Fed. Cl. 807 (Fed. Cl. 2007) ..............................................................................14

*Ashcroft v. Iqbal,*
    ___U.S. ___, 129 S.Ct. 1937 (2009) ....................................................................3, 17

*Auction Co. of America v. F.D.I.C.,*
    141 F.3d 1198 (D.C. Cir. 1998) .............................................................................. 6-7

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)................................................................................................3, 17

*Branch v. F.D.I.C.,*
    825 F. Supp. 384 (D. Mass. 1993) ............................................................... 8-10, 17

*Brown Leasing Co. v. F.D.I.C.,*
    833 F. Supp. 672 (N.D. Ill. 1993), *aff'd*, 42 F.3d 1112 (7th Cir. 1994) ...................4

*Casa de Cambio Camdiv S.A. v United States,*
    291 F.3d 1356 (Fed. Cir. 2002).................................................................................12

*Chambers v. U.S. Dep't of Interior,*
    568 F.3d 998 (D.C. Cir. 2009) ..................................................................................17

*Clark v. Feder Semo and Bard, P.C.,*
    No. 07-470, 2009 WL 2053605 (D.D.C. July 16, 2009) ..........................................17

*Coleman v. F.D.I.C.,*
    826 F. Supp. 31 (D. Mass. 1993) ...............................................................................4

*Conley v. Gibson,*
    355 U.S. 41 (1957)............................................................................................ 3, 17-18

*Corbin v. Federal Reserve Bank of N.Y.,*
    458 F. Supp. 143 (S.D.N.Y. 1978)............................................................................12

*Courtney v. Halleran,*
    485 F.3d 942 (7th Cir. 2007) .....................................................................................2

*Courtney v. Halleran,*
No. 02-C-6926, 2005 WL 241471 (N.D. Ill. Feb. 1, 2005),
*aff'd,* 485 F.3d 942 (7th Cir. 2007) ................................................................2

*E.I. du Pont de Nemours & Co. v. F.D.I.C.,*
32 F.3d 592 (D.C. Cir. 1994) ......................................................................11

*F.D.I.C. v. Bierman,*
2 F.3d 1424 (7th Cir. 1993) ........................................................................15

*F.D.I.C. v. Meyer,*
510 U.S. 471 (1994)....................................................................................13

*F.D.I.C. v. Updike Bros., Inc.,*
814 F. Supp. 1035 (D. Wyo. 1993)..............................................................11

*First Empire Bank-New York v. F.D.I.C.,*
572 F.2d 1361 (9th Cir. 1978) ...................................................................8-9

*First Pacific Bancorp v. Helfer,*
224 F.3d 1117 (9th Cir. 2000) ...............................................................11-12

*Franklin Sav. Ass'n v. United States,*
970 F. Supp. 855 (D. Kan. 1997), *aff'd,* 180 F.3d 1124 (10th Cir. 1999) ...............15

*Freeman v. F.D.I.C.,*
56 F.3d 1394 (D.C. Cir. 1995) .....................................................................3

*Golden Pac. Bancorp. v. F.D.I.C.,*
375 F.3d 196 (2d Cir. 2004)........................................................................11

*Helm v. R.T.C.,*
43 F.3d 1163 (7th Cir. 1995) ......................................................................16

*Hindes v. F.D.I.C.,*
137 F.3d 148 (3d Cir. 1998)....................................................................10-11

*Hudson United Bank v. Chase Manhattan Bank of Conn.,*
43 F.3d 843 (3d. Cir. 1994).....................................................................5, 13

*Jung v. Ass'n of Am. Med. Colleges,*
300 F. Supp. 2d 119 (D.D.C. 2004) .............................................................12

*Lanigan v. R.T.C.,*
No. 91 C 7216, 1993 WL 189884 (N.D. Ill. June 2, 1993) .................................4

*McCarthy v. F.D.I.C.,*
348 F.3d 1075 (9th Cir. 2003) ......................................................................6

*Nat'l Trust for Historic Preservation v. F.D.I.C.*,
    21 F.3d 469 (D.C. Cir. 1994) ........................................................................12, 13

*Northwest LA Fish & Game Preserve Comm'n v. United States*,
    79 Fed. Cl. 400, 406 (Fed. Cl. 2007), *aff'd*, ___ F.3d ___,
    2009 WL 2341986 (Fed. Cir. July 31, 2009) .............................................13

*Rosa v. R.T.C.*,
    938 F.2d 383 (3d Cir. 1991) ..........................................................................6, 7

*Schock v. F.D.I.C.*,
    118 F. Supp. 2d 165 (D.R.I. 2000) ...............................................................11

*Sharpe v. F.D.I.C.*,
    126 F.3d 1147 (9th Cir. 1997) .......................................................................6

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) ......................................................................................10

*Transmission Access Policy Study Group v. F.E.R.C.*,
    225 F.3d 667 (D.C. Cir. 2000) ......................................................................14

*Village of Oakwood v. State Bank & Trust Co.*,
    539 F.3d 373 (6th Cir. 2008) .........................................................................5

*Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.)*,
    Civ. A. No. 95-1340, 1996 WL 148533 (D.D.C. Mar. 19, 1996)..................5-6

## Statutes and Rules

12 U.S.C. § 91 ...........................................................................................................8-9

12 U.S.C. § 194 .........................................................................................................8-9

12 U.S.C. § 1821(c)(13)(B)(ii) .................................................................................15

12 U.S.C. § 1821(d)(2) ..............................................................................................13, 15

12 U.S.C. § 1821(d)(5)(E) .........................................................................................2, 15-16

12 U.S.C. § 1821(d)(13)(D) ................................................................................. *passim*

12 U.S.C. § 1821(d)(15) ............................................................................................12

12 U.S.C. § 1821(i)(2) ...............................................................................................7-10

12 U.S.C. § 1821(j) ....................................................................................................2-3, 16

12 U.S.C. § 1823(d)(3)(C) .........................................................................................12

<u>Other Authorities</u>

FDIC, *Managing the Crisis:  The FDIC and RTC Experience* (1998) ..........................................10

H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418 (1989),
    *reprinted in* 1989 U.S.C.C.A.N. 86 ............................................................................ 3-4, 11

The Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank ("FDIC-Receiver"), respectfully submits this reply memorandum of law in further support of its motion for partial dismissal of the Complaint in this action (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

In their opposition memorandum, plaintiffs fail to address controlling authority cited in the FDIC-Receiver's opening brief, rely on inapposite authority or simply misconstrue statutes or judicial decisions in their effort to stave off dismissal. None of these efforts alters the ultimate conclusion, that Counts II through V of the Complaint and plaintiffs' claim for recovery of capital contributions (included as part of Count I) should be dismissed. Apart from the capital contributions claim, the FDIC-Receiver has not moved to dismiss Count I of the Complaint, in which plaintiffs seek a judicial determination with respect to WMI's disallowed receivership claims.

*First*, Counts II, III and IV of the Complaint are barred by 12 U.S.C. § 1821(d)(13)(D) because they were not included in WMI's proof of claim. Plaintiffs' argument that this jurisdictional bar does not apply because the claims are asserted against the FDIC "as a federal agency, rather than WMB," Pl. Op. at 10, ignores the plain language of the statute, which prohibits "any claim relating to any act or omission of . . . the [FDIC] as receiver," except as asserted through the receivership claims process. That provision applies to Counts II, III and IV of the Complaint, all of which turn on alleged acts or omissions of the FDIC-Receiver in selling WMB's assets in a post-receivership transaction with JPMorgan Chase Bank, N.A. ("JPMC"). Rather than admit their own failure, plaintiffs charge that the FDIC-Receiver "seeks to have this Court interpret the law in a manner that grants the FDIC unlimited discretion, completely immunizing its actions from any review." Pl. Opp. at 2. To the contrary, Congress provided a

mechanism for asserting claims against the FDIC as receiver, and plaintiffs failed to avail themselves of it.[1]

*Second,* each of those counts of the Complaint also does not state a claim against the FDIC-Receiver for other reasons.  There is no express or implied right of action for dissipation of the assets of a failed bank receivership, as asserted in Count II.  Nor can plaintiffs assert a taking claim against the FDIC-Receiver, as they assert in Count III.  Any such claim must be asserted against the United States in the Federal Court of Claims, and plaintiffs' passing suggestion in their opposition memorandum that the claim be transferred there is procedurally deficient.  Plaintiffs' claim for conversion under the Federal Tort Claims Act, Count IV of the Complaint, similarly cannot be asserted against the FDIC-Receiver.

*Third*, Count V of the Complaint challenges the FDIC-Receiver's disallowance of WMI's receivership claims.  No court has jurisdiction to entertain such a challenge, however.  *See* 12 U.S.C. § 1821(d)(5)(E) ("No court may review the Corporation's determination . . . to disallow a claim").  Plaintiffs' opposition never mentions this section of the statute, even though it directly applies.  Instead, they argue that a different provision of the statute, 12 U.S.C. § 1821(j), does not prohibit their request in Count V for a declaration that the disallowance is "void" and an order directing the FDIC-Receiver "to reconsider" their proof of claim.  *See* Pl. Opp. at 35; Compl., ¶ 97.  Section 1821(j), which prohibits any order that would "restrain or

---

[1] *Adagio Inv. Holding Ltd. v. F.D.I.C.*, 338 F. Supp. 2d 71, 79-80 (D.D.C. 2004), cited in plaintiffs' introduction, has no application here.  That decision "deals with an entirely different situation – the sweep of funds from one set of insured accounts to another set of uninsured accounts, all within the same bank," *Courtney v. Halleran*, 485 F.3d 942, 949 (7th Cir. 2007), and is distinguishable from cases such as this one where "the FDIC has acted according to its statutory power to transfer assets" of a failed bank, *Courtney v. Halleran*, No. 02-C-6926, 2005 WL 241471, at *4 (N.D. Ill. Feb. 1, 2005), *aff'd*, 485 F.3d 942 (7th Cir. 2007).

affect the exercise of powers or functions" of the FDIC-Receiver, also bars this claim. *See* 12 U.S.C. § 1821(j).

Finally, plaintiffs rely on outdated cases applying the now-abandoned deferential pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957), in arguing against dismissal of their claim to recover as allegedly fraudulent transfers $6.5 billion in capital contributions that WMI made to its wholly-owned subsidiary WMB. Transfers by a parent to a solvent subsidiary are for reasonably equivalent value. Plaintiffs do not overcome this rule with their admittedly "hypothetical" or "probabilistic" allegations that "WMI or WMB may have been insolvent at the time the Capital Contributions were made," Compl., ¶ 26, which plainly falls short of the pleading required by recent Supreme Court decisions. *See Ashcroft v. Iqbal*, ___U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). This conclusion is only reinforced by plaintiffs' own allegation that, according to the OTS, "WMB qualified was 'well-capitalized' under the OTS's regulatory capital regulations through the Receivership Date." Compl., ¶ 83.

## ARGUMENT

### I.    PLAINTIFFS WAIVED COUNTS II, III AND IV BY FAILING TO INCLUDE THEM IN WMI'S PROOF OF CLAIM

Under 12 U.S.C. § 1821(d)(13)(D), except to the extent pursued through FIRREA's exclusive receivership claims process, "no court shall have jurisdiction over . . . any claim relating to any act or omission of . . . the [FDIC] as receiver" for a failed depository institution. 12 U.S.C. § 1821(d)(13)(D)(ii). Along with every other Circuit to have addressed the issue, the D.C. Circuit has recognized that section 1821(d)(13)(D) "acts as a jurisdictional bar to claims or actions by parties who have not exhausted their § 1821(d) administrative remedies." *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1400 (D.C. Cir. 1995) (collecting cases); *see also* H.R. Rep. No. 101-

3

54(I), 101st Cong., 1st Sess. 418 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214 ("Resort to . . . the District Courts . . . is available only after the claimant has first presented its claim to the FDIC.).[2]

Plaintiffs admit that the claims now asserted in Counts II, III and IV of the Complaint (for "Dissipation of WMB's Assets," "Taking of Plaintiffs' Property Without Just Compensation" and "Conversion of Plaintiffs' Property") were not included in WMI's receivership proof of claim. *See* Pl. Opp. at 12. Plaintiffs do not address decisions cited in the FDIC-Receiver's opening memorandum holding that the failure to include a claim in a proof of claim constitutes a waiver and that a waived claim cannot be pursued in a subsequent district court action. *See* FDIC-Receiver Mem. at 10 (citing *Brown Leasing Co. v. F.D.I.C.*, 833 F. Supp. 672, 675-76 (N.D. Ill. 1993), *aff'd*, 42 F.3d 1112 (7th Cir. 1994); *Coleman v. F.D.I.C.*, 826 F. Supp. 31, 32 (D. Mass. 1993); *Lanigan v. R.T.C.*, No. 91 C 7216, 1993 WL 189884, *3 (N.D. Ill. June 2, 1993)).

Instead, plaintiffs contend that their three waived claims should be exempt from the receivership claims process because "claims against the FDIC, as a federal agency, as opposed to

---

[2] Section 1821(d)(13)(D) provides:

(D)     **Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over –

(i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii)     any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

the failed bank (*i.e.*, WMB) are not covered by the FIRREA Exhaustion Provisions." Pl. Opp. at 11. This assertion is without merit.

*First*, by its plain terms section 1821(d)(13)(D) applies to "any claim relating to any act or omission of . . . the [FDIC] as receiver" of a failed bank. Each of the three claims at issue unquestionably falls within this provision, since each of those three claims relates to an act or omission of the FDIC-Receiver, as receiver for WMB, that allegedly caused plaintiffs harm.[3] Indeed, in their opposition plaintiffs have now eliminated any doubt that it is the post-receivership conduct of the FDIC-Receiver they challenge, rather than some earlier act or omission. *See* Pl. Opp. at 29-30 ("Plaintiffs do not claim that the appointment of the FDIC-Receiver by the OTS was a taking. Rather, Plaintiffs claim that the FDIC expropriated the liquidation value of Plaintiffs' interests in WMB is a taking." (*sic*)).

*Second*, courts have rejected plaintiffs' argument that the jurisdictional bar applies only to claims against a failed bank and does not extend to claims against the FDIC as receiver of a failed bank. *See Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.)*, Civ. A. No. 95-1340, 1996 WL 148533, at *5 (D.D.C. Mar. 19, 1996); *see also, e.g., Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386-87 (6th Cir. 2008) (barring claims brought against assuming bank under purchase and assumption agreement, rather than against FDIC, because claims related to acts or omissions of the FDIC as receiver); *Hudson United Bank v. Chase*

---

[3] *See* Compl., ¶ 89 ("By failing to liquidate WMB in a manner allowing WMB's creditors and other claimants to recover what they would have recovered in a straight liquidation, the FDIC breached its statutory duty to maximize the net present value of WMB's assets"), *id.*, ¶ 92 (FDIC's "wasting of WMB's assets and failure to compensate Plaintiffs for their claims against WMB equivalent to what Plaintiffs would have received for such claims in a straight liquidation of WMB's assets constitutes a taking"), *id.*, ¶ 94 (the FDIC's "refusal to compensate Plaintiffs for property taken into the Receivership that (a) belonged to Plaintiffs rather than WMB, (b) was improperly transferred to WMB, and/or (c) is property that otherwise should be returned to Plaintiffs under applicable law, constitutes conversion of Plaintiffs' property").

*Manhattan Bank of Conn.,* 43 F.3d 843, 849 (3d. Cir. 1994) ("Treating claims against the receiver differently from claims against the institution would foster inefficiency by forcing the FDIC to 'defend actions at various locations throughout the country, with the attendant disruption of the Bank's records and personnel . . . ."); *Rosa v. R.T.C.*, 938 F.2d 383, 392-93 (3d Cir. 1991) (applying jurisdictional bar to claims against RTC as receiver as well as failed banks).

Judge Lamberth's decision in *Washington Bancorp.* illustrates that this is not just a "broader reading" of the jurisdictional bar that is followed "in some other circuits," as plaintiffs contend in a footnote. *See* Pl. Opp. at 12 n.24. To the contrary, it is the law in this Court as it is elsewhere. Plaintiffs' attempt to distinguish those cases as involving "post-receivership claims" ignores the fact that all of the claims asserted in Counts II, III and IV are based only on alleged post-receivership conduct of the FDIC-Receiver. *See* Pl. Opp. at 29-30.[4]

*Third*, plaintiffs' reliance on *Auction Co. of America v. F.D.I.C.*, 141 F.3d 1198 (D.C. Cir. 1998), is entirely misplaced. The D.C. Circuit in *Auction Co.* recognized that the jurisdictional bar expressly applies to any claim asserted against the FDIC as receiver for a specific failed depository institution. *Id.* at 1201. However, the contract that was the source of the controversy there was broader, relating to auction services by the plaintiff to the FDIC for "an unspecified number of unnamed depositories." *Id.* The court concluded that the jurisdictional bar did not reach a claim that the FDIC had breached that contract, concluding that "[i]f the FDIC enters into a transaction whose economic realities are impossible to square with the notion that the FDIC is acting as receiver for a particular depository, liability for its acts will

---

[4] Plaintiffs cite *Sharpe v. F.D.I.C.*, 126 F.3d 1147 (9th Cir. 1997) in a footnote. The Ninth Circuit itself subsequently limited *Sharpe* to its specific facts, which are inapplicable here, and reiterated that the scope of the jurisdictional bar of section 1821(d)(13)(D) was to be determined based on the plain language of the statute. *See McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1077-79 (9th Cir. 2003). *McCarthy* also recognized that the jurisdictional bar requires a claimant to exhaust the receivership claims process for claims against the FDIC as receiver. *Id.* at 1081.

run to the FDIC directly, unmediated by exhaustion requirements governing claims against depositories." *Id.* at 1201-02.  No such circumstances are presented here, however, where all of plaintiffs' claims unquestionably arise directly from alleged acts or omissions of the FDIC-Receiver as receiver for WMB.

*Finally*, plaintiffs argue that "the FDIC's position is illogical" that their claims have been waived because, they assert, their dissipation, taking and conversion claims did not accrue until their proof of claim was disallowed.  *See* Pl. Opp. at 12.  This argument is undermined by the allegations in plaintiffs' own Complaint, which alleges that the cause of plaintiffs' harm was the FDIC-Receiver's sale of assets to JPMC on September 25, 2008, over three months before the bar date for filing receivership proofs of claim on December 30, 2008.  *See* Compl., ¶¶ 8, 10, 85-90, 92, 94.[5]

## II.    EACH OF PLAINTIFFS' CLAIMS EXCEPT COUNT I FAILS TO STATE A CLAIM AGAINST THE FDIC-RECEIVER FOR ADDITIONAL REASONS

### A.    There Is No Private Right of Action for "Dissipation" of Receivership Assets (Count II)

The cases cited in the FDIC-Receiver's opening memorandum show that plaintiffs have no private right of action for an alleged failure by the FDIC-Receiver to maximize the value of receivership assets.  *See* FDIC-Receiver Mem. at 11-15.  None of plaintiffs' arguments leads to a different outcome.

#### 1.    <u>Section 1821(i)(2) Does Not Provide a Private Right of Action</u>

Plaintiffs first argument is that Congress granted them an *express* private right of action under 12 U.S.C. § 1821(i)(2) for the FDIC-Receiver's alleged sale of "WMB's assets to JPMC

---

[5] Plaintiffs' suggestion that their omission of claims in their proof of claim should be excused as futile must be rejected.  *See Rosa*, 938 F.2d at 395.  Such a futility exception would swallow the exhaustion requirement and defeat the purpose of the jurisdictional bar.

for less than their liquidation value." Pl. Opp. at 16. In fact, section 1821(i)(2) was enacted to limit creditor recoveries in the receivership claims process, not to provide a right of action. *See Branch v. F.D.I.C.*, 825 F. Supp. 384, 412-14 (D. Mass. 1993) ("to the extent that *First Empire* and its progeny required full payment to unassumed creditors *above the liquidation value of their claims*, those cases were effectively overruled on that point by section 1821(i)(2)") (emphasis in original).

Section 1821(i)(2), entitled "Maximum Liability," provides:

> The maximum liability of the Corporation, acting as a receiver or in any other capacity, to any person having a claim against the receiver or the insured depository institution for which such receiver is appointed shall equal the amount such claimant would have received if the Corporation had liquidated the assets and liabilities of such institution without exercising the Corporation's authority under subsection (n) of this section or section 1823 of this title.

12 U.S.C. § 1821(i)(2). The text of the statute itself limits potential recoveries in the receivership claims process. Nowhere does it provide, expressly or by implication, that claimants have been provided a private right of action.

Plaintiffs make the incredible assertion that "[i]n enacting section 1821(i), Congress acquiesced to prior decisions finding that the FDIC is liable to bank creditors when it breaches its statutory receivership duties." Pl. Opp. at 18 (citing *First Empire Bank-New York v. F.D.I.C.*, 572 F.2d 1361, 1369-71 (9th Cir. 1978)). That contention is false. In fact, in enacting section 1821(i)(2) Congress "effectively overruled" *First Empire* and its progeny, which had construed two sections of the National Bank Act to require that all creditors of a failed national bank receive ratable distributions even if that requirement interfered with a resolution transaction arranged by the FDIC.[6]

---

[6] The National Bank Act does not apply to WMB, which was not a national bank but was, instead, a savings association chartered pursuant to the Home Owners' Loan Act. *See* Compl.,

In *Branch v. F.D.I.C.*, the district court explained the genesis of section 1821(i)(2) and the reason for its enactment as part of FIRREA in 1989. Before FIRREA, "courts interpreted sections 91 and 194 of the [National Bank Act] to require the FDIC, if it arranged for the purchase and assumption of some creditors' claims at 100%, to pay off all creditors' claims at 100% . . . ." 825 F. Supp. at 412 (discussing *First Empire Bank-New York v. F.D.I.C.*, 572 F.2d 1361 (9th Cir. 1978)). After the decision in *First Empire*, courts followed it and "found that the [National Bank Act] prevents the FDIC from structuring a purchase and assumption transaction so that some creditors receive one hundred percent while others receive only the liquidation value of their claims or some lesser amount." *Id.* at 413.

Section 1821(i) was added by FIRREA to address this issue. As the *Branch* court observed, the section "*limits the FDIC's maximum liability under section 194* [of the National Bank Act] to any person having a claim against the receiver or the failed bank to the amount that claimant would have received had the FDIC simply liquidated the assets and liabilities of the bank." *Id.* at 414 (emphasis added) (citing 12 U.S.C. § 1821(i)(2)). "[U]nder section 1821(i)(2)," the *Branch* court explained, "even if some creditors receive 100% payment on their claims under a purchase and assumption due to FDIC assistance, other creditors remain entitled only to the amount they would have received had the bank been liquidated, and thus are not entitled to a pro rata distribution from amounts donated by the FDIC. . . . Thus, to the extent that First Empire and its progeny required full payment to unassumed creditors above the liquidation

---

¶ 1. Section 194 of the National Bank Act, 12 U.S.C. § 194, requires the receiver of a failed national bank to make a ratable dividend on "all such claims as may have been proved to [its] satisfaction or adjudicated in a court of competent jurisdiction." Section 91 of the NBA, 12 U.S.C. § 91, invalidates transfers made "with a view to prevent the application of assets in the manner prescribed by [the NBA]."

value of their claims, those cases were effectively overruled on that point by section 1821(i)(2)." *Branch*, 825 F. Supp. at 414.[7]

As *Branch* makes clear, section 1821(i)(2) has exactly the opposite effect from plaintiffs' reading of it. The section limits the FDIC's liability to receivership creditors and does not, as plaintiffs contend, give rise to any entitlement by creditors to a greater recovery.[8]

### 2. There Is No Implied Private Right of Action for "Dissipation of Assets" or "Failure to Maximize the Value of Assets"

Plaintiffs' arguments that some private right of action should be implied from the FDIC-Receiver's role as a receiver are equally unavailing. As the Supreme Court has recognized, "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979). Here, both the case law and the express provisions of the FDI Act preclude implication of the private right of action that plaintiffs attempt to assert.

Like plaintiffs here, in *Hindes v. F.D.I.C.*, 137 F.3d 148 (3d Cir. 1998), stockholders of a failed bank asserted claims against the FDIC as receiver for alleged violation of its statutory duties to maximize gains and minimize loss in its disposition of receivership assets. The Third Circuit examined the relevant statutory provisions, and their legislative history, and concluded that no private right of action was provided or implied. *See Hindes*, 137 F.3d at 169-71

---

[7] Plaintiffs' reliance on an incomplete excerpt from an FDIC publication discussing section 1821(i)(2) is similarly inapt. *See* Pl. Opp. at 18 n.35 (quoting FDIC, *Managing the Crisis: The FDIC and RTC Experience*, 253 (1998)). The full paragraph explains that as a result of the section "the unassumed creditors were entitled to receive only what they would have received in a hypothetical liquidation, even though assumed creditors received payment in full," and "the FDIC, at its sole discretion and in the interest of minimizing its losses, could use its own resources to make additional payments to any creditor or class of creditors without being obligated to make the same payment to any other creditor or class of creditors."

[8] In addition, the FDIC-Receiver joins in the argument by FDIC-Corporate that Count II asserts a tort claim that is subject to the requirements and limitations of the Federal Tort Claims Act. *See* FDIC-Corporate Reply Mem. at 4-5.

(discussing 12 U.S.C. § 1821(d)(13)(E)).  The Third Circuit found that there was "no evidence of a congressional intent to provide for a private remedy.  Because such intent is our ultimate guidepost," the court continued, "we find that shareholders of a failed financial institution do not have a private right of enforcement of the FDIC's duty to maximize gain and minimize loss in its disposition of the institution's assets."  *Id.* at 170.  As the *Hindes* court explained:

> The duty to maximize gain in the disposition of assets has implications broader than to benefit shareholders.  The FDIC's duty to maximize gain and minimize loss primarily is intended to benefit the insurance fund by minimizing the claims against it, thereby reducing the cost to the taxpayers.  Thus, the benefits gained by the shareholders and other claimants are incidental to the primary intended beneficiaries, the insurance fund and the taxpayers.

*Id.* at 170; *see also F.D.I.C. v. Updike Bros., Inc.*, 814 F. Supp. 1035, 1041-42 (D. Wyo. 1993) (duty owed not to claimants but to "the American public at large") (citing H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., 1, 514-15, *reprinted in* 1989 U.S.C.C.A.N. 86, 308-309 (Congress was particularly concerned about the strain that the savings and loan bailout would have on the American taxpayers who are to shoulder approximately $183 billion dollars worth of the burden).

None of the post-FIRREA cases cited by plaintiffs contradict this holding in *Hindes*.  *See Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2d Cir. 2004) (not addressing the issue in affirming summary judgment in favor of FDIC); *E.I. du Pont de Nemours & Co. v. F.D.I.C.*, 32 F.3d 592 (D.C. Cir. 1994) (discussing breach of contract claim and applicability of *D'Oench* doctrine); *Schock v. F.D.I.C.*, 118 F. Supp. 2d 165 (D.R.I. 2000) (finding FDIC as receiver was not an "agency of the United States" under Equal Access to Justice Act).  In the lone decision cited by plaintiffs that addressed the question, *First Pacific Bancorp v. Helfer*, 224 F.3d 1117 (9th Cir. 2000), the Ninth Circuit allowed an action for an accounting (relief not sought by

plaintiffs here) but cautioned that "we neither imply nor suggest that 12 U.S.C. § 1821(d)(15) creates a private right of action for monetary damages." *Helfer,* 224 F.3d at 1128.[9]

Finally, an implied private right of action would contravene the express language of the jurisdictional bar of section 1821(d)(13)(D). Under that section, "no court shall have jurisdiction over," *inter alia*, "any claim relating to any act or omission" of the FDIC-Receiver. *See* 12 U.S.C. § 1821(d)(13)(D).[10] Along with the rest of the statutory framework that governs its actions, this express provision distinguishes the FDIC-Receiver from other types of receivers who might be subject to suit at common law. *See* Pl. Opp. at 19-20.[11]

### 3. No Constitutional Issue Is Raised By the Fact That Plaintiffs Do Not Have a Private Right of Action

Plaintiffs' last argument as to their "dissipation" claim is that a private right of action should be implied to avoid "serious constitutional problems." *See* Pl. Opp. at 27 (citing *Nat'l Trust for Historic Preservation v. F.D.I.C.*, 21 F.3d 469, 472 (D.C. Cir. 1994); *Adagio Inv. Holding Ltd. v. F.D.I.C.*, 338 F. Supp. 2d 71, 82 n.19 (D.D.C. 2004)). No due process concerns are raised, however, by requiring plaintiffs, like all other claimants, to abide by the exclusive receivership claims process that is protected by the jurisdictional bar of section 1821(d)(13)(D).

---

[9] The decision in *Corbin v. Federal Reserve Bank of N.Y.*, 458 F. Supp. 143 (S.D.N.Y. 1978), was decided over a decade before the enactment of FIRREA and therefore considered issues arising under a dramatically different statutory framework.

[10] Plaintiffs point to section 1823(d)(3)(C) as another alleged source of a right of action. That provision only applies in connection with sales of assets by the FDIC as receiver to the FDIC in its corporate capacity *See* 12 U.S.C. § 1823(d)(3)(C). It has no application to this case, in which no such transaction is at issue.

[11] The Complaint does not contain any claim for "illegal exaction," and plaintiffs cannot amend their pleading by asserting that argument in response to a motion to dismiss. *See, e.g., Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004). In any event, plaintiffs never paid any money to anyone at the direction of the government for the benefit of the government, and their assertion of an illegal exaction theory is insupportable. *See Casa de Cambio Camdiv S.A. v United States*, 291 F.3d 1356, 1364 (Fed. Cir. 2002)

*See Hudson United Bank*, 43 F.3d at 851-52. Indeed, the fact that plaintiffs are before this Court seeking a judicial determination of the receivership claims that were submitted to, and disallowed by, the FDIC-Receiver demonstrates that plaintiffs have been provided more than sufficient procedural due process.[12]

### B.    Plaintiffs Do Not Have a Taking Claim Against the FDIC-Receiver (Count III)

Plaintiffs' opposition memorandum does not cure any of the significant infirmities to their taking claim that were identified in the FDIC-Receiver's opening brief. To the contrary, plaintiffs now concede that they "do not claim that the appointment of the FDIC-Receiver by the OTS was a taking." Pl. Opp. at 29. Under 12 U.S.C. § 1821(d)(2)(A)(i), upon its appointment as receiver for WMB, the FDIC-Receiver "by operation of law" succeeded to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder . . . of such institution with respect to the institution and the assets of the institution."

Plaintiffs' argue that *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994), does not bar their taking claim because it does not assert a constitutional tort but instead asserts a claim under the just compensation clause.[13]  *See* Pl. Op.. at 31-32. The D.C. Circuit has recognized, however, that

---

[12] *Nat'l Trust* concerned the scope of the prohibition in 12 U.S.C. § 1821(j) against injunctions that restrain or affect the exercise of the FDIC's powers as conservator or receiver, and held that the order at issue violated that statute. 21 F.3d at 470-71. In *Adagio*, the parties agreed that the plaintiffs had exhausted their administrative remedies and were properly before the district court. *See* 338 F. Supp. 2d at 76. The court concluded that the actions of the FDIC as receiver were subject to review in that exclusive claims process. *Id*. at 82 n.19.

[13] Plaintiffs' own allegations contradict this assertion. *See* Compl., ¶ 92 ("FDIC's *wasting of assets* and failure to compensate Plaintiffs for their claims equivalent to what Plaintiffs would have received for such claims in a straight liquidation of WMB's assets constitutes a taking . . .") (emphasis added). Courts have recognized that allegations asserting allegedly wrongful conduct are not actionable as a taking. *See, e.g., Northwest LA Fish & Game Preserve Comm'n v. United States*, 79 Fed. Cl. 400, 406 (Fed. Cl. 2007) ("contentions that the government's action . . . was 'improper and unlawful' are allegations that the government's

"[t]he remedy of just compensation is not within our jurisdiction but that of the United States

Court of Federal Claims, under the Tucker Act, 28 U.S.C. § 1491." *Transmission Access Policy*

*Study Group v. F.E.R.C.*, 225 F.3d 667, 690 (D.C. Cir. 2000) (collecting cases).  Moreover, the

FDIC-Receiver is not the United States for the purpose of such claims.  *See, e.g., Ameristar Fin.*

*Servicing Co. LLC v. United States*, 75 Fed. Cl. 807, 810-12 (Fed. Cl. 2007).

The FDIC-Receiver joins in the arguments by FDIC-Corporate that plaintiffs' passing

and informal request in their opposition memorandum to substitute the United States into this

action or to transfer their taking claim to the Court of Federal Claims is procedurally defective

and should be denied.  *See* FDIC-Corporate Reply Mem. at 6.

### C. Plaintiffs Do Not Have a Claim Against the FDIC-Receiver Under the Federal Tort Claims Act (Count IV)

In response to the FDIC-Receiver's argument that plaintiffs' claim for conversion under

the Federal Tort Claims Act can be asserted, if at all, against the United States and not the FDIC-

Receiver, plaintiffs add one sentence to their opposition stating that they move to "substitute the

United States as the defendant for" this claim.  Pl. Opp. at 33.  Once again, this perfunctory

statement is procedurally defective and should be denied, for the reasons set forth in FDIC-

Corporate's reply.[14]  *See* FDIC-Corporate Reply Mem. at 4-5.  For the reasons previously

discussed, this Court lacks subject matter jurisdiction over the United States for any such claim.

See FDIC-Receiver Mem. at 17-22.[15]

---

conduct was tortious and such contentions are not proper in the context of a takings claim."), *aff'd*, ___ F.3d ___, 2009 WL 2341986 (Fed. Cir. July 31, 2009).

[14] The fact that plaintiffs provided a copy of their Complaint to the United States Attorney's Office and the Attorney General is of no consequence:  they were required to do so under Federal Rule of Civil Procedure 4(i), as they admit.  *See* Pl. Opp. at 33.

[15] The FDIC-Receiver has never "effectively concede[d]" that their proof of claim in any way constitutes a sufficient demand under the FTCA.  Pl. Opp. at 34.

Plaintiffs' contention that the discretionary function exception does not apply to the FDIC-Receiver's alleged "exercise of possession over and refusal to return the property at issue," Pl. Opp. at 34-35, raises another false distinction. By statute, the FDIC-Receiver's discretionary authority includes the right to "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer," 12 U.S.C. § 1821(d)(2)(G)(i)(II), to "take any action" which it "determines is in the best interests of the depository institution, its depositors, or the Corporation," *see* 12 U.S.C. § 1821(d)(2)(J)(ii), and to "make any other disposition of any matter concerning the institution . . . ." *See* 12 U.S.C. § 1821(c)(13)(B)(ii). Plaintiffs' claims certainly challenge acts that fall within the FDIC-Receiver's statutory discretionary functions. *See F.D.I.C. v. Bierman*, 2 F.3d 1424, 1441 (7th Cir. 1993) (applying exception to bar affirmative defenses against FDIC because the responsibilities that fall to the FDIC when a federally-insured financial institution has failed "require quick and complex decisionmaking"); *see generally Franklin Sav. Ass'n v. United States,* 970 F. Supp. 855, 866-67 (D. Kan. 1997) ("If private financial institutions could sue regulatory agencies for negligently performing discretionary functions, the ability of those agencies to act in the public's best interest would be compromised."), *aff'd*, 180 F.3d 1124 (10th Cir. 1999).

**D.     Federal Law Expressly Bars Plaintiffs' Claim for Judicial Review
of the Disallowance of Their Claim (Count V)**

Under 12 U.S.C. § 1821(d)(5)(E), "[n]o court may review the Corporation's determination pursuant to subparagraph (D) to disallow a claim." The FDIC-Receiver cited this unambiguous provision in explaining why Count V of the Complaint should be dismissed. In that count, plaintiffs ask the Court to declare the FDIC-Receiver's disallowance of plaintiffs' receivership claims to be "void." *See* Compl., ¶¶ 96-97. Plaintiffs do not cite section

1821(d)(5)(E), nor do they make any attempt to suggest it does not apply.  They also fail to

address the decision in *Helm v. R.T.C.*, 43 F.3d 1163, 1165 (7th Cir. 1995), which held that

courts do not have subject matter over a claim seeking review of a claim disallowance by virtue

of section 1821(d)(5)(E).

Instead, plaintiffs' arguments are limited to contending that an entirely different section

of the statute, 12 U.S.C. § 1821(j), does not bar their effort to seek review of the disallowance.

*See* Pl. Opp. at 35.  Section 1821(j) provides that:  "Except as provided in this section, no court

may take any action . . . to restrain or affect the exercise of powers or functions of the

Corporation as a conservator or receiver."  Like section 1821(d)(5)(E), section 1821(j) by its

terms bars plaintiffs' claim seeking an order directing the FDIC-Receiver "to reconsider

Plaintiffs' Proof of Claim as if FDIC-Receiver's January 23rd disallowance never occurred."

Compl., ¶ 97.

Plaintiffs only response is that in disallowing their claim the FDIC-Receiver somehow

acted "beyond or contrary to" its statutory powers.  Pl. Opp. at 35.  Plaintiffs do not identify any

fact to suggest that the FDIC-Receiver acted outside of its statutory authority other than their

disappointment at the disallowance of their receivership claims.  Any disappointed claimant

could make the same argument, however, and neither case cited by plaintiffs supports such a

broad nullification of the plain language of section 1821(j).

The FDI Act provides an avenue for relief for plaintiffs' disappointment with the

disallowance of their claims.  Plaintiffs availed themselves of it when they filed this action.  *See*

12 U.S.C. § 1821(d)(6)(A).  No separate claim is permitted seeking to review and overturn that

disallowance.

III.    **PLAINTIFFS FAIL TO STATE A CLAIM FOR RECOVERY OF CAPITAL CONTRIBUTIONS TO WMI'S WHOLLY-OWNED SUBSIDIARY**

In two recent decisions, the Supreme Court has held that the deferential "no set of facts" standard of pleading articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), is no longer the governing standard for motions to dismiss.  *See Ashcroft v. Iqbal*, ___U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).[16]  Plaintiffs' claim for recovery of $6.5 million in capital contributions that WMI made to its wholly-owned subsidiary WMB falls far short of the pleading standard now required.  Indeed, plaintiffs now concede that they have pleaded this claim "probabilistically" or "hypothetically."  Pl. Opp. at 44.

Plaintiffs do not allege that WMI or WMB was insolvent at the time of the capital contributions at issue.  To the contrary, they go no farther than to allege that "WMI or WMB *may have been* insolvent at the time the Capital Contributions were made."  Compl., ¶ 26 (emphasis added).  Under *Iqbal* and *Twombly*, this speculative allegation is fatal.  As the FDIC-Receiver explained in its opening memorandum, "transfers to a solvent subsidiary are considered to be for reasonably equivalent value because, since the parent is the sole stockholder of the subsidiary corporation, any benefit received by the subsidiary is also a benefit to the parent." *Branch*, 825 F. Supp. at 399-400.  Not only have plaintiffs failed to allege that WMB was *actually insolvent* at any relevant time, their Complaint elsewhere alleges the opposite – that WMB was "well-capitalized" through the date of the appointment of the FDIC-Receiver.  Compl., ¶ 83.

---

[16] *See, e.g., Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1006 (D.C. Cir. 2009) (applying *Iqbal* and *Twombly* in affirming dismissal of claim under the Privacy Act); *Clark v. Feder Semo and Bard, P.C.*, No. 07-470, 2009 WL 2053605, at *3 (D.D.C. July 16, 2009) (applying *Iqbal* and *Twombly* in dismissing ERISA and common law claims).

17

Plaintiffs' arguments against dismissal of their admittedly speculative fraudulent transfer claim are based entirely on cases applying the now-abandoned *Conley* standard. *See* Pl. Opp. at 43-44. Given their own allegations, plaintiffs are not entitled to any assumption or inference that WMB was insolvent, and their fraudulent transfer claims must be dismissed. *See, e.g., Iqbal*, 129 S.Ct. at 1949-50.

Nor are plaintiffs entitled to any deference based on their claims to a "skeleton staff" and purported lack of business records. Pl. Opp. at. 44-45. To date in this litigation, plaintiffs' "seventeen" employees have been supplemented by phalanxes of attorneys at four different law firms who have filed scores of pleadings, motions, briefs and other papers in three different courts in the previous three months. The resources available to plaintiffs in this litigation are extensive.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in its opening memorandum of law, the FDIC-Receiver respectfully requests that its motion to dismiss be granted with prejudice.

Dated:  Washington, D.C.                      Respectfully submitted,
        August 6, 2009

                                               s/ David Clarke, Jr.
                                        David Clarke, Jr. (D.C. Bar. No. 396002)
david.clarke@dlapiper.com
Deana L. Cairo (D.C. Bar No. 469628)
deana.cairo@dlapiper.com
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
Tel.:  (202) 799-4000
Fax:  (202) 799-5000

         - and –

John J. Clarke, Jr. (admitted *pro hac vice*)
john.clarke@dlapiper.com
Thomas R. Califano
Jeffrey D. Rotenberg
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501

Attorneys for Defendant
Federal Deposit Insurance Corporation,
 as Receiver for Washington Mutual Bank

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney for the FDIC-Receiver certifies that on this 6th day of August 2009, he caused a copy of the foregoing document to be filed via ECF which will cause electronic notice of its filing to be served on all parties who have appeared in this action.


     /s/   John J. Clarke, Jr.
                John J. Clarke, Jr.