# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON MUTUAL, INC. and WMI INVESTMENT CORP. | Case No. 1:09-cv-0533 (RMC) |
|       Plaintiffs and Counterclaim Defendants, | |
|    v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, | |
|       Defendant, | |
|   - and - | <u>ORAL ARGUMENT REQUESTED</u> |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver of Washington Mutual Bank, | |
|       Defendant and Counterclaim Plaintiff, | |
|    v. | |
| JPMORGAN CHASE BANK, N.A., | |
|       Counterclaim Defendant. | |

## MEMORANDUM OF LAW OF THE FDIC-RECEIVER IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS AND TO STAY ALL PROCEEDINGS

David Clarke, Jr. (D.C. Bar. No. 396002)
Deana L. Cairo (D.C. Bar. No. 469628)
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C. 20004
Tel.: (202) 799-4000
Fax: (202) 799-5000

Attorneys for the Federal Deposit Insurance
Corporation, as Receiver for Washington Mutual Bank

Dated: September 4, 2009

**Table of Contents**

Page

Table of Authorities ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ....................................................................................................... 2

    A.    Nature and Stage of the Proceedings ................................................... 2

    B.    WMI's Bankruptcy Court Litigation with JPMC ................................. 4

    C.    The FDIC-Receiver's Counterclaims ................................................... 6

ARGUMENT:  PLAINTIFFS' MOTION SHOULD BE DENIED IN
              ITS ENTIRETY ................................................................................. 7

I.     THE COUNTERCLAIMS STATE CLAIMS FOR RELIEF THAT
      SHOULD BE ADDRESSED IN THIS ACTION ......................................... 7

    A.    The Counterclaims State a Claim Upon Which Relief
         Can Be Granted ..................................................................................... 8

        1.    Taxes (Count I and II) ............................................................... 8

        2.    Trust Preferred Securities (Counts III and IV) ...................... 12

        3.    Deposit Accounts (Count VI) ................................................. 16

        4.    Failure to Adequately Maintain WMB's Capital (Count VII) ................. 17

        5.    Goodwill Litigation and Insurance Proceeds (Counts IX and X) ........... 18

    B.    The Counterclaims Are Not Subject to the Automatic Stay
         Under 11 U.S.C. § 362 ........................................................................ 20

        1.    The Automatic Stay Does Not Apply to Claims That
            Arise Post-Petition ................................................................. 20

        2.    The Automatic Stay Does Not Apply to Recoupment Claims ............... 24

        3.    The Automatic Stay Does Not Apply to Property in Which Debtors
            Have No Equitable Interest .................................................... 26

        4.    Dismissal Is Not An Appropriate Remedy Even if the Automatic
            Stay Is Found to Apply to Any of the Counterclaims ............................. 28

Page

    C.    The Bankruptcy Court Does Not Have Exclusive Jurisdiction Over the
        FDIC-Receiver's Counterclaims........................................................................ 29

II.    PLAINTIFFS' MOTION FOR A DISCRETIONARY STAY
    SHOULD BE DENIED ................................................................................................. 33

CONCLUSION.................................................................................................................... 36

## Table of Authorities

Page

### Cases

*ACandS, Inc. v. Travelers Cas. & Sur.,*
  435 F.3d 252 (3d Cir. 2006)........................................................................................23

*Adelphia Comms. Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*
  *(In re Adelphia Comms. Corp.)* 298 B.R. 49 (S.D.N.Y. 2003)....................................19

*All Seasons Kitchen, Inc. v. F.D.I.C. (In re All Seasons Kitchen, Inc.),*
  145 B.R. 391 (Bankr. D. Vt. 1992).............................................................................30

*Amsave Credit Corp. v. R.T.C. (In re Am. Mortgage & Inv. Servs.),*
  141 B.R. 578 (Bankr. D.N.J. 1992) ............................................................................31

*\*Ashcroft v. Iqbal,*
  ___ U.S. ___, 129 S. Ct. 1937 (2009)...................................................................8, 17

*Ass'n of Am. Med. Coll. v. Princeton Review, Inc.,*
  332 F. Supp. 2d 11 (D.D.C. 2004) ...............................................................................8

*\*Avellino & Bienes v. M. Frenville Co., Inc. (In re Frenville Co., Inc.),*
  744 F.2d 332 (3d Cir. 1984).........................................................................................21

*Bean v. Soberano,*
  No. 04-1713, 2008 WL 239601 (D.D.C. Jan. 24, 2008)...........................................32

*\*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..............................................................................................8, 17

*Bernstein v. IDT Corp.,*
  76 B.R. 275 (S.D.N.Y. 1987)......................................................................................20

*Blachy v. Butcher,*
  221 F.3d 896 (6th Cir. 2000) ......................................................................................31

*Boone v. F.D.I.C.,*
  235 B.R. 828 (Bankr. D.S.C. 1998) ............................................................................23

*Borman v. Raymark Indus., Inc.,*
  946 F.2d 1031 (3d Cir. 1991)......................................................................................23

*Brooke v. Robinson,*
  No. 56488-9-I, 2006 WL 766475 (Wash. Ct. App. Mar. 27, 2006) ..........................19

Page

*Cal. Housing Secs., Inc. v. F.D.I.C.,*
No. 99-71084, 12 F. App'x. 519 (9th Cir. June 13, 2001) .......................................................9

*\*Capital Bancshares, Inc. v. F.D.I.C.,*
957 F.2d 203 (5th Cir. 1992) ...................................................................................9

*Chapman v. Charles Schwab & Co. (In re Chapman),*
265 B.R. 796 (Bankr. N.D. Ill. 2001) .................................................................25

*Charlestown Holdings, Inc. v. F.D.I.C. (In re Competrol Acquisition P'ship, L.P.),*
176 B.R. 723 (Bankr. D. Del. 1994) .............................................................23, 28

*Checkers Drive-In Rests. v. Comm'r of Patents and Trademarks,*
Civ. A. No. 03-1024, 1994 WL 869570 (D.D.C. Jan. 7, 1994) .......................................28

*Checkers Drive-In Rests., Inc. v. Comm'r of Patents & Trademarks,*
51 F.3d 1078 (D.C. Cir. 1995) ...............................................................................23

*Citizens Bank of Maryland v. Strumpf,*
516 U.S. 16 (1995) .................................................................................................26

*Columbia Plaza Corp. v. Sec. Nat'l Bank,*
525 F.2d 620 (D.C. Cir. 1975) ...............................................................................30

*Constitution Bank v. Tubbs,*
68 F.3d 685 (3d Cir. 1995) .....................................................................................23

*\*Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.),*
61 B.R. 758 (S.D. Tex. 1986) .........................................................20, 21, 22, 26

*Edmondson v. America West Airlines, Inc. (In re America West Airlines, Inc.),*
148 B.R. 920 (Bankr. D. Ariz. 1993) .....................................................................33

*Elec. M&R, Inc. v. Aultman (In re Aultman),*
223 B.R. 481 (Bankr. W.D. Pa. 1998) ...................................................................27

*F.D.I.C. v. Brandt (In re Florida Park Banks, Inc.),*
110 B.R. 986 (Bankr. M.D. Fla. 1990) ...................................................................10

*F.D.I.C. v. Hirsch (In re Colonial Realty Co.),*
980 F.2d 125 (2d Cir. 1992) ...................................................................................23

*F.D.I.C. v. Mercer Bancorp, Inc.,*
No. 89-0849, 1990 WL 515173 (W.D. Mo. Dec. 5, 1990) .......................................9

iv

Page

*F.T.C. v. Capital City Mortgage Corp.,*
321 F. Supp. 2d 16 (D.D.C. 2004) ...................................................................................19

*Fant v. Resid. Servs. Validated Pubs.,*
No. 1:06-CV-00934, 2007 WL 833178 (E.D. Cal. Mar. 16, 2007)........................................21

*First City Asset Servicing Co. v. F.D.I.C. (In re First City Asset Servicing Co.),*
158 B.R. 78 (Bankr. N.D. Tex. 1993)...................................................................................23

*Footbridge Ltd. Trust v. Zhang,*
584 F. Supp. 2d 150 (D.D.C. 2008) ...............................................................................8, 14

*Franklin Sav. Corp. v. Franklin Sav. Ass'n (In re Franklin Sav. Corp.),*
159 B.R. 9 (Bankr. D. Kan. 1993), *aff'd*, 182 B.R. 859 (D. Kan. 1995) ................................12

*\*Freeman v. F.D.I.C.,*
56 F.3d 1394 (D.C. Cir. 1995) ...........................................................................1, 30, 34, 35

*GFL Advantage Fund, Ltd. v. Colkitt,*
216 F.R.D. 189 (D.D.C. 2003).............................................................................................34

*Gross v. Bell Sav. Bank,*
974 F.2d 403, 407 (3d Cir. 1992).........................................................................................23

*Gustave-Schmidt v. Chao,*
226 F. Supp. 2d 191 (D.D.C. 2002) ......................................................................................9

*Holford v. Powers (In re Holford),*
896 F.2d 176 (5th Cir. 1990) ...............................................................................................24

*Holland America Ins. Co. v. Succession of Roy,*
777 F.2d 992 (5th Cir. 1985) ...............................................................................................21

*Holloway v. I.R.S. (In re Odom Antennas, Inc.),*
340 F.3d 705 (8th Cir. 2003) ...............................................................................................33

*IBT/Here Employee Representatives' Council v. Gate Gourmet Div.,*
402 F. Supp. 2d 289 (D.D.C. 2005)......................................................................................34

*Independent Bankgroup, Inc. v. F.D.I.C. (In re Indep. Bankgroup, Inc.),*
217 B.R. 442 (Bankr. D. Vt. 1998).......................................................................................12

*In re Allied Digital Techs. Corp.,*
306 B.R. 505 (Bankr. D. Del. 2004) .....................................................................................19

Page

*In re Bell & Beckwith,*
  50 B.R. 422 (Bankr. N.D. Ohio 1985) ...................................................................22

*In re Briarwood Hills Assocs., L.P.,*
  237 B.R. 479 (Bankr. W.D. Mo. 1999)................................................................22

*In re Estate of Krappes,*
  121 Wash. App. 653, 91 P.3d 96 (2004)..............................................................19

*In re First Century Fin. Corp.* 269 B.R. 481 (Bankr. E.D.N.Y. 2001),
  *aff'd sub nom. Superintendent of Ins. v. Ochs (In re First Central Fin. Corp.),*
  377 F.3d 209 (2d Cir. 2004).................................................................................12

*In re Johnson,*
  115 B.R. 634 (Bankr. D. Minn. 1989) ..................................................................33

*In re Lane,*
  136 B.R. 319 (D. Mass. 1992) ..............................................................................23

*Int'l Painters & Allied Trades Indus. Pension Fund. v. Painting Co.,*
  569 F. Supp. 2d 113 (D.D.C. 2008) ......................................................................34

*\*Jefferson County Comm'n v. Sargent Elec. Co. (In re Sargent Elec. Co.),*
  341 B.R. 514 (Bankr. W.D. Pa. 2006) .............................................................29, 33

*\*Jump v. Manchester Life & Cas. Mgmt. Corp.,*
  438 F. Supp. 185 (E.D. Mo. 1977), *aff'd* 579 F.2d 449 (8th Cir. 1978)............9, 10

*Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship),*
  277 B.R. 181 (Bankr. S.D.N.Y. 2002) ..................................................................23

*Klayman v. Barmak,*
  602 F. Supp. 2d 110 (D.D.C. 2009) ......................................................................32

*Knupp v. Schober,*
  Civ. A. No. 89-0895, 1992 WL 182323 (D.D.C. July 14, 1992)...........................15

*Kosadnar v. Metro. Life Ins. Co. (In re Kosadnar),*
  157 F.3d 1011 (5th Cir. 1998) ........................................................................ 24-25

*Landis v. N. Am. Co.,*
  299 U.S. 248 (1936).............................................................................................34

Page

*Landry v. Exxon Pipeline Co. Mendoz Marine, Inc.,*
   260 B.R. 769 (Bankr. E.D. La. 2001) ..................................................................33

*Levitz Furniture, Inc. v. T. Rowe Price Recovery Fund, L.P.*
   *(In re Levitz Furniture, Inc.),* 267 B.R. 516 (Bankr. D. Del. 2000)........................22

*Locken v. Locken,*
   98 Nev. 369, 650 P.2d 803 (1982) ......................................................................19

*Louisiana World Exposition, Inc. v. Fed. Ins. Co.*
   *(In re Louisiana World Exposition, Inc.),* 832 F.2d 1391 (5th Cir. 1987)..............19

*Lukas, Nace, Gutierrez & Sachs, Chartered v. Havens,*
   245 B.R. 180 (D.D.C. 2000) ................................................................................28

*Major v. Plumbers Local Union No. 5 of United Ass'n of Journeymen,*
   370 F. Supp. 2d 118 (D.D.C. 2005) ................................................................8, 14

*Maritime Elec. Co., Inc. v. United Jersey Bank,*
   959 F.2d 1194 (3d Cir. 1991).......................................................................23, 28

*McCarthy v. F.D.I.C.,*
   348 F.3d 1075 (9th Cir. 2003) .......................................................................30-31

*MCI Comms. v. Amer. Tel. & Tel. Co.,*
   No. CA 79-1182, 1982 WL 1806 (D.D.C. Feb. 18, 1982) ....................................34

*Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.),*
   60 F.3d 1031 (3d Cir. 1995).................................................................................24

*Mktg. Res. Int'l v. PTC Corp. (In re Mktg. Res. Int'l Corp.),*
   35 B.R. 353 (Bankr. E.D. Pa. 1984) ....................................................................33

*\*Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.,*
   28 F.3d 376 (3d Cir. 1994).............................................................................30, 35

*Nofziger Comms., Inc. v. Birks,*
   757 F. Supp. 80 (D.D.C. 1991)............................................................................28

*\*Noletto v. Nationsbanc Mortgage Corp. (In re Noletto),*
   244 B.R. 845 (Bankr. S.D. Ala. 2000) .................................................................31

*Official Comm. of Unsecured Creditors of Baja Boats v. ITT Commercial*
   *Fin. Corp.  (In re Baja Boats, Inc.),* No. 94-60141, 1996 WL 521416
   (Bankr. N.D. Ohio July 24, 1996).........................................................................25

Page

*Official Comm. of Unsecured Creditors of the Columbia Gas Transmission*
    *Corp. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),*
    997 F.2d 1039 (3rd Cir. 1993) ...................................................................27

*\*O.T.S. v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)* ,
    236 F.3d 1246 (10th Cir. 2001) ........................................................... 14-15

*Parker N. Am. Corp. v. R.T.C. (In re Parker N. Am. Corp.),*
    24 F.3d 1145 (9th Cir. 1994) ...................................................................30

*\*R.T.C. v. FirstCorp, Inc. (In re FirstCorp., Inc.),*
    973 F.2d 243 (4th Cir. 1992) ............................................................. 14-16

*\*Rosa v. R.T.C.,*
    938 F.2d 383 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991).....................35

*T & B Scottsdale Contractors, Inc. v. United States,*
    866 F.2d 1372 (11th Cir. 1989) ...............................................................27

*Turner Broad. Sys., Inc. v. Sanyo Elec., Inc.,*
    33 B.R. 996 (N.D. Ga. 1983) ..................................................................20

*United States v. Consumer Health Servs. of Am.,*
    108 F.3d 390 (D.C. Cir. 1997) .................................................................24

*\*United States v. Inslaw, Inc.,*
    932 F.2d 1467 (D.C. Cir. 1991) ...............................................................21

*United States v. MCorp Fin. (In re MCorp Fin.),*
    170 B.R. 899 (S.D. Tex. 1994) ................................................................12

*United States v. Whiting Pools, Inc.,*
    462 U.S. 198 (1983).................................................................................26

*University Med. Ctr. v. Sullivan (In re University Med. Ctr.),*
    973 F.2d 1065 (3d Cir. 1992).....................................................................25

*\*Western Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.),*
    473 F.2d 262 (9th Cir. 1973) .................................................................9-12

*Wolkowitz v. F.D.I.C. (In re Imperial Credit Indus., Inc.),*
    527 F.3d 959 (9th Cir. 2008) ...................................................................14

Page

Statutes and Rules

11 U.S.C. § 362(a)(1) .............................................................................. 2, 20-29

11 U.S.C. §§ 362(a)(3) ................................................................................21, 22

11 U.S.C. § 365(o) ...................................................................................... 13-16

11 U.S.C. § 541(d) ............................................................................................27

12 U.S.C. § 1464(d) ..........................................................................................18

12 U.S.C. § 1821(d)(2)(A) ................................................................................15

12 U.S.C. §1821(d)(6)(A) ...................................................................1, 3, 29, 34

12 U.S.C. § 1821(d)(13)(D) ................................................................... 1, 5, 31

12 U.S.C. § 1821(d)(17) ...................................................................................17

12 U.S.C. § 1821(j) ...........................................................................................23

12 U.S.C. § 1831*o*(a) .......................................................................................18

28 U.S.C. § 1334(b) ..........................................................................................29

28 U.S.C. § 1334(e)(1) ......................................................................................31

12 C.F.R. § 565.7(a)(1) .....................................................................................18

Fed. R. Civ. P. 8(c)(2) ......................................................................................33

Fed. R. Civ. P. 9(b) ..........................................................................................17

Fed. R. Civ.P. 12(b)(6) .......................................................................................8

Fed. R. Civ. P. 13(a) .........................................................................................30

Financial Institutions Reform, Recovery and Enforcement Act of 1989,
   Pub. L. No. 101-73, 103 Stat. 183 ................................................................1

Other Authorities

H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418-19,
   *reprinted in* 1989 U.S.C.C.A.N. 86, 214-15 .............................................36

Page

H.R. Rep. No. 681(I), 101st Cong., 2d Sess. 179 (1990),
    *reprinted in* 1990 U.S.C.C.A.N. 6472 ......................................................................15

Interagency Policy Statement on Income Tax Allocation In A Holding Company
    Structure, 63 Fed. Reg. 64757 (Nov. 23, 1998)........................................... 10-11, 27

Risk-Based Capital Standards: Trust Preferred Securities and the Definition of Capital,
    70 Fed. Reg. 11827 (Mar. 10, 2005)......................................................................15

The Federal Deposit Insurance Corporation, in its capacity as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this memorandum of law in opposition to plaintiffs' motion to dismiss its amended counterclaims and to stay all proceedings in this action.

## PRELIMINARY STATEMENT

This motion reflects only the latest attempt by plaintiffs Washington Mutual, Inc. ("WMI") and its subsidiary WMI Investment Corp. to turn the law on its head and litigate disputes in the Bankruptcy Court that their own filings admit must, instead, be litigated here. Under the Federal Deposit Insurance Act, as amended, *inter alia*, by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"), only this Court (or the district in which a failed bank had its headquarters) has subject matter jurisdiction over an action by a claimant such as WMI whose receivership claim has been disallowed by the FDIC-Receiver. *See* 12 U.S.C. §1821(d)(6)(A). The statute provides that other than these specified district courts, "*no court* shall have jurisdiction" over any claim or action that seeks payment from a failed bank receivership, seeks a determination of rights with respect to assets of a failed bank or relates to any act or omission of the FDIC as its receiver. 12 U.S.C. §1821(d)(13)(D) (emphasis added); *see Freeman v. F.D.I.C.*, 56 F.3d 1394, 1400-02 (D.C. Cir. 1995).

WMI's post-petition actions in filing a claim against the WMB receivership and later bringing this action against the FDIC-Receiver concerning the disallowance of that claim demonstrate its understanding of this Court's exclusive jurisdiction. By this motion, however, the plaintiffs seek to put the FDIC-Receiver on the sideline while they pursue claims in their favored forum – the Bankruptcy Court – against JPMorgan Chase Bank, N.A. ("JPMC"), which

is enmeshed in this litigation, in violation of FIRREA's jurisdictional bar, only because it purchased the assets of Washington Mutual Bank ("WMB") from the FDIC-Receiver.

Federal law does not allow the discretionary stay of these proceedings that plaintiffs request. Unsurprisingly, their motion cites no decision in which a court stayed a first-filed action in a court of exclusive jurisdiction at the request of the party that commenced the action in the first place. If plaintiffs truly believed that the Bankruptcy Court had subject matter jurisdiction over these matters, as their arguments suggest, they could seek the voluntary dismissal of their claims against the FDIC-Receiver in this action in favor of litigation there. They have not done so because they know that such a voluntary dismissal would be outcome determinative.

Plaintiffs' motion to dismiss the FDIC-Receiver's counterclaims also should be denied. Each of those counterclaims satisfies the necessary pleading standard under recent Supreme Court decisions; none of the counterclaims is barred by the automatic stay provided under section 362 of the Bankruptcy Code; and this Court has concurrent jurisdiction to resolve those counterclaims as part of a single proceeding together with plaintiffs' claims regarding substantially identical factual disputes.

Only this Court, and not the Bankruptcy Court, has jurisdiction over all parties and all issues. Plaintiffs' efforts to divide this litigation into two parallel proceedings in this Court and the Bankruptcy Court is not in the best interests of either the courts or the parties. Their motion should be denied in all respects.

## BACKGROUND

### A.    Nature and Stage of the Proceedings

WMI is the former holding company for WMB. On September 25, 2008, the Office of Thrift Supervision closed WMB and appointed the FDIC-Receiver as its receiver. That day, the FDIC-Receiver and the FDIC in its corporate capacity entered into a Purchase and Assumption

Agreement with JPMC (the "P&A Agreement"), under which JPMC purchased substantially all of WMB's assets and assumed most of its liabilities from the FDIC-Receiver.  On the following day, September 26, 2008, plaintiffs in this action, WMI and its subsidiary WMI Investment Corp., filed bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware.

The FDIC-Receiver established December 30, 2008 as the deadline for filing claims against the WMB receivership.  WMI filed a proof of claim with the FDIC-Receiver on that date (the "WMI Receivership Proof of Claim"), over three months after its own bankruptcy petition.  The WMI Receivership Proof of Claim asserted claims relating to a variety of WMB assets that WMI asserted it owned.  On January 23, 2009, the FDIC-Receiver timely disallowed WMI's receivership claims.  On March 20, 2009, plaintiffs filed the Complaint in this action.  The Complaint expressly cites 12 U.S.C. § 1821(d)(6)(A) as a basis for plaintiffs' claims and, in Count I, seeks a judicial determination of WMI's disallowed receivership claims.

On June 11, 2009, the FDIC-Receiver filed its answer and counterclaims.[1]  On July 13, 2009, the FDIC-Receiver filed its amended answer and counterclaims.  Among other things, the amended counterclaims added JPMC as an additional defendant as to certain of the counterclaims.[2]

---

[1] On June 11, 2009, the FDIC-Receiver also filed a motion to dismiss Counts II-V of the Complaint, which had not been included in WMI's receivership proof of claim and which also failed to state a claim against the FDIC-Receiver for a variety of additional reasons.  Briefing has been completed on the FDIC-Receiver's partial motion to dismiss.

[2] On March 30, 2009, JPMC moved to intervene.  *See* D.I. 4.  Plaintiffs opposed that motion.  The FDIC-Receiver filed a response in support of the motion because "many of the factual and legal issues raised by the complaint . . . may implicate JPMC's interests under the" P&A Agreement and JPMC's intervention would "allow JPMC to protect its own interests with respect to those issues directly."  *See* D.I. 20.  That motion remains *sub judice*.

B.      **WMI's Bankruptcy Court Litigation with JPMC**

On March 24, 2009, several days after WMI filed its complaint in this action, JPMC commenced an adversary proceeding in plaintiffs' bankruptcy cases, styled *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc.*, Adv. Proc. No. 09-50551 (MFW).  The adversary complaint asserted claims with respect to many of the assets that were the subject of plaintiffs' complaint in this case against the FDIC-Receiver.  In many instances, however, JPMC sought a determination from the Bankruptcy Court that disputes regarding those issues should be decided by this Court in this action, which was already pending, and not by the Bankruptcy Court.  The FDIC-Receiver was named as an additional defendant solely as to an interpleader claim concerning certain disputed deposit accounts that were already the subject of WMI's disallowed receivership claims and its complaint here.[3]

On May 29, 2009, plaintiffs filed an answer and counterclaims against JPMC in that adversary proceeding.  Many of plaintiffs' counterclaims duplicate the claims they are pursuing against the FDIC-Receiver in this action.  Plaintiffs did not, however, name the FDIC-Receiver or the FDIC in its corporate capacity as counterclaim defendants.

Separately, on April 27, 2009, the debtors (plaintiffs here) commenced their own adversary proceeding against JPMC, styled *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW).  The relief sought by plaintiffs in that adversary proceeding was limited to a claim for turnover by JPMC of the balances held in the disputed

---

[3] On March 30, 2009, a week after plaintiffs filed this action asserting that WMI owned a variety of assets that are the property of WMB, the FDIC-Receiver filed a timely proof of claim in the bankruptcy proceedings.  In its proof of claim, the FDIC-Receiver expressly reserved its rights to litigate in this action any issues that were raised in the proof of claim and expressly reserved its other jurisdictional arguments.

deposit accounts.  The debtors did not name the FDIC-Receiver or the FDIC in its corporate

capacity as defendants in that action either.

On June 1, 2009, the FDIC-Receiver filed a motion in the Bankruptcy Court to stay both

of the adversary proceedings pending entry of judgment by the Court in this action.  In support of

its motion, the FDIC-Receiver argued that both of the adversary proceedings concerned issues

that were raised first in WMI's complaint in this action and, in any event, both adversary

proceedings sought a determination of rights with respect to assets of WMB and related to acts or

omissions of the FDIC-Receiver in selling WMB's assets to JPMC, and therefore the actions

violated the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D).  JPMC filed its own motion to stay

the turnover proceeding on the same grounds.[4]

The Bankruptcy Court heard argument on the motions to stay on June 24, 2009.  At the

conclusion of argument, the Bankruptcy Court stated that it would deny the motions, observing,

among other things, that the debtors' claims in the Bankruptcy Court were asserted against

JPMC and not the FDIC-Receiver and concluding, erroneously, that in those circumstances the

jurisdictional bar should not apply.  The FDIC-Receiver and JPMC have filed timely appeals.

On July 6, 2009, JPMC filed its answer to plaintiffs' turnover complaint and asserted

counterclaims against WMI and crossclaims against the FDIC-Receiver.  JPMC amended that

pleading on August 10, 2009.  In its amended counterclaims, JPMC asserts that plaintiffs are

bound by the disallowance of the WMI Receivership Claim and that any challenge to that

disallowance must be determined in this Court rather than the Bankruptcy Court.  Plaintiffs have

moved to dismiss the amended counterclaims arguing, among other things, that their claims

---

[4] Because the FDIC-Receiver was not at that time a party in the turnover proceeding, it
simultaneously filed a motion to intervene in that action for the purpose of making its motion to
stay, or in the alternative to dismiss, that proceeding.  The Bankruptcy Court granted the FDIC-
Receiver's motion to intervene for that limited purpose.

against JPMC "are separate and distinct claims" from those they have asserted against the FDIC-Receiver in this action.

### C.    The FDIC-Receiver's Counterclaims

The FDIC-Receiver asserts ten counterclaims against plaintiffs, several of which also name JPMC as an additional defendant because it claims an interest in the matter in dispute under the P&A Agreement.  *See* Counterclaims, ¶¶ 17, 32, 49.

Counts I and II of the counterclaims seek declaratory and related relief with respect to certain income tax refunds and other tax-related assets that are one of the subjects of plaintiffs' receivership claims.  Counterclaims, ¶¶ 12-20; *see* Compl., ¶¶ 20-24.

Counts III and IV seek declaratory and related relief with respect to six series of trust preferred securities that were issued in 2006 and 2007 by Washington Mutual Preferred Funding LLC ("WMPF"), a subsidiary of WMB, which are also a subject of plaintiffs' receivership claims.  Counterclaims, ¶¶ 21-35; *see* Compl., ¶¶ 29-35.

Count V asserts claims for intercompany amounts owed to WMB under the system of intercompany loans and accounting that was the basis for certain of plaintiffs' receivership claims.  Counterclaims, ¶¶ 36-39; *see* Compl., ¶¶ 14-19.

In Count VI, the FDIC-Receiver alleges that certain disputed deposit accounts contain commingled funds that belong to WMB, including post-petition tax refunds, and seeks recovery of any amounts that are WMB's property and not the property of WMI.  The counterclaim also details potential accounting misconduct by or at the direction of WMI with respect to the disputed accounts that could impact the ability of either the FDIC-Receiver or JPMC to exercise their rights with respect to such balances.  Counterclaims, ¶¶ 40-49; *see* Compl., ¶¶ 47-50.

In Count VII and Count VIII, the FDIC-Receiver asserts counterclaims for WMI's failure to appropriately account and reserve for WMB's losses and thereby overstate WMB's capital and for WMI's extraction of unlawful dividends from WMB if, as plaintiffs allege it "may have been," WMB was insolvent at the time of the transfers.  Counterclaims, ¶¶ 50-53, 54-59; *see* Compl., ¶¶ 25-28.

Count IX of the counterclaims identifies certain pending litigation in which WMB is or was a plaintiff or the real party in interest and asserts WMB's entitlement to its rightful share of the proceeds of such litigation to the extent WMI receives any award or judgment. Counterclaims, ¶¶ 60-63.

Count X of the FDIC-Receiver's counterclaims asserts a claim against WMI to the extent of any amounts received by WMI under certain insurance policies in which WMB is named insured for loss that was sustained by WMB.  Counterclaims, ¶¶ 64-69; *see* Compl., ¶ 57.

## ARGUMENT

### PLAINTIFFS' MOTION SHOULD BE DENIED IN ITS ENTIRETY

**I.     THE COUNTERCLAIMS STATE CLAIMS FOR RELIEF THAT SHOULD BE ADDRESSED IN THIS ACTION**

Each of plaintiffs' challenges to the FDIC-Receiver's counterclaims fails to withstand scrutiny.  The counterclaims adequately allege claims upon which relief can be granted, do not violate the automatic stay in plaintiffs' bankruptcy cases and are not subject to the exclusive jurisdiction of the Bankruptcy Court.  Only this Court has jurisdiction to resolve all disputes among all parties, and plaintiffs' attempt to split the litigation of the issues into two courts and separate proceedings should be denied.

A.     **The Counterclaims State a Claim Upon Which Relief Can Be Granted**

A motion to dismiss counterclaims is subject to the familiar standards of Federal Rule of Civil Procedure 12(b)(6). The factual allegations of the counterclaims are assumed to be true and all reasonable inferences are drawn in favor of the counterclaim plaintiff. *Ass'n of Am. Med. Coll. v. Princeton Review, Inc.*, 332 F. Supp. 2d 11, 15 (D.D.C. 2004); s*ee Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

The FDIC-Receiver's counterclaims here plainly "contain sufficient factual matter, accepted as true, to 'state . . . a claim to relief that is plausible on its face.'" *Id.* at 1949; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In many instances, plaintiffs' challenges amount to nothing more than factual arguments that are far beyond the permissible scope of a motion to dismiss under Rule 12(b)(6). *See Footbridge Ltd. Trust v. Zhang*, 584 F. Supp. 2d 150, 161 (D.D.C. 2008); *Major v. Plumbers Local Union No. 5 of United Ass'n of Journeymen*, 370 F. Supp. 2d 118, 128 (D.D.C. 2005).[5]

1.     **Taxes (Count I and II)**

In their complaint, plaintiffs assert that they will, in the future, "be entitled to tax refunds currently estimated to be approximately $3 billion" and assert a claim against the FDIC-Receiver with respect to such amounts. Compl., ¶ 22; *see generally id.*, ¶¶ 20-24. In fact, under applicable law (discussed below), WMB, and not its former holding company WMI, is the rightful owner of the significant majority of tax refunds that have been, or will be, paid to the

---

[5] Plaintiffs did not challenge the pleading adequacy of Count V, seeking recovery for certain intercompany amounts owed WMB, and Count VIII, for unlawful dividends.

consolidated tax group. Counts I and II of the FDIC-Receiver's counterclaims seek declaratory and related relief with respect to these tax assets. Counterclaims, ¶¶ 12-20.

Plaintiffs' arguments for dismissal of this counterclaim are based on a tax sharing agreement that is extraneous to the counterclaims. *See* Pl. Mem. at 22-25. Plaintiffs' reliance on this agreement, and their characterizations of its provisions, unquestionably raise questions of fact that are inappropriate for resolution at the pleadings stage. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (on motion to dismiss, court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice").

In addition, plaintiffs' challenges to the FDIC-Receiver's claims for tax-related assets must be rejected as a matter of law. When corporations file joint income tax returns as a consolidated group, tax attributes such as net operating loss carrybacks, and tax refunds arising from the application of such attributes, inure to the benefit of the entity that actually incurred the loss unless there is an express agreement to the contrary. *See, e.g., Capital Bancshares, Inc. v. F.D.I.C.*, 957 F.2d 203, 210 (5th Cir. 1992) ("[t]he refund is the property of the [subsidiary], which could have generated the refund on its own had it filed with the IRS as a separate entity" and therefore the FDIC as receiver of the subsidiary was entitled to the tax refunds attributable to the losses of the subsidiary); *Western Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.)*, 473 F.2d 262, 265 (9th Cir. 1973); *Jump v. Manchester Life & Cas. Mgmt. Corp.*, 438 F. Supp. 185, 188-89 (E.D. Mo. 1977), *aff'd* 579 F.2d 449 (8th Cir. 1978); *see also Cal. Housing Secs., Inc. v. F.D.I.C.*, No. 99-71084, 12 F. App'x 519, 520 (9th Cir. June 13, 2001); *F.D.I.C. v. Mercer Bancorp, Inc.*, No. 89-0849, 1990 WL 515173, at *2 (W.D. Mo.

Dec. 5, 1990); *F.D.I.C. v. Brandt (In re Florida Park Banks, Inc.)*, 110 B.R. 986, 989 (Bankr. M.D. Fla. 1990).

In the Ninth Circuit's seminal decision in *Bob Richards*, the trustee of a bankrupt subsidiary brought an action against the parent corporation to obtain a tax refund that had been received by the parent on tax returns submitted on behalf of the consolidated group. 473 F.2d at 263. The court concluded that the refund belonged to the subsidiary, not the parent, because it arose from a net operating loss incurred by the subsidiary and the "entire refund[] was due to the earnings history of the bankrupt." *Id.* In such circumstances, allowing the parent to keep any refunds just because the parties had chosen a "procedural device to facilitate their income tax reporting unjustly enriches the parent." *Id.* at 265; *see also Jump*, 438 F. Supp. at 189 (holding refund "is not a debt owed by [parent] to [subsidiary], but rather, a fund which [parent] holds in a specific trust for [subsidiary]").

The rule articulated in *Bob Richards* and regularly followed by courts thereafter acknowledges that the members of a consolidated tax group can enter into an agreement altering the common law rule. However, in the case of WMI and other thrift holding companies for any tax years after 1998, such a contractual alteration of the common law rule is not permissible under federal banking law. In 1998, federal bank regulators, including both the OTS and the FDIC, issued a uniform policy statement regarding intercompany tax allocation agreements for banking organizations and savings associations that file an income tax return as members of a consolidated group. *See* Interagency Policy Statement on Income Tax Allocation In A Holding Company Structure 63 Fed. Reg. 64757 (Nov. 23, 1998) (the "Policy Statement").

In the Policy Statement, the agencies stated that tax sharing arrangements among the members of a bank's or thrift's consolidated tax group "should result in no less favorable

treatment to the [insured depository] institution than if it had filed its income tax return as a separate entity." *Id.* at 64757. Consistent with pre-existing law discussed above, the Policy Statement provided that "a parent company that receives a tax refund from a taxing authority obtains these funds *as agent for the consolidated group* on behalf of the group members." *Id.* at 64759 (emphasis added). As a result, a tax sharing agreement for a bank or thrift holding company group "*should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent.*" *Id.* (emphasis added).

The tax sharing agreement that is the basis for plaintiffs' motion to dismiss was adopted nine months after the Policy Statement was issued and expressly states that "[D]eferred tax assets and liabilities . . . will be handled in a manner . . . *consistent with bank and thrift regulatory guidelines.*" *See* Abensohn Decl., Exh. E at 4. The agreement provides that the tax liability of the consolidated group, including WMB, "shall be allocated and shared . . . as if such entities filed a separate or consolidated return, as the case may be." *Id.* at 1. As agent for the consolidated group, WMI agreed that it would pay within 30 days the amount of any refund or overpayment it received on account of each of the members of that group. *Id.* at 2. The agreement further provides, consistent with the Policy Statement, that "[i]n no event will the foregoing allocation result in treatment less favorable to WMBfsb, WMB, WMBFA, and their subsidiaries than if they had filed separate, combined, or consolidated tax returns, as the case may be." *Id.*

Plaintiffs' attempt to equate the tax sharing agreement they introduced in their motion papers with those at issue in cases that predate the Policy Statement is therefore misplaced. Unlike WMI, the banks or thrifts in those cases might not have known that their tax sharing

agreements would be declared *an unsafe and unsound banking practice* if they purported to keep

for the holding company that which the law states is the property of the bank or thrift subsidiary.

*See* 63 Fed. Reg. at 64758 ("Any practice that is not consistent with this policy statement may be

viewed as an unsafe and unsound banking practice prompting either informal or formal

corrective action.").[6]

Plaintiffs assertion that the FDIC-Receiver is limited to a claim against WMI under the

tax sharing agreement misconstrues the provisions of that agreement, which had the purpose and

effect of merely documenting the fiduciary relationship in which WMI acted when filing returns

and making and receiving payments on behalf of the consolidated group.  The agreement does

nothing more than confirm previously existing law, that tax refunds and similar tax assets are

WMB's property, not WMI's.  In any event, their fact-based arguments venture far beyond what

is permissible on a motion to dismiss.  The FDIC-Receiver has amply alleged a cause of action

and should be allowed to proceed to discovery.

### 2.    Trust Preferred Securities (Counts III and IV)

Counts III and IV of the FDIC-Receiver's counterclaims concern six series of trust

preferred securities that were issued in 2006 and 2007 by Washington Mutual Preferred Funding

LLC ("WMPF"), a subsidiary of WMB.  *See* Counterclaims, ¶¶ 21-35.  Under the governing

documents, the trust preferred securities were subject to mandatory conversion into WMI

---

[6] *See* Pl. Br. at 23-24 (citing *United States v. MCorp Fin. (In re MCorp Fin.)*, 170 B.R.
899 (S.D. Tex. 1994); *Indep. Bankgroup, Inc. v. F.D.I.C. (In re Indep. Bankgroup, Inc.)*, 217
B.R. 442 (Bankr. D. Vt. Feb. 20, 1998), *Franklin Sav. Corp. v. Franklin Sav. Ass'n (In re
Franklin Sav. Corp.)*, 159 B.R. 9 (Bankr. D. Kan. 1993), *aff'd*, 182 B.R. 859 (D. Kan. 1995)).
The decision in *In re First Century Financial Corporation*, 269 B.R. 481, 489-90 (Bankr.
E.D.N.Y. 2001), *aff'd sub nom. Superintendent of Ins. v. Ochs (In re First Central Fin. Corp.)*,
377 F.3d 209, 213-16, 219 (2d Cir. 2004), also cited by plaintiffs, concerned a tax sharing
agreement entered into by a failed insurance company, not an insured depository institution that
was subject to the Policy Statement.  The decision is inapplicable and, in any event, does not
disturb the holdings of *Bob Richards* and its progeny.

preferred stock upon the occurrence of certain regulatory events. As a condition to obtaining regulatory approval for the offerings, WMI agreed that if such an event occurred, it would ensure that WMB was the resulting owner of the trust preferred securities. Such an event did occur and WMI transferred any right, title and interest it might have had in the securities to WMB. *Id.*, ¶¶ 25-26.

As a matter of law, the obligation to complete this transfer was deemed to have been assumed as a condition to WMI proceeding with its bankruptcy case under chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 365(o). In their complaint against the FDIC-Receiver, however, plaintiffs claim that WMI's contribution of the trust preferred securities to WMB was a fraudulent transfer, a voidable preference or otherwise ineffective. Compl., ¶¶ 29-35. The FDIC-Receiver's counterclaims seek declaratory and related relief that the securities were, in fact, validly transferred to WMB or, in the alternative, that WMI is responsible for damages for its post-petition breach of its commitment to transfer the securities to WMB. *See* Counterclaims, ¶¶ 30-31, 34-35.[7]

Plaintiffs' dismissal arguments misunderstand section 365(o) of the Bankruptcy Code, under which WMI's prepetition capital maintenance commitment was deemed to have been assumed as a matter of law as a consequence of WMI filing for protection under chapter 11. *See R.T.C. v. FirstCorp, Inc. (In re FirstCorp., Inc.)*, 973 F.2d 243, 247 (4th Cir. 1992) ("[T]he

---

[7] Section 365(o) provides:

> In a case under chapter 11 of this title, the trustee shall be deemed to have assumed (consistent with the debtor's other obligations under section 507), and shall immediately cure any deficit under, any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution, and any claim for a subsequent breach of the obligations thereunder shall be entitled to priority under section 507.

11 U.S.C. § 365(o).

meaning and function of § 365(o) is plain from its language:  in every Chapter 11 case, the

trustee -- or, as here, the debtor-in-possession -- '*shall* be deemed to have assumed' any capital

maintenance commitment made by the debtor, and if a deficit under such a commitment arises,

he '*shall* immediately cure [it]'."); *see also Wolkowitz v. F.D.I.C. (In re Imperial Credit Indus.,*

*Inc.)*, 527 F.3d 959, 973 (9th Cir. 2008) (the "assumption and cure" mechanism of section 365(o)

"has been interpreted to require a trustee to immediately pay any deficit to a federal depository

institution as a condition of remaining in Chapter 11"); *O.T.S. v. Overland Park Fin. Corp. (In re*

*Overland Park Fin. Corp.)*, 236 F.3d 1246, 1253 (10th Cir. 2001).  WMI's post-petition breach

of that assumed commitment is actionable as a breach of contract in any court, not just the

Bankruptcy Court.  *See infra* at 20-24 (discussing case law concerning post-petition actions

against a debtor and the automatic stay).

Further, the FDIC-Receiver has adequately alleged that WMI's promise to the OTS was a

capital maintenance commitment.  The counterclaims describe in detail the commitment, the

letter in which it was made and the regulatory requirement that it responded to.  *See*

Counterclaims, ¶ 26.  According to the FDIC-Receiver's well-pleaded allegations, WMI pledged

in writing "that if there was a 'conditional exchange' [of the trust preferred securities], any

resulting interest that WMI obtained in the trust preferred securities or, indirectly, in the WMPF

preferred securities that funded those securities, would be contributed to WMB."  *Id.*  These

allegations must be accepted as true for the purpose of this motion, yet plaintiffs devote nearly a

page to factual arguments that have no place on this motion.  Pl. Mem. at 27*; see Footbridge*,

584 F. Supp. 2d at 161; *Major*, 370 F. Supp. 2d at 128.

Moreover, in enacting section 365(o), Congress intended the term "capital maintenance

commitment" to be construed broadly "to prevent institution-affiliated parties from using

bankruptcy to evade commitments to maintain capital reserve requirements of a Federal insured depository institution.'" *FirstCorp.*, 973 F.2d at 246 ((quoting H.R. Rep. No. 681(I), 101st Cong., 2d Sess. 179 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6585); *see, e.g., Overland Park*, 236 F.3d at 1252 (rejecting holding company's argument that informal net worth stipulation did not constitute a capital maintenance commitment). In this instance, WMI enjoyed the benefits of its commitment to the OTS for more than two years before WMB was closed by its regulators. WMI should not now be heard to assert that it never intended to subject itself to the burdens of that commitment in return. *See Overland Park*, 236 F.3d at 1253 (if holding company had not made net worth commitment at issue it would not have "had the privilege of operating Overland Savings & Loan from 1979 to 1992").

Finally, there is no basis for plaintiffs' assertion that the FDIC-Receiver does not have standing to enforce WMI's breach. "[B]y operation of law," the FDIC-Receiver succeeded to "all rights, titles, powers, and privileges" of WMB, *see* 12 U.S.C. § 1821(d)(2)(A), and WMB unquestionably was an intended third-party beneficiary of WMI's commitment to maintain its capital, as was the FDIC itself. *See* Risk-Based Capital Standards: Trust Preferred Securities and the Definition of Capital, 70 Fed. Reg. 11827, 11828 (Mar. 10, 2005) ("In the absence of the exchange provision, the [trust] preferred securities would provide little support to a deteriorating or failing parent bank or to the FDIC . . ."); s*ee, e.g., Knupp v. Schober*, Civ. A. No. 89-0895, 1992 WL 182323, at *2 (D.D.C. July 14, 1992) (third-party beneficiaries have standing to sue for breach). In addition, the FDIC Receiver is vested with the power to marshal and dispose of the assets of a failed institution, such as WMB. *See* 12 U.S.C. § 1821(d). This power necessarily includes the right to recover a holding company's obligations under a capital maintenance commitment. *See, e.g., In re FirstCorp., Inc.*, 973 F.2d at 245-46.

Once again, the allegations of these counterclaims are more than sufficient to state a claim upon which relief can be granted under applicable pleading standards.

### 3. Deposit Accounts (Count VI)

Plaintiffs' complaint asserts a claim against the FDIC-Receiver for "lost value or other consequential damages" if their alleged rights to the balances held by JPMC in certain disputed accounts "are in any way compromised or modified" by the FDIC-Receiver or JPMC and a "protective claim" for the outstanding balance of each of those accounts "in the event FDIC exercises any rights it may have" with respect to the accounts. Compl., ¶ 49. In Count VI of the counterclaims, the FDIC-Receiver alleges that the same disputed accounts contain commingled funds that belong to WMB, including post-petition tax refunds, and seeks recovery of any amounts that are WMB's property. The counterclaim also describes accounting maneuvers taken by, or at the direction of, WMI with respect to the disputed accounts that apparently were intended to impact the FDIC-Receiver's ability to exercise its rights with respect to such balances and therefore should be unwound. Counterclaims, ¶¶ 40-49.

Plaintiffs contend that the FDIC-Receiver has no "stake of its own in the Deposits ," Pl. Mem. at 28, but elsewhere acknowledge that the disputed accounts contain at least $234 million in tax refunds, *id.* at 27, which the FDIC-Receiver has asserted belong to WMB. By plaintiffs' own admission, the FDIC-Receiver's "stake" has been alleged, and the fact that the amount of that "stake" remains to be proven as a result of discovery and at trial does not provide a basis for dismissal of the counterclaim.

Plaintiffs next devote nearly a page of their brief to discussion of issues of fact that are inappropriate on a motion to dismiss. *See id.* at 29 ("Regardless of which bank held the underlying funds, the Deposits are Debtors' property"; "even if the transfer to WMB fsb was somehow ineffective, such that the funds remained on deposit at WMB, the amounts are still due

to Debtors."). In addition to having no place on a motion to dismiss, in which the allegations of the counterclaims must be accepted as true, these arguments also misunderstand the fraudulent transfer aspects of the counterclaim.

As the parties' submissions demonstrate, a host of disputes exist regarding WMI's alleged entitlement to various assets of WMB. Even if plaintiffs can recover on some of these issues, and even if some part of the disputed balances constitute amounts owed plaintiffs, those amounts still may be subject to claims for recoupment or setoff under applicable law. To the extent that WMI attempted to squirrel funds away in the days leading up to the regulatory closure of its principal thrift subsidiary in order to hinder or delay the FDIC-Receiver from asserting such rights, the FDIC-Receiver can unwind those transfers. *See* 12 U.S.C. § 1821(d)(17).

The FDIC-Receiver has more than adequately alleged such a claim within the standards set forth in *Iqbal* and *Twombly*. Further, while the facts now available strongly suggest that WMI acted with the requisite intent, Federal Rule 9(b) in any event permits state of mind to be pleaded generally. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"). The FDIC-Receiver is entitled to conduct discovery to determine whether those facts will be borne out; the deposit counterclaim cannot be dismissed under Federal Rule 12(b)(6).

### 4.    Failure to Adequately Maintain WMB's Capital (Count VII)

In Count VII of its counterclaims, the FDIC-Receiver alleges that facts that have emerged since WMB was closed suggest that "WMI, WMB or their directors or officers" were under-reserving for WMB's loan losses, "thereby resulting in an overstatement of WMB's capital." Counterclaims, ¶ 52. In challenging this claim, plaintiffs never mention these allegations. Instead, they argue that as a thrift holding company, WMI allegedly was not subject to the

"source of strength" doctrine. *See* Pl. Mem. at 30-32 ("The FDIC presumably intends to reference the so-called 'source of strength doctrine' with this allegation.").

Whether or not a thrift holding company is subject to a "source of strength doctrine," however, under applicable "prompt corrective action" statutes and regulations, if a thrift holding company causes its thrift subsidiary to *understate* its loan loss reserves and thereby *overstate* its capital, the thrift holding company will be required by its regulators to fix the accounting and contribute additional capital to the thrift subsidiary to correct the problem. *See* 12 U.S.C. § 1831*o*(a)(2) ("Each appropriate Federal banking agency . . . shall carry out the purpose of this section by taking prompt corrective action to resolve the problems of insured depository institutions."); 12 U.S.C. § 1464(d) (OTS enforcement authority over federal savings associations and their holding companies); 12 C.F.R. § 565.7(a)(1) (regulations governing OTS directives to thrift holding companies to take prompt corrective action).

The FDIC-Receiver has alleged that WMI caused such a situation to occur before WMB was closed by its primary regulator, the OTS. If that is proved, the FDIC-Receiver is entitled to recover from WMI the amount that WMI would have been required to contribute to WMB's capital had the inadequate loan loss reserves been known at the time. *See* 12 U.S.C. § 1831*o*(a)(1) (purpose of "prompt corrective action" regime "is to resolve the problems of insured depository institutions at the least possible long-term loss to the Deposit Insurance Fund"). No further allegations are necessary to sustain this counterclaim against a motion to dismiss.

### 5.     Goodwill Litigation and Insurance Proceeds (Counts IX and X)

Plaintiffs' final pleading challenge is to the FDIC-Receiver's counterclaims for recovery of proceeds paid to WMI as the result of specific pending litigation in which WMB is the real

party in interest and as insurance proceeds paid for losses sustained by WMB rather than WMI. *See* Counterclaims, ¶¶ 60-63, 64-69.

Plaintiffs do not argue that the FDIC-Receiver has failed to identify the litigation that is the subject of its goodwill litigation claim, or that the FDIC-Receiver has failed to identify insurance policies under which WMB is the intended beneficiary. In both cases, the FDIC-Receiver's allegations are specific and detailed. *See* Counterclaims, ¶¶ 61 (litigation), 65 (insurance policies). Indeed, in its counterclaims, the FDIC-Receiver even identifies specific proofs of loss that were filed by or on behalf of WMB with insurers and as to which WMI might receive payment for amounts that are rightfully WMB's. *Id.*, ¶ 67.

Instead, plaintiffs provide a string cite of decisions declining to impose constructive trusts under the specific facts presented. *See* Pl. Mem. at 33. But those facts are not the facts at issue here, where if WMI receives the amounts in question, equity will prevent it from retaining the funds as its property. In such circumstances, WMB will be the rightful owner of the funds, not WMI. *See F.T.C. v. Capital City Mortgage Corp.*, 321 F. Supp. 2d 16, 19-20 (D.D.C. 2004) (denying motion to dismiss claim for constructive trust and reciting elements); *see also Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1401 (5th Cir. 1987) (beneficiaries were entitled to proceeds of D&O insurance policy which were not property of the debtor's estate); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509-10 (Bankr. D. Del. 2004) (same); *Adelphia Comms. Corp. v. Associated Elec. & Gas Ins. Servs., Ltd. (In re Adelphia Comms. Corp.)*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (same).[8]

---

[8] The law of constructive trusts in Nevada and Washington is no different. *See Locken v. Locken*, 98 Nev. 369, 372, 650 P.2d 803, 804-05 (1982) (Nevada law); *In re Estate of Krappes*, 121 Wash. App. 653, 665, 91 P.3d 96, 102 (2004) (Washington law); *Brooke v. Robinson*, No. 56488-9-I, 2006 WL 766475, at *1 (Wash. Ct. App. Mar. 27, 2006) (Washington law).

No further factual recitation is required at this phase of the litigation, and as with plaintiffs' other pleading challenges, their motion to dismiss these counterclaims should be denied.

**B.    The Counterclaims Are Not Subject to the Automatic Stay Under 11 U.S.C. § 362**

Plaintiffs' request to dismiss the FDIC-Receiver's counterclaims under the automatic stay of section 362 of the Bankruptcy Code also should be denied.  None of the automatic stay decisions relied upon in plaintiffs' motion address the circumstances presented here.

Where, as here, "a debtor institutes a lawsuit then invokes the protection of [the automatic stay] on a counterclaim, the situation warrants careful scrutiny."  *Bernstein v. IDT Corp.*, 76 B.R. 275, 280 (S.D.N.Y. 1987) (citation and internal quotation omitted).  "[T]he [automatic] stay is not designed to be an offensive weapon – a sword – which would permit the debtor to benefit unilaterally" from its post-petition conduct.  *Turner Broad. Sys., Inc. v. Sanyo Electric, Inc.*, 33 B.R. 996, 1000 (N.D. Ga. 1983); *see Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.)*, 61 B.R. 758, 762 (S.D. Tex. 1986).

**1.    The Automatic Stay Does Not Apply to Claims That Arise Post-Petition**

Section 362(a)(1) of the Bankruptcy Code provides that a bankruptcy petition operates as a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose *before* the commencement of the case under this title." 11 U.S.C. § 362(a)(1) (emphasis added).

Given the plain language of section 362(a)(1), courts including the D.C. Circuit have recognized that the "commencement and continuation of a cause of action against the debtor that

arises post-petition . . . is not stayed by § 362(a)(1) [and] does not violate § 362(a)(3)." *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C. Cir. 1991) (citing *Continental Air Lines*, 61 B.R. at 775-80); *see Avellino & Bienes v. M. Frenville Co., Inc., (In re Frenville Co., Inc.)*, 744 F.2d 332, 335 (3d Cir. 1984) ("[p]roceedings or claims arising post-petition are not subject to the automatic stay").[9]  As the district court in *Continental Air Lines* observed, fundamental fairness dictates the post-petition exception to prevent a debtor from acting wrongfully and then "hid[ing] behind the automatic stay." *Continental Air Lines*, 61 B.R. at 758 n.37; *see Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985) ("[t]he stay simply does not apply to post-bankruptcy events").

Plaintiffs assert without support or analysis that "any purported claims by the FDIC arising out of the receivership arose pre-petition." Pl. Mem. at 9.  In fact, however, several of the counterclaims asserted by the FDIC-Receiver arose post-petition and therefore are not subject to the automatic stay. *See Frenville*, 744 F.2d at 334 (automatic stay did not apply to accounting firm's third party claim against debtor that did not arise until banks instituted post-petition suit against accounting firm); *Fant v. Resid. Servs. Validated Pubs.*, No. 1:06-CV-00934, 2007 WL 833178, *8 (E.D. Cal. Mar. 16, 2007) ("filing of a cross-complaint necessarily concerns a post-

---

[9] Section 362(a) provides, in part:

> (a)    Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

> (1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> . . .

> (3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . .

11 U.S.C. §§ 362(a)(1), (3).

petition claim because the cross-complaint was based on Plaintiffs' own post-petition conduct of

suing for wrongful foreclosure and eviction"); *In re Briarwood Hills Assocs., L.P.,* 237 B.R. 479,

481 (Bankr. W.D. Mo. 1999) ("the filing of the Counterclaim does not violate the automatic stay

because the claims advanced in the Counterclaim could not have been asserted until the

Adversary Complaint was filed against Derks"); *In re Bell & Beckwith,* 50 B.R. 422, 429 (Bankr.

N.D. Ohio 1985) ("it appears that such counterclaims could not have been asserted until an

action was brought against it by the Trustee").[10]

     As already discussed, the FDIC-Receiver's counterclaims with respect to the trust

preferred securities necessarily arose post-petition because WMI was deemed to have assumed

its pre-petition capital maintenance commitment as a consequence of its chapter 11 filing, and its

continuing breach of that commitment is a post-petition violation.  *See supra* at 12-14.  Several

other counterclaims only arose because of the debtor-plaintiffs' post-petition conduct.  Most

notably, despite settled law that a tax sharing agreement between a holding company and its

thrift subsidiary may not purport to characterize tax refunds attributable to a subsidiary

depository institution as property of the parent, *see supra* at 9-11, WMI asserted for the first time

in its proof of claim against the WMB receivership that its alleged tax sharing agreement with

WMB gave it property rights in WMB's tax refunds.  This did not occur until December 30,

2008, *more than three months after* plaintiffs' bankruptcy petitions, when WMI filed its claim

against the WMB receivership, and later in its complaint.  *See* Compl., ¶¶ 20-24.  Similar

_____

[10] Section 362(a)(3), which prohibits "any act to obtain possession of property of the
estate or of property from the estate or to exercise control over property of the estate," is
similarly inapplicable.  That subsection "does not impose a mini-stay applicable to post-
bankruptcy events which incorporates all of the procedural protections of 362(a)(1). . . ."  To the
contrary, "[t]he commencement of proceedings based upon a post-petition cause of action
against the debtor is generally not encompassed by subsection 362(a)(3)."  *Continental Air Lines*,
61 B.R. at 777-78; *see also Levitz Furniture, Inc. v. T. Rowe Price Recovery Fund, L.P. (In re
Levitz Furniture, Inc.)*, 267 B.R. 516, 522 (Bankr. D. Del. 2000) (following *Continental*).

analysis applies with respect to the FDIC-Receiver's counterclaims for WMB's attributable share of pending goodwill litigation and for insurance proceeds received by WMI on account of losses sustained by WMB, both of which concern WMB's property over which WMI has taken actions since filing their bankruptcy petitions to defeat those settled rights.

None of the cases relied upon by plaintiffs involved similar circumstances; instead they concerned pre-petition litigation or conduct.[11]  Nor is plaintiffs' argument aided by their citation of cases holding that the automatic stay does not violate the anti-injunction provision of the FDI Act, 12 U.S.C. § 1821(j).  *See* Pl. Mem. at 11.[12]  Whether or not the automatic operation of

_____

[11] *See ACandS, Inc.  v. Travelers Cas. & Sur.*, 435 F.3d 252 (3d Cir. 2006) (analyzing effect of automatic stay on arbitration award in arbitration that was nearly completed before debtor's bankruptcy petition); *Constitution Bank v. Tubbs*, 68 F.3d 685 (3d Cir. 1995) (analyzing effect of automatic stay on nonbankruptcy court's entry of judgment and appellate jurisdiction in prepetition litigation that had been nearly completed before bankruptcy petitions were filed); *Checkers Drive-In Rests., Inc. v. Comm'r of Patents & Trademarks*, 51 F.3d 1078 (D.C. Cir. 1995) (rejecting nondebtor's argument that its failure to make filing to protect its trademark was excused by operation of automatic stay); *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194 (3d Cir. 1991) (applying automatic stay to prepetition claims against debtor but refusing to apply stay to debtor's prepetition counterclaims); *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031 (3d Cir. 1991) (appeal from prepetition judgment was stayed by automatic stay notwithstanding posting of supersedeas bond); *Kittay v. Landeggert (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 215 (Bankr. S.D.N.Y. 2002) (compelling arbitration of debtor claims and counterparty counterclaims under prepetition contract); *Charlestown Holdings, Inc. v. F.D.I.C. (In re Competrol Acquisition P'ship, L.P.)*, 176 B.R. 723, 727-28 (Bankr. D. Del. 1994) (analyzing whether actions to obtain possession of marina had been completed before bankruptcy petition was filed).

[12] *See F.D.I.C. v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 135-37 (2d Cir. 1992) (concluding that automatic stay "is imposed by Congressional mandate and not by court order" and therefore section 1821(j) did not apply); *Gross v. Bell Sav. Bank*, 974 F.2d 403, 407 (3d Cir. 1992) (noting that automatic stay did not contravene section 1821(j) as *dicta* in decision finding order at issue violated the FDI Act's anti-injunction provision); *In re Lane*, 136 B.R. 319, 320 (D. Mass. 1992) (district court stay pending debtor's appeal of order, *inter alia*, lifting stay to permit FDIC to foreclose on property did not run afoul of section 1821(j)).  The decisions in *Boone v. F.D.I.C.*, 235 B.R. 828 (Bankr. D.S.C. 1998) and *First City Asset Servicing Co. v. F.D.I.C. (In re First City Asset Servicing Co.)*, 158 B.R. 78 (Bankr. N.D. Tex. 1993), are inapposite for different reasons.  In *Boone*, the trustee asserted that the FDIC's actions violated the automatic stay in accepting title to the debtor's property following a foreclosure sale while the debtor's bankruptcy case was pending.  In *First City*, the debtor alleged that a transfer of

section 362 runs afoul of section 1821(j) is beside the point when the relevant counterclaims are

beyond the scope of the automatic stay.

### 2. The Automatic Stay Does Not Apply to Recoupment Claims

All but one of the FDIC-Receiver's counterclaims also are outside the scope of the

automatic stay because they assert claims for recoupment (Count IX, for goodwill litigation, does

not). "Recoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a

claim against the plaintiff which arose out of the same transaction to arrive at a just and proper

liability on the plaintiff's claim." *Kosadnar v. Metro. Life Ins. Co. (In re Kosadnar)*, 157 F.3d

1011, 1013 (5th Cir. 1998) (internal quotation and citations omitted); *see United States v.*

*Consumer Health Servs. of Am.*, 108 F.3d 390, 395 (D.C. Cir. 1997) (applying doctrine in

bankruptcy appeal).

The equitable doctrine of recoupment "permits claims arising out of the same transaction

to be adjudicated in one proceeding. [It] is not codified in the Bankruptcy Code, but has been

established through decisional law." *Megafoods Stores v. Flagstaff Realty Assocs. (In re*

*Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1035 (3d Cir. 1995) (citations omitted). The trustee of a

bankruptcy estate (or a debtor in possession) "takes the property subject to rights of

recoupment," and "to the extent the damages equal or exceed the funds withheld, the debtor has

no interest in the funds and, therefore, the stay has not been violated." *Holford v. Powers (In re*

*Holford)*, 896 F.2d 176, 179 (5th Cir. 1990) (internal quotation and citation omitted).

"[G]iven the equitable nature of the [recoupment] doctrine, courts have refrained from

precisely defining the same-transaction standard, focusing instead on the facts and the equities of

each case." *Kosadnar*, 157 F.3d at 1015 (internal quotation and citation omitted); *see, e.g.*

---

funds from one FDIC receivership to another FDIC receivership that had claims against the
debtor violated the stay. No such circumstances are presented here.

*Chapman v. Charles Schwab & Co. (In re Chapman)*, 265 B.R. 796, 808 (Bankr. N.D. Ill. 2001)

(claim for compensation and conversion claim were sufficiently related for recoupment); *but see*

*University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1081 (3d Cir. 1992)

(recoupment should be limited to cases in which both debts "arise out of a single integrated

transaction").  Whether under a strict or more lenient standard, because it is fact intensive, the

same transaction analysis is not readily susceptible to resolution on a motion to dismiss or even,

in some instances, motions for summary judgment.  *See, e.g., Official Comm. of Unsecured*

*Creditors of Baja Boats v. ITT Commercial Fin. Corp. (In re Baja Boats, Inc.)*, No. 94-60141,

1996 WL 521416, at *3-4 (Bankr. N.D. Ohio July 24, 1996) (genuine issues of material fact on

whether amounts related to same transaction precluded summary judgment).

     Nine of the ten counterclaims asserted by the FDIC-Receiver in this case arise out of the

same transaction as claims asserted by the plaintiffs, and equity requires adjudication of them in

this action "to arrive at a just and proper liability on the plaintiff's claim."  *Kosadnar*, 157 F.3d

at 1013.  The FDIC-Receiver's counterclaims for taxes (Counts I and II), trust preferred

securities (Counts III and IV) and insurance (Count X), arise out of precisely the same tax

returns, securities offering documents and insurance policies, respectively, as those underlying

plaintiffs' corresponding claims against the WMB receivership.  *Compare* Compl., ¶¶ 20-24 *with*

Counterclaims, ¶¶ 12-20 (taxes); *compare* Compl., ¶¶ 29-35 *with* Counterclaims, ¶¶ 21-35 (trust

preferred securities); *compare* Compl., ¶ 57 *with* Counterclaims ¶¶ 64-69 (insurance).

     The FDIC-Receiver's claim to "the amount of the Deposit Funds that are the property of

WMB" (Count VI), not only concerns funds held in the same disputed deposit accounts that are

the subject of plaintiffs' claims, *see* Compl., ¶¶ 47-50, but also arises from the same transactions

as plaintiffs' tax claims and plaintiffs' claims for recovery from the FDIC-Receiver of amounts

allegedly owed by WMB for various intercompany transactions.[13]  *See* Counterclaims, ¶¶ 41-48; Compl., ¶¶ 14-19.  Likewise, the FDIC-Receiver's counterclaim for intercompany balances (Count V) expressly states that those amounts are asserted in response to plaintiffs' claims for amounts due from WMB under the system of intercompany settlement of accounts that was in place prior to the receivership.  Counterclaims, ¶ 37; *see* Compl., ¶¶ 14-19.

Finally, the FDIC-Receiver's counterclaims for WMI's failure to account and reserve for WMB's losses, thereby overstating WMB's capital (Count VII), and for recovery of unlawful dividends received by WMI (Count VIII), relate directly to plaintiffs' claim for recovery from the FDIC-Receiver of $6.5 billion in capital contributions made by WMI to WMB at a time when, plaintiffs allege, "WMI or WMB may have been insolvent."  Compl., ¶ 26; *see* Counterclaims, ¶¶ 50-53, 54-59.  If WMB was insolvent, as plaintiffs allege it "may have been," then WMI should not be permitted to recover for its own downstream capital contributions without first accounting for amounts it extracted from WMB or amounts it should have contributed to WMB.

### 3.    The Automatic Stay Does Not Apply to Property in Which Debtors Have No Equitable Interest

Finally, the automatic stay does not apply to counterclaims for assets that the debtor-plaintiffs either hold, or in the future receive, as a conduit or fiduciary for WMB.  "It is clear that neither [a bankrupt's] estate nor its creditors may benefit from an interest in property which the debtor does not possess."  *Continental Air Lines*, 61 B.R. at 780 n.44 (citing *United States v.*

---

[13] In addition, the Supreme Court has rejected plaintiffs' view of deposit accounts as the type of property that is subject to section 362(a)(3).  *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995) ("That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank.  In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor," and therefore this counterclaim is "neither a taking of possession of the [plaintiffs'] property nor an exercising of control over it. . . .").

*Whiting Pools, Inc.*, 462 U.S. 198, 206 (1983)); *see* 11 U.S.C. § 541(d) (excluding from "property of the estate" property in which the debtor holds "only legal title and not an equitable interest").

"Congress intended that when a debtor is a mere conduit for funds to travel from one party to another, it lacks an equitable interest in the monies," and such a bare legal interest is not properly classified as property of the estate. *Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1059 (3rd Cir. 1993); *T & B Scottsdale Contractors, Inc. v. United States*, 866 F.2d 1372, 1376 (11th Cir. 1989); *see Electric M&R, Inc. v. Aultman (In re Aultman)*, 223 B.R. 481, 484 (Bankr. W.D. Pa. 1998) (granting relief from the automatic stay because "legal title in the realty is worthless to the bankruptcy estate since the estate, as legal titleholder, has but one duty with respect to that title, which duty is to convey it to" the beneficiary of the constructive trust).

For reasons already discussed, WMI does not have an equitable interest in the property that is at issue in the FDIC-Receiver's counterclaims for taxes, trust preferred securities, deposits, goodwill litigation and insurance.  As for tax refunds, federal law prohibits the interpretation of the tax sharing agreement advocated by plaintiffs here, directing that such an agreement "should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent."  Policy Statement, 63 Fed. Reg. at 64759; *see supra* at 9-11; Counterclaims, ¶ 16 (tax amounts in WMI's possession "are or will be held in trust for WMB and are not WMI's property as a matter of law").  Plaintiffs similarly have no equitable interest in the trust preferred securities, as to which WMI agreed in advance that it would take whatever steps were necessary to ensure their

27

ownership by WMB in the case of a mandatory conversion. *See supra* at 13-15. Plaintiffs appear to admit that the balances in the disputed deposit accounts include at least $234 million of tax refunds, Pl. Mem. at 27-28, but to the extent additional commingled funds are included in those balances, they are similarly the property of WMB and not WMI. Finally, the FDIC-Receiver's claims for proceeds from pending goodwill litigation and payments under insurance policies are only asserted to the extent amounts received by WMI are, in fact, the rightful property of WMB, and the counterclaims make clear that to the extent WMI receives such funds, they are held in trust. *See* Counterclaims, ¶¶ 62, 66-68.

### 4. Dismissal Is Not An Appropriate Remedy Even if the Automatic Stay Is Found to Apply to Any of the Counterclaims

For the reasons discussed, it is clear that many of the FDIC-Receiver's counterclaims, if not all of them, will need to be litigated in this Court as part of a single proceeding involving both plaintiffs' disallowed receivership claims and the FDIC-Receiver's counterclaims with respect to the same issues. Further, the non-debtor JPMC also is a defendant as to several counterclaims that must proceed in this Court, and there can be no argument that the automatic stay applies to JPMC. *See Nofziger Comms., Inc. v. Birks*, 757 F. Supp. 80, 86 (D.D.C. 1991); *Lukas, Nace, Gutierrez & Sachs, Chartered v. Havens*, 245 B.R. 180, 182 (D.D.C. 2000).

If the Court determines that the automatic stay applies to any of the FDIC-Receiver's counterclaims, however, the appropriate remedy is not dismissal, as plaintiffs advocate.[14]

---

[14] The decision cited by plaintiffs do not hold to the contrary. In *Maritime Electric*, 959 F.2d at 1206-07 & n.10, the court held that judicial acts taken without obtaining stay relief were void or voidable, and therefore orders in which a nonbankruptcy court had adjudicated conversion claims against a bankrupt were vacated. The decision in *Checkers Drive-In Restaurants v. Commissioner of Patents and Trademarks*, Civ. A. No. 03-1024, 1994 WL 869570 (D.D.C. Jan. 7, 1994), rejected a non-debtor's argument that it was excused from renewing its trademark application due to another entity's bankruptcy petition; the court did not consider any alleged violation of the automatic stay. Finally, *Competrol* concerned whether or not the FDIC had perfected its possession of a marina earlier on the same morning that the debtor

Rather, in such circumstances, litigation of all other issues should proceed in this action among the FDIC-Receiver, plaintiffs and JPMC while the FDIC-Receiver is directed to obtain relief from the Bankruptcy Court to permit litigation of any remaining counterclaims as part of this single proceeding.

### C.    The Bankruptcy Court Does Not Have Exclusive Jurisdiction Over the FDIC-Receiver's Counterclaims

Plaintiffs' argument that the Bankruptcy Court has exclusive jurisdiction over the FDIC-Receiver's counterclaims is similarly unavailing, for several different reasons.

*First*, the Judicial Code provides that "the district courts shall have original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). While public policy may favor centralization of core bankruptcy proceedings in the bankruptcy court, that public policy "is rendered inapplicable in the circumstance where core matters necessarily *may not be centralized* within a bankruptcy court." *Jefferson County Comm'n v. Sargent Elec. Co. (In re Sargent Elec. Co.)*, 341 B.R. 514, 518-19 (Bankr. W.D. Pa. 2006) (collecting cases) (emphasis added). That is the case here.

Plaintiffs do not dispute that this Court is the only court that has jurisdiction over their claim for a judicial determination of their disallowed receivership claims. *See* 12 U.S.C. § 1821(d)(6)(A). Indeed, both in this Court and in the Bankruptcy Court, plaintiffs repeatedly have acknowledged that it was necessary for them to sue the FDIC-Receiver here "to ensure that they would not waive their claims against the receivership under the administrative exhaustion requirements of" FIRREA. Pl. Mem. at 2. Nor have plaintiffs ever argued that the Bankruptcy

---

had completed its bankruptcy filing; no counterclaims were at issue. *Competrol Acquisition P'ship, L.P.*, 176 B.R. at 727-28.

Court had jurisdiction over their claims against the FDIC-Receiver. Such an argument would ignore the plain language of FIRREA's jurisdictional bar and decisions of both the D.C. Circuit and the Third Circuit applying that statute. *See* 12 U.S.C. § 1821(d)(13)(D); *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1402 (D.C. Cir. 1995); *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388-89 (3d Cir. 1994).[15]

Because this Court must adjudicate plaintiffs' claims against the FDIC-Receiver, it is also appropriate for the Court to preside over the FDIC-Receiver's counterclaims with respect to essentially identical factual disputes. Indeed, the principles underlying compulsory counterclaims – fairness and considerations of convenience and economy – strongly favor litigation of the counterclaims here. *See* Fed. R. Civ. P. 13(a); *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975) ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided. Rule 13(a), by compelling a counterclaim in such instances unless an exception applies, limits consideration of matters encompassed in one transaction to one court.").[16]

---

[15] Indeed, plaintiffs argued strenuously against the FDIC-Receiver's intervention in one of the Bankruptcy Court adversary proceedings, even though that intervention was limited to seeking a stay in favor of litigation of the issues in this action. *See* Abensohn Decl., Exh. C at 17 ("[the Debtors] think the issue is clear as day. And it is that jurisdictional bar which is the pretense for the FDIC's motion to intervene. If they cannot satisfy that element, we respectfully submit, they should not be allowed to intervene into the turnover proceeding.").

[16] Plaintiffs' reliance on *Parker N. Am. Corp. v. R.T.C. (In re Parker N. Am. Corp.)*, 24 F.3d 1145 (9th Cir. 1994), and *All Seasons Kitchen, Inc. v. F.D.I.C. (In re All Seasons Kitchen, Inc.)*, 145 B.R. 391 (Bankr. D. Vt. 1992), is misplaced. First, the D.C. Circuit has criticized the jurisdictional conclusions reached in these decisions as ignoring the plain language of the FIRREA jurisdictional bar. *See Freeman*, 56 F.3d at 1401. Second, and in any event, neither decision involved district court actions for a judicial determination of disallowed receivership claims, which is the posture of this case. Instead, both decisions involved debtors' defenses to claims in their bankruptcy cases by the FDIC or RTC. The Ninth Circuit itself has agreed with

*Second*, plaintiffs place mistaken reliance on 28 U.S.C. § 1334(e)(1) for the proposition

that the Bankruptcy Court has "exclusive jurisdiction to decide what is property of the estate."

Pl. Mem. at 13.[17]  This assertion has been considered and rejected by the courts.  *See, e.g.,*

*Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000); *Noletto v. Nationsbanc Mortgage Corp.*

*(In re Noletto)*, 244 B.R. 845, 852-54 (Bankr. S.D. Ala. 2000).  Confronted with a similar

argument, the court in *Noletto* examined section 1334(e)(1) together with other bankruptcy

jurisdiction and venue provisions, ultimately concluding that a construction that vested a debtor's

"home court" with the exclusive power to determine whether a given asset – not in the debtor's

actual possession – was property of the estate would render many other provisions superfluous.

The language and history of section 1334(e)(1), instead, made it clear that the section merely

created a limited *in rem* jurisdiction that "vests the 'home court' with the exclusive power to

control and distribute property of the estate *without requiring it to determine the extent of*

*property of the estate*."  244 B.R. at 854 (emphasis added).

Thus, this Court may determine whether a disputed asset is, or is not, property of WMI;

indeed, if that disputed asset is an asset of WMB, the FIRREA jurisdictional bar directs that,

other than this Court, "*no court* shall have jurisdiction" over any such claim or action.  12 U.S.C.

§ 1821(d)(13)(D) (emphasis added); *see Amsave Credit Corp. v. R.T.C. (In re Am. Mortgage &*

*Inv. Servs.)*, 141 B.R. 578, 583 (Bankr. D.N.J. 1992) ("this [bankruptcy] court finds no merit in

---

the D.C. Circuit's criticism of *Parker* and acknowledged the limited scope of these holdings.  *See*
*McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1078-79 (9th Cir. 2003).

[17] Section 1334(e)(1) provides:

>    (e)      The district court in which a case under title 11 is commenced or is
> pending shall have exclusive jurisdiction –

>          (1)      of all the property, wherever located, of the debtor as of the
>          commencement of such case, and of property of the estate . . .

28 U.S.C. § 1334(e)(1).

Amsave's argument that the RTC must first prove in this court its ownership interest in the 34 loans before the provisions of FIRREA are invoked").

Third, contrary to plaintiffs' arguments, the Bankruptcy Court has made no ruling with respect to the subject matter jurisdiction of either this Court or the Bankruptcy Court over disputes between plaintiffs and the FDIC-Receiver. See Klayman v. Barmak, 602 F. Supp. 2d 110, 117 (D.D.C. 2009) (issue preclusion not applicable because "[t]he issues in [previous case] and in this case are not identical"); Bean v. Soberano, No. 04-1713, 2008 WL 239601, at *1 (D.D.C. Jan. 24, 2008) (issues not "necessarily and actually litigated and determined" in previous litigation). The Bankruptcy Court recently reiterated that its rationale for denying motions to stay the two adversary proceedings in that court turned entirely on the fact that the debtor-plaintiffs were not asserting claims against the FDIC-Receiver in those cases. See Excerpt of Transcript of Aug. 24, 2009 Bankruptcy Court Hearing, at 105 (". . . I think that actions against parties other than the FDIC, and specifically JPMC are not barred by FIRREA, and specifically all of the counterclaims brought by the debtor."); see also Abensohn Decl., Exh. C at 40 (transcript of June 24, 2009 hearing) (plaintiffs' Bankruptcy Court action "is against JPMC, and their action asserts that it was the actions of JPMC, not the FDIC, that caused their harm. Not a claim against the FDIC."); id. at 41 ("[the debtors are] asking me to make a determination as to the actions of JPMC.").[18]

Finally, the fact that the FDIC-Receiver filed a protective proof of claim in WMI's bankruptcy case – after plaintiffs had filed this action acknowledging this Court's jurisdiction over their disallowed receivership claims – does not deprive this Court of jurisdiction. This

---

[18] An excerpt from the transcript of a hearing on JPMC's motion to dismiss plaintiffs' counterclaims in the JPMC Adversary Proceeding, held before the Bankruptcy Court on August 24, 2009, is attached to this memorandum of law as Exhibit A.

Court may exercise concurrent jurisdiction to liquidate the amount of the FDIC-Receiver's counterclaims as part of a single litigation of the issues. *See Sargent Elec. Co.*, 341 B.R. at 520 (staying debtor's bankruptcy court counterclaim in favor of state court litigation given forum selection clause and despite defendant's filing of proof of claim); *Landry v. Exxon Pipeline Co. Mendoz Marine, Inc.*, 260 B.R. 769, 782 (Bankr. E.D. La. 2001) (suit against debtor with ultimate end of satisfaction of claim from property of debtor or the estate may proceed in nonbankruptcy forum).[19]

Judicial economy favors such an approach given this Court's exclusive jurisdiction over plaintiffs' substantially similar claims against the FDIC-Receiver. *See Edmondson v. America West Airlines, Inc. (In re America West Airlines, Inc.)*, 148 B.R. 920, 923-24 (Bankr. D. Ariz. 1993) (factors in considering motion to lift stay included whether judicial economy favored continuation of action to fix and liquidate claim that may then be made against the debtor's estate); *In re Johnson*, 115 B.R. 634, 636 (Bankr. D. Minn. 1989) (same).[20]

## II.    PLAINTIFFS' MOTION FOR A DISCRETIONARY STAY SHOULD BE DENIED

Plaintiffs' request for a discretionary stay of this action also should be denied. Discretionary stays of pending litigation are the exception, not the rule. A party seeking such a

---

[19] Plaintiffs' assertion that the counterclaims should be dismissed under section 502(d) of the Bankruptcy Code also should be rejected. *See* Pl. Mem. at 21 n.7. Section 502(d) only "should be used to disallow a claim *after the entity is first adjudged liable*; otherwise, the court could not determine if the exception applies . . . '[t]he legislative history and policy behind section 502(d) illustrate[ ] that the section is intended to have the coercive effect of insuring compliance with judicial orders.'" *Holloway v. I.R.S. (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003) (emphasis added); *see also Mktg. Res. Int'l v. PTC Corp. (In re Mktg. Res. Int'l Corp.)*, 35 B.R. 353, 356 (Bankr. E.D. Pa. 1984).

[20] Under Federal Rule of Civil Procedure 8(c)(2), the Court may "as justice requires" treat a counterclaim as an affirmative defense. For the reasons already stated, the FDIC-Receiver's counterclaims properly are before this Court, but this equitable power should be used as necessary to prevent the litigation of parts of this single, integrated dispute in two different courts.

stay "must make out a clear case of hardship or inequity . . . ." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) ("right to proceed in court should not be denied except under the most extreme circumstances"); *MCI Comms. v. Amer. Tel. & Tel. Co.*, No. CA 79-1182, 1982 WL 1806, at *4-5 (D.D.C. Feb. 18, 1982) (denying request to stay action under *Landis*). Plaintiffs have not met, and cannot meet, the applicable standard.

Plaintiffs' motion does not identify a single decision in which a litigant sought to stay its own first-filed action in favor of litigation in another court, much less any decision in which such a motion was made to a court that had exclusive jurisdiction over the matters in dispute under a federal statute.[21] Having commenced this action in this Court against the FDIC-Receiver first, before any other litigation about the issues had been started, the motive for plaintiffs' request now to stay this action so that they can pursue litigation against JPMC in their preferred forum – the Bankruptcy Court – is transparent. Federal law does not permit such obvious forum shopping.

This Court, not the Bankruptcy Court, is the only Court with jurisdiction to determine plaintiffs' disallowed receivership claims. *See* 12 U.S.C. § 1821(d)(6)(A); *Freeman v. F.D.I.C.*, 56 F.3d at 1400-02. Further, only this Court, not the Bankruptcy Court, has jurisdiction over all of the issues and all of the parties to enable a complete resolution of these disputes. Plaintiffs' motion to stay would not ease the burden on the courts or the parties, since any stay ultimately

---

[21] In *Int'l Painters & Allied Trades Indus. Pension Fund. v. Painting Co.*, 569 F. Supp. 2d 113, 120-21 (D.D.C. 2008), the court stayed an action in favor of a previously filed case in which the outcome would affect the plaintiffs' ability to proceed. Here, in contrast, this action was filed first and plaintiffs did not file their first Bankruptcy Court claim against JPMC for more than a month after filing their complaint here. In *IBT/Here Employee Representatives' Council v. Gate Gourmet Div.*, 402 F. Supp. 2d 289 (D.D.C. 2005), the court stayed an action pending the outcome of a pending arbitration. No similar facts are presented here.

would have to be lifted to permit this Court to address the claims over which it is vested with exclusive jurisdiction. This would need to occur regardless of what transpires in the ongoing Bankruptcy Court litigation between the debtor-plaintiffs and JPMC. Indeed, the FDIC-Receiver respectfully submits that the Bankruptcy Court has committed legal error in determining that it has subject matter jurisdiction over that litigation. If so, any judgment reached in that court ultimately will be reversed on appeal and the parties will then be back before this Court having lost the intervening years.

Further, and contrary to plaintiffs' assertions, as they currently stand the adversary proceedings are no further along than proceedings in this action. Despite the efforts of both the FDIC-Receiver and JPMC, the debtor-plaintiffs have resisted efforts to begin discovery in any of these proceedings. To date, proceedings in all of the actions have been limited to motion practice addressed to the pleadings and jurisdictional issues. No efficiency would be gained by staying this action in favor of litigation in the Bankruptcy Court. To the contrary, such an order would needlessly multiply proceedings and result in inevitable delay.

Besides its deleterious effects on the courts and the parties, plaintiffs' requested stay would hinder the FDIC-Receiver's ability to resolve the WMB receivership, which was the reason that Congress enacted the jurisdictional bar and other provisions of FIRREA in the first place. *See Freeman*, 56 F.3d at 1401 ("Congress' core purpose in enacting FIRREA . . . was to 'ensure that assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution' and to expeditiously wind up the affairs of failed banks.") (citations omitted); *see also Nat'l Union*, 28 F.3d at 388 ("One of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation."); *Rosa v. R.T.C.*,

938 F.2d 383, 396 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991) ("The primary purpose underlying

FIRREA's exhaustion scheme is to allow RTC to perform its statutory function of promptly

determining claims so as to quickly and efficiently resolve claims against a failed institution

without resorting to litigation.") (citing H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418-19,

*reprinted in* 1989 U.S.C.C.A.N. 86, 214-15).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion should be denied.  The FDIC-Receiver

further respectfully requests leave to replead to the extent that the Court determines that any of

the counterclaims fail to state a claim upon which relief can be granted.

Dated:  Washington, D.C.                             Respectfully submitted,
      September 4, 2009


Of Counsel:                                                    /s/ David Clarke, Jr.
                                      David Clarke, Jr. (D.C. Bar. No. 396002)
Thomas R. Califano                                    david.clarke@dlapiper.com
John J. Clarke, Jr.                                       Deana L. Cairo (D.C. Bar No. 469628)
DLA Piper LLP (US)                                   deana.cairo@dlapiper.com
1251 Avenue of the Americas                     DLA Piper LLP (US)
New York, New York  10020                       500 8th Street, N.W.
Tel.:  (212) 335-4500                                  Washington, D.C.  20004
Fax:  (212) 335-4501                                   Tel.:  (202) 799-4000
                                      Fax:  (202) 799-5000

                                      Attorneys for the
                                        Federal Deposit Insurance Corporation,
                                        as Receiver for Washington Mutual Bank

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney for the FDIC-Receiver certifies that on this 4th day of

September 2009, he caused a copy of the foregoing document to be filed via ECF which will

cause electronic notice of its filing to be served on all parties who have appeared in this action.


    /s/  John J. Clarke, Jr.
           John J. Clarke, Jr.