UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WASHINGTON MUTUAL, INC. and
WMI INVESTMENT CORP.,

        Plaintiffs and
        Counterclaim Defendants,

   v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its corporate capacity,

        Defendant,

  – and –

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as receiver
of Washington Mutual Bank,

        Defendant and
        Counterclaim Plaintiff,

   v.

JPMORGAN CHASE BANK, N.A.,

        Counterclaim Defendant.

Case No. 1:09-cv-00533 (RMC)

## ANSWER, CROSSCLAIMS, AND COUNTERCLAIMS OF
## COUNTERCLAIM DEFENDANT JPMORGAN CHASE BANK, N.A.

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

Bruce E. Clark (USDC Bar No. D00144)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Counterclaim Defendant
JPMorgan Chase Bank, N.A.*

September 4, 2009

Counterclaim Defendant JPMorgan Chase Bank, N.A. ("JPMC"), by and through its undersigned counsel, for its Answer to the counterclaims asserted by Defendant and Counterclaim Plaintiff the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver ("FDIC-Receiver") of Washington Mutual Bank ("WMB") in its First Amended Answer and Counterclaims, dated July 13, 2009 (the "Counterclaims"), hereby responds as follows:

Unless otherwise expressly admitted, JPMC denies each and every allegation in the Counterclaims, including without limitation, any allegations in the headings, subheadings, preamble, and prayer.

1.      Admits the allegations of the first and last sentences of paragraph 1, and avers that the second and third sentences of paragraph 1 consist of legal assertions as to which no response is required.  To the extent a response is required, denies the allegations of the second and third sentences of paragraph 1.

2.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2.

3.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3.

4.      Admits the allegations of paragraph 4.

5.      Admits the allegations of the first sentence of paragraph 5 and avers that the allegations of the remainder of paragraph 5 consist entirely of legal conclusions that require neither admission nor denial.  To the extent a response is required, JPMC admits that (a) its joinder will not deprive the court of subject matter

jurisdiction, (b) it is in possession of, and claims an interest in, certain of the assets that are the subject of the FDIC-Receiver's Counterclaims, and (c) in its absence this Court cannot accord complete relief among the existing parties with respect to certain of those Counterclaims or, in the alternative, JPMC's absence as a practical matter would impair or impede its ability to protect its interests and could result in inconsistent judgments.

6.    Paragraph 6 consists of legal assertions as to which no response is required.  To the extent a response is required, admits the allegations of paragraph 6.

7.    Paragraph 7 consists of legal assertions as to which no response is required.  To the extent a response is required, admits the allegations of paragraph 7.

8.    Paragraph 8 consists of legal assertions as to which no response is required.  To the extent a response is required, admits the allegations of paragraph 8, except denies knowledge or information sufficient to form a belief as to the truth of the allegations of the second and third sentences of paragraph 8.

9.    Denies the allegations of paragraph 9, except (a) avers that on September 25, 2008, FDIC-Receiver and the Federal Deposit Insurance Corporation entered a Purchase and Assumption agreement with JPMC whereby JPMC acquired substantially all of the assets and assumed the deposit liabilities and certain other liabilities of WMB's banking operations pursuant to the FDIC-Receiver's authority under Title 12 (the "P&A Agreement"), (b) avers that the Counterclaims arise as a result of claims raised by Washington Mutual, Inc., and WMI Investment Corp. (collectively "WMI"), after filing of voluntary petitions for Chapter 11 bankruptcy on September 26, 2008 ("post-Petition") to assets sold to JPMC under the P&A Agreement, and

(c) respectfully refers the court to the P&A Agreement for a complete and accurate description of its contents.

10.     Admits the allegations of paragraph 10.

11.     Admits the allegations of the first sentence of paragraph 11, denies knowledge or information sufficient to form a belief as to the allegations in the second sentence of paragraph 11, except admits that the FDIC-Receiver filed a proof of claim in Plaintiffs' bankruptcy proceeding on March 30, 2009, avers that the allegations in the third sentence of paragraph 11 consist entirely of legal conclusions that require neither admission nor denial, and respectfully refers the Court to the FDIC-Receiver's proof of claim filed in Plaintiffs' bankruptcy proceeding for the information contained therein.

12.     JPMC incorporates by reference its responses to paragraphs 1 through 11 as if set forth fully herein.

13.     Paragraph 13 consists of legal assertions as to which no response is required.  To the extent a response is required, admits the allegations of paragraph 13, except avers that pursuant to the P&A Agreement, JPMC succeeded to all of WMB's existing and future rights and interests in any tax-related assets and is, thus, the sole rightful owner of all equitable and beneficial right, title and interest in such assets.

14.     Denies knowledge or information sufficient to form a belief as to the allegations of paragraph 14, except avers that pursuant to the P&A Agreement, JPMC succeeded to all of WMB's existing and future rights and interests in any tax-related assets and is, thus, the sole rightful owner of all equitable and beneficial right, title and interest in those assets.

15.     Paragraph 15 consists of legal assertions as to which no response is required.  To the extent a response is required, admits the allegations of paragraph 15 and avers that Plaintiffs have raised their ownership claims post-Petition.

16.     Paragraph 16 consists of legal assertions as to which no response is required.  To the extent a response is required, admits that FDIC-Receiver purports to seek the declaratory judgment as alleged in paragraph 16.

17.     Admits the allegations of paragraph 17.

18.     JPMC incorporates by reference its responses to paragraphs 1 through 17 as if set forth fully herein.

19.     Paragraph 19 consists of legal assertions as to which no response is required.  To the extent a response is required, admits the allegations of paragraph 19 and avers that pursuant to the P&A Agreement, JPMC succeeded to WMB's existing and future rights and interests in all tax-related assets and is, thus, the sole rightful owner of all equitable and beneficial right, title and interest in those assets.

20.     Paragraph 20 consists of legal assertions as to which no response is required.  To the extent a response is required, denies the allegations of paragraph 20, except admits that FDIC-Receiver purports to demand a judgment against WMI as alleged in paragraph 20.

21.     JPMC incorporates by reference its responses to paragraphs 1 through 20 as if set forth fully herein.

22.     Paragraph 22 consists of legal assertions to which no response is required.  To the extent a response is required, denies the allegations of paragraph 22,

except (a) admits that Washington Mutual Preferred Funding LLC ("WMPF") was established in connection with issuing certain trust preferred securities (the "Trust Preferred Securities"), and (b) respectfully refers the court to the governing documents for a complete and accurate description of their contents.

23.     Denies knowledge or information sufficient to form a belief as to the allegations of paragraph 23, except admits (a) that certain subsidiaries of WMPF issued the Trust Preferred Securities, and (b) that the Trust Preferred Securities have an aggregate liquidation preference of approximately $4 billion.

24.     Denies knowledge or information sufficient to form a belief as to the allegations of paragraph 24, except (a) admits that WMPF preferred securities were issued in connection with the offerings of the Trust Preferred Securities, and (b) respectfully refers the court to the governing documents for a complete and accurate description of their contents.

25.     Denies knowledge or information sufficient to form a belief as to the allegations of paragraph 25 except admits (a) that the Trust Preferred Securities were sold to investors subject to a "conditional exchange" feature, (b) that in certain circumstances, the Trust Preferred Securities were required to be exchanged into depositary shares representing an interest in the preferred stock of WMI, and (c) respectfully refers the court to the governing documents for a complete and accurate description of their contents.

26.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 26, except (a) admits that in 2006, WMI sought

and obtained from the Office of Thrift Supervision ("OTS") authorization to treat the Trust Preferred Securities as core capital of WMB, and (b) respectfully refers the Court to WMI's letter to the OTS, dated February 23, 2006, for a complete and accurate description of the contents thereof.

27.     Paragraph 27 consists of legal assertions as to which no response is required.  To the extent a response is required, denies the allegations of paragraph 27, except (a) avers that WMI and WMB entered into an Assignment Agreement on September 25, 2008, and (b) respectfully refers the Court to the September 25, 2008 Assignment Agreement between WMI and WMB for a complete and accurate description of the contents thereof.

28.     Admits the allegations in paragraph 28 and respectfully refers the Court to the governing documents for a complete and accurate description of their contents.

29.     Paragraph 29 consists of legal assertions as to which no response is required.  To the extent a response is required, avers that pursuant to the P&A Agreement JPMC succeeded to all WMB's rights and interests in any Trust Preferred Securities and is, thus, the sole rightful owner of all equitable and beneficial right, title and interest in those assets, and admits that post-Petition, Plaintiffs have wrongfully sought to rescind WMI's assignment of the Trust Preferred Securities.

30.     Paragraph 30 consists of legal assertions as to which no response is required.  To the extent a response is required, admits that FDIC-Receiver purports to seek the declaratory judgment as alleged in the paragraph.

31.     Paragraph 31 consists of legal assertions as to which no response is required. To the extent a response is required, admits that FDIC-Receiver purports to seek, in the alternative, the declaratory judgment as alleged in the paragraph.

32.     Admits the allegations of paragraph 32.

33.     JPMC incorporates by reference its responses to paragraphs 1 through 32 as if set forth fully herein.

34.     Paragraph 34 consists of legal assertions as to which no response is required. To the extent a response is required, admits that FDIC-Receiver purports to seek a judgment as alleged in paragraph 34.

35.     Paragraph 35 consists of legal assertions as to which no response is required. To the extent a response is required, admits that FDIC-Receiver purports to assert the claim against WMI as alleged in paragraph 35.

36.     JPMC incorporates by reference its responses to paragraphs 1 through 35 as if set forth fully herein.

37.     Denies or denies knowledge or information sufficient to form a belief as to the allegations in paragraph 37, except (a) admits that, at the time of WMB's receivership and presently, WMI did and does owe WMB certain intercompany amounts, and (b) avers that the books and records of WMB reflect certain transfers of property (or interests in property) that do not reflect (among other things) the extent to which those transfers may relate to or be set off due to other obligations.

38.     Denies or denies knowledge or information sufficient to form a belief as to the allegations of paragraph 38, except (a) admits that WMI owes WMB

intercompany amounts and, (b) admits that the FDIC-Receiver purports to assert a claim to the amounts as alleged in paragraph 38.

39.     Paragraph 39 consists of legal assertions as to which no response is required.  To the extent a response is required, admits that the FDIC-Receiver purports to seek a judgment as alleged in the paragraph.

40.     As its answer to paragraph 40, JPMC incorporates by reference its responses to paragraphs 1 through 39 as if set forth fully herein.

41.     Admits that Plaintiffs have made the assertions attributed to them in the first sentence of paragraph 41, but denies the accuracy and completeness of those assertions.  Admits the allegations of the second sentence of paragraph 41.  Avers that no response is required to the third sentence of paragraph 41.

42.     Denies or denies knowledge or information sufficient to form a belief as to the allegations of paragraph 42, except admits that (a) there are significant disputes as to whether the deposit funds are the property of WMB or JPMC, (b) more than $234,687,816 in tax-related assets owed by JPMC have been placed in the disputed accounts since the Petition Date, (c) amounts credited to the disputed accounts, including the tax-related assets, are the property of JPMC, which it acquired under the P&A Agreement, and (d) respectfully refers the Court to the relevant statements by WMI and JPMC for a complete and accurate description of their contents.

43.     Denies or denies knowledge or information sufficient to form a belief as to the allegations of paragraph 43, except admits that (a) the purported transfer of $3.67 billion from one account to another was a mere book entry unaccompanied by

any actual transfer of funds, (b) contradictory evidence raises material issues of fact regarding the disputed accounts and the funds purportedly credited to those accounts, and (c) respectfully refers the Court to the relevant statements by JPMC for a complete and accurate description of their contents.

44.    Denies or denies knowledge sufficient to form a belief as to the allegations of paragraph 44, except admits that (a) WMI attempted to reclassify an unsecured general ledger debt of nearly $1 billion that was not supported by good funds or collateral, and that had accumulated over several years, into a purported deposit liability, (b) this amount is a substantial portion of the purported $3.67 billion in funds that WMI claims to have transferred to WMB fsb, and (c) respectfully refers the Court to the relevant statements by JPMC for a complete and accurate description of their contents.

45.    Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 45, except (a) admits that a WMI employee provided an affidavit in another proceeding making the assertions attributed to her in this paragraph, and (b) respectfully refers the Court to the affidavit for a complete and accurate description of its contents.

46.    Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 46, except (a) admits that JPMC made the allegations attributed to it in the first sentence of paragraph 46, (b) respectfully refers the Court to the relevant statements by JPMC for a complete and accurate description of their contents, (c) admits that, through accounting entries, WMI purportedly transferred $3.67 billion from WMB to WMB fsb and directed that the entire amount immediately be loaned back

from WMB fsb to WMB, and (d) admits that funds that were purportedly transferred from and then supposedly loaned back to WMB were WMB's property to begin with.

47.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.    Paragraph 48 consists of legal assertions as to which no response is required.  To the extent a response is required, admits the FDIC-Receiver purports to demand judgment as alleged in paragraph 48.

49.    Admits the allegations of paragraph 49, except avers that there are material issues of fact regarding whether the purported "disputed accounts" reflect deposit liabilities of JPMC.

50.    JPMC incorporates by reference its responses to paragraphs 1 through 49 as if set forth fully herein.

51.    Paragraph 51 consists of legal conclusions as to which no response is required.  To the extent a response is required, JPMC admits the allegations of paragraph 51.

52.    Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 52.

53.    Denies knowledge or information sufficient to form a belief as to the first sentence of paragraph 53, except admits that the FDIC-Receiver purports to demand judgment as alleged in paragraph 53.

54.    JPMC incorporates by reference its responses to paragraphs 1 through 53 as if set forth fully herein.

55.    Paragraph 55 consists of legal assertions as to which no response is required.  To the extent a response is required, denies knowledge or information sufficient to form a belief as to the allegations in paragraph 55.

56.    Paragraph 56 consists of legal assertions as to which no response is required.  To the extent a response is required, denies knowledge or information sufficient to form a belief as to the allegations in paragraph 56.

57.    Admits that Plaintiffs have made the allegations attributed to them in paragraph 57 and respectfully refers the Court to the relevant statements by Plaintiffs for a complete and accurate description of their contents.

58.    Paragraph 58 consists of legal assertions as to which no response is required.  To the extent a response is required, denies knowledge or information sufficient to form a belief as to the allegations in paragraph 58.

59.    Paragraph 59 consists of legal assertions as to which no response is required.  To the extent a response is required, denies the allegations of paragraph 59, except admits that the FDIC-Receiver purports to seek a judgment as alleged in paragraph 59.

60.    JPMC incorporates by reference its responses to paragraphs 1 through 59 as if set forth fully herein.

61.    Admits the allegations in paragraph 61.

62.    Paragraph 62 consists of legal assertions as to which no response is required.  To the extent a response is required, admits the allegations of paragraph 62, except avers that pursuant to the P&A Agreement JPMC succeeded to any right or

interest of WMB in the litigations referenced in paragraph 62 and is the sole rightful owner of any proceeds of those litigations, which proceeds were or would have been the property of WMB.

63. Paragraph 63 consists of legal assertions as to which no response is required. To the extent a response is required, denies the allegations of paragraph 63, except admits that the FDIC-Receiver purports to demand judgment as alleged in paragraph 63.

64. JPMC incorporates by reference its responses to paragraphs 1 through 63 as if set forth fully herein.

65. Denies or denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65, except admits that WMB is the named insured or intended beneficiary of certain insurance policies, including but not limited to those identified in the second sentence of paragraph 65.

66. Paragraph 66 consists of legal assertions as to which no response is required. To the extent a response is required, denies the allegations of paragraph 66, except avers that pursuant to the P&A Agreement JPMC succeeded to any right or interest of WMB in the insurance policies referenced in paragraph 66 and is the sole rightful owner of any proceeds of those insurance policies, which proceeds were or would have been the property of WMB.

67. Paragraph 67 consists of legal assertions as to which no response is required. To the extent a response is required, denies the allegations of paragraph 67, except avers that JPMC owns all equitable and beneficial interest in any and all proceeds

paid or owing under any insurance policy naming WMB as insured or beneficiary, because JPMC is the successor of WMB in such policies pursuant to the P&A Agreement.

68.     Paragraph 68 consists of legal assertions as to which no response is required.  To the extent a response is required, denies the allegations of paragraph 68, except avers that JPMC owns all equitable and beneficial interests in any and all proceeds paid or owing under any insurance policy naming WMB as insured or beneficiary, because JPMC is the successor of WMB in such policies pursuant to the P&A Agreement.

69.     Paragraph 69 consists of legal assertions as to which no response is required.  To the extent a response is required, denies the allegations of paragraph 69, except admits that the FDIC-Receiver purports to demand judgment as alleged in paragraph 69.

70.     Denies all of the allegations not specifically admitted above, including those set forth in the Prayer for Relief.

## <u>ANSWER TO PLAINTIFFS' COMPLAINT</u>

Plaintiffs in their Complaint in this action allege facts and assert claims that directly threaten significant, material interests of JPMC, including without limitation JPMC's interests in billions of dollars in assets of WMB purchased from the FDIC-Receiver that Plaintiffs have put at issue in this action.  However, Plaintiffs have tactically opted not to name JPMC as a defendant and opposed JPMC's motion to

intervene as a defendant in this action.  In order to protect JPMC's significant, material interests in such assets, JPMC hereby answers Plaintiffs' Complaint and states as follows:

JPMC incorporates by reference its numbered responses to the specific allegations of Plaintiffs' Complaint set forth in its proposed answer and counterclaim, attached hereto as Exhibit 1.

## AFFIRMATIVE DEFENSES

In further response both to the FDIC-Receiver's First Amended Answer and Counterclaims and to Plaintiffs' Complaint, upon information and belief and subject to further discovery, JPMC alleges the following affirmative defenses without assuming any burden of proof that JPMC does not otherwise bear:

### First Affirmative Defense

The FDIC transferred all of the assets at issue in this proceeding to JPMC pursuant to the P&A Agreement, as authorized by Title 12, and, thus, JPMC owns such assets free and clear of any claim by Plaintiffs.

### Second Affirmative Defense

Claims against JPMC are barred, in whole or in part, by laches, estoppel, and/or unclean hands.

### Third Affirmative Defense

JPMC is entitled to setoff, recoupment and/or offset on any amounts awarded to any other party.

### Fourth Affirmative Defense

JPMC is entitled to indemnification against any amounts awarded to any other party.

**Fifth Affirmative Defense**

Because WMI is barred from asserting any claim against the FDIC and JPMC until WMI fulfills its commitment to transfer the Trust Preferred Securities to JPMC, no actual case or controversy exists as to the ownership of the Trust Preferred Securities.

**Sixth Affirmative Defense**

The claims asserted against JPMC are barred, in whole or in part, by waiver.

**Seventh Affirmative Defense**

Claims asserted against JPMC are barred, in whole or in part, by applicable banking rules, regulations and statutes, including the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

**Eighth Affirmative Defense**

The causes of action against JPMC fail to state a claim upon which relief can be granted.

**Ninth Affirmative Defense**

Plaintiffs lack standing to assert some or all of their claims.

**Tenth Affirmative Defense**

Any transfers made to or on behalf of WMB were for reasonably equivalent value, or alternatively, were made in exchange for fair consideration in good faith.

### Eleventh Affirmative Defense

Plaintiffs' claims are barred by 12 U.S.C. § 1823(e) or the statute of frauds.

### Twelfth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of *in pari delicto*.

### Thirteenth Affirmative Defense

Plaintiffs' claims are barred by WMI's participation in, approval and/or ratification of the conduct upon which the claims are based.

### Fourteenth Affirmative Defense

Plaintiffs' claims are barred under the Internal Revenue Code and the rules, regulations, rulings, and opinion promulgated thereunder.

### Fifteenth Affirmative Defense

Plaintiffs have not suffered any legally cognizable damages proximately caused by any act or omission of JPMC.

### Sixteenth Affirmative Defense

Plaintiffs' claims are barred because JPMC is and was at all relevant times operating under a valid license.

### JPMORGAN CHASE'S ADDITIONAL AFFIRMATIVE DEFENSES, OR, IN THE ALTERNATIVE, COUNTERCLAIMS AND CROSSCLAIMS

JPMC by and through its attorneys, Sullivan & Cromwell LLP, for its additional affirmative defenses or, in the alternative, crossclaims against WMI, and its counterclaims against the FDIC-Receiver, alleges on knowledge as to itself and its conduct and upon information and belief as to all other matters as follows:

- 17 -

**NATURE OF ACTION**

1.      JPMC brings these additional affirmative defenses, or, in the alternative, crossclaims and counterclaims, to protect itself from the ongoing efforts of WMI to claim, as its own, assets that belong to JPMC.  JPMC seeks to ensure that it and its subsidiaries are not divested of their assets and interests purchased in good faith from the FDIC-Receiver under Title 12 of the United States Code pursuant to the P&A Agreement, a true and correct copy of which is attached as Exhibit A to Exhibit 1 hereto.

2.      Pursuant to the P&A Agreement, JPMC acquired the business and related assets of WMB, including ownership of all of WMB's direct and indirect subsidiaries.  More specifically, JPMC purchased "all of the Receiver's right, title and interest" to these assets, pursuant to and in accordance with the Federal Deposit Insurance Act, as amended (the "FDI Act").

3.      On December 30, 2008, Plaintiffs submitted proofs of claim to the FDIC-Receiver (pursuant to the resolution procedures under Title 12) laying claim to certain of the assets purchased by JPMC from the FDIC.  On January 23, 2009, the FDIC-Receiver disallowed Plaintiffs' claims to such assets.  Plaintiffs elected not to administratively appeal the FDIC's decision, but instead filed this action challenging the FDIC-Receiver's disallowance of their claims, asserting ownership interests in the assets sold by the FDIC-Receiver to JPMC, and pursuing related theories of recovery.  The assets that are the subject of the Plaintiffs' disallowed claims give rise to the present disputes between Plaintiffs, JPMC, and the FDIC-Receiver.  The assets are property of JPMC, which acquired them in good faith and for value from the FDIC pursuant to the FDI Act.

4.    The assets of the Receiver that were paid for by and sold to JPMC, as to which Plaintiffs wrongfully claim ownership include:

(a)    approximately $4 billion in the aggregate liquidation preference of Trust Securities contributed by Plaintiffs to WMB, the amount of which constitutes regulatory core capital of WMB;

(b)    the right to tax refunds arising from overpayments attributable to operations of WMB and its subsidiaries for the 2008 tax year and prior tax years and net operating loss, net capital loss, and excess tax credit carrybacks from 2008 to prior tax years.  These refunds include at least $234 million in tax refunds that belonged to WMB and/or WMB subsidiaries and were acquired by JPMC under the P&A Agreement but were deposited to the credit of Plaintiffs in the days following the Receivership;

(c)    approximately $3.7 billion credited by book entry shortly prior to the receivership of WMB so as to create a purported deposit account at WMB fsb in the name of Plaintiffs without any apparent deposit of funds;

(d)    assets of certain trusts supporting deferred compensation arrangements covering the former and current employees of WMB and its subsidiaries;

(e)    life insurance policies, which WMB or its successors purchased, paid for and recorded on their books and records; and

(f)    other assets of WMB, including intellectual property and contractual rights, settlements of certain litigation, and shares of stock in Visa Inc., as described below.

5.    Plaintiffs have also attacked the validity of the P&A Agreement in this proceeding apparently claiming that the P&A Agreement is an avoidable fraudulent transfer, that JPMC did not acquire WMB's assets in good faith under the P&A Agreement, and that the P&A Agreement constitutes a breach of the FDIC-Receiver's statutory duty.

6.    In these additional affirmative defenses, or, in the alternative, crossclaims and counterclaims, JPMC seeks a declaratory judgment that, pursuant to the

P&A Agreement, JPMC acquired substantially all of the assets of WMB and succeeded to all of WMB's existing and future rights and interests in those assets, including but not limited to those assets listed above, and is thus the sole rightful owner of all equitable and beneficial right, title and interest in such assets (the "JPMC Assets"). The disputes as to the JPMC Assets arise from Plaintiffs' competing claims to these assets in this action, and in proceedings before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), all of which were asserted after Plaintiffs' filing of voluntary Chapter 11 petitions in the Bankruptcy Court on September 26, 2008.

### PARTIES AND BACKGROUND RELATIONSHIPS

7.       Counterclaim Defendant JPMC is a national banking association organized under the laws of the United States of America with its principal place of business in Columbus, Ohio. JPMC is a wholly-owned subsidiary of JPMorgan Chase & Co., a corporation organized under the laws of the State of Delaware. JPMC is the "Assuming Bank" as that term is defined in the P&A Agreement and is the successor to and good faith purchaser for value from the Receiver under the P&A Agreement and under Title 12 of the United States Code.

8.       Plaintiff and Counterclaim Defendant WMI is a holding company incorporated in Washington with its principal place of business in Seattle, Washington. WMI and filed a voluntary petition for reorganization under chapter 11 of Title 11 of the United States Code on September 26, 2008 (the "Petition Date") before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

9.       Plaintiff and Counterclaim Defendant WMI Investment Corp. is a Delaware corporation with its principal place of business in Seattle, Washington and also

filed a voluntary petition for reorganization under chapter 11 of Title 11 of the United States Code on the Petition Date in the Bankruptcy Court.

10.     The FDIC is an independent agency of the United States government with its headquarters in the District of Columbia.  The FDIC acts in two legally distinct capacities: (a) as insurer or regulator of depository institutions and (b) as the appointed receiver of failed depository institutions.  The counterclaims are asserted against Defendant FDIC-Receiver, which was appointed receiver for WMB.

11.     Prior to the Receivership, WMI was a savings and loan holding company.  WMI directly owned WMI Investment and directly or indirectly owned WMB and WMB's subsidiaries, including WMB fsb.

12.     At all times relevant hereto, Plaintiffs, WMB and WMB's direct and indirect subsidiaries, including WMB fsb, were subject to regulation by the OTS and various other state and federal depository institution regulatory agencies and banking authorities, including the FDIC, which insured the banks' deposits.

13.     On September 25, 2008, the Director of the OTS by order number 2008-36, appointed the FDIC as Receiver for WMB and the Receiver took possession of WMB in a receivership proceeding under section 1821 of Title 12 of the United States Code.

14.     On September 25, 2008, the FDIC, as Receiver and in its corporate capacity, entered into the P&A Agreement with JPMC, whereby JPMC acquired substantially all of the assets and assumed the deposit liabilities and certain other liabilities of WMB's banking operations under the authority vested in the FDIC by Title 12.

**JURISDICTION AND VENUE**

15.    This Court has jurisdiction over this action pursuant to 12 U.S.C.

§§ 1819(b)(2)(A) and 1821(d)(6), and 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

16.    Venue is proper in this Court under 12 U.S.C. § 1821(d)(6) and 28

U.S.C. § 1391.

**STATEMENT OF FACTS**

17.    This action arises from the FDIC's disallowance of Plaintiffs'

claims and Plaintiffs' appeal of that disallowance to this Court.  Plaintiffs' post-Petition

challenge of the FDIC disallowance is effectively an attempt to claim ownership of

billions of dollars in WMB assets acquired by JPMC from the FDIC.

18.    JPMC has consistently maintained that the disputes between JPMC

and Plaintiffs raised by WMI's improper claims to ownership of, or other rights in, the

JPMC Assets should be resolved in this Court, where all of the necessary parties,

including the FDIC-Receiver can have their related claims and defenses heard.  In

JPMC's claims, counterclaims, and contingent proofs of claim in the bankruptcy

proceeding commenced by Plaintiffs, JPMC has requested that these disputes proceed

before this Court.

19.    Plaintiffs tactically decided not to name JPMC as a defendant in

this action.  In order to block the attempt by Plaintiffs to use this action to divest JPMC of

assets it acquired under the P&A Agreement, on March 30, 2009, JPMC sought to

intervene in this action.  On April 30, 2009, the FDIC stated its support of JPMC's

motion to intervene as of right as a defendant in this action, noting that "many of the

factual and legal issues raised by the complaint in this action may implicate JPMC's interests under the [P&A Agreement]."[1]

20.    On July 13, 2009, the FDIC-Receiver joined JPMC as a counterclaim defendant, recognizing that JPMC is in possession of, or claims an interest in, many of the assets that are the subject of Plaintiffs' claims and the FDIC's Counterclaims.  The FDIC recognized that disposing of certain of the Claims and Counterclaims in this action, in JPMC's absence would, as a practical matter, impair or impede JPMC's ability to protect its interests, as well as leave the FDIC-Receiver subject to a substantial risk of incurring inconsistent obligations because of Plaintiffs' and JPMC's competing ownership claims.

21.    Each of the claims asserted by Plaintiffs in the Complaint depends on this Court finding that Plaintiffs (not WMB) owned or were otherwise entitled to the assets sold by the FDIC to JPMC.  It is JPMC whose interests would be most affected were Plaintiffs to succeed on any of the claims asserted in the Complaint because substantially all right, title and interest in these assets was sold to JPMC under the P&A Agreement.

22.    As noted above, the FDIC disallowed Plaintiffs' claims to these assets in the receivership proceedings.  This Court should similarly reject Plaintiffs' appeal of the disallowance that effectively makes claims to JPMC's assets.

---

[1]    JPMC's motion to intervene remains pending due to Plaintiffs' motion to dismiss the FDIC-Receiver's counterclaims that joined JPMC as a defendant in this action.

**THE DISPUTED ASSETS**

A.    **Trust Securities**

23.    Between March 2006 and October 2007, certain trusts created by WMI and its subsidiaries issued securities with an aggregate face value of approximately $4 billion (the "Trust Securities").  The sole assets of these issuing trusts were preferred securities issued by WMPF, entitling the securities to a liquidation preference against the assets of WMPF.  The Trust Securities were subject to an exchange feature whereby, upon the occurrence of certain events, they would be transferred to WMI and the prior holders would receive in exchange depository shares representing a fractional interest in preferred stock of WMI.  The OTS permitted WMI to treat the Trust Securities as core regulatory capital of WMB in reliance on WMI's written commitment to the OTS that, upon an exchange event, WMI would automatically contribute the Trust Securities to WMB.  WMB was, thus, at all times prior to the receivership, the sole beneficial and equitable owner of any interest WMI might have in the Trust Securities.

24.    According to WMI, on September 24, 2008, the OTS declared an exchange event for the Trust Securities, compelling WMI to contribute the Trust Securities to WMB.  On September 25, 2008, WMI entered into an Assignment Agreement reflecting its obligations, which stated that WMI transferred "all of [its] right, title and interest, whether now owned or hereinafter acquired, in and to the [Trust Securities]," and future "rights and benefits arising out of the [Trust Securities,] which come into the possession of WMI," to WMB.

25.    JPMC acquired the Trust Securities pursuant to the P&A Agreement.  Notwithstanding the FDIC-Receiver's disallowance of Plaintiffs' claims to

these Trust Securities in the receivership claims process, Plaintiffs have brought this post-Petition lawsuit claiming ownership of the Trust Securities.

**B.    Tax Refunds**

26.    In all years prior to 2008, wherever permissible, WMI and all of its subsidiaries (the "WaMu Group") filed consolidated tax returns, a unitary tax report or a combined tax return with appropriate federal, state and local taxing authorities.  Pursuant to the Tax Sharing Agreement entered by WMI and members of the WaMu Group in 1999 and applicable law, each member of the WaMu Group, including WMB, would pay to WMI the tax liability for its share of the group's consolidated income and WMI would return to each member its share of any refunds or other benefits paid to WMI. Accordingly, WMB and other WMI subsidiaries were then to make payments to WMI in the same manner and at the same time as though they were filing separate returns or separate consolidated returns.  WMB and its subsidiaries paid WMI regularly for estimated federal tax liabilities incurred and, in 2003 and 2008, made payments to WMI in an alleged attempt to settle state tax liabilities.

27.    Contrary to the Tax Sharing Agreement and applicable laws and regulations, WMI has asserted that it is the sole owner of various tax-related assets. These assets, rightfully owned by WMB, include but are not limited to (a) received and expected tax refunds for tax years up to and including 2008, (b) beneficial tax attributes generated in 2008, including, *inter alia*, net operating losses, capital losses and excess tax credits, (c) WMB's entitlement to deduct its state and local tax payments from its federal tax return in all tax years up to and including 2008, (d) any overpayments made by WMB to WMI, and (e) any other amounts received by WMI for the benefit of WMB.

28.     JPMC, through the P&A Agreement, acquired "all of [WMB's] right, title and interest," in the tax refunds, tax attributes and deductions now claimed by WMI.  The value of these tax refunds and other attributes could up to $4 billion. Notwithstanding the FDIC-Receiver's disallowance of their claim to these tax-related assets in the WMB receivership claims process, Plaintiffs have brought this post-Petition lawsuit claiming ownership of or interests in these tax-related assets.

**C.     Intercompany Amounts & Disputed Accounts**

29.     WMI claims ownership of $4,358,492,498 in "Intercompany Amounts" based on a series of book entries purporting to create deposit accounts allegedly held at Plaintiffs' former subsidiaries and regulated depository institutions in favor of WMI for this amount (the "Disputed Accounts").  Core account opening documents are missing and certain documentation suggests that the Disputed Accounts are not deposit accounts, were not properly credited with good funds, or that some or all of the funds credited to the accounts do not belong to Plaintiffs.  For example, almost $1 billion of the purported deposits in these accounts was transformed from an unsecured general ledger debt that was not supported by good funds or collateral.  At least another $234 million allegedly placed in these accounts represents a tax refund owed to WMB. The decisions of how to characterize such intercompany transactions were made by a centralized Treasury group for WMI and all of its affiliates.

30.     In addition, on September 24, 2008, WMI, through its agents, caused general ledger entries to be made purporting to transfer $3.67 billion from WMB to WMB fsb.  This transfer was given a "retro" date of September 19, 2008 and was

described as "WMI contribut[ing] to FSB." No funds, however, were moved to or received by WMB fsb.

31.    Because of these and other actions and Plaintiffs' intermingling of intercompany transactions, there are disputes as to whether any funds were properly credited to these accounts, whether the purported transfer of $3.67 billion from WMB to WMB fsb was *bona fide*, the nature of the accounts, and who can claim ownership of any funds credited to the accounts, including whether JPMC has a property interest in any such funds credited to the accounts. If any funds credited to the accounts are determined to be deposit liabilities of JPMC, they are subject to liens and security interests held by JPMC as well as JPMC rights to setoff, recoupment or other legal or equitable rights.

32.    Notwithstanding the FDIC-Receiver's disallowance of Plaintiffs' claims to these intercompany amounts, Plaintiffs have brought this post-Petition lawsuit claiming that these amounts are Plaintiffs' property.

**D.    Rabbi Trusts.**

33.    WMB was the successor to the original settlor of at least 12 "Rabbi Trusts" set up to fund non-qualified retirement and pension plans for current and former employees or retirees of WMB and its predecessors. These trusts were carried on the books and records of WMB.

34.    JPMC acquired WMB's interest in the Rabbi Trusts pursuant to the P&A Agreement. Notwithstanding the FDIC-Receiver's disallowance of Plaintiffs' claim to the Rabbi Trusts, Plaintiffs have brought this post-Petition lawsuit claiming these assets are Plaintiffs' property.

E.    **Pension Plan.**

35.    WMI sponsored the WaMu Pension Plan (a tax qualified cash balance pension plan) (the "Pension Plan").  Substantially all of the employees covered by the Pension Plan were employed by WMB and its subsidiaries.  WMB incurred most of the pension and other expenses associated with the Pension Plan.  In 2007, WMB booked an intercompany receivable of approximately $316 million payable by WMI to WMB related to the Pension Plan, of which approximately $275 million is still owed to WMB.  Since WMI's bankruptcy filing, JPMC has continued to record accruals for the Pension Plan.

36.    JPMC acquired WMB's interest in the Pension Plan pursuant to the P&A Agreement.  Notwithstanding the FDIC-Receiver's disallowance of their claims concerning the Pension Plan in the WMB receivership claims process, Plaintiffs have brought this post-Petition lawsuit claiming that assets related to the plan are Plaintiffs' property.

F.    **Bank and Company Owned Life Insurance Policies.**

37.    WMB owned certain life insurance policies on employees that were purchased and paid for by WMB or its predecessors and carried on WMB's books and records (the "BOLI" policies).  These included "Split-Dollar" policies:  policies paid for in part by the named insured whose designated beneficiaries were entitled to a portion of the proceeds from the policies.

38.    JPMC acquired WMB's interest in these policies pursuant to the P&A Agreement.  Notwithstanding the FDIC-Receiver's disallowance of Plaintiffs'

claim to these life insurance policies in the WMB receivership claims process, Plaintiffs have brought this post-Petition lawsuit claiming these assets are Plaintiffs' property.

### G. Goodwill Litigation.

39. WMB was a plaintiff in at least two actions involving the regulatory treatment of goodwill, *Anchor Savings Bank, FSB* v. *United States*, No. 95-39C (Fed. Cl.) and *American Savings Bank, F.A.* v. *United States*, No. 92-872C (Fed. Cl.). These suits (the "Goodwill Litigation") resulted in judgments of $356,454,911 and $55,028,000 respectively, which are owed to JPMC as successor to WMB under the P&A Agreement.

40. JPMC acquired WMB's interest in these policies pursuant to the P&A Agreement. To the extent that Plaintiffs failed to claim an interest in the Goodwill Litigation judgments in the receivership claims process, Plaintiffs' claims to these assets are barred. To the extent Plaintiffs preserved any claim to the Goodwill Litigation judgments through the receivership claims process, these post-Petition claims must be adjudicated in this Court.

### H. Visa Shares.

41. WMB and WMB fsb were members of Visa U.S.A. WMB conducted the Visa card business for the WaMu Group, paid all services fees, and bore the risk of the Visa card business. During a restructuring, Visa U.S.A. members were given shares of stock in Visa Inc. Holders of these shares have indemnification obligations to Visa Inc. WMB and WMI both signed agreements to indemnify Visa Inc. for certain pending litigations. The expense and reserve associated with this obligation was maintained by WMB (*e.g.*, WMB recognized a $50 million indemnification liability

in 2007). On March 28, 2008, Visa Inc. paid to WMB the WaMu Group's portion of proceeds from an escrow account set up to fund members' indemnification obligations. Visa Inc. then issued the WaMu Group's 3,147,059 shares of Visa Inc. stock to WMI (the "Visa Shares"). JPMC is informed and believes that this occurred due to Visa Inc.'s practice of issuing stock to the holding company parent of its members. WMB held beneficial ownership in the Visa Shares. JPMC acquired the beneficial ownership of these shares through the P&A Agreement.

42.    JPMC acquired WMB's interest in the Visa Shares pursuant to the P&A Agreement. To the extent that Plaintiffs failed to claim an interest in the Visa Shares in the receivership claims process, Plaintiffs' claims to those assets are barred. To the extent Plaintiffs preserved any claim to the Visa Shares in the receivership claims process, these post-Petition claims must be adjudicated in this Court.

I.    **Intangible Assets.**

43.    Through the P&A Agreement, JPMC acquired certain intangible assets previously held by WMB including but not limited to (a) intellectual property rights in, *inter alia*, the trademarks such as the "Washington Mutual" and the "W" logo, (b) contractual rights with certain vendors including, *inter alia*, contracts for goods, services, property, software licenses, which WMB utilized and paid for, and (c) any other assets which JPMC so acquired (the "Intangible Assets").

44.    JPMC acquired WMB's interest in the Intangible Assets pursuant to the P&A Agreement. To the extent that Plaintiffs failed to claim an interest in the Intangible Assets in the receivership claims process, Plaintiffs' claims to those assets are

barred.  To the extent Plaintiffs preserved any claim to the Intangible Assets in the

receivership claims process, these post-Petition claims must be adjudicated in this Court.

### RELIEF REQUESTED BY JPMC

**Count One:  JPMC Assets**
**(Against WMI and FDIC-Receiver)**
**(Declaratory Judgment)**

45.    JPMC realleges and incorporates by reference each and every

allegation set forth above, as though fully set forth herein.

46.    JPMC brings this claim as a defensive measure to defeat Plaintiffs'

meritless assertions of rights in JPMC's property and challenges to the P&A Agreement.

47.    As set forth above, pursuant to the P&A Agreement and in

accordance with the FDI Act, JPMC purchased all of the right, title and interest of the

FDIC as receiver in and to substantially all of the assets of WMB, including substantially

all of the assets that are the subject of Plaintiffs' claims in this action.  The JPMC Assets

include: (a) the Trust Securities; (b) the tax refunds and other tax attributes; (c) the

Intercompany Amounts and Disputed Accounts; (d) certain Rabbi Trusts; (e) the Pension

Plan; (f) the BOLI policies; (g) the Goodwill Litigation; (h) Visa Shares; and (i) the

Intangible Assets.

48.    Notwithstanding the FDIC's disallowance of Plaintiffs' claims, in

this post-Petition proceeding Plaintiffs dispute JPMC's ownership of the JPMC Assets.

Plaintiffs' claim they own or otherwise hold interests in the JPMC Assets.  Plaintiffs have

also challenged the validity of the P&A Agreement.

49.    The FDIC, as Receiver, is a party to the P&A Agreement, has

certain indemnification obligations to JPMC under that agreement, and has an interest in

this Court's adjudication of claims to the JPMC Assets that the FDIC-Receiver previously disallowed and in Plaintiffs' challenges to the P&A Agreement.

50. In addition, to the extent that Plaintiffs are now claiming an interest in any of the JPMC Assets that they failed to raise in the receivership claims process and before this Court, the FDIC-Receiver and JPMC contend that Plaintiffs are barred from raising those claims now and in any other Court.

51. There is thus an actual controversy that is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

52. JPMC requests a declaratory judgment that JPMC acquired the JPMC Assets put at issue in this action, from the FDIC-Receiver, pursuant to the P&A Agreement.

53. JPMC further requests judgment against Plaintiffs ordering transfer of the JPMC Assets that were rightfully the property of WMB and now JPMC, and that are in Plaintiffs' possession or that are received by Plaintiffs on WMB's behalf, together with pre-judgment interest thereon at the applicable lawful rate.

**Count Two:  JPMC Assets**
**(Against WMI Only)**
**(Unjust Enrichment)**

54. JPMC realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

55. The Plaintiffs would be unjustly enriched if they retained the JPMC Assets.

56. To the extent the Court determines that the JPMC Assets are assets purchased by and belonging to JPMC, JPMC requests that the Court establish a

constructive trust for the benefit of JPMC consisting of the value recognized by Plaintiffs as a result of retaining the JPMC Assets.

## PRAYER FOR RELIEF

WHEREFORE, JPMC respectfully requests that this Court grant judgment:

(i)  declaring that the legal title and all beneficial interest in each of the JPMC Assets described in the Complaint and these Counterclaims and Crossclaims belong to JPMC as purchased in good faith for appropriate value under the P&A Agreement;

(ii)  ordering Plaintiffs to deliver to JPMC any such assets in Plaintiffs' possession, custody, or control;

(iii)  ordering Plaintiffs to take all necessary and proper steps (including by providing instructions to third parties) to record, reflect, transfer and maintain JPMC as the owner of the JPMC Assets;

(iv)  awarding JPMC damages as a result of Plaintiffs' failure to transfer, or facilitate the transfer of, assets JPMC acquired under the P&A Agreement;

(v)  awarding JPMC pre-judgment interest and punitive damages to the extent permitted by law;

(vi)  awarding JPMC damages for losses resulting from Plaintiffs' post-Petition actions, including the Plaintiffs' failure to deliver these assets to JPMC;

(vii)  requiring Plaintiffs to reimburse JPMC for all amounts by which they have been unjustly enriched;

(viii)  awarding JPMC its attorney's fees and costs; and

(ix)  awarding JPMC such other and further relief as this Court deems just and proper.

Dated:  September 4, 2009
        Washington, D.C.             Respectfully submitted,

                        /s/ Bruce E. Clark
                        _____

OF COUNSEL:              Bruce E. Clark (USDC Bar No. D00144)

Robert A. Sacks             SULLIVAN & CROMWELL LLP
Hydee R. Feldstein          125 Broad Street
SULLIVAN & CROMWELL LLP    New York, New York  10004
1888 Century Park East       Telephone:  (212) 558-4000
Los Angeles, California  90067  Facsimile:  (212) 558-3588
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800      Bruce W. Hickey (D.C. Bar No. 479036)
                        SULLIVAN & CROMWELL LLP
Stacey R. Friedman         1701 Pennsylvania Avenue, N.W.
SULLIVAN & CROMWELL LLP    Washington, D.C.  20006
125 Broad Street             Telephone:  (202) 956-7500
New York, New York  10004    Facsimile:  (202) 293-6330
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

                        *Counsel for Counterclaim Defendant*
                        *JPMorgan Chase Bank, N.A.*