UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WASHINGTON MUTUAL, INC. and
WMI INVESTMENT CORP.,

Plaintiffs and
Counterclaim Defendants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,

Defendant,

– and –

FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver of Washington Mutual Bank,

Defendant and
Counterclaim Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Counterclaim Defendant.

Case No. 1:09-cv-00533 (RMC)

**ORAL ARGUMENT REQUESTED**

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS THE AMENDED COUNTERCLAIMS AND TO STAY THE PROCEEDING**

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330

Bruce E. Clark (USDC Bar No. D00144)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for Counterclaim Defendant JPMorgan Chase Bank, N.A.*

September 4, 2009

## TABLE OF CONTENTS

***Page***

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................ 3

ARGUMENT .............................................................................................................. 3

I. THE STAY DOES NOT BAR COUNTERCLAIMS IN A POST-PETITION ACTION ........................................................................ 3

II. THE NATURE OF THE CLAIMS ASSERTED MAKES THE STAY INAPPLICABLE. ......................................................................... 6

III. PLAINTIFFS' MOTION TO STAY THE PROCEEDING SHOULD BE DENIED ........................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*19th Street Baptist Church* v. *St. Peters Episcopal Church*,
190 F.R.D. 345 (E.D. Pa. 2000) .......... 9

*Bamdad Mechanic Co., Ltd.* v. *United Technologies Corp.*,
109 F.R.D. 128 (D. Del. 1985) .......... 11

*Commodity Futures Trading Commission* v. *Chilcott Portfolio Management, Inc.*,
713 F.2d 1477 (10th Cir. 1983) .......... 9

*Creighton Omaha Regional Health Care Corp.* v. *Lomas & Nettleton Co.*,
486 F. Supp. 392 (D. Neb. 1980) .......... 10

*Dellinger* v. *Mitchell*,
442 F.2d 782 (D.C. Cir. 1971) .......... 9

* *Freeman* v. *FDIC*,
56 F.3d 1394 (D.C. Cir. 1995) .......... 8, 10

*GFL Advantage Fund, Ltd.* v. *Colkitt*,
216 F.R.D. 189 (D.D.C. 2003) .......... 9

*Holland America Insurance Co.* v. *Union Bank & Central Pecan Shelling Co., Inc.*,
777 F.2d 992 (5th Cir. 1985) .......... 4

*In re Bell & Beckwith*,
50 B.R. 422 (Bankr. Ohio 1985) .......... 5

*In re Chapman*,
265 B.R. 796 (Bankr. N.D. Ill. 2001) .......... 7

*In re Continental Air Lines, Inc.*,
61 B.R. 758 (S.D. Tex. 1986) .......... 4, 5

*In re Levitz Furniture Inc.*,
267 B.R. 516 (Bankr. D. Del. 2000) .......... 5

* *Landis* v. *American Water Works & Electric Co.*,
299 U.S. 248 (1936) .......... 9, 10

*McSurely* v. *McClellan*,
426 F.2d 664 (D.C. Cir. 1970) .......... 10

*Reiter* v. *Cooper*,
507 U.S. 258 (1993) .......... 7

* *Semmes Motors, Inc*. v. *Ford Motor Co*.,
429 F.2d 1197 (2d Cir. 1970)....................11

*United States* v. *Consumer Health Services of America*,
108 F.3d 390 (D.C. Cir. 1997)....................7

* *United States* v. *Inslaw, Inc*.,
932 F.2d 1467 (D.C. Cir. 1991)....................4

**STATUTES AND RULES**

* 11 U.S.C. § 362....................1, 4

12 U.S.C. § 1821(d)(6)(A)....................8

* 12 U.S.C. § 1821(d)(13)(D)....................8

Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989)....................2

**OTHER AUTHORITIES**

SENATE REPORT NO. 95-989 (1978)....................5

JPMorgan Chase Bank, National Association ("JPMC"), by its undersigned counsel, submits this opposition to the Motion of Plaintiffs Washington Mutual, Inc. and WMI Investment Corp. to Dismiss the Amended Counterclaims of Defendant and Counterclaim Plaintiff Federal Deposit Insurance Corporation, Pursuant to 11 U.S.C. § 362(a) and Federal Rule 12(b)(6), and to Stay the Proceeding In Its Entirety, dated July 27, 2009 (Docket Entry #45) (the "Motion").

## PRELIMINARY STATEMENT

Having invoked the jurisdiction of this Court to assert its claims against the Federal Deposit Insurance Corporation ("FDIC") and to the assets JPMC acquired from the FDIC, Plaintiffs now seek to avoid the consequences of that decision, which include the defendant's right to defend itself and assert its own claims in response. Plaintiffs cannot succeed on a claim that the FDIC violated the automatic stay in asserting defensive counterclaims in response to Plaintiffs' complaint. Plaintiffs' alternative claim, that a stay of this first-filed action in favor of the proceedings currently pending in bankruptcy court would "simplify" the disputes among the parties, also is wrong because only this court is the specified statutory forum in which these disputes must be resolved.

*First*, the bankruptcy automatic stay is not limitless and as a general matter is inapplicable to counterclaims asserted against a debtor in a suit the debtor itself initiated post-petition. The bar imposed by the Bankruptcy Code is limited to suits that "could have been commenced before the commencement of the [bankruptcy] case" or "to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a). Counterclaims to a post-petition complaint filed by a debtor fall outside its scope.

*Second*, even if the automatic stay could be invoked in a post-petition action initiated by a debtor (which JPMC believes it cannot), the Court would then examine each claim individually and on that claim-by-claim basis, the conclusion would still be that the automatic stay does not bar the counterclaims at issue here. The FDIC has asserted counterclaims based on, and arising out of, Plaintiffs' conduct in connection with, and necessarily related to, the matters asserted in the Complaint. The bulk of the counterclaims seek declaratory relief that the assets claimed by Plaintiffs in their Complaint do not belong to Plaintiffs but rather were assets of the FDIC as receiver for Plaintiffs' former subsidiary and sold by the FDIC to JPMC. Plaintiffs' argument that the automatic stay selectively shields Plaintiffs from a full and fair resolution of the competing claims to the very assets they chose to put at issue in this Court after their bankruptcy filing is just plain wrong.

*Third*, in filing their motion to stay this proceeding in its entirety, Plaintiffs do not even mention, much less satisfactorily address, the bankruptcy court's lack of jurisdiction to fully resolve the disputes among the parties. There is no dispute among the parties—nor could there be any dispute—that, in accordance with the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), only this Court, and not the bankruptcy court, has jurisdiction over claims that require a determination of rights with respect to the receivership assets of Washington Mutual Bank ("WMB") or relate to any act or omission of the FDIC as receiver for WMB.

Plaintiffs are asserting their claims in this Court against the FDIC in accordance with FIRREA but also have attempted to end run FIRREA's jurisdictional bar

by asserting the same claims to the same assets against JPMC, a party that acquired all of its right, title and interest from the FDIC. The jurisdictional bar is not so easily avoided and must bar the assertion of duplicative claims to the same assets and relating to the same acts of the FDIC, styled as claims against the purchaser to whom the FDIC sold a failed depository institution. If Plaintiffs have meritorious claims relating to the assets of WMB or the acts of the FDIC (which JPMC does not believe they do), Plaintiffs must pursue those claims before this Court, or, if they believe they can pursue the claims in another forum (which JPMC does not believe they can), Plaintiffs should dismiss this action so as to put an end to the duplicative litigation and avoid the risk of inconsistent determinations. What Plaintiffs should not be permitted to do is to invoke the jurisdiction of this Court but stay the exercise of that jurisdiction, exclusively conferred upon this Court by FIRREA, and then try to preserve optionality in favor of parallel proceedings in a bankruptcy court that has no jurisdiction over these claims. The Motion to stay this action—the one proceeding pending in the only Court with full jurisdiction to consider the relevant issues at stake—should be denied.

## BACKGROUND

The background of the Motion and the pertinent facts and procedural posture of the parties is set forth in the "Memorandum of Law of the FDIC-Receiver in Opposition to Plaintiffs' Motion to Dismiss Counterclaims and to Stay All Proceedings" dated September 4, 2009 and, for the sake of efficiency, reference is made thereto.

## ARGUMENT

### I. THE STAY DOES NOT BAR COUNTERCLAIMS IN A POST-PETITION ACTION.

The FDIC's counterclaims were filed as a consequence of Plaintiffs' having brought this action *post-petition*. For that reason alone, the counterclaims do not violate the automatic stay.

Section 362(a)(1) of the Bankruptcy Code provides that a bankruptcy petition operates as a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose *before* the commencement of the case under this title." 11 U.S.C. § 362(a)(1) (emphasis added). Because the automatic stay on the commencement or continuation of actions or proceedings is limited *only* to actions based on claims that arose before the bankruptcy petition, the "commencement and continuation of a cause of action against the debtor that arises *post-petition*, . . . is not stayed by § 362(a)(1) [and] does not violate § 362(a)(3)." *United States* v. *Inslaw, Inc*., 932 F.2d 1467, 1473 (D.C. Cir. 1991) (citing *In re Continental Air Lines, Inc*., 61 B.R. 758, 775-80 (S.D. Tex. 1986)). In other words, "the stay simply does not apply to post-bankruptcy events." *Holland Am. Ins. Co*. v. *Union Bank & Cent. Pecan Shelling Co., Inc*., 777 F.2d 992, 996 (5th Cir. 1985). Congressional intent was to provide a debtor with a "breathing spell from his creditors" and from "collection efforts" and "harassment," to "attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *See*

Notes of Committee on the Judiciary, S. REP. NO. 95-989, at 54-55 (1978). The language of the statute clearly reflects this limited purpose.

In particular, when a claim arises on account of post-petition conduct, that claim is not stayed even if "a substantial claim adverse to the debtor's claimed interest in property is asserted which might ultimately establish that the estate has no legal or equitable interest in the claimed property." *In re Levitz Furniture Inc.*, 267 B.R. 516, 522 (Bankr. D. Del. 2000) (citing *In re Continental Air Lines, Inc.*, 61 B.R. at 778). A defendant is therefore not prohibited from asserting claims against a plaintiff-debtor when the cause of action against the debtor did not accrue until the debtor asserted its claims against the defendant. *In re Bell & Beckwith,* 50 B.R. 422, 429 (Bankr. N.D. Ohio 1985) (allowing defendant to assert counterclaims against trustee, who filed a malpractice suit against defendant because counterclaims could not have been asserted against the debtor "until an action was brought against [the party asserting counterclaims] by the [debtor]"). None of the cases cited by Plaintiffs in support of the Motion's assertion that the FDIC "violate[d] the automatic stay" (Mot. at 9) even attempts to address this fundamental point.

Here, the automatic stay does not apply to the counterclaims. Plaintiffs' filing of the complaint in this Court and assertion of ownership over assets administered by the FDIC in the receivership are the post-petition predicate acts that give rise to the counterclaims. Thus, the automatic stay is inapplicable to the counterclaims filed.

## II. THE NATURE OF THE CLAIMS ASSERTED MAKES THE STAY INAPPLICABLE.

Assuming *arguendo* that the stay ever applied to post-petition claims (it does not), the stay is inapplicable to the specific claims at issue. The bulk of the FDIC's

counterclaims relate to assets over which Plaintiffs wrongfully claimed ownership through both the claims process in December 2008 and the filing of this action on March 20, 2009—actions taken by Plaintiffs well after the commencement of Plaintiffs' bankruptcy cases in September, 2008. The assets at issue include tax refunds, claimed deposit accounts, trust preferred securities, and ownership of the proceeds of goodwill litigations and insurance policies administered in the receivership and put at issue in this litigation by Plaintiffs (*see* FDIC Countercl. ¶¶ 12-35, 40-49, 60-69).

Whatever exceptions may be said to exist to the general principle that the automatic stay does not bar counterclaims in an action initiated by a debtor post-petition, the stay cannot bar compulsory counterclaims inextricably tied to the same assets and disputes put at issue by Plaintiffs' own complaint. Plaintiffs cannot seriously contend that they are free to litigate their upside affirmative recovery while other parties with an interest in the litigation are stripped of the right to assert even compulsory counterclaims, a result that offends fundamental notions of fairness and due process. The automatic stay cannot be used as a sword to sever defensive or compulsory counterclaims (or cross-claims) directly related to the matters put at issue by Plaintiffs in a post-petition complaint.

Neither do the remaining counterclaims asserted by the FDIC that are not directly related to the ownership of the specific assets Plaintiffs have put at issue violate the automatic stay. The remaining counterclaims not only relate directly to the transactions underlying the claims asserted by Plaintiffs, but also are necessary to fully resolve the disputes between the FDIC and Plaintiffs and determine the amounts—if any—that the two parties owe to each other. For example, Plaintiffs seek recovery of

approximately $6.5 billion of capital contributions on the alleged basis that these contributions to WMB by WMI were fraudulent conveyances. (Pl. Compl. ¶¶ 25-28.) However, the FDIC has claimed that the amounts allegedly owed to WMI on account of these challenged contributions—if any—are vastly inflated due to the return of equally large or greater sums by way of dividends and intercompany transfers from WMB back to WMI, transfers that the FDIC asserts constituted unlawful dividends, fraudulent transfers and otherwise avoidable affiliate intercompany transfers during the same period. (FDIC Countercl. ¶¶ 54-59). The automatic stay does not apply to claims, as the FDIC notes in its memorandum in opposition, such as recoupment or similar procedures which, like the FDIC claims, merely seek to determine the total obligations owed by or to the parties on a net basis. *See United States* v. *Consumer Health Servs. of Am.*, 108 F.3d 390, 395 (D.C. Cir. 1997) (explaining that prepetition debt is exempted from an automatic stay where the "debt is inextricably tied up in the post-petition claim," that is, "the creditor's and debtor's respective claims arise out of the same 'transaction'"); *In re Chapman*, 265 B.R. 796, 807 (Bankr. N.D. Ill. 2001) (noting that the automatic stay is not triggered when "the counterclaim is in the nature of a recoupment defense . . . . [because] '[i]t is well settled . . . that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment.'") (quoting *Reiter* v. *Cooper*, 507 U.S. 258, 265 (1993)). Plaintiffs have admitted in their bankruptcy filings that they and their former subsidiaries, including WMB, had a centralized cash management system, allocated intercompany liabilities and assets amongst themselves and moved billions of dollars from one entity to another and then back again with the stroke of a pen. Plaintiffs' half of the story

necessarily requires evaluation of the other half—tracing not only payments and transfers from WMI to WMB as Plaintiffs do but also those from WMB or its subsidiaries to WMI.

## III. PLAINTIFFS' MOTION TO STAY THE PROCEEDING SHOULD BE DENIED.

In "propos[ing] that the Court stay this action in its entirety pending resolution of the bankruptcy proceedings" (Mot. at 17), Plaintiffs ignore the fact that Congress has conferred exclusive jurisdiction upon this Court over these claims which seek a determination of rights with respect to the assets of WMB and the acts of the FDIC in selling those assets to JPMC. *See* 12 U.S.C. § 1821(d)(6)(A), (d)(13)(D); *Freeman* v. *FDIC*, 56 F.3d 1394, 1399-1400 (D.C. Cir. 1995). The fact that one of the claimants is the former parent bank holding company of WMB that filed for bankruptcy the day after the receivership does not strip this Court of its exclusive jurisdiction under FIRREA or confer jurisdiction upon the bankruptcy court to resolve the disputes among the parties as to who owns the assets at issue or regarding the sale of assets and assumption of liabilities in the purchase and assumption transaction between the FDIC and JPMC. Because FIRREA and the powers that statute vests in the FDIC are at the core of the disputes among the parties, this Court has—and the bankruptcy court does not have—the jurisdiction to adjudicate the issues at stake.[1]

[1] Notwithstanding this express jurisdictional bar, by Orders entered on July 6, 2009, the bankruptcy court has found that it has jurisdiction to adjudicate claims by Plaintiffs against JPMC as opposed to the same claims if asserted against the FDIC. Those orders have been appealed to the United States District Court for the District of Delaware by both the FDIC and JPMC, and JPMC also has moved to withdraw the reference with respect to these claims and to transfer them to this Court—the only court with full jurisdiction to resolve the claims among the parties—so that they can be consolidated with the first-filed action brought by Plaintiffs here.

Plaintiffs' motion to stay this action disregards not only this Court's exclusive jurisdiction over the claims at issue, but also the high threshold a movant must meet in any circumstances when asking that litigation be brought to a complete standstill. As the Supreme Court has cautioned, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis* v. *N. Am. Co.*, 299 U.S. 248, 255 (1936). In determining whether to exercise its discretion to grant a stay, courts must be mindful of the fact that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *GFL Advantage Fund, Ltd.* v. *Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) (quoting *Commodity Futures Trading Comm'n* v. *Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)); *see also Dellinger* v. *Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.") (quoting *Landis*, 299 U.S. at 255).

Plaintiffs' motion to stay these proceedings in favor of the adversary proceedings in the bankruptcy court must be denied because Plaintiffs have not made any showing "of hardship or inequity in being required to go forward" with this litigation. *Landis*, 299 U.S. at 255. Nor is it possible for Plaintiffs to make such a showing in these circumstances where (a) Plaintiffs are seeking to stay a litigation that they commenced, *19th Street Baptist Church* v. *St. Peters Episcopal Church*, 190 F.R.D. 345, 351 (E.D. Pa. 2000) (denying plaintiffs' request for a stay because "plaintiffs chose to bring this matter to this court"), and (b) this Court is the only Court upon which Congress has conferred

exclusive jurisdiction to hear the related claims of all the parties. *Freeman*, 56 F.3d at 1399-1400. The lack of foundation for a stay is further evidenced, even setting aside the FDIC's and JPMC's view that the bankruptcy court does not have jurisdiction to hear any of these claims, by Plaintiffs' concession that the bankruptcy court, at best, *might* only be able to "simplify" some unspecified number of issues already pending before this Court, confirming that this Court is the only forum with the indisputable authority to adjudicate fully and finally *all* of the pending disputes. (Mot. at 19 (arguing that at best "resolution of the issues in the bankruptcy proceedings . . . *could* moot, or least simplify, *a number* of the issues pending before this Court"). Therefore, the stay Plaintiffs are proposing must be denied as not only running afoul of clear Congressional intent as manifest in FIRREA's jurisdictional bar, but also promoting judicial *inefficiency* by requiring serial proceedings in two different fora, all while running the risk that any proceedings in the bankruptcy court will be found void and invalid for lack of jurisdiction. *See McSurely* v. *McClellan*, 426 F.2d 664, 671 (D.C. Cir. 1970) (court's discretion to order a stay is meant to "coordinate the business of the court efficiently and sensibly") (quoting *Landis*, 299 U.S. at 255); *Creighton Omaha Regional Health Care Corp.* v. *Lomas & Nettleton Co.*, 486 F. Supp. 392, 397 (D. Neb. 1980) ("[T]he uncertain status of the jurisdiction of the Texas court is a factor mitigating against a stay of the instant proceeding, since this Court clearly has jurisdiction over [the defendant].").

Plaintiffs' motion to stay in favor of the later-filed adversary proceedings in the bankruptcy court must also be denied as being in clear violation of the first-filed rule. Courts are "compel[led] . . . to deny plaintiffs' motion [to stay]" when "the first-in-time rule so clearly applies . . . . To hold otherwise would be to invite the very abuse the

first-in-time rule and other procedural rules attempt to address." *Bamdad Mech. Co., Ltd.* v. *United Techs. Corp*., 109 F.R.D. 128, 133-34 (D. Del. 1985). Under the first-filed rule, "the second action should give way to the first" because "even when the same party is plaintiff in both actions, the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed." *Semmes Motors, Inc*. v. *Ford Motor Co*., 429 F.2d 1197, 1202-03 (2d Cir. 1970); *Bamdad Mech. Co.*, 109 F.R.D. at 132 (holding a stay should not issue in a first-filed action in favor of a subsequently filed action where "two suits are initiated by the same plaintiff."). Accordingly, a court should reject any attempt by a plaintiff in the first-filed action to stay that action when it is possible, as is the case here, that the plaintiff is engaging in gamesmanship. *Semmes Motors*, 429 F.2d at 1203 ("[A]ny exception [to the first-filed rule] for cases where the same party is plaintiff in both actions would entail the danger that plaintiffs may engage in forum shopping or, more accurately, judge shopping.").

If Plaintiffs do not want to pursue the claims they brought in this forum, then they should dismiss this lawsuit. Otherwise, given that this is the only forum in which these disputes can and should be resolved and that this is the first filed action to raise these claims, this case should proceed expeditiously. A stay of this proceeding to allow the bankruptcy court to proceed to adjudicate ownership of the assets Plaintiffs put at issue here would be a grossly inefficient use of judicial resources. The bankruptcy court lacks subject matter jurisdiction and the request to stay the action in this Court—the only court hosting the disputes among the parties with the jurisdiction fully to resolve these disputes—should be denied.

## CONCLUSION

For the reasons stated herein and in the FDIC's opposition to Plaintiffs' Motion to Dismiss the Amended Counterclaims of Defendant Federal Deposit Insurance Corporation, and to Stay the Proceedings in Their Entirety, JPMC respectfully submits that the Motion should be denied in its entirety.

Dated: September 4, 2009
Washington, D.C.

Respectfully submitted,

/s/ Bruce E. Clark

Bruce E. Clark (USDC Bar No. D00144)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330

*Counsel for Counterclaim Defendant JPMorgan Chase Bank, N.A.*

OF COUNSEL:

Robert A. Sacks
Hydee R. Feldstein
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588