UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON MUTUAL, INC., <br><br> and <br><br> WMI INVESTMENT CORP., <br><br>     Plaintiffs and Counterclaim Defendants, <br><br>   v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, <br><br>     Defendant, <br><br> and <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver of Washington Mutual Bank, <br><br>     Defendant and Counterclaim Plaintiff, <br><br> and <br><br> JPMORGAN CHASE BANK, N.A., <br><br>     Intervenor-Defendant. | Case No. 1:09-cv-00533 RMC |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER TO STAY AND LIMIT THE SCOPE OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S THIRD PARTY SUBPOENAS**

Plaintiffs Washington Mutual, Inc. and WMI Investment Corp. (collectively, "Debtors" or "Plaintiffs"), respectfully submit this Reply Memorandum in Support of Plaintiffs' Motion for Protective Order to Stay and Limit the Scope of JPMorgan Chase Bank, National Association's ("JPMC") Third Party Subpoenas.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I. DISCOVERY SHOULD PROCEED ONLY AFTER THE COURT RULES ON THE OUTSTANDING MOTIONS TO DISMISS AND TO STAY .................................2

    A. Pending Motions to Dismiss Will Substantially Affect the Scope of Discovery ...............................................................................................................2

    B. JPMC's Discovery Goes Beyond the Scope of WMI's Claims Against the FDIC ......................................................................................................................5

    C. Discovery Should Wait Until the Court Rules on the Motion to Stay ...................7

II. DISCOVERY SHOULD PROCEED ACCORDING TO A JOINT SCHEDULE .............7

CONCLUSION ................................................................................................................................11

**TABLE OF AUTHORITIES**

Page

**Cases**

*In re Beef Industry Antitrust Litigation*,
   589 F.2d 786 (5th Cir. 1979) ...................................................................................................3

*Hallford v. Allen, Case No. 07-0401-WS-C*,
   2007 WL 2570748 (S.D. Ala. August 30, 2007) .......................................................................9

*Illinois Bell Tel. Co. v. FCC*,
   911 F.2d 776 (D.C. Cir. 1990) ...................................................................................................4

*Infosystems, Inc. v. Ceridian Corp.*,
   197 F.R.D. 303 (E.D. Mich. 2000) ............................................................................................9

*Nat'l Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n*,
   41 F.3d 721 (D.C. Cir. 1994) .....................................................................................................4

*Northampton, Bucks County, Mun. Authority v. Bucks County
   Water and Sewer Authority*,
   508 A.2d 605 (Pa. Commw. Ct. 1986) ......................................................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978).....................................................................................................................2

*Santiago-Sepulveda v. Esso Standard Oil Co.*,
   256 F.R.D. 39 (D. Puerto Rico 2009) ........................................................................................4

*Southwestern Pa. Growth Alliance v. Browner*,
   121 F.3d 106 (3d Cir. 1997).......................................................................................................4

*Spangler v. Pasadena City Bd. of Ed.*,
   552 F.2d 1326 (9th Cir. 1977) ...................................................................................................3

*Standard Space Platforms Corp. v. United States*,
   35 Fed. Cl. 463 (1996) ...............................................................................................................3

*Steppes Apartment, Ltd. v. Armstrong*,
   188 F.R.D. 642 (D. Utah 1999) .................................................................................................8

*U. S. v. Lehigh Valley Co-op. Farmers, Inc.*,
   294 F.Supp. 140 (D.C. Pa. 1968)...............................................................................................4

*Vinson v. Washington Gas Light Co.*,
   321 U.S. 489 (1944)...................................................................................................................4

**Statutes**

Fed. R. Civ. P. 24(c) ........................................................................................................................3

Fed. R. Civ. P. 26 ............................................................................................................. 7, 8, 9

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 2

Fed R. Civ. P. 26(d) ............................................................................................................. 7, 9

Fed. R. Civ. P. 26(d)(1) ............................................................................................................ 9

Local Civil Rule 7(j) ................................................................................................................. 3

**PRELIMINARY STATEMENT**

JPMC's principal argument—that all of its discovery requests will be relevant regardless of the outcome of all motions to dismiss—is simply wrong.  There are now four pending motions to dismiss that go to the merits of every claim at issue in this case.  The outcome of those motions could significantly change the claims at issue, and thus the discovery relevant to this case.  Indeed, many of JPMC's discovery requests are only relevant to JPMC's own revised and far-reaching declaratory judgment counterclaim, which WMI recently moved to dismiss because it goes far beyond WMI's claims against the FDIC, and thus beyond this Court's jurisdiction and the scope of JPMC's permitted intervention.  Should the Court grant any of these motions, the scope of claims and related discovery could be significantly limited.  Thus, discovery should wait until the Court has resolved which claims are properly at issue in this case.

Moreover, as a matter of procedure, discovery by all parties should wait until this Court rules on the pending scheduling orders.  JPMC argues that it should not have to wait until there is a scheduling order, or meet and confer specifically about discovery in this case, because JPMC was excluded from early discovery meetings on the legitimate basis that it was clearly not a party then.  But that history does not excuse JPMC from failing to propose its own schedule, or even inform the other parties in the case that it intended to serve third party discovery.

Finally, to the extent JPMC uses its opposition to argue that all of its disputes against WMI should be heard in this Court alone, it bears repeating that JPMC has lost no fewer than four separate motions in the bankruptcy court on this same issue.  That court has repeatedly held, pursuant to settled Third Circuit law, that claims between the Debtors and JPMC must go forward in bankruptcy court.  Thus, JPMC can pursue all of its claims, and all of its discovery, in those proceedings.

**ARGUMENT**

I. **DISCOVERY SHOULD PROCEED ONLY AFTER THE COURT RULES ON THE OUTSTANDING MOTIONS TO DISMISS AND TO STAY**

    A. **Pending Motions to Dismiss Will Substantially Affect the Scope of Discovery**

There is no question that the appropriate breadth of discovery is determined by the operative claims, counterclaims, and defenses in a case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken"); *see also* Fed. R. Civ. P. 26(b)(1).

There are now four pending motions to dismiss before the Court, including WMI's motion to dismiss JPMC's counterclaims filed after WMI filed this motion, which collectively challenge every claim or counterclaim by every party. Each motion has the potential to substantially affect the scope of the claims at issue in the case and thus discovery:

- **FDIC-Receiver's Motion to Dismiss Plaintiffs' Complaint.** The FDIC-Receiver moved to dismiss Counts II, III, IV and V of the Plaintiffs' complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. FDIC further moved to dismiss the portion of Plaintiffs' remaining claim, Count I, pertaining to capital contributions which Plaintiffs allege were fraudulent transfers under sections 554 and 548 of the Bankruptcy Code to the extent WMI and WMB were insolvent at the time that they were made. This motion, if granted, would dismiss all Plaintiffs' counts in their entirety except for Count I, which was only challenged in part. However, even Count I would be substantially altered if the motion were granted. A ruling on the portions at issue, concerning four separate contributions ranging from December 2007 to September 2008, would affect the scope of discovery regarding the financial condition of WMB and WMI at the time of the transfers, as well as substantial discovery over the circumstances of the transfers themselves.

- **FDIC-Corporate's Motion to Dismiss Plaintiffs' Complaint.** In this motion, FDIC-Corporate takes the same position with respect to Plaintiffs' Count I as the FDIC-Receivers motion, discussed above, and also moves to dismiss the remaining counts of WMI's complaint as to FDIC-Corporate on the basis that those counts do not implicate FDIC-Corporate.

- **Plaintiffs' Motion to Dismiss FDIC Counterclaims.** Plaintiffs moved to dismiss the FDIC's counterclaims in their entirety as they violate the automatic stay. Assets implicated by these counterclaims include tax refunds and tax

03935.61559/3173430.6      2

attributes, Trust Preferred Securities, Intercompany Amounts, Deposit Accounts, Goodwill Litigation, and Insurance Proceeds. Plaintiffs further moved to dismiss Count I-IV, VI, VII, and IX-X for their failure to state a claim upon which relief can be granted. This motion is especially relevant to the scope of JPMC's intervention, and thus discovery, given that JPMC's intervention is for the limited purpose of assisting the FDIC to the extent its dispute calls into question ownership of certain assets.

- **Plaintiffs' Motion to Dismiss JPMC's Counterclaims.** After filing this motion for protective order, and within the time permitted to move to dismiss following the Court's grant of JPMC's motion to intervene, Plaintiffs moved to dismiss JPMC's two revised counterclaims in their entirety. The first of these revised counterclaims for declaratory judgment attempts to dispute numerous assets not already put at issue by WMI's complaint, and is thus not permitted by this Court's order granting intervention. These assets include the Rabbi Trusts, the Goodwill litigation, Visa Shares, and WMI's "Intangible Assets." Furthermore, JPMC's revised declaratory judgment claim fails to allege facts sufficient to claim an ownership interest over the assets listed.[1]

JPMC's contention that none of these motions could affect discovery is thus clearly incorrect, especially in light of (1) the FDIC-Receiver's motion, which if granted could substantially change Plaintiffs' Count I—a count JPMC admittedly based many of its requests

---

[1] Throughout its motion, JPMC seems to suggest that WMI's motion to dismiss its counterclaims should be disregarded because WMI did not challenge them until after the Court granted JPMC's motion to intervene. However, the local rules make it clear that an intervening party's pleading is considered filed the day its motion is granted. *See* Local Civil Rule 7(j) ("A motion to intervene as a party pursuant to Rule 24(c), Federal Rules of Civil Procedure, shall . . . . be deemed to have been filed and served by mail on the date on which the order granting the motion is entered."). Moreover, a non-party must be granted Rule 24 intervenor status before it may participate in discovery. *Standard Space Platforms Corp. v. United States,* 35 Fed.Cl. 463, 466 (1996) (agreeing with the First and Fifth Circuits that a non-party who has not been granted intervenor status and is not the person from whom discovery is sought has no basis upon which to be heard before the court on a party's motion for a protective order); *In re* Beef *Industry Antitrust Litigation*, 589 F.2d 786, 788 (5th Cir. 1979) ("Some courts have held that it is reversible error to conduct any proceedings at the behest of parties who have failed to intervene formally pursuant to Rule 24(c)."); *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) ("If a court has for some reason permitted persons who are not parties to a suit to participate in some stage of the proceedings, this will rarely, if ever, suffice to eliminate the necessity of formal intervention for these persons to become parties in their own right."). Here, JPMC did not even ask the Court for permission to expand its counterclaims from those filed with its motion to intervene, and thus are arguably not properly pending even now.

on; and (2) Plaintiffs' recent motion to dismiss JPMC's counterclaims, which calls into question the far-reaching declaratory judgment claim that JPMC uses to justify many of its discovery requests.

Furthermore, these motions to dismiss merely support the general rule that, as an intervenor, JPMC may not litigate over issues not raised between the original parties to this action. *U. S. v. Lehigh Valley Co-op. Farmers, Inc.*, 294 F.Supp. 140, 144 (D.C. Pa. 1968) ("Intervention is not proper to litigate an issue or issues which do not exist or are not available in an action between the original parties."); *Southwestern Pa. Growth Alliance v. Browner*, 121 F.3d 106, 121 (3d Cir. 1997) (finding that an intervening party "may argue *only the issues raised by the principal parties* and may not enlarge those issues" ) (emphasis added) (citing *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944) ("an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues . . ."); *see also Nat'l Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n*, 41 F.3d 721, 729 (D.C. Cir. 1994) ("Intervenors may only argue issues that have been raised by the principal parties; they simply lack standing to expand the scope of the case to matters not addressed by the petitioners in their request for review.") (citing *Illinois Bell Tel. Co. v. FCC*, 911 F.2d 776, 786 (D.C. Cir. 1990)); *Santiago-Sepulveda v. Esso Standard Oil Co.*, 256 F.R.D. 39 (D. Puerto Rico 2009) (limiting a third party's counterclaims to the scope for which the party had been admitted to the action, and explaining that its intervention order had "said nothing about any right of [the intervenor] to inject into the case" various other disputes with the plaintiffs and "so this order denies such permission now").

Nor does WMI's general disclaimer that it is not asserting certain assets "at this point in time, in this litigation" give JPMC *carte blanche* to seek discovery regarding any asset that WMI

has disputed anywhere, as JPMC claims.  Opp. at 10.  Quite simply, those asserts are not at issue in this litigation now.  If they are ever properly added to the litigation, JPMC can take discovery about them at that time.  In the meantime, JPMC can pursue the discovery it has already issued about these exact assets in the Bankruptcy Proceeding.[2]

### B.    JPMC's Discovery Goes Beyond the Scope of WMI's Claims Against the FDIC

JPMC also claims that most if not all its requested discovery goes to the unchallenged portion of WMI's count I against the FDIC.  However, several of the requests fall outside the Plaintiffs' claims and go beyond what JPMC was permitted to plead in its counterclaims.

Indeed, JPMC concedes that its requests related to (1) the Rabbi trusts, (2) the Goodwill litigation, (3) the Visa Shares, and (4) the "Intangible Assets" go beyond the scope of WMI's claims, so that discovery about those assets is only proper if JPMC's revised counterclaims are allowed to proceed notwithstanding WMI's motion to dismiss.  This concession affects one subpoena in its entirely, given that JPMC submitted an entire subpoena to Visa, Inc., as well as requests made in discovery to all the third parties.

Nevertheless, those requests were merely examples of JPMC's many overbroad discovery requests.  Other examples include the following document requests:

- All Documents, Including Communications, Concerning any action by the officers or board of directors of Washington Mutual in response to any request or directive from, or any supervisory action by, the OTS, FDIC or Federal Reserve.[3]

---

[2] Declaration of Deborah K. Brown, Esq., in Support of Plaintiffs' Reply Memorandum in Support of Their Motion for Protective Order to Stay and Limit the Scope of JPMorgan Chase Bank, National Association's Third Party Subpoenas ("Brown Decl. ISO Reply"), Ex. A (JPMC's First Request for Production of Documents, dated Sep. 11, 2009).

[3] Declaration of Deborah K. Brown, Esq., in Support of Plaintiffs' Motion for Protective Order  to Stay and Limit the Scope of JPMorgan Chase Bank, National Association's Third Party (footnote continued)

- All Documents, Including Communications, Concerning any regulatory examination of Washington Mutual during 2008.[4]

- All Documents Concerning, Including Communications with, any rating agency Concerning Washington Mutual between November 1, 2007 and September 27, 2008.[5]

- All Documents Concerning, Including Communications with, Deloitte LLP Concerning Washington Mutual.[6]

- All Documents, Including Communications, Concerning checks or other payments received by WMI that are in payment for items or services attributable to the operations of WMB or WMB fsb or were addressed to a Washington Mutual payee other than WMI, from September 25, 2008 to date.[7]

- All Documents, Including Communications, Concerning any consideration by WMI of withdrawing funds credited any account in its name at WMB and depositing them in a financial institution not part of Washington Mutual.[8]

- All Documents, Including Communications, Concerning Washington Mutual's Tier 1 capital, Tier 2 capital, economic capital, and any other form of capital.[9]

- All Documents Concerning Communications from September 25, 2008 to date with the OTS, FDIC, Federal Reserve, the Creditors Committee or the plaintiffs or their counsel in the Texas Action concerning the Chapter 11 Case, the D.C. Action, the Adversary Proceedings, WMI's claims submitted in the FDIC receivership proceedings, or the issues raised in those proceedings.[10]

- All Documents Concerning Communications from September 25, 2008 to date with the Department of Justice, the U.S. Senate Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs, OTS, FDIC, Federal Reserve, the U.S. Securities and Exchange

---

Subpoenas ("Brown Decl. ISO Motion"), Ex. A (Subpoena to Alvarez & Marsal Inc., Request No. 5).

[4] *Id.*, Request No. 12.
[5] *Id.*, Request No. 27.
[6] *Id.*, Request No. 28.
[7] *Id.*, Request No. 34.
[8] *Id.*, Request No. 45.
[9] *Id.*, Request No. 47.
[10] *Id.*, Request No. 51.

> Commission, and the Creditors Committee or their counsel concerning actual or potential proceedings against WMI.[11]

- All Documents Concerning Communications, Including all Communications, between WMI and JPMC; Oak Hill Capital Partners; TPG Capital Corporation; Cerberus Capital Management, L.P.; Simpson Thacher & Bartlett LLP; The Blackstone Group, L.P.; Lehman Brothers Holdings, Inc.; The Goldman Sachs Group, Inc.; Morgan Stanley; or Heller Ehrman LLP Concerning Washington Mutual.[12]

These and other requests go far beyond WMI's claims against the FDIC, and will likely be challenged at least in some part by the responding third parties depending on the outcome of the motions to dismiss.[13]

### C. Discovery Should Wait Until the Court Rules on the Motion to Stay

In addition to the four dismissal motions before the Court, Plaintiffs have asked for a stay of the whole action due to its substantial duplication in the Bankruptcy Proceeding, the estate's limited resources, and the potential that resolution of the pending motions might streamline this action. For those same reasons, it makes sense to stay discovery at least until the Court rules on that motion.

## II. DISCOVERY SHOULD PROCEED ACCORDING TO A JOINT SCHEDULE

In its opposition, JPMC claims that it fulfilled any Rule 26 discovery coordination obligations by asking to be involved in early conferences, before it was even arguably a party,[14]

---

[11] *Id.*, Request No. 52.

[12] *Id.*, Request No. 56.

[13] JPMC incorrectly claims that "[n]one of the third parties who received a subpoena has moved to quash or for a protective order limiting it." Opp. at 7. In fact, on October 16, 2009, ten days before JPMC filed that statement with the court, thirteen out of the fourteen individuals to whom JPMC issued subpoenas sent formal objections to JPMC. Brown Decl. ISO Reply, Ex B (Outside Directors Objections). Furthermore, at least one of the entities to whom JPMC issued a subpoenas sent a letter to JPMC stating that they would wait to comply with the subpoena until the motion for a protective order was ruled upon. Brown Decl. ISO Reply, Ex. C (Cerberus letter).

and by generally discussing discovery in connection with the Bankruptcy Proceeding. But the facts remain that JPMC did not submit its own scheduling order and never conferred about serving *this* discovery in *this* case.

Furthermore, WMI and FDIC have outstanding, competing scheduling orders before the Court. (Amended Proposed Scheduling Order of FDIC (Docket No. 37) and WMI's Proposed Scheduling Order (Docket No. 38)). The Court should decide on these orders before discovery goes forward.

In fact, in its motion to intervene, JPMC indicated it would follow exactly this process. In its Reply Memorandum in Further Support of JPMC's Motion to Intervene as Defendant (Docket NO. 22), JPMC stated that "[i]f its intervention is granted, JPMC stands ready to proceed with a scheduling conference so that appropriate deadlines can be set for pre-trial matters." (Reply Mem. at 17.) It is only now that its motion to intervene has been granted that JPMC claims it can go forward with its own discovery without any agreed upon or ordered discovery schedule.

JPMC also attempts to justify its unilateral conduct by arguing that the general rule that parties must meet and confer under Rule 26 before serving discovery does not apply to it because "courts have recognized that parties added after the initial discovery conference need not request an additional conference before taking part in discovery." Opp. at 13. However, the two cases JPMC cites for its position do not apply to a party serving discovery and are thus inapplicable.

---

[14] When JPMC was not a party to the litigation, WMI was within its rights to exclude JPMC. *See* Fed. R. Civ. P. 26 ("the *parties* must confer") (emphasis added); Fed R. Civ. P. 26(d) ("a *party* may not seek discovery from any source before the *parties* have conferred as required by Rule 26(f)") (emphasis added); *Northampton, Bucks County, Mun. Authority v. Bucks County Water and Sewer Authority*, 508 A.2d 605, 618 (Pa. Commw. Ct. 1986) (holding that it is not an
(footnote continued)

First, *Steppes Apartment, Ltd. v. Armstrong* stands for the limited position that JPMC actually quotes in its footnote: sometimes "discovery can go forward *against* later joined parties without a further 26(f) conference after the initial conference." *Steppes Apartment, Ltd. v. Armstrong*, 188 F.R.D. 642, 644 (D. Utah 1999) (emphasis added). Similarly, in *Infosystems*, the court dealt with a situation in which " the existing parties [were] already engaged in discovery." *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 308 (E.D. Mich. 2000). The issue in that case was whether the original parties had to "separately meet and confer with a third-party defendant before seeking discovery *from this newly-added party*." *Id.* (emphasis added). In fact, the Court in *Infosystems* stated that "by its express language, Rule 26(d) requires that parties must meet and confer before commencing discovery, '[e]xcept when authorized under these rules or by local rule, order, or agreement of the parties,'" but then explained that "this Court issued such an order." *Id.*

JPMC thus has no authority for the position that a non-party can commence discovery before it has been joined, and then later avoid the requirements of Fed. R. Civ. P. 26(d). After all, JPMC is not in the position of the party in *Infosystems*, where there was a court order allowing for an exception to the requirement of Rule 26(d). Thus, JPMC must still meet and confer with WMI as required by the plain text of Rule 26. Fed. R. Civ. P. 26(d)(1); *Hallford v. Allen*, Case No. 07-0401-WS-C, 2007 WL 2570748, at * 2 (S.D. Ala. August 30, 2007) (upholding a Magistrate Judge's Order denying a motion for pre-26(f) conference discovery).

Finally, JPMC claims that the discovery they seek "will certainly be taken at some point." Opp. at 16. However, the possibility that discovery may happen in the future is insufficient to do

---

abuse of discretion for a court to preclude an intervenor from participating in the pretrial conference, where, at the time of the conference, the intervenor is not yet a party).

away with benefits of coordinated discovery required by the Federal Rules of Civil Procedure.

## **CONCLUSION**

For the foregoing reasons, WMI respectfully requests that this Court issue an order staying discovery in response to JPMC's subpoenas, and limiting the scope of those discovery requests to discovery relevant to WMI's claims against the FDIC.

Dated: New York, New York
November 2, 2009

        s/ Deborah K. Brown
        Quinn Emanuel Urquhart Oliver & Hedges, LLP

        Peter E. Calamari
        (petercalamari@quinnemanuel.com)
        David L. Elsberg
        (davidelsberg@quinnemanuel.com)
        Deborah K. Brown
        (deborahbrown@quinnemanuel.com)
        51 Madison Avenue, 22nd Floor
        New York , NY 10010
        (212) 849-7000
        Fax: (212) 849-7100

        Erica P. Taggart
        (ericataggart@quinnemanuel.com)
        865 S. Figueroa St., 10th Floor
        Los Angeles, CA 90017
        (213) 443-3000
        Fax: (213) 443-3100

        -and-

        Weil, Gotshal & Manges, LLP
        David R. Berz
        Jennifer Wine
        Adam P. Strochak
        1300 Eye Street, NW, Suite 900
        Washington, DC 20005
        Telephone: (202) 682-7001
        Facsimile: (202) 857-0939

        *Attorneys for Plaintiffs Washington Mutual, Inc. and WMI Investment Corp.*