UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WASHINGTON MUTUAL, INC., *et al.*,

Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, *et al.*,

Defendants.

Civil Action No. 1:09-cv-00533 (RMC)

**OPPOSITION OF JPMORGAN CHASE BANK, N.A. TO PLAINTIFFS'
MOTION TO DISMISS THE COUNTERCLAIMS OF JPMORGAN CHASE
BANK, N.A., AND TO STAY THE PROCEEDINGS**

OF COUNSEL:

Robert A. Sacks
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588


November 9, 2009

Bruce E. Clark (USDC Bar No. D00144)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

*Counsel for Defendant
JPMorgan Chase Bank, N.A.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...........................................................................................................3

      A.     Procedural History .......................................................................3

      B.     JPMC's First Claim........................................................................4

      C.     JPMC's Second and Third Claims.....................................................5

      D.     The Bankruptcy Proceedings ...........................................................6

ARGUMENT ................................................................................................................7

I.     PLAINTIFFS' REQUEST TO STAY THEIR OWN PROCEEDING
      SHOULD BE DENIED. ......................................................................7

II.    PLAINTIFFS' MOTION SHOULD BE DENIED AS UNTIMELY WITH
      RESPECT TO THE SECOND AND THIRD CLAIMS. ..................................12

III.   THE LIMITS PLAINTIFFS SEEK TO PLACE ON JPMC'S PARTICIPATION
      IN THIS ACTION ARE UNFOUNDED AND NOT A BASIS FOR A
      MOTION TO DISMISS. ....................................................................14

      A.     JPMC is a Defendant in This Action With The Right to Assert Claims...............14

      B.     JPMC's Claims Do Not Expand The Litigation Before This Court,
           The Only Court With Unquestioned Jurisdiction. ..................................15

IV.   THE BANKRUPTCY AUTOMATIC STAY AND BANKRUPTCY
      JURISDICTION DO NOT OUST THIS COURT OF JURISDICTION
      TO HEAR JPMC'S CLAIMS................................................................17

      A.     JPMC's Claims Are Not Subject to the Automatic Stay Under
           11 U.S.C. § 362. ....................................................................18

      B.     There is No Exclusive Bankruptcy Court Jurisdiction That Divests
           This Court of the Ability to Proceed.................................................21

V.    JPMC'S FIRST AND SECOND CLAIMS ARE PROPERLY PLEADED.....................24

CONCLUSION .............................................................................................................33

# TABLE OF AUTHORITIES

Page(s)

## CASES

*19th Street Baptist Church* v. *St. Peters Episcopal Church*,
    190 F.R.D. 345 (E.D. Pa. 2000)........................................................................9

*A. Bauer Mechanical, Inc.* v. *Joint Arbitration Board*,
    562 F.3d 784 (7th Cir. 2009) .......................................................................12

*Acands, Inc.* v. *Travelers Cas. & Sur. Co.*,
    435 F.3d 252 (3d Cir. 2006)........................................................................13

*American Directory Service Agency, Inc.* v. *Beam*,
    No. Civ. A. No. 87-1653, 1988 WL 33502 (D.D.C. March 28, 1988)..........................12

*Argentum Medical, LLC* v. *Nobel Biomaterials*,
    No. 3:08-CV-1305, 2009 WL 1444288 (M.D. Pa. May 21, 2009)...............................12

*\*Armenian Assembly of America, Inc.* v. *Cafesjian*,
    597 F. Supp. 2d 128 (D.D.C. 2009) .............................................................24

*Ashcroft* v. *Iqbal*,
    129 S. Ct. 1937 (2009).........................................................................25, 27

*\*Association of American Medical Colleges* v. *Princeton Review, Inc.*,
    332 F. Supp. 2d 11 (D.D.C. 2004) ........................................................24, 25, 26

*Atherton* v. *District of Columbia Office of Mayor*,
    567 F.3d 672 (D.C. Cir. 2009) ...................................................................24

*Bamdad Mechanic Co.* v. *United Technologies Corp.*,
    109 F.R.D. 128 (D. Del. 1985) ...................................................................10

*Banks* v. *York*,
    515 F. Supp. 2d 89 (D.D.C. 2007) ...............................................................26

*Blachy* v. *Butcher*,
    221 F.3d 896 (6th Cir. 2000) ..................................................................21-22

*California Housing Securities, Inc.* v. *FDIC*,
    12 F. App'x 519 (9th Cir. 2001) .................................................................28

*Commodity Futures Trading Comm'n* v. *Chilcott Portfolio Management., Inc.*,
  713 F.2d 1477 (10th Cir. 1983) ................................................................11

*Creighton Omaha Reg'l Health Care Corp.* v. *Lomas & Nettleton Co.*,
  486 F. Supp. 392 (D. Neb. 1980) ................................................................8

*CSX Transportation* v. *United States*,
  867 F.2d 1439 (D.C. Cir. 1989) ................................................................24

*Dellinger* v. *Mitchell*,
  442 F.2d 782 (D.C. Cir. 1971) ................................................................9

*District of Columbia* v. *Merit Systems Protection Board*,
  762 F.2d 129 (D.C. Cir. 1985) ................................................................14

*Dragt* v. *Dragt/DeTray, LLC*,
  139 Wash. App. 560 (2008) ................................................................20

*Drs. Groover, Christie & Merritt, P.C.* v. *Burke*,
  917 A.2d 1110 (D.C. Cir. 2007) ................................................................20

*Epos Technology, Ltd.* v. *Pegasus Technologies, Ltd.*,
  636 F. Supp. 2d 57 (D.D.C. 2009) ................................................................25

*Erickson* v. *Pardus*,
  551 U.S. 89 (2007) ................................................................24

*Freeman* v. *FDIC*,
  56 F.3d 1394 (D.C. Cir. 1995) ................................................................7, 17

*Frere* v. *Lee*,
  No. Civ. A. 99-601, 2000 WL 64297 (E.D. La. Jan. 26, 2000) ................................14

*F.T.C.* v. *Capital City Mortgage Corp.*,
  32 F. Supp. 2d 16 (D.D.C. 2004) ................................................................32

*Gardner* v. *United States*,
  211 F.3d 1305 (D.C. Cir. 2000) ................................................................23

*GFL Advantage Fund, Ltd.* v. *Colkitt*,
  216 F.R.D. 189 (D.D.C. 2003) ................................................................11

*Gustave-Schmidt* v. *Chao*,
  226 F. Supp. 2d 191 (D.D.C. 2002) ................................................................28

*In re American Export Group International Services*,
   167 B.R. 311 (Bankr. D.D.C. 1994) ...........................................................23

*\*In re American Mortgage & Investment Services, Inc.*,
   141 B.R. 578 (Bankr. D. N.J. 1992) ..........................................................22

*\*In re Bob Richards Chrysler Plymouth Corp., Inc.*,
   473 F.2d 262 (9th Cir. 1973) ............................................................28, 29

*In re CBI Holding Co., Inc.*,
   529 F.2d 432 (2d Cir. 2008)....................................................................23

*In re Continental Air Lines, Inc.*,
   61 B.R. 758 (S.D. Tex. 1986) ..................................................................18

*In re First Central Financial Corp.*,
   377 F.3d 209 (2d Cir. 2004).....................................................................30

*In re Franklin Savings Corp.*,
   159 B.R. 9 (Bankr. D. Kan. 1993) ............................................................30

*In re Grossman's, Inc.*,
   400 B.R. 429 (D. Del. 2009) ....................................................................20

*\*In re Levitz Furniture, Inc.*,
   267 B.R. 516 (Bankr. D. Del. 2000) ..........................................................18

*In re Lexington Healthcare Group, Inc.*,
   363 B.R. 713 (Bankr. D. Del. 2007) ..........................................................28

*In re Louisiana World Exposition, Inc.*,
   832 F.2d 1391 (5th Cir. 1987) ..................................................................32

*In re M. Frenville, Co., Inc.*,
   744 F.2d 332 (3d Cir. 1984).................................................................18, 20

*In re MCorp Financial, Inc.*,
   170 B.R. 899 (S.D. Tex. 1994) .................................................................30

*In re Merrick*,
   175 B.R. 333 (B.A.P. 9th Cir. 1994).........................................................19

*In re Mid America Entertainment Plus, Inc*,
   135 B.R. 419 (Bankr. D. Kan. 1991) ........................................................22

*In re Noletto*,
   244 B.R. 845 (Bankr. S.D. Ala. 2000) ........................................................................22

*In re Revco D.S., Inc.*,
   111 B.R. 631 (Bankr. N.D. Ohio 1990) .....................................................................29

*Landis* v. *North American Co.*,
   299 U.S. 248 (1936) .............................................................................................8, 9

*Langenkamp* v. *Culp*,
   498 U.S. 42 (1990) ...................................................................................................23

*McSurely* v. *McClellan*,
   426 F.2d 664 (D.C. Cir. 1970) ...................................................................................7

*Medimmune, Inc.* v. *Genentech, Inc.*,
   549 U.S. 118 (2007) .................................................................................................25

*Me-Wuk Indian Community of the Wilton Rancheria* v. *Kempthorne*,
   246 F.R.D. 315 (D.D.C. 2007) ................................................................................15

*Montecatini Edison, S.P.A.* v. *Ziegler*,
   486 F.2d 1279 (D.C. Cir. 1973) ..............................................................................16

*Morales* v. *Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) .................................................................................................24

*Northfield Insurance Co.* v. *Bender Shipbuilding & Repair Co., Inc.*,
   122 F.R.D. 30 (S.D. Ala. 1988) ..............................................................................12

*Pumpelly* v. *Cook*,
   106 F.R.D. 238 (D.D.C. 1985) ..........................................................................15, 16

*Rick* v. *United States*,
   161 F.2d 897 (D.C. Cir. 1947) .................................................................................24

*Scheuer* v. *Rhodes*,
   416 U.S. 232 (1974) .................................................................................................26

*Schneider* v. *Dumbarton Developers, Inc.*,
   767 F.2d 1007 (D.C. Cir. 1985) .........................................................................10, 14

*Semmes Motors, Inc.* v. *Ford Motor Corp.*,
   429 F.2d 1197 (2d Cir. 1970) ..................................................................................10

*Speed Products Co.* v. *Tinnerman,*
 171 F.2d 727 (D.C. Cir. 1948) ............................................................10

*Suburban Trust and Savings Bank* v. *University of Delaware,*
 910 F. Supp. 1009 (D. Del. 1995) .......................................................24

*Topaz Mutual Co.* v. *Marsh,*
 839 P.2d 606 (Nev. 1992) ...................................................................20

*United States* v. *Inslaw, Inc.,*
 932 F.2d 1467 (D.C. Cir. 1991) ....................................................18, 19

*United States* v. *Intrados/International Management Group,*
 277 F. Supp. 2d 55 (D.D.C. 2003) ......................................................16

*Vermont Castings, Inc.* v. *Evans Products Co., Grossman's Division,*
 510 F. Supp. 940 (D. Vt. 1981) ...........................................................12

*Washington Metropolitan Area Transit Authority* v. *Ragonese,*
 617 F.2d 828 (D.C. Cir. 1980) ............................................................10

*Yates* v. *Ellis,*
 No. 37143-0-II, 2009 WL 1677620 (Wash. Ct. App. June 16, 2009) ...........20

*Young* v. *Young,*
 191 P.3d 1258 (Wash. 2008) ...............................................................20

*Youngstown Sheet & Tube Co.* v. *Lucey Products Co.,*
 403 F.2d 135 (5th Cir. 1968) ..............................................................12

## STATUTES AND RULES

11 U.S.C. § 362 ...........................................................................18, 19

*12 U.S.C. § 1821(d)(6) ...................................................................7, 17

*12 U.S.C. § 1821(d)(13)(D) .......................................................1, 6, 7, 17

28 U.S.C. § 1334(b) ...........................................................................21

28 U.S.C. § 1334(e) ...........................................................................21

28 U.S.C. § 2201 ...............................................................................25

*Fed. R. Civ. P. 8(a)(2) .......................................................................24

Fed. R. Civ. P. 8(b)(6) ........................................................................................13

Fed. R. Civ. P. 8(c)(2) ..........................................................................................5

*Fed. R. Civ. P. 12(a)(1)(B) ................................................................................12

Fed. R. Civ. P. 13(a) ...........................................................................................16

Fed. R. Civ. P. 13(b) ...........................................................................................16

*Fed. R. Civ. P. 13(h) ..........................................................................................12

U.S. District Court for the District of Columbia Local Civil Rule 7(j) ................5

## OTHER AUTHORITIES

73 Am. Jur. 2d Statutes § 169 (2009) ...........................................................23-24

Interagency Policy Statement on Income Tax Allocation in a Holding Company
    Structure, 63 Fed. Reg. 64,757 (Nov. 23, 1998) ............................................29

Defendant JPMorgan Chase Bank, N.A. ("JPMC"), by its undersigned counsel, submits this Opposition to Plaintiffs' Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (together with WMI, "Plaintiffs") Motion to Dismiss the Counterclaims of JPMorgan Chase Bank, National Association, and to Stay the Proceedings in Their Entirety, dated October 26, 2009 (D.I. 79) (the "Motion"). Plaintiffs' Motion should be denied.

## PRELIMINARY STATEMENT

By this Motion, Plaintiffs again request a stay of this action, in connection with a broader motion to dismiss three claims asserted by JPMC. The stay request should be denied in favor of expedited resolution of the issues before this Court.

At the November 4, 2009 hearing before this Court, when Plaintiffs' first request for a stay was argued, there was agreement that this is the exclusive court with jurisdiction to adjudicate Plaintiffs' claims in this action, brought in accordance with the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). *See* 12 U.S.C. § 1821(d)(13)(D). The Court nonetheless expressed concern with, in part, the comity and efficiency of proceeding while the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") also proceeds with claims the Bankruptcy Court has determined it has jurisdiction to hear, notwithstanding the pendency both of two appeals from that Court's exercise of jurisdiction and a motion to withdraw the reference to the Bankruptcy Court.

While these concerns are not unimportant, they are ones that can be allayed. There are relatively few issues that have been briefed in the bankruptcy proceeding, and other than the question of whether there are material disputed issues involving what Plaintiffs claim to be deposit accounts, no issues submitted to the Bankruptcy Court should result in any ownership determination that is the crux of most of the legal disputes at issue in this proceeding. For example, there has been no activity in the Bankruptcy Court that even touches on the billions of

dollars of disputes related to the capital contributions, Rabbi Trusts, the Pension Plan, BOLI policies and Intangible Assets that are raised in Count I of Plaintiffs' complaint in this action. Moreover, there is no reason to forestall discovery on any of these matters because discovery is necessary regardless of which court adjudicates these issues.

Although Plaintiffs represented to the Bankruptcy Court, in referring to this action in this Court, that "[t]he two actions are not between the same parties dealing with the same claims" (June 24, 2009 Tr. 94:20-21), if that were the case then there would be no reason for the stay Plaintiffs are now requesting. Plaintiffs seek a stay because they know that (i) JPMC has rights to assets that it acquired from the FDIC only because those assets were property of the WMB receivership, (ii) to the extent this Court adjudicates whether those assets were property of the WMB receivership, as FIRREA vests it with exclusive jurisdiction to do, that determination will be outcome determinative of their claims against JPMC to the same assets, and (iii) even though they brought this action here, as FIRREA obligated them to do, Plaintiffs want to make a grab for these assets in Bankruptcy Court, which they perceive as a more favorable forum. It is also clear that it is fully within Plaintiffs' control to bring these issues to this Court, which unquestionably has jurisdiction to entertain them and eliminate all duplication. The Federal Deposit Insurance Corporation ("FDIC") and JPMC are prepared to proceed in this Court; indeed, under FIRREA they are entitled to an adjudication from this Court (and this Court alone) as to whether the assets to which Plaintiffs want to lay claim were assets of the WMB receivership. Plaintiffs have not, given these circumstances, established that a stay of this proceeding would be appropriate, especially given that this is the first-filed action and one they commenced.

Rather, the appropriate response to the Court's concern about comity and efficiency is entry of a scheduling order that ensures prompt resolution in this Court of claims against the FDIC and related to the FDIC's sale of WMB's assets to JPMC. JPMC is prepared to proceed on an expedited basis and has submitted a schedule herewith that would permit this Court to resolve all of the ownership issues in less than nine months. If Plaintiffs want to pursue these issues and preserve their FIRREA rights, then they should proceed on this or a similar schedule before this Court. If Plaintiffs truly believe that another Court has jurisdiction to adjudicate their claims, Plaintiffs should dismiss this action. A stay so that Plaintiffs can both preserve their FIRREA rights and proceed in their chosen forum (not Congress's chosen FIRREA forum), is a request to have their cake and eat it too, which should be denied.

With respect to Plaintiffs' motion to dismiss JPMC's three claims (which are described more fully below), that motion should be denied. *First*, Plaintiffs' motion to dismiss JPMC's Second and Third Claims is untimely. *Second*, Plaintiffs' assertions that JPMC cannot bring these claims because it is not a full party or is some breed of "limited" intervenor with less than full rights to proceed with compulsory and permissive counterclaims, is legally unfounded. *Third*, the bankruptcy automatic stay does not apply to JPMC's Second and Third Claims for the same reasons this Court recognized in its October 5, 2009 ruling that the bankruptcy automatic stay does not apply to JPMC's First Claim. *Fourth*, there is no "exclusive bankruptcy jurisdiction" that divests this Court from hearing JPMC's claims. And, *fifth*, each of JPMC's claims is properly pleaded.

## BACKGROUND

### A.    Procedural History

As this Court is aware, Plaintiff WMI is a former thrift holding company incorporated in the State of Washington; WMB was WMI's thrift subsidiary, and its failure was

the largest in United States history.  On September 25, 2008, the Office of Thrift Supervision

("OTS") closed WMB and appointed the FDIC as its receiver.  Pursuant to a Purchase and

Assumption Agreement dated that same day (the "P&A Agreement"), the FDIC sold to JPMC

substantially all of WMB's assets and certain liabilities.[1]  The FDIC also instituted a claims

process, under FIRREA, which is the exclusive process for the resolution of claims involving

WMB's assets and the acts of the FDIC as receiver for WMB.  On December 30, 2008, Plaintiffs

submitted a Proof of Claim pursuant to the FIRREA-mandated claims process, asserting, among

other things, ownership of various assets sold pursuant to the P&A Agreement.  On January 23,

2009, the FDIC disallowed Plaintiffs' claims in their entirety.  On March 20, 2009, Plaintiffs

commenced this proceeding, asserting several causes of action, including a challenge to the

FDIC's disallowance of Plaintiffs' claims.  (Complaint ("Compl.") (D.I. 1).)

      **B.**      **JPMC's First Claim**

        On March 30, 2009, JPMC filed a motion to intervene as a defendant in this

action.  JPMC attached a proposed answer to its motion to intervene.  (D.I. 4.)  JPMC also

propounded a single counterclaim for declaratory judgment upholding the FDIC's disallowance

of Plaintiffs' claims and rejecting Plaintiffs' challenge to that disallowance (the "JPMC's First

Claim" or "JPMC's March Claim").  Plaintiffs opposed JPMC's motion to intervene, but did not

move to have the scope of JPMC's intervention limited in any way.  Plaintiffs also argued that

JPMC's First Claim was an impermissible violation of the bankruptcy automatic stay.

        This Court granted JPMC's Motion to Intervene, finding that Plaintiffs are

claiming an "ownership interest in some or all of the property of the FDIC Receiver purported to

---

[1]      While Plaintiffs are fond of suggesting that JPMC purchased WMB's assets for "only"
$1.9 billion, Plaintiffs ignore those liabilities of WMB that JPMC assumed.

transfer to JPMC." [2]  (Mem. Op. at 4 (D.I. 66).)  The Court further "agree[d] with JPMC that

Plaintiffs' claims are 'premised on the allegation that assets sold by the FDIC to JPMC . . .

belong to WMI.'"  (*Id.* at 3.)  The Court also determined that "the automatic stay [does not]

apply to JPMC's [First Claim] seeking a declaratory judgment finding that WMI does not own

the property at issue."  (*Id.* at 5.)[3]

      **C.**      **JPMC's Second and Third Claims**

      On July 13, 2009, while JPMC's motion to intervene was pending, the FDIC filed

an amended answer to Plaintiffs' Complaint (the "FDIC's Amended Answer and

Counterclaims").[4]  (D.I. 34.)  The FDIC's counterclaims were against Plaintiffs and, pursuant to

Fed. R. Civ. P. 13(h), named JPMC as an additional counterclaim defendant on certain claims.

(*Id.*)  On July 14, 2009, JPMC accepted service of the complaint, agreeing to respond to the

FDIC's Amended Answer and Counterclaims within sixty days.  (D.I. 43.)

      On September, 4, 2009, JPMC responded to the FDIC's pleadings ("JPMC's

September Answer and Claims").  (D.I. 60.)  Along with its answer, JPMC pleaded two

additional claims identified as "Affirmative Defenses, or in the Alternative, Counterclaims and

Crossclaims:"[5] (i) a second declaratory judgment claim asserted against Plaintiffs and the FDIC

(the "Second Claim") and (ii) an unjust enrichment claim asserted against Plaintiffs (the "Third

---

[2]      Pursuant to LCvR 7(j), JPMC's First Claim was deemed to have been filed and served on
October 5, 2009.

[3]      On October 13, 2009, this Court also granted the holders of senior notes issued by WMB
(the "WMB Bondholders") motion to intervene.  (D.I. 71.)

[4]      On July 27, 2009, Plaintiffs moved to dismiss the FDIC's amended counterclaims and
sought to stay the proceedings.  (D.I. 45.)  That motion is fully briefed.

[5]      Under Federal Rule of Civil Procedure 8(c)(2), the Court may "as justice requires" treat a
counterclaim as an affirmative defense.

Claim," together the "JPMC's September Claims," and with JPMC's First Claim, the "Claims").
(*Id.*)  JPMC asserted its September Claims defensively to protect itself from the Plaintiffs'
ongoing efforts to claim, as their own, billions of dollars worth of assets that were assets of the
WMB receivership and now belong to JPMC.

Plaintiffs did not move or otherwise respond to the JPMC's September Claims
within the time allotted by the applicable rules.  Nor did WMI seek leave from this Court for
additional time to respond to the JPMC's September Claims.  Rather, on October 26, 2009, more
than seven weeks after JPMC served the JPMC's September Claims, Plaintiffs filed this motion
to dismiss under Federal Rule of Civil Procedure 12(b)(6).  (D.I. 79.)

### D.    The Bankruptcy Proceedings

As this Court is well aware, in the bankruptcy proceedings Plaintiffs have asserted
ownership of, or interests in, numerous assets that JPMC purchased from the FDIC pursuant to
the P&A Agreement, including the assets Plaintiffs claim in this litigation.  JPMC has
maintained at all times in those bankruptcy proceedings that all ownership issues concerning the
assets Plaintiffs have put at issue in this litigation should be—and under FIRREA must be—
adjudicated by this Court.  On March 30, 2009, JPMC filed contingent proofs of claim with the
Bankruptcy Court expressly indicating that the assets at issue in this action should be adjudicated
by this Court in the first instance.[6]  The bankruptcy proceedings are still in their preliminary
stages:  no discovery order has been even been entered in those proceeding and no depositions

---

[6]    Notwithstanding the FIRREA jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D), by Orders
entered on July 6, 2009, the Bankruptcy Court determined that it has jurisdiction to adjudicate
claims by Plaintiffs against JPMC (as opposed to the FDIC).  Those orders have been appealed
to the United States District Court for the District of Delaware by both the FDIC and JPMC, and
JPMC has moved to withdraw the reference with respect to claims relating to the failure of
Washington Mutual and to transfer them from the District of Delaware to this Court—the only
court with unquestionable jurisdiction to resolve the claims among the parties.

are scheduled.  There have been no substantive papers filed with respect to almost any asset in

dispute, including the Trust Securities, the tax refunds, the intangible assets, litigation proceeds,

insurance policies or any of the employee benefits issues.  In fact, the bankruptcy proceedings to

date have been generally limited (in relevant part) to jurisdictional issues, Plaintiffs' pre-

discovery motion for summary judgment seeking $4 billion in disputed funds that they claim

were contained in certain intercompany accounts, and Plaintiffs' Rule 2004 examination into

baseless allegations that the FDIC, JPMC and possibly others—as opposed to the financial crisis

and mismanagement at Washington Mutual—are somehow responsible for WMB's failure.

## ARGUMENT

### I.    PLAINTIFFS' REQUEST TO STAY THEIR OWN PROCEEDING SHOULD BE DENIED.

Plaintiffs' request to stay this action "pending resolution of the Bankruptcy Case."

(Pl. Mem. at 14.)  JPMC understands that the Court is concerned about issues of comity and

efficiency because of the ongoing proceedings in the Bankruptcy Court.  While JPMC

acknowledges the importance of these concerns, they are not concerns that require a stay of this

action because the concerns can be addressed in another way.

Whatever may proceed before the Bankruptcy Court, it is undisputed that only

this Court was selected by Congress to have exclusive jurisdiction over claims involving the

FDIC.  *See* 12 U.S.C. § 1821(d)(6)(A), (d)(13)(D); *Freeman* v. *FDIC*, 56 F.3d 1394, 1399-1400

(D.C. Cir. 1995).  Because FIRREA vests this Court with jurisdiction over all of the parties and

all of the claims, comity and efficiency strongly point to one proceeding in this Court, rather than

serial proceedings first before the Bankruptcy Court and then before this Court.  This is

particularly true given the likelihood that the Bankruptcy Court's decisions will be found void

and invalid for lack of jurisdiction.  *See McSurely* v. *McClellan*, 426 F.2d 664, 671 (D.C. Cir.

1970) (court's discretion to order a stay is meant to "coordinate the business of the court efficiently and sensibly") (quoting *Landis* v. *N. Am. Co.*, 299 U.S. 248, 255 (1936)); *Creighton Omaha Reg'l Health Care Corp.* v. *Lomas & Nettleton Co.*, 486 F. Supp. 392, 397 (D. Neb. 1980) ("the uncertain status of the jurisdiction of the Texas court is a factor mitigating against a stay of the instant proceeding, since this Court clearly has jurisdiction").

That said, at the November 4, 2009 hearing, it appeared that the Court's assessment of the persuasiveness of Plaintiffs' request for a stay turns in part on the level of activity, and future activity, in the bankruptcy proceedings. Although Plaintiffs have generated "heat and light" in the Bankruptcy Court, the majority of the actions relate to a pre-discovery (and unfounded) effort to obtain turnover of $4 billion in disputed intercompany account balances and discovery into conspiracy theories about how the FDIC, JPMC and possibly others (and not the financial crisis or Plaintiffs' mismanagement of Washington Mutual) led to the largest bank failure in United States history. JPMC is of the strong view that these preparatory proceedings will not promptly reach the dispositive ownership issues that are properly before this Court and only this Court, because all of those issues depend—conclusively—on this Court's determination as to whether those assets were assets of the WMB receivership. Although Plaintiffs disagree with that assessment, they cannot credibly assert that there is anything before the Bankruptcy Court that even touches on the billions in dollars of disputes related to the capital contributions, Rabbi Trusts, the Trust Securities, the Pension Plan, BOLI policies and Intangible Assets. Plaintiffs indeed concede that the resolution of issues in the Bankruptcy Cases "could" be able to "simplify" some unspecified "number of the issues pending before this Court," confirming that several issues have not been raised in the bankruptcy proceeding and others will never be raised, because this Court is the only forum with the indisputable authority to adjudicate

-8-

fully and finally all of the pending disputes.  (Pl. Mem. at 15.)  Boiled down, Plaintiffs are asking

not that this Court withhold judgment on issues already decided by the Bankruptcy Court, but are

instead asking this Court to stay this proceeding and forgo addressing issues that are *yet to be*

*addressed* by the Bankruptcy Court and completely forestall discovery on issues that would be

relevant regardless of which forum adjudicates these issue.

　　　　There is no legal basis for such a request by Plaintiffs.  "Only in rare

circumstances will a litigant in one cause be compelled to stand aside while a litigant in another

settles the rule of law that will define the rights of both."  *Dellinger* v. *Mitchell*, 442 F.2d 782,

786 (D.C. Cir. 1971) (internal quotation and citation omitted).  As the Supreme Court has made

clear, the party seeking a stay "must make out a clear case of hardship or inequity in being

required to go forward" with the litigation.  *Landis*, 299 U.S. at 255.  Plaintiffs' desire to march

forward in the forum they perceive as more favorable—while it is completely within their control

to proceed here—does not amount to hardship or inequity.  This is particularly true where, as

here, Plaintiffs are seeking to stay a litigation that they commenced to preserve their rights.  *See*

*19th Street Baptist Church* v. *St. Peters Episcopal Church*, 190 F.R.D. 345, 351 (E.D. Pa. 2000)

(denying plaintiffs' request for a stay because "plaintiffs chose to bring this matter to this

court").  Indeed, if Plaintiffs' decisions on how to proceed in the Bankruptcy Court were

sufficient to divest this Court of its ability to proceed with the FIRREA issues, then the exclusive

procedures established by Congress would be easily avoided by industrious plaintiffs seeking to

avoid the rules under that statute.  If permitted, Plaintiffs' maneuver will, for all practical

purposes, mark the end of FIRREA's exclusive claims process in all cases where, as is common,

a bank holding company files for bankruptcy after its banking subsidiary fails and is put into

receivership.

Moreover, Plaintiffs' request to stay this action in favor of the later-filed adversary proceedings in the Bankruptcy Court should be denied as being in clear violation of the first-filed rule. The D.C. Circuit has explained that "[f]or more than three decades the rule in this circuit has been that '(w)here two cases between the same parties . . . the one which is commenced first is to be allowed to proceed to its conclusion first . . . .'" *Washington Metro. Area Transit Auth.* v. *Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (citing *Speed Products Co.* v. *Tinnerman*, 171 F.2d 727, 729 (D.C. Cir. 1948)). Under the first-filed rule, "the second action should give way to the first" because "even when the same party is plaintiff in both actions, the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed." *Semmes Motors, Inc.* v. *Ford Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970); *see also Bamdad Mech. Co.* v. *United Techs. Corp.*, 109 F.R.D. 128, 132 (D. Del. 1985) (holding a stay should not issue in a first-filed action in favor of a subsequently filed action where "two suits are initiated by the same plaintiff"). Accordingly, a court should reject any attempt by plaintiffs in the first-filed action to stay that action when it is possible that the plaintiffs are simply seeking a tactical advantage, as is the case here. *Semmes Motors*, 429 F.2d at 1203 ("[A]ny exception [to the first-filed rule] for cases where the same party is plaintiff in both actions would entail the danger that plaintiffs may engage in forum shopping or, more accurately, judge shopping.").

For all these reasons, the solution is not a stay in Plaintiffs' favor that disregards not only this Court's exclusive jurisdiction over the claims at issue as manifest in FIRREA's jurisdictional bar, but also the high threshold a movant must meet in any circumstances when asking that litigation be brought to a complete standstill. The FDIC and JPMC are prepared to move forward in this court and "[t]he right to proceed in court [despite a request for a stay]

-10-

should not be denied except under the most extreme circumstances." *GFL Advantage Fund, Ltd.* v. *Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) (quoting *Commodity Futures Trading Comm'n* v. *Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)).  If Plaintiffs wish to preserve their FIRREA rights, then they must proceed in the forum selected by Congress.  If Plaintiffs do not want to pursue the claims they brought in this forum, then they should dismiss this lawsuit and waive their rights.  They should not be able to have it both ways.

This motion should not be seen entirely from Plaintiffs' perspective—it is not all about Plaintiffs' desire to proceed in an alternative forum of questionable jurisdiction and to avoid duplicative litigation that is entirely of Plaintiffs' own making.  Rather, JPMC and the FDIC have a strong countervailing interest in having this Court adjudicate, promptly and completely, any questions about assets that were part of the WMB receivership unimpeded by any proceedings in the Bankruptcy Court.  The continued uncertainty created by Plaintiffs' assertion of rights to assets that were part of the WMB receivership, and their efforts to prevent or delay this Court from determining the validity of any conflicting claim to those assets, is causing ongoing harm and threatens the finality and utility of the P&A transaction.

The solution is an expedited schedule before this Court.  JPMC has submitted a schedule that would permit this Court to resolve all of the ownership issues in less than nine months.  This is the only Court that can adjudicate these issues, and pursuant to FIRREA's mandate and in the interests of justice they should be adjudicated promptly, either with Plaintiffs' cooperation or over Plaintiffs' objections.

## II.     PLAINTIFFS' MOTION SHOULD BE DENIED AS UNTIMELY WITH RESPECT TO THE SECOND AND THIRD CLAIMS.

Plaintiffs' motion to dismiss JPMC's Second and Third Claims is untimely and should be dismissed.  On July 13, 2009, the FDIC filed its Amended Answer and Counterclaims, naming JPMC as a counterclaim defendant, pursuant to Fed. R. Civ. P. 13(h).[7]  (D.I. 34.)  As of that date, JPMC was a party to this action.  On July 14, 2009, JPMC accepted service of the complaint, agreeing to respond within sixty days.  (D.I. 43.)  On September 4, 2009, JPMC timely filed its answer, along with the Second and Third Claims.  (D.I. 60.)  Any response to JPMC's September Claims—including a motion to dismiss—was required to be filed within 20 days of service of those counterclaims.  *See* Fed. R. Civ. P. 12(a)(1)(B) (requiring that "[a] party *must* serve an answer to a counterclaim or crossclaim within 20 days" of being served with the pleading) (emphasis added); *see also Youngstown Sheet & Tube Co.* v. *Lucey Prods. Co.*, 403 F.2d 135, 139 (5th Cir. 1968) (determining that defendants did not have a duty to respond to an intervenor complaint but if the pleading at issue were a counterclaim it "would, of course, require a response to all the averments" in the counterclaim).  Accordingly, Plaintiffs' motion to dismiss JPMC's Second and Third Claims was due on September 24, 2009.

---

[7]     Federal Rule of Civil Procedure 13(h) permits joinder of additional parties to a counterclaim in accordance with the provisions of Rules 19 and 20.  Fed. R. Civ. P. 13(h); *see also Am. Directory Serv. Agency, Inc.* v. *Beam*, No. Civ. A. No. 87-1653, 1988 WL 33502, *2 n.1 (D.D.C. March 28, 1988) (noting that "leave of court is certainly not contemplated by the plain terms of Rule 13(h)"); *Northfield Ins. Co.* v. *Bender Shipbuilding & Repair Co., Inc.*, 122 F.R.D. 30, 32-33 (S.D. Ala. 1988) (holding that under the 1966 amendment to Rule 13(h) leave of court is not required to join a counterclaim defendant); *Vermont Castings, Inc.* v. *Evans Prods. Co.*, 510 F. Supp. 940, 946 (D. Vt. 1981) (same); *Argentum Med., LLC* v. *Nobel Biomaterials*, No. 3:08-CV-1305, 2009 WL 1444288, at *3 (M.D. Pa. May 21, 2009) (same); *cf. A. Bauer Mech., Inc.* v. *Joint Arbitration Bd.*, 562 F.3d 784, 791-92 (7th Cir. 2009) ("Rule 7(a) lists the types of pleadings allowed by federal courts.  Rule 7(a)(3) allows an answer to a counterclaim designated as a counterclaim . . . .").

Plaintiffs filed nothing by September 24, 2009.  Plaintiffs sought no extension of time from this Court (or from JPMC) for their response.  Plaintiffs do not assert in this motion that it overlooked the deadline or seek relief for erroneous calculation of any deadline or for any other reason.  Instead, Plaintiffs filed this Motion on October 26, 2009, relying on Rule 12(b) grounds for dismissal more than a month after their time to file any such motion to dismiss expired.  (*See* Pl. Mem. at 12 (citing Fed. R. Civ. P. 12(b)).)  Plaintiffs' Motion should be denied as untimely as to the Second and Third Claims.[8]  Moreover, Plaintiffs' failure to respond results in Plaintiffs being deemed to have admitted the allegations propounded by JPMC in the Second and Third Claims.  Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied").[9]

Plaintiffs attempt to avoid this result by pretending they are responding to "revised" counterclaims that did not become effective until a time that was more convenient for, or fits better with, Plaintiffs' strategy of delaying this litigation as much as possible in favor of litigating in Bankruptcy Court.  (Pl. Mem. at 4.)  JPMC has not propounded any "revised" counterclaims.  Instead, the Second and Third Claims were effective when served on September 4, 2009.  Because Plaintiffs did not respond on time, sought no extension and have offered no

---

[8]    Plaintiffs might have instead elected to treat JPMC's September Claims as affirmative defenses to which no response is required.  If that is the strategy Plaintiffs wish to pursue, then Plaintiffs' objections that JPMC's September Claims triggered the bankruptcy automatic stay would be wholly unfounded.  *See, e.g.*, *Acands, Inc.* v. *Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006) (defenses do not violate the automatic stay).  In any event, any motion to dismiss these affirmative defenses pursuant to Rule 12(b) would still have been due on September 24, 2009.  (*See* Pl. Mem. at 12 (citing Fed. R. Civ. P. 12(b)).)

[9]    There is nothing in Plaintiffs' Motion that provides good cause for relief from these results.  If such a request for relief is brought by separate motion, JPMC will respond appropriately at that time.  Until then, no such relief should be granted.

legitimate excuse for their failure to respond properly, Plaintiffs' motion to dismiss those claims should be denied.

### III. THE LIMITS PLAINTIFFS SEEK TO PLACE ON JPMC'S PARTICIPATION IN THIS ACTION ARE UNFOUNDED AND NOT A BASIS FOR A MOTION TO DISMISS.

Plaintiffs assert that JPMC's Claims should be dismissed because JPMC has been granted a "limited" role in this litigation and, even if its role is not limited, its procedural rights are constrained such that this Court is prohibited from hearing certain aspects of JPMC's Claims. (Pl. Mem. at 6, 8, 10.) JPMC's participation in this action is as a full party and there is nothing that prohibits this Court from hearing all aspects of JPMC's Claims.

### A. JPMC is a Defendant in This Action With The Right to Assert Claims.

Plaintiffs' repeatedly argue that JPMC's intervention is "limited" and that JPMC's Second and Third Claims exceed the "scope of JPMC's permitted intervention," and, therefore, some or all of its Claims must be dismissed. (Pl. Mem. at 6, 8, 10.) Plaintiffs have cited to no authority in support of this argument and none exists.

This Court granted JPMC's motion to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a). (Mem. Op. at 3-4 (D.I. 66).) In doing so, this Court stated that "JPMC seeks to intervene as a defendant" and that "the motion to intervene will be granted." (*Id.* at 1.) JPMC is therefore a defendant in this action meaning that it is "a full participant in the lawsuit and is treated just as if it were an original party." *Schneider* v. *Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985); *District of Columbia* v. *Merit Sys. Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985) (stating that intervenors "assume the status of full participants"). As a defendant, JPMC has the right to bring any compulsory and permissible counterclaims. *See*, *e.g.*, *Frere* v. *Lee*, No. Civ.A. 99-601, 2000 WL 64297, *1 (E.D. La. Jan. 26, 2000) (holding "an intervenor of right may assert compulsory and permissive counterclaims").

-14-

Nonetheless, Plaintiffs' self-created premise that JPMC's intervention is "limited" is unfounded. (Pl. Mem. at 6.) No such limitation has been imposed on JPMC's status as a party. Indeed, no such limitation has ever been requested. Plaintiffs opposed JPMC's intervention, but did not seek in the alternative to limit the scope of JPMC's participation if intervention was granted. *Cf. Me-Wuk Indian Cmty. of the Wilton Rancheria* v. *Kempthorne*, 246 F.R.D. 315, 321 (D.D.C. 2007) (denying plaintiff's request that the court limit intervention to a particular issue). In their thirty-five page memorandum in support of their motion to dismiss the FDIC's Amended Answer and Counterclaims, Plaintiffs did not include any argument that JPMC was improperly joined as a defendant by the FDIC or that JPMC's status as a defendant gave it (or should give it) less than full rights to participate in this proceeding. (*See* D.I. 46.) Although Plaintiffs may not like that JPMC is here, there is simply no legal basis to limit JPMC's ability to defend itself to less than the full panoply of rights available to any other litigant. Plaintiffs' attempts to limit the scope of JPMC's participation must be rejected.

**B.    JPMC's Claims Do Not Expand The Litigation Before This Court, The Only Court With Unquestioned Jurisdiction.**

Plaintiffs also argue that this Court should hear less than all of JPMC's Claims by seeking dismissal of the Second and Third Claims to the extent they "go beyond the claims WMI has already asserted against the FDIC." (Pl. Mem. at 8.) More specifically, Plaintiffs seek dismissal of JPMC's Claims to the extent they concern: (1) the Rabbi Trusts, (2) the Goodwill Litigation, (3) the Visa Shares, or (4) the Intangible Assets. (Pl. Mem. at 11.) These claims are properly before this Court and Plaintiffs' complaints about the scope of these claims are not a basis for a motion to dismiss.

Federal Rule of Civil Procedure 13 sets forth the permissible scope of claims in a proceeding. A compulsory counterclaim is permitted under Federal Rule 13(a)(1) if it bears a

"logical relationship" to plaintiff's claims. *Pumpelly* v. *Cook*, 106 F.R.D. 238, 239 (D.D.C. 1985); *see also* Fed. R. Civ. P. 13(a)(1). Claims bear a "logical relationship" to each other "so long as the issues of law and fact raised by the claims are largely the same and substantially the same evidence would support or refute both claims." *United States* v. *Intrados/Int'l Mgt. Group*, 277 F. Supp. 2d 55, 61 (D.D.C. 2003) (citations and quotation marks omitted). A permissive counterclaim is any claim permitted under the Federal Rules as long as it is against "an opposing party." Fed. R. Civ. P. 13(b); *see Montecatini Edison, S.P.A.* v. *Ziegler*, 486 F.2d 1279, 1282 (D.C. Cir. 1973) (holding that "Rule 13(b) confers upon a litigant the right to have his permissive counterclaim heard and determined along with the claims of his adversary"). JPMC's Second and Third Claims are either compulsory or permissive counterclaims.

Here, two factual and legal issues are at the heart of JPMC's Claims. *First*, this Court must determine what assets were part of the WMB receivership and were, in turn, sold by the FDIC as receiver to JPMC. With respect to the Goodwill Litigation, the FDIC has already asked this Court to determine legal ownership of that asset. There is therefore nothing about JPMC's Goodwill Litigation Claims that expands the scope of this litigation. With respect to the other three assets, while each asset will present unique facts, adjudication of whether these assets were owned by the WMB receivership will require examination of the same books and records, understanding the same intercompany relationships, and require consideration of the same fundamental legal issues (*e.g.*, when does a subsidiary acquire beneficial and equitable ownership even when bare legal title exists with a parent company). These claims are squarely within the scope of Fed. R. Civ. P. 13. By contrast, Plaintiffs have come forward with no legal basis to dismiss these claims as impermissibly expanding the litigation, particularly given

-16-

Plaintiffs' own reservation of the right to assert "any and all other claims of whatever kind or nature that they have, or may have, against WMB." (Comp. ¶ 11 (D.I. 1).)

　　　　　　*Second*, this Court is the only Court with jurisdiction to determine what claims Plaintiffs preserved through the FIRREA receivership claims process. *See* 12 U.S.C. § 1821(d)(13)(D); *Freeman*, 56 F.3d at 1399-1400. As we stated at the November 4, 2009 hearing, when it is expedient, Plaintiffs will take a broad view of the claims they have preserved. And, when it is convenient—*i.e.*, in connection with their efforts to bar third party discovery from proceeding—Plaintiffs assert that they have not preserved claims for the Rabbi Trusts, the Goodwill Litigation, the Visa Shares, or the Intangible Assets "at this point in time in this litigation." (Pl. Mot. for Prot. Or. at 12 (D.I. 69).) A final determination as to what claims Plaintiffs preserved is important because any FIRREA claims Plaintiffs failed to preserve have been waived. *See* 12 U.S.C. § 1821(d)(6). It is for this Court—the only court with jurisdiction over the FDIC's claims and disallowance process—to make this determination. *See* 12 U.S.C. § 1821(d)(6), (d)(13)(D). Once that determination is made, we will know once and for all that Plaintiffs cannot pursue claims for many of the WMB assets (including claims for the Rabbi Trusts, the Goodwill Litigation, the Visa Shares, or the Intangible Assets) in this Court or in any other court, including the Bankruptcy Court.

## IV.    THE BANKRUPTCY AUTOMATIC STAY AND BANKRUPTCY JURISDICTION DO NOT OUST THIS COURT OF JURISDICTION TO HEAR JPMC'S CLAIMS.

　　　　　　Plaintiffs argue that either the bankruptcy automatic stay or the jurisdiction of the Bankruptcy Court prevent this Court from considering JPMC's Claims. Both arguments are without merit. All of JPMC's Claims are post-petition claims outside the scope of the bankruptcy automatic stay. Furthermore, there is no "exclusive bankruptcy jurisdiction" that precludes this Court from adjudicating any of JPMC's Claims.

**A.  JPMC's Claims Are Not Subject to the Automatic Stay Under 11 U.S.C. § 362.**

**1.  JPMC's Second Claim for Declaratory Judgment.**

On October 5, 2009, this Court concluded that JPMC's First Claim did not violate the bankruptcy automatic stay because the claim is a post-petition, ownership claim that is fundamentally defensive.  The Court found:

> JPMC's counterclaim did not arise until after WMI filed for bankruptcy, when WMI asserted an ownership interest in the property JPMC purportedly purchased via the FDIC as receiver of WMB.  The automatic stay provision of the Bankruptcy Code only applies to those claims arising prior to the filing of a bankruptcy petition.

(Mem. Op. at 6 (D.I. 66) (citing 11 U.S.C. § 362(a)(1); *United States* v. *Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C. Cir. 1991)).)  For the same reasons, JPMC's Second Claim is permissible.

*First*, JPMC's Second Claim arose post-petition—no earlier than December 19, 2008 when WMI asserted an interest in JPMC's assets in the Bankruptcy Court.  Such a claim "is not stayed by § 362(a)(1) [and] does not violate § 362(a)(3)."  *United States* v. *Inslaw*, 932 F.2d at 1473 (citing *In re Cont'l Air Lines, Inc.*, 61 B.R. 758, 775-80 (S.D. Tex. 1986)).  Indeed, where, as here, the claims arise on account of post-petition conduct, that claim is not subject to the stay even if "a substantial claim adverse to the debtor's claimed interest in property is asserted which might ultimately establish that the estate has no legal or equitable interest in the claimed property."  *In re Levitz Furniture, Inc.*, 267 B.R. 516, 522 (Bankr. D. Del. 2000) (quoting *Cont'l Air Lines*, 61 B.R. at 778).  A defendant is therefore not prohibited from asserting claims against a plaintiff-debtor when the cause of action against the debtor did not accrue until the debtor asserted its claims against the defendant.  *In re M. Frenville Co., Inc.*, 744 F.2d 332, 335-37 (3d Cir. 1984) (holding that automatic stay did not apply to accounting firm's third party claim against debtor that did not arise until banks instituted post-petition suit against accounting firm).

-18-

*Second*, like JPMC's First Claim, the Second Claim is also a permissible ownership claim that, as explained in *United States* v. *Inslaw, Inc.*, 932 F.2d at 1473-74, is outside the scope of the automatic stay.  In *Inslaw*, the D.C. Circuit rejected the argument that disputing a debtors' claim of ownership to property is a violation of the automatic stay, observing that such a rule "would turn every act of the possessor that implicitly asserts his title over disputed property into a violation of Section § 362(a)." *Id*. at 1473.  Plaintiffs' argument here is not materially different than the argument of the debtor rejected in *Inslaw*.

*Third*, both the First and Second Claims are fundamentally defensive.  The proceeding before this Court is the core FIRREA proceeding proscribed by Congress in the Federal Deposit Insurance Act.  Although Plaintiffs are pursuing affirmative recovery in this FIRREA proceeding, this FIRREA proceeding is also where it will be determined what recovery Plaintiffs are barred from pursuing because they have waived their rights.  The aspects of JPMC's Second Claim that trouble Plaintiffs (claims relating to the Rabbi Trusts, the Goodwill Litigation, the Visa Shares, and the Intangible Assets that JPMC acquired) bring to the forefront the waiver issues that are ripe for adjudication.  Plaintiffs are not free to litigate their upside, FIRREA recovery seeking interests in billions of dollars worth of assets, while other parties are prevented from asserting claims that establish that certain claims are barred.  The automatic stay cannot be used as a sword to sever defensive or compulsory counterclaims directly related to matters put at issue by Plaintiffs in a post-petition complaint.  *See In re Merrick*, 175 B.R. 333, 338 (B.A.P. 9th Cir. 1994) (holding that the "automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate").  JPMC's Second Claim seeks declaratory relief that allows JPMC to realize the assets of the WMB receivership it purchased

for value from the FDIC pursuant to the P&A Agreement.  (JPMC's September Claims ("Sept. Claims") ¶¶ 46-53 (D.I. 60).)

### 2.    JPMC's Third Claim for Unjust Enrichment.

Without citing any authority, Plaintiffs baldly conclude that "JPMC has asserted a pre-petition claim of Unjust Enrichment."  (Pl. Mem. at 10.)  They are wrong.  JPMC's Third Claim for unjust enrichment is also a post-petition claim that is not subject to the bankruptcy automatic stay.  This Claim accrued only when Plaintiffs claimed JPMC's assets and refused to release those assets WMI nominally held.  Courts are clear that, for purposes of applying the automatic stay, a claim generally arises "at the same time the underlying state law cause of action accrues."  *In re M. Frenville Co.*, 744 F.2d at 337 (finding contribution claim did not arise until payment of judgment, under New York state law); *see also In re Grossman's, Inc.*, 400 B.R. 429, 432 (D. Del. 2009) (finding asbestos injury claim did not accrue until injury manifested, under New York law).

More specifically, under Washington state law, a cause of action for unjust enrichment does not accrue until the defendant wrongfully retains a benefit.  *Dragt* v. *Dragt/DeTray, LLC*, 139 Wash. App. 560, 576 (2007), *review denied*, 163 Wash. 2d 1042 (2008).[10]  Put a different way, a cause of action for unjust enrichment cannot accrue until a party retains a benefit in a way that is unjust under the circumstances.  *See Yates* v. *Ellis*, No. 37143-0-II, 2009 WL 1677620, *3 (Wash. Ct. App. June 16, 2009) (holding plaintiff's unjust enrichment claim accrued not when he conferred benefit on defendant, but when defendant unambiguously

---

[10]    The Court will look to the "governmental interests" analysis to determine which state's substantive law should apply to JPMC's unjust enrichment claim.  *See Drs. Groover, Christie & Merritt, P.C.* v. *Burke*, 917 A.2d 1110, 1117 (D.C. Cir. 2007).  Here, the same reasoning applies if the Court applies Nevada law, which recognizes the same elements of an unjust enrichment claim.  *Compare Young* v. *Young*, 191 P.3d 1258, 1262 (Wash. 2008) *with Topaz Mut. Co.* v. *Marsh*, 839 P.2d 606, 613 (Nev. 1992).

declared her intention to retain the benefit without returning any value to plaintiff). Before

Plaintiffs asserted ownership of JPMC's assets in December 2008 and March 2009, there was no

dispute. These assets were owned by WMB, then owned by the FDIC, and then sold to JPMC.

JPMC still owns these assets, but now WMI disputes that ownership. To the extent that WMI

initially retained assets purchased by JPMC, because of the uncertainty following WMB's

closure, that retention was not initially unjust but presumed merely provisional. Only when

Plaintiffs affirmatively claimed an interest in JPMC's assets did a cause of action for unjust

enrichment accrue. JPMC's Third Claim is thus necessarily a post-petition claim and is not

subject to the automatic stay.

**B.      There is No Exclusive Bankruptcy Court Jurisdiction that Divests
          This Court of the Ability to Proceed.**

Plaintiffs next argue for recognition of a broadly construed "exclusive bankruptcy

jurisdiction" that somehow precludes this Court from considering JPMC's Claims. (Pl. Mem. at

7-8, 11.) This argument is also without merit. Although the Court is considering whether the

bankruptcy proceedings are grounds for a stay (respectfully, JPMC believes, as discussed above,

that a stay would be inappropriate), the existence of the bankruptcy cases is not grounds for

dismissal of any of JPMC's Claims.

To begin, there is no "exclusive jurisdiction of the Bankruptcy" that divests this

Court of jurisdiction to consider any of JPMC's Claims. 28 U.S.C. § 1334(b) provides that "the

district courts shall have original but not exclusive jurisdiction of all civil proceedings arising

under title 11, or arising in or related to cases under title 11." A bankruptcy court's "exclusive

jurisdiction" only arises when property is already determined to be property of the debtor's

estate. 28 U.S.C. § 1334(e)(1). Courts have therefore made clear that non-bankruptcy courts

have jurisdiction to determine what is property of the estate. *See*, *e.g.*, *Blachy* v. *Butcher*, 221

F.3d 896, 909 (6th Cir. 2000); *In re Noletto*, 244 B.R. 845, 854 (Bankr. S.D. Ala. 2000) (holding

that section 1334(e)(1) merely "vests the [bankruptcy court] with the exclusive power to control

and distribute property of the estate without requiring it to determine the extent of property of the

estate").

Accordingly, this Court may determine whether a disputed asset is, or is not,

property of WMI.  As a result, it is unsurprising that the FIRREA jurisdictional bar has been held

to displace a bankruptcy court's jurisdiction where there is a dispute as to competing interests in

an asset.  In other words, to the extent there is a conflict between the jurisdiction conferred on the

bankruptcy court under Title 11 and the jurisdiction conferred on this Court under the

jurisdictional provisions of FIRREA contained in Title 12, this Court's FIRREA jurisdiction

prevails.

For example, in *In re American Mortgage and Investment Services, Inc.* v.

*Resolution Trust Corp.*, the court specifically rejected the argument that the bankruptcy court is

first (before the FIRREA court) to resolve an ownership dispute similar to the one between WMI

and WMB.  141 B.R. 578, 583-85 (Bankr. D. N.J. 1992).  The *American Mortgage* court found

"no merit" in the "argument that the [receiver] must first prove in this [bankruptcy] court its

ownership interest in the 34 loans before the provisions of FIRREA are invoked." *Id.*  Rather,

the court held, "[t]he administrative claims procedure established under FIRREA is, at least

initially, the proper forum for resolution of that issue." *Id.*  The same result holds, even when a

proof of claim has been filed in the bankruptcy proceedings.  *See In re Mid. Am. Entm't Plus,*

*Inc.*, 135 B.R. 419, 422-23 (D. Kan. 1991).

With respect to the proof of claim process, despite Plaintiffs' protestations to the

contrary, there is nothing about JPMC's filing of proofs of claim in the bankruptcy proceeding

that vests the bankruptcy court with jurisdiction over all related claims and Plaintiffs' arguments

about the proofs of claim miss several fundamental points. [11]  *First*, JPMC's proofs of claim were

*contingent* and filed after this FIRREA suit was commenced.  JPMC has always maintained

before the Bankruptcy Court that "Debtors must proceed with any claim to assert ownership of

or interest in [the particular asset category] *through the District Court Action Debtors elected to*

*commence*." (*JPMorgan Chase Bank, N.A.* v. *Washington Mutual, Inc.*, Adv. Pro. No. 09-50551

(MFW), Adv. Compl. ¶¶ 183, 195, 204, 229, 237 (emphasis added).)  There is no case that has

held that such a reservation of rights waives FIRREA jurisdiction or creates exclusive

bankruptcy jurisdiction of the type Plaintiffs imagine here.  *Second*, JPMC's objection to the

Bankruptcy Court proceedings is to that court's lack of subject matter jurisdiction.  Plaintiffs

may continue to ignore the contingent nature of JPMC's proofs of claim or the limited, legal

effect of those claims, but they cannot credibly assert that any action or inaction of JPMC could

result in a waiver of subject matter jurisdiction.  Subject matter jurisdiction is unwaivable.  *See*,

*e.g.*, *Gardner* v. *United States*, 211 F.3d 1305, 1310 (D.C. Cir. 2000) ("parties may not waive or

concede a federal court's subject matter jurisdiction").  *Third*, and finally, to the extent there is

any conflict between FIRREA and Title 11, the exclusive jurisdiction conferred by FIRREA's

latter-enacted provisions must control.  "[W]here statutes are in conflict, the one last enacted in

---

[11]      In considering the effect of proofs of claim generally, the Supreme Court held that filing a proof of claim constitutes a waiver of the right to jury trial.  *See Langenkamp* v. *Culp*, 498 U.S. 42, 45 (1990).  While the *Best* case cited by Plaintiffs—a single district court opinion in New York—suggests a broader reading of *Langenkamp*, other courts, including the U.S. Court of Appeals for the Second Circuit, have not adopted that broad reading. *See In re CBI Holding Co.*, 529 F.3d 432, 466-67 (2d Cir. 2008); *see also In re American Export Group Int'l Servs.*, 167 B.R. 311, 315 (Bankr. D.D.C. 1994) ("These cases [including Langenkamp] addressed a defendant's Seventh Amendment right to a jury trial in actions brought by the trustee in the bankruptcy court.").  Regardless, Plaintiffs cannot cite any case where, after a separate FIRREA action has been instituted, the filing of a contingent proof of claim stating that certain determinations must be made in that separate FIRREA proceeding, could divest this FIRREA court of its exclusive jurisdiction or waive the claimants subject matter jurisdiction objections.

point of time generally prevails." 73 Am. Jur. 2d Statutes § 169 (2009); *Suburban Trust and Sav. Bank* v. *Univ. of Del.*, 910 F. Supp. 1009, 1017 (D. Del. 1995) ("[I]f [] two statutes are irreconcilable, the later enacted statute must prevail over the earlier."); *see also Rick* v. *United States*, 161 F.2d 897, 899 (D.C. Cir. 1947) (recognizing that there exists an "established rule of statutory construction" that "a later enactment prevails over an earlier one").[12]

## V.    JPMC'S FIRST AND SECOND CLAIMS ARE PROPERLY PLEADED.

Plaintiffs have also moved to dismiss JPMC's First and Second Claims for declaratory relief for "failing to state a claim." (Pl. Mem. at 12.)[13]  These claims are properly pleaded.  The allegations far exceed the requirement that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Plaintiffs' motion to dismiss JPMC's Claims is subject to the usual standards of Federal Rule of Civil Procedure 12(b)(6).  *Armenian Assembly of Am., Inc.* v. *Cafesjian*, 597 F. Supp. 2d 128, 134 (D.D.C. 2009) (noting the "same standards govern a motion to dismiss with respect to an opposing party's counterclaims").  A counterclaim need only provide "defendants notice of the claims and the grounds upon which they rest, but 'specific facts are not necessary.'" *Atherton* v. *District of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson* v. *Pardus*, 551 U.S. 89, 93 (2007)).  JPMC's factual allegations must be presumed to be

---

[12]    FIRREA's jurisdictional bar—12 U.S.C. § 1821(d)(13)(D)—was enacted later than the general provision in Section 1334 and articulates a specific limitation on jurisdiction over claims concerning failed bank assets and the acts of receivers.  As the more specific, later-enacted statute, FIRREA prevails over Title 28's general grant of exclusive bankruptcy jurisdiction. *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."); *CSX Transp.* v. *United States*, 867 F.2d 1439, 1447 (D.C. Cir. 1989) (noting "the long established rule of statutory construction that gives precedence to the terms of the more specific statute where a general statute and a specific statute speak to the same concern") (quotation omitted).

[13]    Plaintiffs do not challenge the pleading adequacy of JPMC's Second Claim to the extent it concerns the Visa Shares or JPMC's Third Claim for unjust enrichment.

true and all reasonable inferences are drawn in JPMC's favor. *Ass'n of Am. Med. Colls.* v. *Princeton Review, Inc.*, 332 F. Supp. 2d 11, 15 (D.D.C. 2004); *see Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

JPMC's First and Second Claims are for declaratory relief.  To plead claims for declaratory relief, JPMC must allege "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see* 28 U.S.C. § 2201.  JPMC has provided specific allegations as to how it obtained ownership of the disputed assets—including allegations about the closing of Washington Mutual, the FDIC receivership and the FDIC's sale of the disputed assets to JPMC pursuant to the P&A Agreement.  (March Claims ¶¶ 13-14, 18-24 (D.I. 4); Sept. Claims ¶¶ 2, 6, 10-14 (D.I. 60).)  The pleadings describe Plaintiffs' (unfounded) assertions that they own or otherwise hold interests in the same assets JPMC acquired from the FDIC pursuant to the P&A Agreement.  (March Claims ¶ 5 (D.I. 4); Sept. Claims ¶¶ 3-5 (D.I. 60).)  JPMC alleges that this dispute is causing it injury. (Sept. Claims ¶¶ 46-56 (D.I. 60).)  JPMC's allegations present a substantial, actual controversy that should be adjudicated in this Court—the only Court with undisputed jurisdiction to resolve all claims asserted by all parties—and, therefore, JPMC has adequately pleaded its First and Second Claims for declaratory relief.  *See*, *e.g.*, *Epos Tech., Ltd.* v. *Pegasus Techs, Ltd.*, 636 F. Supp. 2d 57, 61 (D.D.C. 2009) (denying motion to dismiss where plaintiff stated a declaratory judgment claim resulting from defendant's claim to intellectual property).

Rather than address the standard for pleading declaratory relief, Plaintiffs' Motion:  (i) ignores the allegations contained in JPMC's Claims, (ii) purports to incorporate by

reference arguments asserted against the FDIC in a different motion, involving different claims, and different pleadings, and (iii) argues the merits of the parties' interests in the disputed assets that are at the core of this litigation. These arguments are not proper in a motion to dismiss. Although Plaintiffs may not like JPMC's allegations, they are required at the motion to dismiss stage to accept the well-pleaded allegations as true, *Ass'n of Am. Med. Colls.*, 332 F. Supp. 2d at 15, and will have to live with them in the long-run given that they are true. Along the same lines, a motion to dismiss cannot point to the well-pleaded allegations in another complaint as a basis for dismissal of different claims, alleged by a different party. Finally, Plaintiffs' own (inaccurate) ownership allegations do not give rise to grounds for dismissal. Such arguments are nothing more than merits arguments that are not before this Court at the motion to dismiss stage. *Id.* ("In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record") (citations omitted); *cf. Banks* v. *York*, 515 F. Supp. 2d 89, 100 (D.D.C. 2007) (explaining that the issue on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support the claims") (quoting *Scheuer* v. *Rhodes*, 416 U.S. 232, 236 (1974)).

### 1.    Trust Securities

Plaintiffs argue that JPMC fails to state a claim to ownership of the Trust Securities because JPMC has no standing to enforce communications between WMI and the OTS, and they refer the Court to their arguments made in support of Plaintiffs' motion to dismiss the FDIC's counterclaims. (Pl. Mem. at 12.) Those arguments pertain to the FDIC's counterclaims asserted pursuant to 11 U.S.C. § 365(o), which the FDIC properly addressed in its opposition to Plaintiffs' Motion (D.I. 52), and are misdirected at JPMC's claim. JPMC alleges that it acquired the Trust Securities pursuant to the terms of the P&A Agreement. (March

Claims ¶ 2 (D.I. 4); Sept. Claims ¶ 25 (D.I. 60).)  JPMC further alleges that, based on previous

commitments by WMI to its regulators, WMB was "the sole beneficial and equitable owner of

any interest WMI might have in the Trust Securities."  (Sept. Claims ¶ 23 (D.I. 60).)  Said

differently, JPMC alleges facts based upon the written correspondence and governing documents

disputing WMI's ownership claims and arguing that the Trust Securities were property of the

WMB receivership and are now JPMC's property.  (Sept. Claims ¶¶ 23-24 (D.I. 60).)  JPMC's

allegations set forth a claim to ownership that is more than "plausible" on its face. *Ashcroft*, 129

S. Ct. at 1949.  Plaintiffs' disagreement with JPMC's position presents factual issues

inappropriate for resolution on a motion to dismiss.

### 2.    Tax Refunds

JPMC also alleges that as successor to WMB, it is the owner of the tax refunds

attributable to WMB's operations.  (March Claims ¶ 5 (D.I. 4); Sept. Claims ¶ 28 (D.I. 60).)

Plaintiffs nonetheless assert that they will be entitled to approximately $3 billion in forthcoming

tax refunds relying on the "plain terms of the Tax Sharing Agreement" among WMI, WMB, and

other subsidiaries of WMI.  (Compl. ¶ 22 (D.I. 1).)  Plaintiffs' position is contrary to applicable

laws and regulations, as well as the tax sharing agreement that is the basis for their arguments.

In any event, it is a dispute on the merits and inappropriate at the motion to dismiss stage.

To begin, Plaintiffs ignore an established legal principle applicable to bank

holding companies:  tax refunds that the parent receives attributable to the operations of the

subsidiary are *owned* by the subsidiary that generated the refund, not the parent.  The banking

parent acts as a mere agent for its subsidiary for the purpose of filing consolidated returns and

acquires no ownership of those refunds, and as a matter of law is prohibited from treating those

refunds as anything other than the bank subsidiary's property.  The parent cannot—as WMI is

seeking to do—convert the bank's property into its own merely because it receives that property

-27-

as the bank's filing agent.  The tax refund "is not owing to [the subsidiary] but rather *is owned by it*."  *In re Bob Richards Chrysler Plymouth Corp., Inc.*, 473 F.2d 262, 265 (9th Cir. 1973) (emphasis added).

Although Plaintiffs rely on extrinsic evidence in support of their motion (an improper basis for a motion to dismiss), Plaintiffs' argument highlights one of the issues that could be quickly resolved by this Court in a future motion for partial summary judgment on the tax issues.[14]  *See Gustave-Schmidt* v. *Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (stating that at the motion to dismiss stage, a court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice").  Based upon the law and what JPMC believes are the undisputed facts that could be presented in a proper motion for summary judgment:[15]

- Plaintiffs are retaining (and seeking to receive) possession of certain tax refunds it received due to the operations of WMB on the grounds that WMI previously filed a consolidated tax return, which yields not support to that position.

- A tax refund attributable to the operations of the bank subsidiary is the property of the bank subsidiary, held in trust by the parent on the subsidiary's behalf.  *See In re Bob Richards Chrysler Plymouth Corp., Inc.*, 473 F.2d at 265; *Cal. Hous. Sec., Inc.* v. *FDIC*, 12 F. App'x 519, 520-21 (9th Cir. 2001).

---

[14]    JPMC has proposed in the attached schedule that this motion be brought within 10 days of entry of the scheduling order and that briefing on the matter proceed expeditiously.

[15]    Plaintiffs took the position at the November 4, 2009 hearing that the tax issues were ready for decision by the Bankruptcy Court.  Plaintiffs have brought a pre-discovery motion for turnover of disputed accounts that contain certain tax refunds, but that motion will most likely be resolved without any decision on the tax issues for many reasons, including that Judge Walrath herself has held that turnover under 11 U.S.C.  § 542 is inappropriate where, as here, "[t]here is a legitimate dispute about the ownership of property . . . ."  *In re Lexington Healthcare Group, Inc.*, 363 B.R. 713, 716 (Bankr. D. Del. 2007).  Regardless of Plaintiffs' position on this issue, however, there is no dispute that there has been no ruling from the Bankruptcy Court on whether the tax refunds are owned by WMB.

- The parent, even a parent in bankruptcy, has no right either to retain a tax refund attributable to the subsidiary's operations or to treat it as a debt owed to the subsidiary against which other obligations may be set off. *See In re Bob Richards Chrysler Plymouth Corp., Inc.*, 473 F.2d at 265; *In re Revco D.S., Inc.*, 111 B.R. 631, 639 (Bankr. N.D. Ohio 1990) ("[A]ny refund resulting from the carryback of a net operating loss of a former subsidiary . . . belongs to and is the property of that subsidiary.")

- Controlling federal bank and thrift regulatory policies specifically *prohibit* a thrift holding company such as WMI from treating tax refunds of a thrift subsidiary as the holding company's property. Those uniform policy statements—issued jointly by all four primary federal banking regulators (the FDIC, the Board of Governors of the Federal Reserve System, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision)— provide that "an organization's tax allocation agreement or other corporate policies should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent." Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed. Reg. 64,757 at 64,759 (Nov. 23, 1998). These policy statements are not mere guidelines, but are compelled by federal banking laws protecting banking subsidiaries from being harmed by their parent holding companies.

- The tax sharing agreement to which Plaintiffs refer, but which is not part of the record on the motion to dismiss, is consistent with the uniform requirements of all of the federal banking regulators. The Washington Mutual tax sharing agreement states on no less than five occasions that the tax arrangements between WMB and WMI should result in no "treatment less favorable . . . than if [WMB] had filed separate, combined or consolidated tax returns." (Tax Sharing Agreement at 2.) Had WMB filed its income tax return as a separate entity, it would indisputably own the corresponding refunds, making WMI's attempt to claim ownership of those refunds based on the tax sharing agreement plainly misplaced.

- Prior to receivership, WMI understood that it did not have an interest in WMB's tax refunds but received them and paid them immediately to WMB.

- The tax refunds WMI has received since the receivership and will in the future receive that are attributable to the operations of WMB are WMB's property and now belong to JPMC under the P&A Agreement. WMI has no ownership interest in those refunds even though it may physically receive them on WMB's behalf.

The cases cited by Plaintiffs do not support any different result. Those cases hold

that sometimes parent and the subsidiaries can reach agreement to treat tax refunds in a different

manner. *See In re First Cent. Fin. Corp.*, 377 F.3d 209, 213-15 (2d Cir. 2004); *In re MCorp Fin., Inc.*, 170 B.R. 899, 900 (S.D. Tex. 1994); *In re Franklin Sav. Corp.*, 159 B.R. 9, 29 (Bankr. D. Kan. 1993). These decisions have no weight in this case. All but one of Plaintiffs' cases pre-date the Policy Statement and its express adoption of the *Bob Richards* rule, making it clear that an arrangement depriving a subsidiary of its ownership rights would violate applicable banking laws. The other case—*In re First Central Financial Corp.*—involved an insurance company that would not be bound by bank holding company rules. None of these cases involve a tax sharing agreement that makes clear on five occasions that WMB may not receive "treatment less favorable . . . than if [it] had filed separate, combined or consolidated tax returns." (Tax Sharing Agreement at 2.) Said differently, none of these cases stand for the proposition that anyone but WMB is the owner of these refunds. And, none of these cases support Plaintiffs' motion to dismiss.

### 3.    Intercompany Amounts and Disputed Accounts

Plaintiffs' motion to dismiss the claims related to the intercompany and disputed accounts incorporates from their Memorandum in Support of Plaintiffs' Motion to Dismiss the FDIC's Amended Counterclaims and then asserts that JPMC has no ownership interest. (D.I. 46.) JPMC does allege an ownership interest in the amounts in dispute, as well as security interests and rights to setoff and recoupment. (March Claims ¶ 3 (D.I. 4); Sept. Claims ¶ 31 (D.I. 60).) By way of example, JPMC alleges that it acquired the largest account—the account purportedly containing $3.67 billion of the intercompany amounts—because any funds in that account were (as reflected in the books and records of the bank) contributed to a Washington Mutual subsidiary that JPMC acquired. (Sept. Claims ¶ 30 (D.I. 60).) Plaintiffs also acknowledge that JPMC is claiming at least $234 million in tax refunds credited to the disputed accounts but belonging to WMB and now to JPMC. (Pl. Mem. at 13.)

JPMC is nonetheless candid with the Court that there are myriad factual disputes that must be resolved before ownership of some or all of the amounts credited to the disputed accounts can be determined.  There are material issues as to whether the disputed accounts are deposit accounts at all, whether there are any funds credited to those accounts, and whether JPMC, Plaintiffs, or a third-party owns some or all of the amounts credited to the disputed accounts.  (Sept. Claims ¶ 29 (D.I. 60).)  There is no legal basis for Plaintiffs' attempts to leverage this candor into a motion to dismiss.  These claims are adequately pleaded.

### 4.    Goodwill Litigation

Plaintiffs' limited argument with respect to the Goodwill Litigation is similarly without merit.  JPMC identified the litigation that is the subject of its goodwill litigation claim and alleges that JPMC, as successor to WMB under the P&A Agreement, is owed the value of the litigation judgments.  (Sept. Claims ¶¶ 39-40 (D.I. 60).)  Plaintiffs have claimed ownership to these same amounts in the bankruptcy proceeding.[16]  Yet, Plaintiffs admit that "WMI did not make a claim in this case or its underlying proof of claim as to . . . the Goodwill litigation" (Pl. Mem. at 11.)  This dispute as to ownership and the application of FIRREA is appropriately before this Court.  As the FIRREA Court, this properly pleaded claim can be resolved here through an adjudication that Plaintiffs—by failing to preserve these FIRREA claims—have waived these claims.  *See, supra*, at 16-17.

With regard to Plaintiffs' arguments about the merits of constructive trusts, such arguments (essentially about remedies) are irrelevant at this stage of the litigation.  WMB has alleged that JPMC acquired the judgments as an asset of WMB pursuant to the terms of the P&A Agreement.  If proven, this will prevent WMI from retaining the funds as its property because

---

[16]    Debtors' Answer and Amended Counterclaims, *JPMorgan Chase Bank, N.A.* v. *Washington Mutual, Inc.*, Adv. Pro. No. 09-50551 (MFW), September 11, 2009 at ¶¶ 168-69.

WMB, and not WMI, will be the beneficial owner of the funds.  *See F.T.C.* v. *Capital City Mortgage Corp.*, 32 F. Supp. 2d 16, 19-20 (D.D.C. 2004); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1399-1401 (5th Cir. 1987) (beneficiaries were entitled to proceeds of D&O insurance policy which was not property of debtor's estate).  Whether the Court imposes its ruling by declaring a constructive trust or through other means, and whatever objections Plaintiffs may have to that result, are neither here-nor-there at this stage of the proceedings.

### 5.    Other JPMC Assets

Without any elaboration, Plaintiffs also argue that JPMC's pleadings with respect to the Rabbi Trusts, WaMu Pension Plan, BOLI policies, and Intangible Assets are deficient.  In fact, JPMC alleges that it purchased these WMB assets pursuant to the terms of the P&A Agreement.  JPMC also alleges:

- The Rabbi Trusts were carried on the books and records of WMB.  (Sept. Claims ¶ 33 (D.I. 60).)

- WMB incurred most of the pension and other expenses associated with the Pension Plan.  (Sept. Claims ¶ 35 (D.I. 60).)

- The BOLI policies were purchased and paid for by WMB or its predecessors and carried on WMB's books and records.  (Sept. Claims ¶ 37 (D.I. 60).)

- The intangible assets were previously held by WMB.  (Sept. Claims ¶ 43 (D.I. 60).)

Combined with the fact that JPMC purchased all rights, title and interest in WMB's assets, whether or not on WMB's books as of September 25, 2008 pursuant to the P&A Agreement, these allegations clearly establish a dispute as to WMI's ownership claims both in this action and the Bankruptcy Cases.  (*See* P&A Agreement § 3.1.)  No further factual recitation is required at this phase of the litigation.  As with Plaintiffs' other pleading challenges, their motion to dismiss should be denied.

# CONCLUSION

For the foregoing reasons, Plaintiffs' motion to dismiss and for a discretionary stay should be denied.

Dated:  November 9, 2009                          Respectfully submitted,
          Washington, D.C.

                                            /s/ Bruce E. Clark
                                            Bruce E. Clark (USDC Bar No. D00144)
                                            SULLIVAN & CROMWELL LLP
                                            125 Broad Street

OF COUNSEL:                                        New York, New York  10004
                                            Telephone:  (212) 558-4000
Robert A. Sacks                                   Facsimile:  (212) 558-3588
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street                                  Bruce W. Hickey (D.C. Bar No. 479036)
New York, New York  10004                         SULLIVAN & CROMWELL LLP
Telephone:  (212) 558-4000                        1701 Pennsylvania Avenue, N.W.
Facsimile:  (212) 558-3588                        Washington, D.C.  20006
                                            Telephone:  (202) 956-7500
                                            Facsimile:  (202) 293-6330

                                            *Counsel for Defendant*
                                            *JPMorgan Chase Bank, N.A.*