UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WASHINGTON MUTUAL, INC.,

and

WMI INVESTMENT CORP.,

                Plaintiffs and Counterclaim
                Defendants,

      v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its corporate capacity,

                Defendant,

and

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as receiver of
Washington Mutual Bank,

                Defendant and Counterclaim
                Plaintiff,

and

JPMORGAN CHASE BANK, N.A.,

                Intervenor-Defendant.

Case No. 1:09-cv-00533 RMC

**ORAL HEARING REQUESTED**

### REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS THE COUNTERCLAIMS OF JPMORGAN CHASE, NATIONAL ASSOCIATION, AND TO STAY THE PROCEEDINGS IN THEIR ENTIRETY

      Plaintiffs Washington Mutual, Inc. ("WMI") and WMI Investment Corp. (collectively, "Debtors" or "Plaintiffs"), respectfully submit this Reply in Support of Plaintiffs' Motion to Dismiss the Counterclaims of JPMorgan Chase, National Association ("JPMC") and to Stay the Proceedings in Their Entirety.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................3

I.    THIS CASE SHOULD BE STAYED ..............................................................................3

    A.    The Bankruptcy Court Is Well on Its Way to Adjudicate All of JPMC's Claims Against the Debtors ....................................................................................3

    B.    The First Filed Doctrine Does Not Support JPMC's Attempt to Go Forward With Claims in Both Courts ......................................................................6

II.    JPMC'S COUNTERCLAIMS GO BEYOND THE COURT'S INTERVENTION ORDER AND VIOLATE THE AUTOMATIC STAY.....................................................8

    A.    JPMC's Counterclaims Go Beyond the Court's Allowance for Intervention..........8

    B.    JPMC's Counterclaims Are Barred by the Automatic Stay of Claims Outside Bankruptcy Court Against the Estates......................................................10

III.    JPMC'S COUNTERCLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW ......................................................................................................................13

    A.    JPMC's Counterclaims Fail to Allege Specific Facts that Would Establish Ownership Over the Disputed Assets ...................................................................13

    B.    Plaintiffs' Challenge to JPMC's Counterclaims Was Timely Filed After JPMC's Motion to Intervene was Granted.............................................................15

CONCLUSION......................................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Baker v. Gold Seal Liquors, Inc.*,
    417 U.S. 467 (1974).............................................................................................20

*In re Beef Industry Antitrust Litig.*,
    589 F.2d 786 (5th Cir. 1979) .........................................................................19

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................16, 17

*In re Bob Richards Chrysler-Plymouth Corp.*,
    473 F.2d 262 (9th Cir. 1973) .........................................................................17

*Checkers Drive-In Rest., Inc. v. Comm'r of Patents and Trademarks*,
    51 F.3d 1078 (D.C. Cir 1995) .......................................................................14

*Dist. of Columbia v. Merit Sys. Prot. Bd.*,
    762 F.2d 129 (D.C. Cir. 1985)......................................................................12

*E3 Biofuels Mead, LLC v. QA3 Fin. Corp.*,
    384 B.R. 580 (D. Kan. 2008) ........................................................................14

*EEOC v. Univ. of Pa.*, ,
    850 F.2d 969 (3d Cir. 1988)....................................................................10, 11

*Factors Etc., Inc. v. Pro Arts, Inc.*,
    579 F.2d 215 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979)................10

*Fairview Hosp. v. Leavitt*,
    2007 WL 1521233 (D.D.C. May 22, 2007)....................................................8

*Grider v. Keystone Health Plan Cent., Inc.*,
    500 F.3d 322 (3d Cir. 2007)...........................................................................9

*Harris v. Ramsey*,
    496 F. Supp. 2d 64 (D.D.C. 2007) ...............................................................17

*IBT/HERE Employee Representatives' Council v. Gate Gourmet Div. Ams.*,
    402 F. Supp. 2d 289 (D.D.C. 2005) ...............................................................9

*Limerick Ecology Action, Inc. v. U.S. Nuclear Regulatory Comm'n*,
    869 F.2d 719 (3d Cir. 1989)..................................................................... 17-18

*Nat'l Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n*,
    41 F.3d 721 (D.C. Cir. 1994).........................................................................13

*Orthmann v. Apple River Campground, Inc.*,
    765 F.2d 119 (8th Cir. 1985) ...................................................................10, 11

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ........................................................................10

*In re R.H. Macy & Co., Inc.*,
   67 Fed. Appx. 30, 32, (2d Cir. 2003) ..........................................................14

*In re Revco D.S., Inc.*,
   111 B.R. 631 (Bankr. N.D. Ohio 1990) .......................................................17

*Santiago-Sepulveda v. Esso Standard Oil Co.*,
   256 F.R.D. 39 (D. Puerto Rico 2009) ..........................................................12

*Schneider v. Dumbarton Developers*,
   767 F.2d 1007 (D.C. Cir. 1985) ...................................................................12

*Southwestern Pa. Growth Alliance v. Browner*,
   121 F.3d 106 (3d Cir. 1997) .........................................................................13

*Spangler v. Pasadena City Bd. of Ed.*,
   552 F.2d 1326 (9th Cir. 1977) .....................................................................19

*U. S. v. Lehigh Valley Co-op. Farmers, Inc.*,
   294 F. Supp. 140 (D.C. Pa. 1968) ...............................................................13

*U.S. v. Sarman*,
   699 F.2d 469 (9th Cir. 1983) .......................................................................20

*Vietnam Veterans of Am. v. Sec'y of the Navy*,
   843 F.2d 528 (D.C. Cir. 1988) ...............................................................17-18

*In re Vitamins Antitrust Litig., No. MISC. 99-197(TFH)*,
   2001 WL 34088808 (D.D.C. March 19, 2001) ...........................................19

## Statutes

11 U.S.C. § 362(a) .........................................................................................14
11 U.S.C. § 362(a)(1) .....................................................................................14
Fed. R. Civ. P. 7(j) .........................................................................................18
Fed. R. Civ. P. 12(a)(1)(B) ............................................................................18
Fed. R. Civ. P. 12(b)(6) .................................................................................16
Fed. R. Civ. P. 13(a) ......................................................................................20
Fed. R. Civ. P. 13(a)(2)(A) ............................................................................20
Fed. R. Civ. P. 24 ...........................................................................................19
Fed. R. Civ. P. 24(c) ................................................................................18, 19

## PRELIMINARY STATEMENT

This Court has already recognized that it would be "unseemly" for it to proceed on issues that the bankruptcy court has indicated that it will decide. Yet, JPMC's proposal to address the judicial inefficiencies is to have this Court adopt an accelerated schedule for the express purpose of racing ahead of the bankruptcy court and to litigate every issue in both fora. Such an approach almost ensures duplication and inefficiency, and risks inconsistent results.

After all, regardless of the outcome of this motion, the issues raised in JPMC's new counterclaims are going forward in the bankruptcy court. That court has held three times that it has jurisdiction over disputes between the Debtors and JPMC as the purchasing bank. All of JPMC's counterclaims challenged here are pending there. The Debtors and JPMC have served discovery on each other there. The parties have submitted lengthy substantive briefing on the ownership issues concerning approximately $4 billion in deposits, which also addressed the tax refunds given JPMC's claim that some portion of the Debtors' deposits consisted of those tax refunds. The bankruptcy court has heard oral argument on these substantive issues. While it is true that JPMC is attempting to appeal the bankruptcy court's determination that it has jurisdiction, unless and until that determination is reversed, the bankruptcy court will go forward with the disputes between JPMC and the Debtors regardless of what happens in this case. The only question is whether those same disputes should be litigated simultaneously in this Court.

As a practical matter, the Debtors believe this case should be stayed, but at the very least counterclaims not subject to this Court's exclusive jurisdiction should be left to the bankruptcy court rather than go forward in both fora at the same time. The Debtors filed their challenge to the Federal Deposit Insurance Corporation's ("FDIC") denial in this Court to ensure that it did not lose its rights if certain assets that the FDIC purported to transfer to JPMC were ultimately found to still belong to the FDIC. Notably, the FDIC does not believe that it owns the

disputed assets, and denied the Debtors' claims in part because those claims supposedly failed to state claims against the receivership and appeared to assert claims against a third party. Thus, it is likely that the bankruptcy court will resolve some or all of the issues pending here, such as by concluding that the assets belong to either the Debtors or JPMC, but not the FDIC. A stay of this case would thus save Plaintiffs' estates critical funds and prevent inconsistent rulings.

Putting aside the practical difficulties of going forward with all of JPMC's counterclaims in both proceedings, JPMC's new counterclaims improperly tread upon the bankruptcy court's jurisdiction and resulting automatic stay. JPMC argues that it is free to assert any claim against the Debtors about any assets, and even get damages from the debtors, since this Court granted its motion to intervene. But the Court's order granting intervention only allowed JPMC to intervene over Plaintiffs' objection because the declaratory judgment claim JPMC submitted with its motion to intervene did not assert an offensive claim against the Debtors, and rather merely took a position on issues already in the case. The same cannot be said about JPMC's new counterclaims, which dispute ownership of assets beyond those in the Debtors' claims against the FDIC and seek damages against the estates.

Moreover, JPMC's counterclaims, which merely assert in a conclusory manner that JPMC owns various assets, fail to state claims under the pleading standards. JPMC makes almost no attempt to justify its pleading, besides repeating the mantra that all factual inferences should be resolved in its favor. JPMC's counterclaims must therefore be dismissed for the additional reason that they fail to allege facts that give rise to a valid claim of ownership.

<u>**ARGUMENT**</u>

**I.**     <u>**THIS CASE SHOULD BE STAYED**</u>

**A.**     <u>**The Bankruptcy Court Is Well on Its Way to Adjudicate All of JPMC's Claims Against the Debtors**</u>

In response to the Debtors' request for a stay, JPMC argues that instead of waiting for the bankruptcy court to rule on related issues, all of its disputes with the Debtors should proceed in both courts simultaneously, including those issues that were not part of the Debtors' claim against the FDIC. To address the potential conflict from inconsistent rulings, JPMC now proposes a quick discovery schedule in the hope that this Court will rule first. *See* Proposed Scheduling Order (Docket No. 94) (proposing that discovery be completed by March 4, 2010). JPMC suggests that this Court should go forward on an expedited basis, in advance of the bankruptcy proceeding, supposedly because "[t]he bankruptcy proceedings are still in their preliminary stages: no discovery order has been even been [sic] entered in those proceeding and no depositions are scheduled." Opp. at 6-7.

But this description of the bankruptcy proceeding is misleading, if not completely disingenuous:

- The Debtors, JPMC, the FDIC, the Bank Bondholders, and the Official Committee of Unsecured Creditors have all briefed and argued summary judgment on two of the assets JPMC attempts to litigate here--almost $4 billion in deposits, as well as billons of tax refunds. Briefing included over 250 pages of memoranda and over 1500 pages of exhibits.

- The reason the bankruptcy court has not entered a scheduling order is that the parties are putting the final touches on a comprehensive schedule that the parties have negotiated for months. As currently drafted, the parties would agree to a close of fact discovery by March 24, 2010.

- Unlike in this forum, the Debtors and JPMC have served document requests on each other, provided written responses and objections, and are meeting and conferring about those responses.

- JPMC claims to have completed document production in response to WMI's 2004 investigation into potential claims related to its purchase of WMI, including potential violation of confidentiality agreements and business torts. The parties are meeting and conferring about that production and will begin depositions soon. There is no question that this investigation is solely within the jurisdiction of the bankruptcy court.

It is thus undisputable that the bankruptcy court is farther along in discovery and substantive consideration than this forum.[1]

JPMC also argues that because FIRREA vests this Court with jurisdiction for claims against the FDIC, all of JPMC's claims must also be heard here.[2] Obviously, the Debtors take issue with JPMC's bold forecast of the "likelihood that the Bankruptcy Court's decisions will be found void and invalid for lack of jurisdiction" (Opp. at 7) given the controlling Third Circuit law holding that claims between the Debtors and JPMC are outside the confines of FIRREA's jurisdictional restrictions, to say nothing of the bankruptcy court's findings that it had jurisdiction and that JPMC's continued argument to the contrary was "frivolous."[3] Nevertheless, the bankruptcy court has already made a fully considered decision that it had jurisdiction to hear claims between the Debtors and JPMC and that ruling carries the force of law until and unless it

---

[1] This Court also recognized the progress the bankruptcy court has made, which further mandates a stay. Brown Declaration in Support of Plaintiffs' Reply Memorandum in Support of Their Motion to Dismiss the Counterclaims of JPMorgan Chase Bank, National Association, and to Stay the Proceedings in Their Entirety ("Brown Decl.), Ex. A at 61:14-17 ("this is not a collateral estoppel issue. This is a judicial administration issue. Judge Walrath has decided and is proceeding."); 53:1-4 ("[S]he's so far ahead. Why should we do it twice, that's my question. I mean, [JPMC] argued to her with great vigor that she should defer here. She decided not to.").

[2] JPMC makes repeated accusation suggesting the Court should disregard Debtors' Delaware filing as merely "tactical" or a "strategy." Opp. at 10, 13. But it is not surprising that, as debtors, the Plaintiffs wish all of their disputes to be heard in bankruptcy court. Brown Decl., Ex. A at 64:15-17 ("They are in bankruptcy. They have made strategic choices. If you were representing a client in bankruptcy you might make the same strategic choices.").

[3] Brown Decl., Ex. B at 39:13-15.

is reversed on appeal.  That court has already held that Debtors' claims against JPMC are not FIRREA claims, and there is no reason that JPMC should be able to enlist the this Court to undo the clear decision of that court.

JPMC's current argument that the same issues should go forward in both Courts also contradicts what JPMC told the bankruptcy court before it decided it had jurisdiction to decide the disputes between Debtors and JPMC.  Just four months ago in that proceeding, JPMC argued that it was senseless for both of these actions to proceed simultaneously because of the overlap in issues and analysis, claiming "this case [the bankruptcy proceeding] is 'materially on all fours' with the D.C. Action."[4]  The bankruptcy court rejected the stay request, for a number of reasons (including that Debtors were entitled to press their deposit claims against JPMC – the proper party given its assumption of deposit liabilities), and the bankruptcy proceeding has since moved forward at a rapid pace (as outlined above).  Nevertheless, JPMC was right that it would be inefficient for both actions to proceed at once.

Additionally, JPMC argues that Plaintiffs are not entitled to a stay of this case because the Debtors themselves initiated it.  Given the unique jurisdictional and timing issues that required the Plaintiffs to file their Complaint here in the event that the FDIC retained some rights over the assets, it is not surprising that the Debtors filed this case before the ideal time to litigate these issues.  And although unusual, it is far from the first time a plaintiff has requested and been granted a stay of its own case.  *See, e.g.*, *Fairview Hosp. v. Leavitt*, 2007 WL 1521233 (D.D.C. May 22, 2007) (granting plaintiffs' motion for stay of their own case pending the resolution of a related case).  And it is certainly no more unusual than JPMC moving to stay and/or transfer its own adversary proceeding commenced in Delaware.

Given this multitude of factors, this Court should exercise its discretion and stay this action pending the resolution of the bankruptcy proceeding. *See IBT/HERE Employee Representatives' Council v. Gate Gourmet Div. Ams.*, 402 F. Supp. 2d 289, 293 (D.D.C. 2005) ("A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere.").

**B.     The First Filed Doctrine Does Not Support JPMC's Attempt to Go Forward With Claims in Both Courts**

Finally, JPMC argues that this Court should go forward with all of its counterclaims, despite the fact that these claims are going forward simultaneously in the bankruptcy proceeding, based on the "first-filed rule." Opp. at 10. The first filed doctrine generally provides that where a "later filed case" is "truly duplicative" and "materially on all fours" with an earlier-filed action, courts respect the forum choice of the plaintiff and will proceed with the first-filed action. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007) (rejecting "first filed rule" as basis for injunction where neither the parties nor the claim in two actions were "identical"). The bankruptcy court has already rejected this argument, and it is no more persuasive here. In particular, that court held when denying the FDIC's and JPMC's motion to stay that it was "not inclined, under the First Filed Rule to defer to the D.C. Court. As much as I might wish to defer to another Court, unfortunately, I do have exclusive jurisdiction to decide what is property of the estate."[5]

Moreover, this doctrine is designed for the benefit of the plaintiff who filed first—in this case the Debtors—to avoid being pulled out of the forum where they exercised their right

---

[4]   Brown Decl., Ex. C.

[5]   Brown Decl., Ex. D at 95:4-8.

to file. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982) (noting district court was correct to use the first filed rule to "properly recognized [plaintiff's] interest in choosing a forum"); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 217, 219 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979) (finding that it is not appropriate to follow the first filed rule when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum). The doctrine does not provide any justification for what JPMC proposes – duplicating claims against plaintiffs in two jurisdictions just because the plaintiffs were compelled to file related claims against a different party elsewhere first.

To be sure, this doctrine is not to be used as a sword by a party wishing to proceed in another court after receiving an unfavorable ruling in one court. That is, however, precisely how JPMC attempts to invoke this rule. Indeed, JPMC was not a party to the DC action until October, long after it filed its adversary proceeding in Delaware. Furthermore, JPMC only became a party to the this action after the bankruptcy court denied JPMC's motion to stay those proceedings in favor of the DC Action. Thus, the only party that has sought refuge in one court after an unfavorable ruling in another is JPMC.

Further, the requirements of the rule are not met because this Court and the bankruptcy court do not have "concurrent jurisdiction." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) ("[C]ourts follow a 'first to file' rule that where two courts have concurrent jurisdiction."). Rather this Court has a unique jurisdiction as arbiter of claims against the FDIC, and the bankruptcy court has the exclusive jurisdiction regarding certain claims against the Debtors' bankruptcy estates.

Finally, district courts "have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *EEOC v. Univ. of Pa.*,

850 F.2d 969, 972 (3d Cir. 1988) (upholding district court's refusal to apply first filed rule as basis for dismissing EEOC enforcement actions).  Indeed, courts recognize the prudential nature of this doctrine and will  "reject[] the rule when the second-filed action had developed further than the initial suit."  *Id.* at 967 (citing cases); *see also Orthmann*, 765 F.2d 119, 121 ("The rule is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration").  As outlined above, the supposed "second filed" action in the bankruptcy court is further developed than this action, and JPMC's counterclaims already pending there should not be injected in this case merely because this case was filed first.

## II.    JPMC'S COUNTERCLAIMS GO BEYOND THE COURT'S INTERVENTION ORDER AND VIOLATE THE AUTOMATIC STAY

### A.    JPMC's Counterclaims Go Beyond the Court's Allowance for Intervention

JPMC argues in its opposition that it is free to assert any counterclaims against the Debtors now that it is a party because the Debtors "did not move to have the scope of JPMC's intervention limited in any way."  Opp. at 4.  But JPMC moved to intervene asserting its single declaratory judgment claim regarding the assets already at issue in the case.  Indeed, in its motion to intervene, JPMC itself described its role for intervention as limited to the dispute already pending between the Debtors and FDIC:

- "WMI's claims and JPMC's claims for declaratory judgment are in essence flip sides of the same coin" (Mot. to Intervene at 15)

- Intervention is "appropriate in order to ensure that JPMC's interests are adequately protected." (Mot. to Intervene at 6)

- "JPMC's defenses and compulsory counterclaims all seek nothing more than a confirmation that the FDIC's disallowance of WMI's claims to WMB's assets . . . was proper." (Mot. to Intervene at n.4)

- "[I]t is JPMC that has the direct interest and economic state in litigating the issues in the Complaint" (Mot. to Intervene at 8)

Moreover, the Court's order granting JPMC's motion to intervene did not allow JPMC to assert any counterclaims beyond the one submitted to the Court in connection with the motion.  Rather, the Court allowed JPMC to intervene to assert the limited declaratory judgment claim attached to its motion precisely because it was limited to defending against the Debtors' claims against the FDIC already at issue in the case.  Indeed the Court explained in its order that JPMC's intervention and limited counterclaim did not violate the automatic stay resulting from the Debtors' bankruptcy because:

- "JPMC is not attempting to bring a claim against the debtor—rather, the debtor has brought claims that implicate JPMC's interests." (Mem. Op. at 5)

- "JPMC does not seek to take possession of or assert control over WMI's cause of action here, which is rightfully part of the estate." (Mem. Op at 5)

- "JPMC has an interest in the property or transaction which is the subject of the action."  (Mem. Op at 3)

Thus, by JPMC's own representations and the Court's order, JPMC is allowed to litigate the issues the Debtors have brought against the FDIC, but nothing more.  *See Santiago-Sepulveda v. Esso Standard Oil Co.*, 256 F.R.D. 39, 44-45 (D. Puerto Rico 2009) (limiting the scope of third party's counterclaims because they exceeded the scope of the court's order granting intervention).

JPMC attempts to justify its expansion of counterclaims from what the Court authorized by citing cases that purportedly make an intervenor a "full participant in the lawsuit" and to a case that gives an intervenor the right to "assert compulsory and permissive counterclaims."  Opp. at 14; *see Schneider v. Dumbarton Developers*, 767 F.2d 1007, 1017 (D.C. Cir. 1985) (noting that an intervenor is treated as a "full participant" for purposes of upholding the damages award against the intervenor); *Dist. of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985) (explaining that an intervenor is a "full participant[]" and therefore the

"'price' of such intervention . . . is the possibility that the plaintiff will be able to obtain relief against the intervenor-defendant even if the original defendant is eliminated from the lawsuit"). But none of those cases dealt with a situation like this one with a related bankruptcy proceeding where the same claims were pending and an automatic stay was in place. Nor do they address a situation in which an order granting intervention applied to a claim filed along with the motion to intervene. Thus, none of the cases JPMC cites supports the proposition that a party who is given permission to file a declaratory judgment claim about issues already in a case can freely assert any claim it wishes.

Furthermore, the Court's order merely confirmed the general rule that third party intervenors cannot expand claims beyond those pending between the original parties. *Nat'l Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n*, 41 F.3d 721, 729 (D.C. Cir. 1994) ("Intervenors may only argue issues that have been raised by the principal parties; they simply lack standing to expand the scope of the case to matters not addressed by the petitioners in their request for review."); *see also Southwestern Pa. Growth Alliance v. Browner*, 121 F.3d 106, 121 (3d Cir. 1997) (holding that intervening party "may argue only the issues raised by the principal parties and may not enlarge those issues") (citing *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944) ("[A]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues . . . .")); *U. S. v. Lehigh Valley Co-op. Farmers, Inc.*, 294 F.Supp. 140, 144 (D.C. Pa. 1968) ("Intervention is not proper to litigate an issue or issues which do not exist or are not available in an action between the original parties.") (citing sources).

**B.**     **JPMC's Counterclaims Are Barred by the Automatic Stay of Claims Outside Bankruptcy Court Against the Estates**

In addition to the fact that JPMC's new counterclaims go beyond the Court's intervention order, and beyond the issues pending between the Debtors and the FDIC, they should also be dismissed because they violate the automatic stay that applies to claims against estates in bankruptcy. *Checkers Drive-In Rest., Inc. v. Comm'r of Patents and Trademarks*, 51 F.3d 1078, 1079 (D.C. Cir 1995) ("This provision, which is found at 11 U.S.C. § 362(a) (1988), generally operates to block legal actions that could affect the property of a debtor in bankruptcy . . . ."); 11 U.S.C. § 362(a)(1) (stating that the automatic stay applies to any "action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title"). JPMC acknowledges this law, as well as the fact that all of these counterclaims are currently pending in bankruptcy court. Opp. at 21. Nevertheless, JPMC claims that its counterclaims are not subject to the automatic stay because they "are post-petition claims outside the scope of the bankruptcy automatic stay." Opp. at 17.

But JPMC's claims arose before the bankruptcy filings – when it purported to buy certain assets from the FDIC subject to the P&A Agreement. They are thus pre-petition claims because JPMC could have brought them before the bankruptcy filings based on JPMC's purported contractual rights under the pre-petition P&A Agreement. *See In re R.H. Macy & Co., Inc.*, 67 Fed. Appx. 30, 32, (2d Cir. 2003) ("[A] claim will be deemed pre-petition when it arises out of a relationship recognized [by contract] ."); *see also E3 Biofuels Mead, LLC v. QA3 Fin. Corp.*, 384 B.R. 580, 582 (D. Kan. 2008) (noting that "the automatic stay clearly bars the counterclaims and third party claims for damages against [the Debtor]" and staying the entire action because of implications the counterclaims could have on the bankruptcy estate). The same is true of JPMC's unjust enrichment claim – it is "pre-petition" because JPMC's

contractual rights that form the basis of JPMC's claim come from the P&A Agreement. JPMC's argument that its unjust enrichment claim had not accrued until "WMI disputes that ownership" (Opp. at 21) is based on JPMC's same conduct within the bankruptcy court and not based on any of the Debtors' actions before this Court. Additionally, JPMC's new counterclaims are clearly against the Debtors' estates, and in fact, seek payment from the estates to JPMC. *See* Counterclaims Prayer for Relief ¶¶ iv-ix (asking for an order "(iv) awarding JPMC damages as a result of Plaintiffs' failure to transfer, or facilitate the transfer of, assets JPMC acquired under the P&A Agreement; (v) awarding JPMC pre-judgment interest and punitive damages to the extent permitted by law; (vi) awarding JPMC damages for losses resulting from Plaintiffs' post-Petition actions, including the Plaintiffs' failure to deliver these assets to JPMC; (vii) requiring Plaintiffs to reimburse JPMC for all amounts by which they have been unjustly enriched; (viii) awarding JPMC its attorney's fees and costs; and (ix) awarding JPMC such other and further relief as this Court deems just and proper.").

JPMC does not deny that its purported ownership claim derived from the contractual rights it received pre-petition, but nonetheless argues it has a post-petition claim because the issue was not litigated in bankruptcy court until after the bankruptcy petition. Opp. at 18. In support, it cites this Court's intervention order, which held that JPMC could challenge the Debtors' claims against the FDIC in this Court, notwithstanding the automatic stay, because the Debtors filed their claim against the FDIC after the bankruptcy. Opp. at 18 (quoting Mem. Op. at 6). While Plaintiffs respectfully disagree with the Court's analysis pertaining to whether JPMC's declaratory judgment claim (as pled in its motion to intervene) arose pre-petition, JPMC's newly pled counterclaims certainly do not fit within the Court's analysis. After all, these are assets outside the scope of the Debtors' proofs of claims against the FDIC, so there is

no excuse that the Debtors raised the issue in this Court after the bankruptcy petition.  In fact, the

Debtors never raised these disputes at all.  Rather, the only "post-petition" event JPMC can point

to is its own adversary complaint against the Debtors in the bankruptcy proceeding.  Answer and

Counterclaim of Intervenor-Defendant JPMorgan Chase Bank, N.A., filed on March 30, 2009

(Docket No. 4-5).  Surely, a party cannot avoid the stay by merely filing its claims in bankruptcy

court and then pointing to that filing as evidence that the claim was "post-petition."  If this were

the rule, then every creditor could avoid the automatic stay simply by asserting ownership to an

asset in the bankruptcy court before filing a declaratory judgment claim in another forum.

## III.    **JPMC'S COUNTERCLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW**

Given that a stay is appropriate, the Court need not reach the issue of whether

JPMC's pleadings survive as a matter of law.  However, should the Court decide to reach these

issues, JPMC's counterclaims must fail because its claims cannot establish ownership over the

disputed assets.  Also, JPMC's claim that the Plaintiffs' motion to dismiss was somehow

untimely is unfounded.

### A.    **JPMC's Counterclaims Fail to Allege Specific Facts that Would Establish Ownership Over the Disputed Assets**

In response to the Debtors' challenge to the sufficiency of JPMC's allegations to

support a claim, JPMC argues that such a discussion goes to the merits and that all factual

allegations are construed in favor of the non-moving party at the pleading state.  Opp. at 24-26.

But regardless of the presumption of truth to which a complainant is entitled, a party must

nonetheless plead sufficient facts to state a cause of action.  Fed. R. Civ. P. 12(b)(6) (allowing

dismissal for "failure to state a claim"); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) ("a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

        Here, JPMC's declaratory judgment claim amounts to nothing more than a list of assets and a claim of ownership.  JPMC offers no contractual provisions, statements conferring title, or other facts to support its claim that it is entitled to these assets.  Thus, its claim for a declaratory judgment is insufficient as a matter of law and must be dismissed.  *See Bell Atl.*, 550 U.S. at 555, 557 (2007) (holding that the conclusory allegation of a "conspiracy" without more does not supply facts adequate to support a claim and finding that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."); *Harris v. Ramsey*, 496 F. Supp. 2d 64, 68 (D.D.C. 2007) (finding that a plaintiff's "bald assertions" were "insufficient to sustain a claim").

        Nor does JPMC attempt to address the fundamental flaws that the Debtors raised in its brief (*see* Motion to Dismiss at 12), namely:

- the Trust Securities are the subject of communications between WMI and the OTS, which JPMC has no standing to enforce;

- the tax refunds and other tax attributes are controlled by the plain language of the TSA which gives rise to a debtor-creditor relationship as between WMI and WMB and nowhere states that refunds would be owned by any entity other than WMI;[6]

---

[6]   Each of the cases cited by JPMC recognize that where a contractual arrangement between parent and subsidiary exists concerning the allocation of tax refunds, that agreement controls.  *In re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262 (9th Cir. 1973) ("Normally, where there is an explicit agreement . . . as a matter of state corporation law the parties are free to adjust among themselves the ultimate tax liability."); *In re Revco D.S., Inc.*, 111 B.R. 631, 640 (Bankr. N.D. Ohio 1990) ("absent an agreement *to the contrary* any refund resulting from the carryback of a net operating loss of a former subsidiary against taxable income attributable to the subsidiary in a prior year when it was a member of its former parent corporation's consolidated tax group belongs to and is the property of that subsidiary").  The Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure cannot change this principle of law.  *See Limerick Ecology Action, Inc. v. U.S. Nuclear Regulatory* (footnote continued)

- for the over $4 billion "Intercompany Amounts and Disputed Accounts," with the exception of a $234 million tax refund, JPMC stops short of alleging it owns them and instead only asserts vaguely that "[c]ore account opening documents are missing and certain documentation suggests . . . that some or all of the funds credited to the accounts do not belong to Plaintiffs."  Counterclaims ¶ 29;

- for the Goodwill Litigation, JPMC simply asserts that it is owed proceeds from the litigation without citing any facts or law to support its claim.

Similarly, JPMC's claim for unjust enrichment is insufficient and must be dismissed as a matter of law.  JPMC states that "Plaintiffs would be unjustly enriched if they retained the JPMC assets" but JPMC makes no allegations that there are in fact any assets held by the Debtors or, if the Debtors do hold any pertinent assets, that it would be inequitable for the Debtors to retain possession.  Counterclaims ¶ 55.

Thus, because JPMC's counterclaims fail to plead facts sufficient to state a claim, they should be dismissed.

**B.**    **Plaintiffs' Challenge to JPMC's Counterclaims Was Timely Filed After JPMC's Motion to Intervene was Granted**

JPMC also claims that the Court should disregard the Debtors' challenges to its counterclaims because they were filed more than 20 days after JPMC filed those counterclaims while its motion to intervene was still pending.

As JPMC was not a party until its motion to intervene was granted, the Debtors had 20 days from that date to respond to the counterclaims.  Fed. R. Civ. P. 12(a)(1)(B).  The Motion to Intervene was granted on October 5, 2009 (Docket No. 66).  Furthermore, Local Civil Rule 7(j) states that "[a] motion to intervene as a party pursuant to Rule 24(c), Federal Rules of

---

*Comm'n*, 869 F.2d 719, 736 (3d Cir. 1989) (concluding that an agency's policy statement "is entitled to no greater deference than any other policy statement, i.e., none"); *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988) ("A binding policy is an oxymoron.").

Civil Procedure, shall . . . . be deemed to have been filed and served by mail on the date on which the order granting the motion is entered."  Thus, the Debtors had 20 days from October 5, 2009 to file their motion to dismiss JPMC's counterclaims.  The Debtors filed their motion to dismiss on Monday, October 26, 2009 (Docket No. 79).  Therefore, the motion was timely.  Indeed, JPMC concedes that the motion was timely if counted from the Court's order granting intervention.

JPMC's argument that the FDIC's crossclaims gave "party" status to JPMC is incorrect – JPMC's own motion to intervene was before the Court and JPMC properly treated that motion, at all times, as determinative of their status as a party in the case.[7]  *In re Vitamins Antitrust Litig.*, No. MISC. 99-197(TFH), 2001 WL 34088808, at *2 n.12 (D.D.C. March 19, 2001) ("In order to intervene in an action in federal court, a party must proceed according to Rule 24 of the Federal Rules of Civil Procedure."); *In re Beef Industry Antitrust Litig.*, 589 F.2d 786, 788 (5th Cir. 1979) ("Some courts have held that it is reversible error to conduct any proceedings at the behest of parties who have failed to intervene formally pursuant to Rule 24(c)."); *Spangler v. Pasadena City Bd. of Ed.*,  552 F.2d 1326, 1329 (9th Cir. 1977) ("If a court has for some reason permitted persons who are not parties to a suit to participate in some stage of the proceedings, this will rarely, if ever, suffice to eliminate the necessity of formal intervention for these persons to become parties in their own right.").

---

[7]   For example, twelve days after the filing of the FDIC's Amended Answer and Counterclaims, JPMC wrote to the Debtors to insist it be included in the discovery conference with the FDIC.  Brown Decl., Ex. E.  There, it made no mention of its current position that it had been made a party to the proceeding by the FDIC's counterclaims.  Similarly, in its opposition to the Debtors' motion for a protective order, JPMC complained that the Plaintiffs did not believe that JPMC should be allowed to participate in a discovery conference "even though JPMC's intervention motion was then pending and JPMC was also a party to the Bankruptcy Actions."  Opp. at 6.  Noticeably, JPMC does not say "and JPMC was also a party to *this* action."

In addition, the FDIC-Receiver, the very party that JPMC claims made it a party to this action, did not file its Answer to the Counterclaims / Cross-Claims of JPMC until November 11, 2009 (Docket No. 89). Not surprisingly, JPMC has not claimed that the FDIC's answer was late or that the FDIC waived its rights by waiting until after the Court ruled on JPMC's motion to intervene before answering.

JPMC also suggests that it did not need permission from the Court to intervene because it can assert compulsory counterclaims without leave from the Court. Putting aside the question of whether some court order is required even for compulsory counterclaims, JPMC's new counterclaims, which duplicate those pending in the bankruptcy proceeding, are not compulsory counterclaims as a matter of law. It is well settled that claims that are already pending elsewhere do not need to be reasserted as counterclaims, regardless of their connection to the claim. Fed. R. Civ. P. 13(a)(2)(A) ("The pleader need not state the claim if: (A) when the action was commenced, the claim was the subject of another pending action."); *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) ("The claim is not compulsory if it was the subject of another pending action at the time the action was commenced . . . ."); *U.S. v. Sarman*, 699 F.2d 469, 470 (9th Cir. 1983) (holding that appellants' counterclaim "was not a compulsory counterclaim under Rule 13(a), F.R.Civ.P., because it was already the subject of a pending action in Nevada state courts."). Here, all of JPMC's new counterclaims were already pending in the bankruptcy proceeding. They thus cannot be compulsory counterclaims in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully request that this Court dismiss JPMC's counterclaims as set forth in its Answer, Crossclaims, and Counterclaims of Counterclaim Defendant JPMorgan Chase Bank, National Association, and stay the proceedings in their entirety.

Dated: New York, New York
       November 17, 2009

                                   s/ Deborah K. Brown

                                   Peter E. Calamari
                                   (petercalamari@quinnemanuel.com)
                                   David L. Elsberg
                                   (davidelsberg@quinnemanuel.com)
                                   Deborah K. Brown
                                   (deborahbrown@quinnemanuel.com)
                                   Quinn Emanuel Urquhart Oliver &
                                   Hedges, LLP
                                   51 Madison Avenue, 22nd Floor
                                   New York , NY 10010
                                   (212) 849-7000
                                   Fax: (212) 849-7100

                                   Erica P. Taggart
                                   (ericataggart@quinnemanuel.com)
                                   Quinn Emanuel Urquhart Oliver &
                                   Hedges, LLP
                                   865 S. Figueroa St., 10th Floor
                                   Los Angeles, CA 90017
                                   (213) 443-3000
                                   Fax: (213) 443-3100

                                   -and-

                                   David R. Berz
                                   Adam P. Strochak
                                   Weil, Gotshal & Manges, LLP
                                   1300 Eye Street, NW, Suite 900
                                   Washington, DC 20005
                                   Telephone: (202) 682-7001
                                   Facsimile: (202) 857-0939

                                   *Attorneys for Plaintiffs Washington
                                   Mutual, Inc. and WMI Investment Corp.*